UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISAMARIA MARTINEZ,<br>　　　　Plaintiff,<br>　　v.<br>COUNTY OF ALAMEDA, et al.,<br>　　　　Defendants. | Case No. 20-cv-06570-TSH<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 14 |

## I.   INTRODUCTION

Plaintiff Lisamaria Martinez, who is blind, alleges Defendants County of Alameda and individual personnel at the Alameda County Clerk-Recorder's Office violated the Americans with Disabilities Act because they would not read and scribe paperwork necessary for her fictitious business name application.  Pending before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 14.  Martinez filed an Opposition (ECF No. 17) and Defendants filed a Reply (ECF No. 18).  The Court finds this matter suitable for disposition without oral argument and **VACATES** the January 28, 2021 hearing.  *See* Civ. L.R. 7-1(b).  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **DENIES** Defendants' motion for the following reasons.

## II.   BACKGROUND

On March 29, 2019, Martinez went to the Alameda County Clerk-Recorder's Office to file a fictitious business name statement for her new small business.  Compl. ¶ 13, ECF No. 1.  Prior to her visit, she downloaded the form from the acgov.org website and completed the fillable fields using screen access software.  *Id.* ¶¶ 14-15.  Because she is blind, she obtained help at home in manually signing the document's signature line.  *Id.* ¶ 16.

At the Clerk-Recorder's office, Martinez spoke with an agent at the counter, who told her the form had checkboxes for "LLC" and for "individual," and that Martinez had checked "individual" and entered her name in that area but had elsewhere indicated she was seeking a fictitious business name for an LLC. *Id.* ¶ 17. The employee informed Martinez that she would have to check the box for "LLC," cross out her own name where she had written it and write in the name of her LLC in the relevant area. *Id.* Martinez asked the employee to assist and enter the information on the form because she was blind, but the employee said she could not assist because it was a legal document that must be completed by the business owner. *Id.* ¶¶ 18-19. Martinez explained that she herself was the business owner and that she was asking for assistance because she was unable independently to fill out the paper form. *Id.* ¶ 20. After the employee still refused to assist her, Martinez asked to speak with a supervisor but was told no supervisor was present and she would have to wait to speak with one. *Id.* ¶ 22. After waiting 45 minutes, Martinez again asked when she might expect to speak with a supervisor, but the employee told her there was still no supervisor available and that she would no longer discuss Martinez's need for assistance. *Id.*

Martinez continued to stand at the counter waiting for a supervisor for approximately 20 more minutes. *Id.* ¶ 23. Finally, Defendant Maria Laura Briones, a supervisor at the Clerk-Recorder's office, arrived and told Martinez no one could assist because the office required legal documents such as the fictitious business form to be filled out by the business owner. *Id.* ¶¶ 7, 23. Martinez again explained that she was the business owner and would be completing the form, but she required assistance because she could not complete the form herself. *Id.* ¶ 24. After Briones again refused her request, Martinez asked under what legal authority she was refusing to assist. *Id.* ¶ 25. Briones left to speak with Defendant Eva He, the Assistant Clerk-Recorder, and then returned to say that He confirmed no one from the Clerk-Recorder's office would assist Martinez in completing her form. *Id.* ¶¶ 6, 26. When asked if He cited any authority for that decision, Briones said there was no legal authority, that she would no longer speak to Martinez, and then walked away. *Id.* ¶ 26. Martinez left without filing the form. *Id.* ¶ 27.

On November 14, 2019, Martinez wrote to Defendant Melissa Wilk, the Alameda County Auditor-Controller/Clerk-Recorder, and Alameda County, through its counsel, requesting a

2

1  modification to the policy denying assistance to blind persons at the Clerk-Recorder's office. *Id.* ¶

2  30. Through counsel, Defendants responded that any assistance in filling out forms constituted

3  legal advice and would not be provided. *Id.* ¶ 31.

4      Martinez filed this case on September 18, 2020. She brings claims under Title II (against

5  Alameda County) and Title V (against the individual defendants) of the Americans with

6  Disabilities Act, California's Unruh Civil Rights Act, California's Disabled Persons Act, and a

7  claim for declaratory relief. *Id.* ¶¶ 33-101.

8      Defendants filed the present motion on December 7, 2020, arguing that Martinez's

9  complaint must be dismissed because her claims are based on a neutral policy of the County

10  Clerk-Recorder, and that public entities are not required to provide services to disabled persons

11  which are not provided at all by such entities. Defendants also argue Martinez fails to allege

12  intentional discrimination and fails to allege that she requested a reasonable accommodation.

### III.  LEGAL STANDARD

14      A complaint must contain a "short and plain statement of the claim showing that the

15  pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, to survive a Rule 12(b)(6) motion to

16  dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its

17  face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean

18  probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully."

19  *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with

20  "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555

21  (quotations and citation omitted); Fed. R. Civ. P. 8(a)(2) (A complaint must contain a "short and

22  plain statement of the claim showing that the pleader is entitled to relief."). In considering a

23  motion to dismiss, the court accepts factual allegations in the complaint as true and construes the

24  pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine*

25  *Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

26  However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to

27  threadbare recitals of a cause of action's elements, supported by mere conclusory statements."

28  *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV. DISCUSSION

### A. Title II of the ADA

Martinez alleges Defendants violated Title II of the ADA, 42 U.S.C. § 12132, by failing to assist her in filling out/altering her application. Compl. ¶¶ 12-69. Section 12132 provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 28 C.F.R. § 35.130, which is an implementing regulation for § 12132, provides:

> A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35130(b)(7); *Weinreich v. Los Angeles Cty. Metro. Transp. Auth.*, 114 F.3d 976, 979 (9th Cir. 1997). Martinez must allege four elements to state a claim of discrimination under Title II: (1) she is an individual with a disability; (2) she is otherwise qualified to participate in or receive the benefit of Alameda County's services, programs, or activities; (3) she was excluded from participation in, denied the benefits of, or otherwise subjected to discrimination with respect to Alameda County's services, programs, or activities; and (4) the exclusion, denial of benefits, or discrimination she suffered was by reason of her disability. *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004); *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002), *cert. denied*,

4

538 U.S. 921 (2003).

There is no dispute that Martinez has pled facts sufficient to establish that she is blind and therefore an individual with a disability, that she is eligible to seek and obtain the benefits of Alameda County services such as a license to use a fictitious business name, and that she was excluded from participation in, denied the benefits of, or otherwise subjected to discrimination with respect to Alameda County's services, programs, or activities. Defendants rest their argument for dismissal on the fourth element, arguing that the exclusion, denial of benefits, or discrimination Martinez suffered could not have been by reason of her disability, and that they have no liability because their policy that county employees "are not permitted to fill out or alter legal documents for patrons . . . is entirely neutral in that it applies to everyone, regardless of whether or not they are disabled." Mot. at 3. However, the Ninth Circuit has rejected Defendants' arguments regarding such facially neutral policies.

### 1. Facially Neutral Policies

The Ninth Circuit has "repeatedly recognized that facially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced." *McGary*, 386 F.3d at 1265; *see also, e.g., Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996) (holding that Hawaii discriminated against blind service-animal users in violation of the ADA because its facially neutral and universally enforced policy "burden[ed] visually-impaired persons in a manner different and greater than it burden[ed] others"); *Rodde v. Bonta*, 357 F.3d 988, 998 (9th Cir. 2004) (upholding district court's determination that a public entity's neutral policy that "would deny certain disabled individuals meaningful access to government-provided services because of their unique needs, while others would retain access to the same class of services" violated the ADA and warranted an injunction); *Cal. Council of the Blind v. Alameda County*, 985 F. Supp. 3d 1229, 1236 (N.D. Cal. 2013) ("to challenge a facially neutral government policy on the ground that it has a disparate impact on people with disabilities, the policy must have the effect of denying meaningful access to public services") (quoting *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013)); *id.* at 1238-39 (A public entity denies meaningful access to its programs, services, or activities where it violates the

1   Title II ADA regulations promulgated by the Department of Justice) (citing *K.M. ex rel. Bright*,

2   725 F.3d at 1096; 28 C.F.R. § 35.160)).

3         Here, accepting Martinez's factual allegations as true and construing the pleadings in the

4   light most favorable to her, the Court finds she has pled facts demonstrating that Defendants'

5   policy of refusing to assist anyone in completing paperwork disproportionately burdened her as a

6   blind person and denied her meaningful access to Alameda County benefits and services. Compl.

7   ¶¶ 18-69; *see also* 28 C.F.R. § 35.104 (defining "auxiliary aids and services" with respect to blind

8   individuals); *id.* § 35.160(a)(1) ("A public entity shall take appropriate steps to ensure that

9   communications with applicants, participants, members of the public, and companions with

10  disabilities are as effective as communications with others."); *id.* § 35.160(b)(1) ("A public entity

11  shall furnish appropriate auxiliary aids and services where necessary to afford individuals with

12  disabilities, including applicants, participants, companions, and members of the public, an equal

13  opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public

14  entity."); *id.* § 35.160(c)(1) ("A public entity shall not require an individual with a disability to

15  bring another individual to interpret for him or her."). Such exclusion, denial of benefits, or

16  discrimination was by reason of her disability and thus constituted a violation of Title II of the

17  ADA.

18        Even if it were to consider the non-binding cases cited by Defendants, the Court finds they

19  are unpersuasive. The Eighth Circuit case Defendants cite involved a school district that refused

20  to have its own nursing staff administer medications to minor students in higher dosages than were

21  listed in standard medical references. *Davis v. Francis Howell Sch. Dist.*, 138 F.3d 754 (8th Cir.

22  1998). The Third Circuit cases Defendants cite involved post-employment pension and insurance

23  benefits that were alleged to substantively differ based on disability. *See Leheny v. City of*

24  *Pittsburgh*, 183 F.3d 220, 230 (3d Cir. 1999) (pension benefits not discriminatory where there was

25  no showing that disabled officers' compensation differed from non-disabled officers); *Ford v.*

26  *Schering-Plough Corp.*, 145 F.3d 601 (3d Cir. 1998) (finding no discrimination where post-

27  employment disability benefits differed based on mental versus physical disability). None of these

28  cases involved discrimination based on a public entity's failure to effectively communicate

information to a person with a disability nor its policy of refusing the auxiliary aids or services necessary for such effective communication, as alleged by Martinez in this case. The Eastern District of Virginia case cited by Defendants involved a request by disabled students to offer them an accessible voter registration site on campus, which the court rejected on the ground that Virginia's colleges and universities do not provide voting registration services for any of their students and "nothing in the ADA requires entities to expand the scope of their activities so as to provide services for disabled persons which are not provided at all by such entities." *Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen*, 961 F. Supp. 129, 131 (E.D. Va. 1997). In this case, Martinez seeks an accommodation for the services Defendants already provide.

Defendants' reliance on employment discrimination cases from outside the jurisdiction is likewise misplaced, not only because of the distinguishable facts, but also because of the different legal standard applied in such cases. One of Defendants' cited cases involved an employee who sought the creation of a new, then-nonexistent job, and the other involved the priority hiring and reassignment of disabled employees over non-disabled employees. *See Terrell v. USAir*, 132 F.3d 621 (11th Cir. 1998) (creation of a new position was not reasonable, while alternative requested accommodation of a desk modification was reasonable); *Daugherty v. City of El Paso*, 56 F.3d 695 (5th Cir. 1995) (finding that an "affirmative action" program that would preferentially hire or reassign individuals with disabilities over others was not a reasonable accommodation). Martinez's request for assistance reading and transcribing dictated information onto a public entity's form is not comparable to the creation of a nonexistent job or the preferential hiring of individuals with disabilities.

Defendants' comparison of Martinez's request to that made in *Weinrich* fails as well. As Judge Tigar explained in *Smith v. City of Oakland*, "In *Weinrich*, a public transit system's policy requiring disabled patrons to recertify their disabilities every three years in order to qualify for reduced fare discriminated against these patrons not 'by reason of' their disability but based on their financial circumstances." ___ F. Supp. 3d ___, 2020 WL 2517857, at *10 (N.D. Cal. Apr. 2, 2020) (citing *Weinrich*, 114 F.3d at 979). Martinez does not allege that Defendants discriminate

because they charge her for filing a fictitious business name. Rather, she alleges they discriminate because of her exclusion from "'an equal opportunity to participate in, and enjoy the benefits of' [County] services, programs, and activities." Compl. ¶¶ 38, 63 (quoting 28 C.F.R. § 35.160(b)(1)). Just as in *Smith*, she has "thus sufficiently alleged the fourth and final element of [her] ADA claim." 2020 WL 2517857, at *10.

For these reasons, the Court finds Defendants fail to provide authority or persuasive argument to overcome the Ninth Circuit's own binding precedent regarding "facially neutral" policies that disproportionately affect individuals with disabilities, or the ADA's regulatory requirements to provide auxiliary aids and services such as a "qualified reader . . . or another effective method" of making their form available to a blind individual. *See* 28 C.F.R. § 35.104 (defining "auxiliary aids and services" with respect to blind individuals).

### 2. Fundamental Alteration or Undue Burden

Defendants also argue Martinez fails to adequately plead that she requested a *reasonable* accommodation. Mot. at 4. They argue that, had they "capitulated to Plaintiff's demands and manipulated the FBNS for Plaintiff, doing so would have constituted the unauthorized practice of law, which is a crime. A request for illegal law practice is not reasonable and a request for an illegal act cannot, logically, qualify as a request for a reasonable accommodation." *Id.* Defendants cite California Government Code section 27203(d), which provides that a recorder may be liable to a party for any resulting damages if the recorder "[a]lters, changes, obliterates, or inserts any new matter in any records deposited in the recorder's office, unless the recorder is correcting an indexing error." *Id.* at 12. Defendants maintain that "completing a legal form on someone else's behalf, without a law license, would constitute the unauthorized practice of law." *Id.* (citing *Crawford v. State Bar of Cal.*, 54 Cal.2d 659, 667-668 (1960); *People ex rel. Lawyers Inst. of San Diego v. Merchants' Protective Corp.* 189 Cal. 531, 535-536 (1922); Cal. Bus. & Prof. Code §§ 6125-26).

"Federal law requires public entities to 'make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would

8

1    fundamentally alter the nature of the service, program, or activity.'" *Castle v. Eurofresh, Inc.*, 731
2    F.3d 901, 910 (9th Cir. 2013) (quoting 28 C.F.R. § 35.130(b)(7)).  At the same time, public
3    entities are required to "take appropriate steps to ensure that communications with applicants,
4    participants, and members of the public with disabilities are as effective as communications with
5    others" and to "furnish appropriate auxiliary aids and services where necessary to afford an
6    individual with a disability an equal opportunity to participate in, and enjoy the benefits of," their
7    services, programs, and activities.  *K.M. ex rel. Bright*, 725 F.3d at 1096 (quoting 28 C.F.R. §§
8    35.160 (a) and (b)(1)).

9    On a motion to dismiss, all factual claims—such as Martinez's claim that the
10   accommodation she requested was reasonable—must be accepted as true.  Defendants cannot
11   disprove her allegations merely by asserting fundamental alteration or undue burden in conflict
12   with the pled facts, as such a claim is an affirmative defense for which the asserting public entity
13   bears the burden of proof.  *Id.* ("public entity has the burden to prove that a proposed action would
14   result in undue burden or fundamental alteration") (citing 28 C.F.R. § 35.164); *Lentini v. Cal. Ctr.*
15   *for the Arts*, 370 F.3d 837, 845 (9th Cir. 2004).  Furthermore, determining whether a modification
16   is reasonable or would result in a fundamental alteration "is an intensively fact-based inquiry."
17   *Lentini*, 370 F.3d at 845 (citation and internal quotations omitted); *Castle*, 731 F.3d at 910; *Zukle*
18   *v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1048 (9th Cir. 1999); *Crowder*, 81 F.3d at 1486.  Case
19   law and ADA regulations underscore that whether a requested policy modification or auxiliary aid
20   or service would result in a fundamental alteration or undue burden is a fundamentally factual
21   question, inappropriate for disposition prior to discovery.

22   The decision that proposed modification or auxiliary aid or service would result in a
23   fundamental alteration to a public entities program, service, or activity, or would result in and
24   undue financial or administrative burden, "must be made by the head of the public entity or his or
25   her designee after considering all resources available for use in the funding and operation of the
26   service, program, or activity and must be accompanied by a written statement of the reasons for
27   reaching that conclusion."  *K.M. ex rel. Bright*, 725 F.3d at 1096-97 (quoting 28 C.F.R. § 35.164).
28   In such situations, a public entity must still "take any other action that would not result in such an"

alteration" and that "would nevertheless ensure that, to the maximum extent possible, individuals with disabilities receive the benefits or services provided by the public entity." *Id.* at 1097 (quoting 28 C.F.R. § 35.164). Thus, "even if a disabled individual's requested accommodation is not feasible, the public entity must still take any actions to establish equality, or as close thereto as possible, between disabled and non-disabled individuals using the public entity's services." *Payan v. Los Angeles Cmty. Coll. Dist.*, 2018 WL 6164269, at *10 (C.D. Cal. Oct. 16, 2018). Defendants proffer only unsubstantiated arguments that it would fundamentally alter or unduly burden them to assist Martinez in either altering her own pre-filled form or completing a new blank form because doing so would expose them to liability under California Government Code section 27203(d) for altering "records deposited in the recorder's office." Mot. at 4-6, 12. However, as alleged in her complaint, the form Martinez requested assistance in reading, and to which she requested assistance transcribing information, had not yet been "deposited" at the time she requested and was denied that assistance. Compl. ¶¶ 17-27. Moreover, even if Defendants were correct in claiming the relevance of those state strictures to the provision of assistance for blind persons, that would neither be determinative nor would it allow Defendants to escape their obligation to subject those state strictures to an analysis for comportment with federal law. *See, e.g, McGary*, 386 F.3d at 1268-70 (remanding to the district court to determine the reasonableness of the plaintiff's proposed modifications to the city's ordinances). Defendants suggest that assisting Martinez would constitute the unauthorized practice of law, but long-standing California precedent contradicts this assertion: acting as a scrivener to perform "the clerical service of filling in the blanks on a particular form in accordance with information furnished" is not the unlicensed practice of law in California. *People v. Sipper*, 61 Cal. App. 2d Supp. 844, 846-47 (1943); *Altizer v. Highsmith*, 52 Cal. App. 5th 331, 341 (2020); *People v. Landlords Prof'l Servs.*, 215 Cal. App. 3d 1599, 1608 (1989); Tuft, Peck and Mohr, Cal. Practice Guide: Professional Responsibility (The Rutter Group 2019) ¶¶ 1:203 to 1:204.1, p. 1-125.

In sum, the Court finds that Defendants' arguments are mired in disputed facts that prevent the success of their motion. To prevail, Defendants must adduce sufficient facts to prove that Martinez's request, as a blind person, for assistance in reading and transcribing information onto

the county's paper form after being told she "would have to check the box for 'LLC,' cross out her own name where she had written it and write in the name of her LLC in the relevant area," would result in a fundamental alteration to the county's services or result in an undue burden. Compl. ¶¶ 17, 24. They would also have to adduce facts sufficient to prove that they took some other action to "ensure that, to the maximum extent possible," Martinez was still able to receive the benefits of their services. 28 C.F.R. § 35.164. They have not done so, and indeed they cannot do so at this early stage of litigation where Martinez's allegations, which must be taken as true, confirm that Defendants sent her away without providing any assistance or any other auxiliary aid or service.

### 3. Intentional Discrimination of Deliberate Indifference

Defendants also argue Martinez cannot adequately allege intentional discrimination where Defendants' refusal to manipulate the form "was based solely on a neutral policy, applied equally to disabled and nondisabled persons alike, to protect Defendants from liability and to ensure Defendants did not engage in the unauthorized practice of law." Mot. at 14. "In other words, Plaintiff's complaint is merely the result of events taking their normal course. There was no deliberate indifference to Plaintiff's rights and Plaintiff cannot allege otherwise." *Id.*

To seek injunctive relief under Title II of the ADA, a plaintiff need only allege that she was denied meaningful access to a public entity's programs, services, or activities. *Cal. Council of the Blind*, 985 F. Supp. 3d at 1236 (citing *K.M. ex rel. Bright*, 725 F.3d at 1102). To seek monetary damages under Title II of the ADA, a plaintiff must further allege that the violations were intentional, which has been held to require a defendant's deliberate indifference. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001) (citing *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998)). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood." *Id.* at 1139 (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1988)).

A plaintiff may satisfy the first prong of the deliberate indifference test by requesting an auxiliary aid or service. *Id.* That first prong is also automatically satisfied where the need for such an auxiliary aid or service is obvious, or where an auxiliary aid or service is required by statute or regulation. *Id.* A qualified reader or other effective method of making Defendants'

paper form available to Martinez, or another similar service or action, is explicitly sanctioned by regulation. 28 C.F.R. § 35.104 (defining "auxiliary aid or service"); *see also K.M. ex rel. Bright*, 725 F.3d at 1096 (citing definition in the context of non-visual disabilities); *Duvall*, 260 F.3d at 1134 n.7 (same).

Having been put on notice of the need for an auxiliary aid or service, a public entity must undertake a fact-specific investigation to determine an appropriate aid or service, which "will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." *Duvall*, 260 F.3d at 1138; 28 C.F.R. § 35.160(b)(2). When determining what auxiliary aids or services are necessary, a public entity must "give primary consideration to the requests of individuals with disabilities." *Id.* (quoting 28 C.F.R. § 35.160(b)(2)). A public entity may not "mere[ly] speculat[e]" that a suggested auxiliary aid or service is not feasible but must determine what auxiliary aids or services are necessary based on information gathered from the individual with a disability and, where needed, from qualified experts. *Id.* (quoting *Wong v. Regents of Univ. of California*, 192 F.3d 807, 818 (9th Cir. 1999)).

A public entity may not require an individual with a disability to be accompanied by another person, nor may it rely upon an accompanying person to facilitate communication with an individual with a disability. 28 C.F.R. § 35.160(c). While deliberate indifference requires a public entity to have acted more than negligently, its belief that it was acting in good faith is not sufficient to defeat an allegation that it acted deliberately in failing to adequately investigate or in refusing to provide a necessary auxiliary aid or service. *Id.* at 1139-40; *see also Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002) (good faith is no defense to deliberate indifference); *Mark H. v. Hamamoto*, 620 F.3d 1090, 1099 (9th Cir. 2010) (failure to adequately investigate needs of individuals with disabilities supports finding of deliberate indifference).

As discussed above, Martinez sufficiently pled that she was denied meaningful access to Alameda county services and benefits. She alleges she requested an auxiliary aid or service, explained why it was necessary, and informed Defendants that such an auxiliary aid or service was required by law. Compl. ¶¶ 18, 20, 24. She thereby put Defendants on notice that she required a

12

specific auxiliary aid or service enumerated by the regulations. Martinez also alleges that the only auxiliary aid or service Defendants offered her at their office was one specifically prohibited by 28 C.F.R. § 35.160(c): reliance on a person accompanying her. Compl. ¶ 23. Defendants suggest they made multiple alternative arrangements, including the availability of an online form for Martinez to fill out herself, Mot. at 13, but that is not relevant to the inquiry regarding the provision of auxiliary aids and services at their office, and in any case would require a highly fact-specific inquiry. *See* 28 C.F.R. § 35.104 (defining "auxiliary aids and services" with respect to blind individuals); 28 C.F.R. § 35.160(b)(2) (requiring public entities to provide auxiliary aids and services "in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability"). Defendants have not alleged any evidence that they undertook any fact-specific investigation to determine an appropriate aid or service for Martinez. Rather, Defendants' provide merely speculative and conclusory assertions that her requested aid or service—that she be provided with a qualified reader and scribe—was not feasible.

Taken as true and construed in the light most favorable to her, Martinez's factual allegations satisfy the deliberate indifference standard. Accordingly, the Court **DENIES** Defendants' motion to dismiss Martinez's Title II claim.

**B.     Remaining Claims**

Defendants' arguments for dismissal of Martinez's ADA Title V and state law claims are predicated on dismissal of her Title II claim. Mot. at 8 ("[A]ll of Plaintiff's claims depend on whether Defendants violated section 12132 of the ADA."). However, because Martinez has properly alleged violations of Titles II, she has also properly alleged violations with respect to her remaining claims. *See* 42 U.S.C. § 12203(b) ("It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by [the ADA]."; Cal. Civ. Code § 51(f) (Unruh Civil Rights Act) ("A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 . . . shall also constitute a violation of this section."); Cal. Civ. Code § 54(c) (Disabled Persons Act) ("A violation of the right of an individual under the

13

Americans with Disabilities Act of 1990 . . . also constitutes a violation of this section."). Cal. Civ. Defendants' motion to dismiss these claims is therefore **DENIED**.[1]

### V.   CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' motion to dismiss.

**IT IS SO ORDERED.**

Dated: January 12, 2021

THOMAS S. HIXSON
United States Magistrate Judge

---

[1] Defendants also argue Martinez's fifth claim for declaratory relief must be dismissed because it does not present any new theories or allegations and is derivative of her other claims. Mot. at 16. It is true that declaratory relief is a remedy, not a separate cause of action. *See E&B Nat. Res. Mgmt. Corp. v. Cty. of Alameda*, 2019 WL 1585637, at *1 n.1 (N.D. Cal. Apr. 12, 2019) ("With respect to plaintiffs' claim for 'declaratory relief,' . . . the Court notes that declaratory relief is a remedy, not a separate cause of action."); *Green v. Mercy Hous., Inc.*, 2018 WL 6704185, at *6 (N.D. Cal. Dec. 20, 2018) ("Declaratory relief is a remedy which must rely upon underlying claims. If plaintiff seeks declaratory relief, he should request it as part of his prayer for relief. On this basis, the injunctive relief claim is Dismissed."); *Milyakov v. Quality Loan Serv. Corp.*, 2018 WL 732500, at *6 (N.D. Cal. Feb. 6, 2018) ("Injunctive and declaratory relief, however, are remedies which must rely upon underlying claims. However, dismissal is unnecessary because this claim may be construed as part of Martinez's prayer for relief rather than a distinct cause of action. *See Smith*, 2020 WL 2517857, at *3 n.2 (construing declaratory relief claims as part of plaintiffs' prayer for relief).