TIMOTHY ELDER (CA BAR NO. 277152)
ALBERT ELIA (appearing *pro hac vice*)
**TRE LEGAL PRACTICE**
1155 Market Street, Tenth Floor
San Francisco, CA 94103
Telephone:     (415) 873-9199
Facsimile:     (415) 952-9898
Email: telder@trelegal.com
          aelia@trelegal.com

S. Tomiyo Stoner (CA Bar No. 289246)
**Undaunted Law Firm, P.C.**
1500 Dragon St. Suite 160
Dallas, Texas 75039
Telephone:     (214) 415-7340
E-mail:       tstoner@undauntedlaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LISAMARIA MARTINEZ**, | Case No. 3:20-cv-06570-TSH |
| Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT AND DECLARATORY JUDGMENT** |
| v. | |
| **COUNTY OF ALAMEDA**, **MELISSA WILK**, in her individual capacity, **EVA HE**, in her individual capacity, **MARIA LAURA BRIONES**, in her individual capacity, | Hearing Date: Aug. 4, 2022<br>Hearing Time: 10am<br>Courtroom: G, 15th Fl. |
| Defendants | |

**NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
AND DECLARATORY JUDGMENT**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, in accordance with the Court's 8/13/21 Case Management Order, ECF No. 33, on August 4, 2022 at 10am, or as soon thereafter as the matter may be heard, in Courtroom G of the United States District Court, Northern District, San Francisco Courthouse, 15th Floor at 450 Golden Gate Avenue in San Francisco, California, Plaintiff Lisamaria Martinez will respectfully move this court for partial summary judgment on liability and declaratory judgment against the single Defendant Alameda County for her First Cause of Action for Violation of Title II of the Americans with Disabilities Act, for liability on her damages claim for deliberate indifference under that First Cause of Action, and for declaratory judgment under her so-labeled Fifth Cause of Action.

This Motion is based on this Notice and Motion, the below Memorandum of Points and Authorities and other accompanying documents containing supporting facts as outlined in the separate Statement of Facts, and such other and further evidence and argument as the Court may permit.

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.    INTRODUCTION ........................................................................................................... 1

II.   FACTS .............................................................................................................................. 2

III.  LEGAL STANDARDS ................................................................................................... 5

    A.   Legal Standard on Summary Judgment ......................................................... 5

    B.   Legal Standard for Title II ADA Violation Against Defendant Alameda County .............. 6

    C.   Legal Standard for Declaratory Judgment .................................................... 6

IV.   ARGUMENT ................................................................................................................... 7

    A.   Plaintiff was a qualified individual with a disability. ................................... 7

    B.   Plaintiff was excluded from participation in the services offered by the CRO and subjected to discrimination. ................................................................................. 7

        1.   The CRO failed to effectively communicate with Ms. Martinez. .................... 7

        2.   Alameda County continues to refuse to provide qualified readers. ............... 10

    C.   Ms. Martinez was excluded on the basis of her disability. ................................11

    D.   Alameda County's policy forbidding provision of qualified readers has a disparate impact and is therefore unlawful. ......................................................... 12

    E.   Defendant Alameda County has failed to meet its burden to show that providing a qualified reader would constitute a fundamental alteration or undue burden. ......................... 13

    F.   Defendant Alameda County was deliberately indifferent to the needs of Ms. Martinez on March 29, 2019. ......................................................................................................... 16

    G.   The Court may award declaratory relief. ....................................................... 18

V.    CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 250 (1986) ................................................................................ 6

*Ariz. ex rel. Goddard v. Harkins Amusement Enters.*,
   603 F.3d 666 (9th Cir. 2010) ................................................................ 11

*Arizona v. City of Tuscon*,
   761 F.3d 1005 (9th Cir. 2014) ............................................................... 6

*Armstrong v. Schwarzenegger*,
   622 F.3d 1058 (9th Cir. 2010) ............................................................. 12

*Bowles v. Seminole Rock & Sand Co.*,
   325 U.S. 410 (1945) ................................................................................ 8

*Cal. Council of the Blind v. Alameda County*,
   985 F. Supp. 3d 1229 (N.D. Cal. 2013) .............................................. 12

*Cal. Council of the Blind*,
   985 F. Supp. 3d 1096 .......................................................................... 13

*California Foundation for Independent Living Centers v. County of Sacramento*,
   142 F. Supp. 3d 1035 (E.D. Cal. 2015) ................................................. 2

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................ 5

*City of Canton v. Harris*,
   489 U.S. 378 (1988) .............................................................................. 16

*Crowder v. Kitagawa*,
   81 F.3d 1480 (9th Cir. 1996) ............................................................... 12

*Duvall v. Cnty. of Kitsap*,
   260 F.3d 1139 (9th Cir. 2001) ...................................................... 6, 16, 17

*K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*,
   725 F.3d 1096 (9th Cir. 2013) ............................................................. 12

*Kam-Ko Bio-Pharm Trading Co., Ltd. v. Mayne Pharma Inc.*,
   560 F.3d 943 (9th Cir. 2009) ........................................................... 6, 18

*Keenan v. Allan*,
   91 F.3d 1275 (9th Cir. 1996) ................................................................. 6

*Love v. Ashford San Francisco II LP*,
    No. 20-cv–08458-EMC, 2021 WL 1428372 (N.D. Cal. Apr. 15, 2021) .............................. 8

*Martin v. Metro. Atlanta Rapid Transit Auth.*,
    225 F. Supp. 2d 1362 (N.D. Ga. 2002) ............................................................ 10

*McGary v. City of Portland*,
    386 F.3d 1259 (9th Cir. 2004) ..................................................................... 16

*Miller v. Cal. Speedway Corp.*,
    536 F.3d 1020 (9th Cir. 2008) ...................................................................... 8

*Payan v. Los Angeles Cmty. Coll. Dist.*,
    11 F.4th 731 (9th Cir. 2021) ........................................................................ 7

*Rodde v. Bonta*,
    357 F.3d 988 (9th Cir. 2004) ...................................................................... 13

*Townsend v. Quasim*,
    328 F.3d 511 (9th Cir. 2003) ...................................................................... 14

*Updike v. Multnomah Cnty.*,
    870 F.3d 950 (9th Cir. 2017) .................................................................. 6, 16

*Wong v. Regents of Univ. of California*,
    192 F.3d 807 (9th Cir. 1999) ..................................................................... 17

**STATUTES**

California
    Cal. Gov't Code § 7405 .............................................................................. 10

Title 28, U.S.C.
    § 2201 ............................................................................................. 6, 18

Title 42, U.S.C.
    § 12131 ............................................................................................ 6, 7
    § 12132 .............................................................................................. 6
    § 12182 ............................................................................................. 11

**FEDERAL RULES**

Federal Rules of Civil Procedure
    Rule 56 ............................................................................................ 5, 6

**FEDERAL REGULATIONS**

28 C.F.R.
    § 35.104 ........................................................................................... 7, 8

§ 35.130................................................................................................ 6, 14

§ 35.160................................................................................................ *passim*

§ 35.164.................................................................................... 4, 13, 14, 15, 17

Nondiscrimination on the Basis of Disability in State and Local Government Services,
28 C.F.R. Pt. 35, App. B (2011), 56 Fed. Reg. 35694-01 (July 26, 1991) ........................... 8

**OTHER AUTHORITIES**

U.S. Dep't of Justice, Ch. 3, ADA Best Practices Tool Kit for State and Local Governments
(Feb. 27, 2007)................................................................................................ 1, 9, 12

U.S. Dep't of Justice, The Americans with Disabilities Act Title II Technical Assistance Manual,
TAM II-3.600................................................................................................ 14, 15

U.S. Dep't of Justice, The Americans with Disabilities Act Title II Technical Assistance Manual,
TAM II-8.2000................................................................................................ 8

1

2

3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

4

5

6

7

8

9

10

11

12

13

14

15

16

The Americans with Disabilities Act (ADA) and related state laws have long required that state and local entities reasonably modify policies when needed to provide equal access to a person with a disability. Providing auxiliary aids and services to effectively communicate information to disabled persons is an expressly reasonable modification extensively addressed in federal regulations and guidance. The Department of Justice, which regulates state and local conduct under the ADA, clarified that where a disabled person cannot independently read or write on paper forms, the entity is required to provide human assistance to help read and transcribe the information. *See* U.S. Dep't of Justice, Ch. 3 § 4, ADA Best Practices Tool Kit for State and Local Governments (Feb. 27, 2007), https://www.ada.gov/pcatoolkit/chap3toolkit.htm [https://web.archive.org/web/20220303182511/https://www.ada.gov/pcatoolkit/chap3toolkit.htm] (requiring a qualified reader who is capable of "accurately reading instructions and recording information on each form, in accordance with each form's instructions and the instructions provided by the individual who requires the assistance.").

17

18

19

20

21

22

Ms. Martinez, a blind business owner who cannot see to read print or accurately write on paper, merely asks Defendants to read printed instructions aloud and transcribe her information into basic paper forms at the Alameda County Clerk Recorder's Office ("CRO"). Surprisingly, Defendants absolutely refuse to follow this legally mandated common courtesy. Alameda County allegedly has an immutable policy prohibiting its employees from putting pen to paper on behalf of any citizen, disabled or not. Its refusal to modify the policy blatantly violates the ADA.

23

24

25

26

27

28

Defendants had ample opportunity to review the legal requirements of the ADA and modify the unlawful policy. Even after this Court clarified the law for Defendants in its January 12, 2021 Order Denying Defendants' Motion to Dismiss, ECF No. 22, and Defendants were given significant opportunity to review legal positions through mediation, Defendants still refused to modify the policy. Defendants maintain their refusal to accommodate disabled citizens because of unfounded concerns about the unauthorized practice of law and altering records deposited in

the official record. Defendants insist on a court declaring their legal obligation before abandoning their strict policy. Unfortunately, Plaintiff Martinez now has no choice but to seek partial summary judgment finding liability against Defendant Alameda County and declaring its policy to be contrary to the ADA. Plaintiff thus narrowly seeks relief against Defendant Alameda County at this time in hopes that it is sufficient to compel all Defendants to comply with what should have been an obvious opportunity to voluntarily follow well-documented federal and state equal access requirements.[1] Ms. Martinez simply wants to get on with life and run her small business without her blindness unnecessarily limiting her every time she visits the Alameda County Clerk Recorder's Office to handle one of its paper forms.

## II.  FACTS

Plaintiff Lisamaria Martinez is blind. (Statement of Facts in Support of Pl.'s Mot. for Partial Summ. J. ("Facts") ¶ 1.) From the time she attended UC Berkley, beginning in 1999, to her new business venture as a life coach, her professional career has centered on assisting others in achieving personal and professional goals. (Facts ¶ 3.) To that end, she obtained a certificate to be a life coach in January of 2019. (Facts ¶ 3.) Early in 2019, she started preparing the paperwork for Be Confident Be You Coaching, LLC. (Facts ¶ 4.) As part of that process, on March 29, 2019, Ms. Martinez went to the Alameda County Clerk-Recorder's Office (the "CRO") to file a fictitious business name ("FBN") statement for her new small business. (Facts ¶ 5.)

Prior to her trip to the CRO, Ms. Martinez prepared by visiting the CRO website, where she downloaded an electronic FBN form provided by the County of Alameda in PDF format. (Facts ¶ 6.) The electronic PDF form was not fully accessible: it was formatted in a manner that prevented screen reader users like Ms. Martinez from independently completing and signing it. (Facts ¶ 7) Due to the inaccessibility of that form, she was unable to complete and sign it without the

---

[1] For a comparable procedural approach to efficiently resolve a discriminatory county policy *See California Foundation for Independent Living Centers v. County of Sacramento*, 142 F. Supp. 3d 1035 (E.D. Cal. 2015) (granting plaintiff partial summary judgment on liability for discriminatory county policy and delaying other proceedings until after summary judgment).

[3:20-CV-06570-TSH]

assistance of a sighted companion acting as a reader. (Facts ¶ 7.) Ms. Martinez thus attempted to complete the form with such assistance from her friends and family at home. (Facts ¶ 7.)

On March 29, 2019, with the completed form in hand, Ms. Martinez traveled by BART to the CRO, received a number, waited for her number to be called, and finally approached the counter to file her documents. (Facts ¶ 8) When she spoke with CRO staff, she was told that her FBN form could not be accepted without corrections. (Facts ¶ 9) Customers frequently need to correct FBN forms that they bring to the CRO. (Facts ¶ 10.) When that happens, CRO staff tell the customer what needs to be corrected, and the customer is able to—and typically does—correct the form while at the CRO. (Facts ¶ 10.)

While at the CRO on March 29, 2019, Ms. Martinez explained, and Defendants understood, that she is blind. (Facts ¶ 12.) Ms. Martinez explained that because of her disability, she can neither read nor write information on paper forms without the assistance of a sighted person. (Facts ¶ 13.) She therefore cannot correct or fill out an FBN form at the CRO without the assistance of a qualified reader. (Facts ¶ 13.) Ms. Martinez requested that Defendants provide her with a qualified reader so she could correct her FBN form. (Facts ¶ 14.) Defendants understood that, without such assistance, Ms. Martinez would not be able to correct her FBN form on March 29, 2019. (Facts ¶ 16.) They also understood that Ms. Martinez's request was for an auxiliary aid or service under Title II of the ADA. (Facts ¶ 17.) While Ms. Martinez waited for CRO staff to provide her with a qualified reader so she could correct her own FBN form, she overheard another customer making similar corrections to his form as guided by CRO staff. (Facts ¶ 11.)

Defendants nevertheless refused to provide a qualified reader for Ms. Martinez. (Facts ¶ 18.) Defendants and other CRO staff were capable of providing qualified reader service to Ms. Martinez on March 29, 2019. (Facts ¶ 19.) Defendants did not provide any other accommodation to allow Ms. Martinez to correct and file her FBN form in the CRO on March 29, 2019. (Facts ¶ 28.) Defendants only asked if Ms. Martinez was accompanied by a sighted person who could help her. (Facts ¶ 27.) Defendants claimed that providing a qualified reader, as requested by Ms. Martinez because of her disability, would violate a CRO policy prohibiting CRO staff from writing information on legal forms such as the FBN form. (Facts ¶ 21.) CRO policy is to "not

provide scribe services for FBN Forms," including "forms both before and after they are filed or recorded." (Facts ¶ 21.) Their policy is the only reason why Defendants refused to provide Ms. Martinez with a qualified reader to assist her in correcting her FBN form. (Facts ¶ 21.)

Ms. Martinez requested a written statement documenting the denial of the requested auxiliary aid. (Facts ¶ 30.) Such statements are required pursuant to 28 C.F.R. § 35.164. No statement was given to Ms. Martinez nor apparently ever written. (Facts ¶ 30-31.) No alternative accommodations were made. (Facts ¶ 28.) Ultimately, Defendants continue to maintain that policy. (Facts ¶ 25.) Defendants stated that the DOJ guidance and regulatory comments indicating that qualified readers must not only read information but also assist blind persons in filling-out forms necessary for public services are irrelevant to their continued use of that policy and their refusal to modify it for blind persons. (Facts ¶ 24.)

Because Defendants refused to provide a qualified reader to accommodate Ms. Martinez, she was unable to complete her business of filing her FBN form on March 29, 2019. (Facts ¶ 29.) Had she been sighted instead of blind, she would have been able to correct and file her FBN statement on March 29, 2019. (Facts ¶ 33.)

Defendants stated that they would also have refused to provide a qualified reader to aid Ms. Martinez in filling out a blank FBN form, rather than correct the form she brought with her to the CRO. (Facts ¶ 23.) There was no technology in the CRO that would have allowed Ms. Martinez to complete a new electronic FBN form without being aided by a qualified reader. (Facts ¶ 26.) Even if such technology existed, it would not allow Ms. Martinez to fill out the paper forms that Alameda County provides for customers at the CRO nor to correct a form while at the counter as sighted customers can. (Facts ¶ 26.) The only reason Defendants contend that they did not provide Ms. Martinez with her requested accommodation is due to their policy of refusing to assist anyone, regardless of disability, in completing or correcting legal forms such as the FBN statement (Facts ¶ 21), which Plaintiff contends disparately impacts customers who are blind. (Compl. ¶¶ 18-69, ECF No. 1. *See also* Order Denying Mot. to Dismiss 5-8, ECF No. 22.)

After spending hours in the CRO on March 29, only to be turned away by the highest level of available supervisory staff, Ms. Martinez left that day feeling the burden of discrimination. (Facts

¶ 34 ("I was shocked that this was still happening in 2019. When I left I was crying … ugly-crying… just the fact that this can happen to someone in the 21st century really breaks my heart.").) Between her initial visit to the CRO and her return to again attempt filing, she was anxious, even terrified of, going back to the CRO. (Facts ¶ 34.)

Ms. Martinez then incurred economic harm in making a second attempt to fill out and deposit her amended FBN form on May 31, 2019. (Facts ¶ 36.) She hired a driver to transport her to the CRO and function as a qualified reader in the event her form still needed correction. (Facts ¶ 36.) As a business-owner and mother of three, it was a significant burden on her time to once again travel to the CRO, where she had to wait in line for a number, wait for her number to be called, have the documents reviewed, complete the transaction, and return home. (*See, e.g.,* Facts ¶¶ 7-8.)

Finally, during that May 31, 2019 visit, the CRO accepted and filed her FBN statement form. (Facts ¶ 38.). However, Ms. Martinez will have to file additional forms through the CRO in the future and will continue to require a qualified reader to correct or complete paper forms. (Facts ¶ 38.) Furthermore, as of at least March 2022, the online PDF FBN form posted on the County's website was still not independently accessible to Ms. Martinez. (Facts ¶ 39.) Ms. Martinez has attempted to remedy the situation through informal advocacy, sending a demand letter, filing a government tort claim, and bringing this action. (Facts ¶ 40.) It remains the policy of the County to refuse to provide a qualified reader capable of providing assistance completing CRO forms. (Facts ¶ 25.)

### III. LEGAL STANDARDS

#### A.    Legal Standard on Summary Judgment

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)). Material facts are those that may affect the outcome of the case, and a dispute as to a material fact is genuine if there is sufficient evidence for a

reasonable jury to return a verdict for the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat summary judgment, an opposing party must identify with reasonable particularity the evidence, including "specific facts," that suffice to demonstrate that there is some genuine issue for trial. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 250, 256; *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

**B.     Legal Standard for Title II ADA Violation Against Defendant Alameda County**

Plaintiff brings this motion to obtain summary judgment as to the liability portion of her claim that her rights have been violated under Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, by Defendant Alameda County. To demonstrate a violation of Title II of the ADA, "a plaintiff must show that: (1) [s]he is a 'qualified individual with a disability'; (2) [s]he was 'excluded from participation in or was denied the benefits of the services, programs, or activities of a public entity' or otherwise 'subjected to discrimination by any such entity'; and (3) the exclusion, denial, or discrimination was 'by reason of such disability.'" *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001); 42 U.S.C. § 12132. Title II of the ADA "include[s] an affirmative obligation for public entities to make benefits, services, and programs accessible to people with disabilities." *Updike v. Multnomah Cnty.*, 870 F.3d 939, 949 (9th Cir. 2017); 42 U.S.C. § 12131(2); 28 C.F.R. § 35.130(b)(1)(ii).

**C.     Legal Standard for Declaratory Judgment**

An award of declaratory relief is available in a motion for summary judgment provided it is properly before the court by having been pled in a complaint. *Compare Kam-Ko Bio-Pharm Trading Co., Ltd. v. Mayne Pharma Inc.*, 560 F.3d 935, 943 (9th Cir. 2009) (finding that the district court properly construed the plaintiff's motion for declaratory judgment as a motion for summary judgment), *with Arizona v. City of Tuscon*, 761 F.3d 1005, 1010 (9th Cir. 2014) (denying declaratory relief where not pled in the complaint or brought upon an appropriate motion). Provided an "actual controversy" exists, a court may then "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201.

1

### IV. ARGUMENT

2

**D.      Plaintiff was a qualified individual with a disability.**

3

Plaintiff Martinez is blind (Facts ¶ 1) and is thus a qualified individual with a disability for

4

purposes of the ADA. 42 U.S.C. § 12131. *See also, e.g., Payan v. Los Angeles Cmty. Coll. Dist.*, 11

5

F.4th 731 (9th Cir. 2021). As a long-time resident of Alameda County, she is qualified to use the

6

services of the CRO. (Facts ¶ 2.) Defendants have effectively acknowledged Plaintiff's eligibility

7

to operate her business through the CRO's FBN program, as they created a "go back letter"

8

indicating that the application would be accepted with multiple changes, and because she was

9

ultimately able to file her FBN. (Facts ¶ 35, 37.)

10

**E.      Plaintiff was excluded from participation in the services offered by the CRO**

11

**and subjected to discrimination.**

12

*1.      The CRO failed to effectively communicate with Ms. Martinez.*

13

Ms. Martinez requested a qualified reader on March 29, 2019, but Defendants rejected her

14

request without offering any alternative auxiliary aid or service to effectively communicate the

15

information on the FBN form needed to obtain a business license. (Facts ¶ 28.) As a result, Ms.

16

Martinez was denied access to the CRO's FBN-licensing program on March 29, 2019. (Facts ¶

17

32-3e.)

18

The "Effective Communication" regulations implementing Title II of the ADA require that

19

public entities, including Alameda County, "take appropriate steps to ensure that

20

communications with applicants [and] members of the public … with disabilities are as effective

21

as communications with others." 28 C.F.R. § 35.160(a)(1). That includes a requirement to "furnish

22

appropriate auxiliary aids and services where necessary to afford individuals with disabilities,

23

including applicants … and members of the public, an equal opportunity to participate in, and

24

enjoy the benefits of, a service, program, or activity of [the] public entity." 28 C.F.R. §

25

35.160(b)(1). Auxiliary aids and services includes … qualified readers … or other effective

26

methods of making visually delivered materials available to individuals who are blind." 28

27

C.F.R. § 35.104. "In order to be effective, auxiliary aids and services must be provided in

28

accessible formats, in a timely manner, and in such a way as to protect the privacy and

independence of the [blind] individual." 28 C.F.R. § 35.160(b)(2). A public entity must give primary consideration to the requests of such a blind individual when determining what types of auxiliary aids and services are necessary. *Id.* A public entity may not require an individual with a disability to bring another individual to interpret for him or her. 28 C.F.R. § 35.160(c)(1).

"[T]he Ninth Circuit has repeatedly and unequivocally held that the DOJ's guidance on, and interpretation of, ADA regulations is entitled to *Seminole Rock* deference, such that the court must give DOJ's interpretation of its regulations controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Love v. Ashford San Francisco II LP*, No. 20-cv–08458-EMC, 2021 WL 1428372, *5 (N.D. Cal. Apr. 15, 2021) (quoting *Miller v. Cal. Speedway Corp.*, 536 F.3d 1020, 1028 (9th Cir. 2008) and *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945) (quotation marks omitted)). *See also Miller v. Cal. Speedway Corp.*, 536 F.3d 1020, 1028. (9th Cir. 2008) ("[T]he Justice Department's interpretation of its own regulations, such as the Technical Assistance Manual, must also be given substantial deference and will be disregarded only if 'plainly erroneous or inconsistent with the regulation.'")

Since 1991, the Department of Justice ("DOJ") has clearly mandated that a "qualified reader," 28 C.F.R. § 35.104, must not only provide assistance reading information to a blind person but must also provide assistance writing information down where such writing is necessary to receive public services. *See* Nondiscrimination on the Basis of Disability in State and Local Government Services, 28 C.F.R. Pt. 35, App. B (2011), 56 Fed. Reg. 35694-01 (July 26, 1991) ("[R]eaders should be provided when necessary for equal participation and opportunity to benefit from any governmental service, program, or activity, such as reviewing public documents, examining demonstrative evidence, and **filling out voter registration forms or forms needed to receive public benefits.**") (emphasis added); *see also* U.S. Dep't of Justice, The Americans with Disabilities Act Title II Technical Assistance Manual, TAM II-8.2000, https://www.ada.gov/taman2.html#II-8.2000 [https://web.archive.org/web/20220205115753/https://www.ada.gov/taman2.html#II-8.2000] (last visited May 12, 2022) (explaining that a public entity's policies must ensure that readers and amanuenses are provided where appropriate for persons with disabilities). The guidance in the

DOJ's ADA Tool Kit for Title II entities is even clearer in addressing the effective communication regulatory requirement, stating that to be "qualified … a reader at an office where people apply for permits would need to be able to read information on the permit process accurately and in a manner that the person requiring assistance can understand … [and **would also need to be capable of assisting the individual in completing forms by accurately reading instructions and recording information on each form, in accordance with each form's instructions and the instructions provided by the individual who requires the assistance.**" U.S. Dep't of Justice, Ch. 3 § 4, ADA Best Practices Tool Kit for State and Local Governments (Feb. 27, 2007), https://www.ada.gov/pcatoolkit/chap3toolkit.htm [https://web.archive.org/web/20220303182511/https://www.ada.gov/pcatoolkit/chap3toolkit.htm] (emphasis added). Thus, according to DOJ's interpretation, a reader who only reads but does not assist in completing necessary forms is not "qualified." Accordingly, DOJ's regulations and guiding interpretations of those regulations make it crystal clear that public entities like Defendant Alameda County must provide qualified readers to both read and write information on paper forms where necessary to ensure that blind persons like Ms. Martinez are afforded an equal opportunity to participate in and enjoy the benefits of an FBN licensing program.

The actions by Defendants on March 29, 2019 show a discriminatory denial of government service against Ms. Martinez because of her disability in violation of Title II of the ADA. (*See, e.g.,* Facts ¶¶ 12-33.) Put simply, Ms. Martinez was unable to complete a transaction a sighted person would have been able to complete that day because of Defendants illegal conduct. (Facts ¶ 33.)

When customers visit the CRO in order to file an FBN, the paper copy they bring to the CRO may require one or more corrections prior to being filed. (Facts ¶ 10.) When that happens, CRO staff tell the customer what needs to be corrected, and the customer is able to—and typically does—correct the form while at the CRO. (Facts ¶ 10.) As Defendant Angelina Moran, who reviewed Ms. Martinez's application, testified: "if someone comes to my counter and a change needs to be made, I hand the application back to the customer where he or she will make the change." (Facts ¶ 10.)

However, as Ms. Martinez explained to Defendants, because of her disability, she cannot correct or fill out an FBN form while at the CRO without the assistance of a qualified reader. (Facts ¶ 13.) Although Ms. Martinez requested a reader, none was provided. (Facts ¶ 18.)

Because of this refusal, Ms. Martinez was denied the opportunity to make simple changes, while others similarly situated to her were able to file similar documents without assistance and without making multiple trips. A sighted person could come to the office one time, alter the form quickly without needing to remember the clerk's guidance, and resubmit the application with ease. Ms. Martinez's experience was entirely different.

Ms. Martinez, who had already been unlawfully required to enlist assistance at her own expense to fill out the inaccessible PDF FBN form,[2] was subsequently required to understand the clerk's directions (without the benefit of seeing the form that was being discussed), return home, obtain assistance again, recall the instructions and relay them to the qualified reader, return to the CRO, and hope that she would not need to repeat the entire process yet again. (*See* Facts ¶¶ 1, 7, 36, 39.) Alameda County's failure to make the form filing process at the CRO denied Ms. Martinez an equally effective opportunity to benefit from the services of the CRO and took and emotional and financial toll on Ms. Martinez that would not be experienced by non-disabled citizens. (Facts ¶¶ 29, 32-34, 36.)

### 2. *Alameda County continues to refuse to provide qualified readers.*

Defendant Alameda County not only refused to provide an auxiliary aid to Ms. Martinez during her visit in 2019, but as a matter of policy (Facts ¶¶ 21, 24-25), still refuses to provide such an aid moving forward under any circumstances, even with the benefit of litigation counsel and

---

[2] Alameda County has an independent obligation to ensure that its online FBN PDF form and website are independently accessible to blind people using screen readers. *See, e.g., Martin v. Metro. Atlanta Rapid Transit Auth.*, 225 F. Supp. 2d 1362, 1366 (N.D. Ga. 2002) (inaccessibility of public entity's bus system's routes and schedules on its website prevented blind customers from using the bus system in an equal manner to sighted individuals). "state governmental entities, in developing, procuring, maintaining, or using electronic or information technology, either indirectly or through the use of state funds by other entities, shall comply with the accessibility requirements of Section 508 of the federal Rehabilitation Act of 1973 … and regulations implementing that act …." Cal. Gov't Code § 7405(a). Those Section 508 accessibility requirements include the requirement that computer programs and online content be accessible using screen reading technology.

this Court's guidance in its January 12, 2021 Order Denying Defendants' Motion to Dismiss 10, ECF No. 22  ("even if Defendants were correct in claiming the relevance of those state strictures to the provision of assistance for blind persons, that would neither be determinative nor would it allow Defendants to escape their obligation to subject those state strictures to an analysis for comportment with federal law.").

Defendant Alameda County is responsible for providing auxiliary aids and services in its physical office, as Ms. Martinez must have an "***equal*** opportunity to participate in, and enjoy the benefits of, a service, program, or activity of [the] public entity." 28 C.F.R. § 35.160(b)(1) (emphasis added). Alameda County cannot require a blind person to provide her own auxiliary aids and services by using online forms at home on her own computer or by relying on friends or family members to help her fill them out. *See* 28 C.F.R. § 35.160(c) (a public entity may not require a blind individual to provide a person to interpret or facilitate communications absent their consent). As long as Defendant Alameda County provides service at its physical counters and makes paper forms available, it must provide equal access to such services for prospective blind businesswomen such as Ms. Martinez.

**F.     Ms. Martinez was excluded on the basis of her disability.**

On March 29, 2019, Martinez was denied a license to use an FBN. (Facts ¶ 29.) The reason she was denied and excluded was her disability. (*See, e.g.,* Facts ¶¶ 16-18, 32-33.) Defendant Alameda County had not articulated any other valid reason for her exclusion from the benefits provided to sighted FBN filers, other than Ms. Martinez's disability. *See*, *e.g.*, 42 U.S.C. § 12182(b)(2)(A)(iii) (provides that discrimination includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied … services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services … ."). *See also Ariz. ex rel. Goddard v. Harkins Amusement Enters.*, 603 F.3d 666, 671 (9th Cir. 2010).

A qualified reader does not explain the concepts found in a form, define terms, or otherwise substantively counsel the person completing the paperwork. *See* U.S. Dep't of Justice, Ch. 3 § 4, ADA Best Practices Tool Kit for State and Local Governments (Feb. 27, 2007),

https://www.ada.gov/pcatoolkit/chap3toolkit.htm

[https://web.archive.org/web/20220303182511/https://www.ada.gov/pcatoolkit/chap3toolkit.htm].

(*See also* Facts ¶ 15.) The qualified reader simply conveys what is written and records the

response. *Id.* (*See also* Facts ¶ 15.). Ms. Martinez was not seeking advice or counsel on how to

fill out her form and requested only traditional qualified reader services which do not allow for

substantive interpretation or subjective translation. (Facts ¶ 15.)

> **G.     Alameda County's policy forbidding provision of qualified readers has a
> disparate impact and is therefore unlawful.**

Where a public entity has a neutral policy that it applies to all persons, a plaintiff shows that

such policy has a disparate impact on persons with disabilities by demonstrating that such policy

has the effect of denying them meaningful access to public services. *K.M. ex rel. Bright v. Tustin

Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013) (citing *Crowder v. Kitagawa*, 81 F.3d 1480,

1484 (9th Cir. 1996)). Courts in this circuit are guided by relevant Title II implementing

regulations, including the effective communication regulation, when considering the "meaningful

access" requirement. *Id.* Those regulations are "given controlling weight unless they are arbitrary,

capricious, or manifestly contrary to the statute." *Id.* at 1096 (quoting *Armstrong v.

Schwarzenegger*, 622 F.3d 1058, 1065 (9th Cir. 2010)). Regulations require that public entities

provide effective communications through the provision of "appropriate auxiliary aids and

services." 28 C.F.R. § 35.160. A public entity denies meaningful access to its programs, services,

or activities where it violates the Title II ADA regulations promulgated by the Department of

Justice, such as 28 C.F.R. § 35.160. *Cal. Council of the Blind v. Alameda County*, 985 F. Supp. 3d

1229, 1236 (N.D. Cal. 2013) (citing *K.M. ex rel. Bright*, 725 F.3d at 1096).

Defendants contend that they did not provide Ms. Martinez with her requested

accommodation of the auxiliary aid or service of a qualified reader due to their policy of refusing

to assist in completing or correcting legal forms such as the FBN statement. (Facts ¶ 20-21.) But

Defendants regularly assist customers with correcting legal forms when customers are attempting

to file them. Only those customers who can read and write on paper forms without the assistance

of a qualified reader are able to take meaningful advantage of that service while correcting and

filing their paper forms during a single trip to the CRO. (Facts ¶¶ 10-11.) Thus this policy has a disparate impact on the blind because it ignores their unique needs and denies them meaningful access to the CRO's programs or services involving the filing and correction of paper forms, including those related to FBN licensing, while preserving such access by sighted individuals. *See Cal. Council of the Blind*, 985 F. Supp. 3d at 1096; *Rodde v. Bonta*, 357 F.3d 988, 998 (9th Cir. 2004) (upholding district court's determination that a public entity's neutral policy that "would deny certain disabled individuals meaningful access to government-provided services because of their unique needs, while others would retain access to the same class of services" violated the ADA and warranted an injunction). Ms. Martinez, who needed just such an accommodation (Facts ¶¶ 29, 33), was discriminatorily denied such meaningful access to the CRO's programs or services. If she had been sighted instead of blind, she would have been able to correct and file her FBN statement on March 29, 2019 (Facts ¶ 33) instead of suffering the burden of discrimination (Facts ¶ 34) and incurring additional costs in providing her own qualified reader when she returned again to the CRO to file her FBN form (Facts ¶ 36).

ADA Title II regulations at 28 C.F.R. § 35.160, as well as the DOJ's interpretation of that regulation, require that public entities provide qualified readers to read and write information on paper forms such as the FBN forms at issue here, as discussed *supra*. Because Defendant's policy prohibits such a provision of qualified readers, it has a disparate impact on blind individuals like Ms. Martinez by denying her, and others like her, meaningful access. It is, therefore, unlawful.

> **H.** **Defendant Alameda County has failed to meet its burden to show that providing a qualified reader would constitute a fundamental alteration or undue burden.**

Even after discovery has concluded, Defendant Alameda County has still failed to meet to meet its burden under 28 C.F.R. § 35.164 to "adduce sufficient facts to prove that Martinez's request, as a blind person, for assistance in reading and transcribing information onto the county's paper form [after being told what corrections needed to be made] would result in a

fundamental alteration to the county's services or result in an undue burden." (Order Denying Mot. to Dismiss 10-11, ECF No. 22.)

On December 15, 2021, in an amended response to an interrogatory asking Defendant Alameda County to "state the factual bases and identify any documents that form the basis for [the] contention" that providing a qualified reader to Ms. Martinez would "would have resulted in a fundamental alteration in the nature of an Alameda County service, program, or activity or in undue financial and administrative burdens," Defendant identified no documents and asserted only that the additional liability of what they claimed might "constitute legal advice and the practice of law" would "impose undue financial and administrative burdens" and "fundamentally change the nature of the CRO's services" because Defendant would have to provide "potentially (unlawfully) legal services." (Facts ¶ 41.) Such a theory had already been rejected by this Court almost a year earlier in its Order Denying Mot. to Dismiss 10, ECF No. 22, and Defendant Alameda County provided no additional grounds nor documents demonstrating that providing a qualified reader would result in a fundamental alteration or undue burden on the County.

Without such a demonstration, a public entity is required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability," *Townsend v. Quasim*, 328 F.3d 511, 516 (9th Cir. 2003) (quoting 28 C.F.R. § 35.130(b)(7)), such as modifying their policy prohibiting the provision of a qualified reader. *See also* U.S. Dep't of Justice, The Americans with Disabilities Act Title II Technical Assistance Manual, TAM II-3.600, https://www.ada.gov/taman2.html#II-3.6000 [https://web.archive.org/web/20220205115753/https://www.ada.gov/taman2.html#II-3.6000] (last visited May 12, 2022). But although Ms. Martinez needed a qualified reader because of her disability (Facts ¶¶ 12-17), Defendant Alameda County refused to make the necessary modification to their policy (Facts ¶¶ 18-20, 25), resulting in Ms. Martinez being unable to take advantage of the same level of service granted to sighted individuals (Facts ¶¶ 29, 32-33).

Relatedly, even after being asked by Ms. Martinez (Facts ¶ 30), and despite their obligations under 28 C.F.R. § 35.164, Defendant Alameda County never provided a written statement showing why, after "considering all resources available for use in the funding and operation of

the service, program, or activity," compliance with their obligations to provide a qualified reader would result in such an alteration or burden. (Facts ¶ 31.)

Defendant Alameda County has also failed to "adduce facts sufficient to prove that they took some other action to 'ensure that, to the maximum extent possible,' Martinez was still able to receive the benefits of their services." (Order Denying Mot. to Dismiss 11 (quoting 28 C.F.R. § 35.164).) Instead, Ms. Martinez was forced return home, hire and pay her own independent qualified reader, and return to the CRO two months later to file her now-corrected FBN. (Facts ¶¶ 22, 36-37.)

Ms. Martinez is simply asking for the ability to modify and complete documents during in-person visits to the CRO, prior to filing. (Facts ¶ 15.) Because the CRO continues to offer paper forms and the ability to deposit such forms in person at the CRO by handing them over the counter to the clerk, the CRO must provide adequate access to those same paper forms through a qualified reader. *See*, *e.g.*, 28 C.F.R. § 35.160(b)(1). Furthermore, Clerks regularly provide real-time feedback to customers that allows them to make changes even while still standing at the counter. (Facts ¶¶ 10-11.) It is unclear whether Alameda County could even claim providing a qualified reader would violate its policy or extend the duties of the CRO at all where it was already providing corrective guidance to citizens on unfiled forms in the CRO. (Facts ¶¶ 10-11.) Additionally, Ms. Martinez is not asking for that a record already deposited or filed with the CRO be altered, but only for the assistance of a qualified reader to implement the corrections that CRO employees already provide to all customers in the same timely manner that sighted customers are granted. (Facts ¶¶ 15-16.)

No plausible facts exist to suggest that this small degree of modification or accommodation requested by Ms. Martinez would constitute a fundamental alteration to the licensing program as that defense is outlined by the Department of Justice. *See* U.S. Dep't of Justice, The Americans with Disabilities Act Title II Technical Assistance Manual, TAM II-3.600, https://www.ada.gov/taman2.html#II-3.6000 [https://web.archive.org/web/20220205115753/https://www.ada.gov/taman2.html#II-3.6000] (last visited May 12, 2022). In differentiating reasonable modifications and fundamental alterations,

the TAM II-3.600 addresses an analogous situation when it discusses the need to provide applicants with mental disabilities individualized assistance to complete a "lengthy and complex" process for demonstrating eligibility for benefits. The degree of alteration required to hire or train individuals to assist in a lengthy and complex process, while working within the framework of mental illness, clearly exceeds what would be required to simply assist in filling out a form at the direction of a customer who is blind. When the DOJ contemplates a "fundamental alteration," it is clear the term will be applied sparingly, and not in a manner that supports Defendant Alameda County's unfounded concerns. Accordingly, Alameda County cannot make a showing that a fundamental alteration would be required to read and write on the same form that it otherwise uses for everyone else.

For these reasons, Defendant Alameda County has failed to meet its burden to show that providing a qualified reader to blind individuals would constitute a fundamental alteration or undue burden.

## I.   Defendant Alameda County was deliberately indifferent to the needs of Ms. Martinez on March 29, 2019.

A public entity is liable for damages if it violates Title II of the ADA intentionally or with deliberate indifference. *Updike*, 870 F.3d at 950; *Duvall*, 260 F.3d at 1138. This bar of "deliberate indifference" means that a party need not show actual knowledge of the alleged discriminatory acts in order to establish liability but instead is required to show "both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that … likelihood." *Duvall*, 260 F.3d at 1139 (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1988)). In the case of a failure to provide a requested reasonable modification under Title II of the ADA, a public entity is deliberately indifferent if it (1) knows that the accommodation[3] is needed and (2) fails to "undertake a fact-specific investigation to determine what constitutes a reasonable accommodation." *Duvall*, 260 F.3d at 1139. First, notice must be given to the public entity: "When the plaintiff has alerted the … entity to his need for accommodation (or where the need

---

[3] Although Title II of the ADA uses the term "reasonable modification," rather than "reasonable accommodation," courts tend to use them interchangeably. *See, e.g., McGary v. City of Portland*, 386 F.3d 1259, 1266 n.3 (9th Cir. 2004).

for accommodation is obvious, or required by statute or regulation), the … entity is on notice that an accommodation is required." *Id.* Second, once it is on notice of the need for an accommodation, a public entity may not "mere[ly] speculat[e]" that a suggested auxiliary aid or service is not feasible but instead must act to determine what auxiliary aids or services are necessary based on information gathered from the individual with a disability and, where needed, from qualified experts. *Id.* (quoting *Wong v. Regents of Univ. of California*, 192 F.3d 807, 818 (9th Cir. 1999)).

First, Ms. Martinez notified Defendants when she visited the CRO that she was blind and needed a qualified reader so she could correct her FBN form. (Facts ¶ 12-15.) Alameda County knew that if it did not provide an accommodation to Ms. Martinez, she would not be able to file her FBN on March 29, 2019. (Facts ¶ 16.) Despite their awareness that Ms. Martinez request was for an auxiliary aid or service under Title II of the ADA, Defendants nonetheless refused her request (Facts ¶ 18), and despite their acknowledged awareness of DOJ regulations and guidance (Facts ¶ 24), say they would do so again today (Facts ¶ 25).

Second, despite their obligation to do so and despite being put on notice of the necessity to do so, Defendants still have not provided any evidence "that they undertook any fact-specific investigation to determine an appropriate aid or service for Martinez." (Order Denying Mot. to Dismiss 13.) They have, for example, never provided the written statement required by 28 C.F.R. § 35.164 showing why, after "considering all resources available for use in the funding and operation of the service, program, or activity," compliance with their obligations to provide a qualified reader would result in such an alteration or burden. (Facts ¶ 31.) On the day, the only alternative suggested was that Ms. Martinez bring someone else with her to serve as her qualified reader (Facts ¶ 27)—is specifically called out as an impermissible auxiliary aid to effective communication unless it had been requested by Ms. Martinez. *See* 28 C.F.R. § 35.160(c). Defendant Alameda County has not identified any other "appropriate aids or services" that would have met her need to correct her form in the same timely manner as a sighted person, instead suggesting in an interrogatory response that she could access the appropriate form via the internet and could also have filed by mail, neither of which fit the facts of the situation. (Facts ¶

42.) In short, instead of undertaking the required investigation, Defendants have relied only on their existing policy to deny that a qualified reader could ever be a reasonable accommodation for achieving effective communication.

Ms. Martinez, who needed just such an accommodation given the facts of the situation (Facts ¶¶ 29, 33), was thus discriminatorily denied such meaningful access to the CRO's programs or services: if she had been sighted instead of blind, she would have been able to correct and file her FBN statement on March 29, 2019 (Facts ¶ 33) instead of suffering the burden of discrimination (Facts ¶ 34) and incurring additional costs in providing her own qualified reader when she returned again to the CRO to file her FBN form (Facts ¶ 36).

Ms. Martinez was upset and burdened by Defendants' disregard after she went to the trouble to articulate her legal rights, escalate the matter to the very highest possible supervisor and patiently wait for a final decision. (Facts ¶ 34.) Ms. Martinez also ultimately incurred economic harm through a second round trip to the CRO, the price of a hired human reader, and the loss of an additional afternoon to ultimately file her FBN form on her second visit in 2019. (Facts ¶ 8.)

For these reasons, Defendant Alameda County's violations of the ADA were intentional, or were at least deliberately indifferent to the rights of Ms. Martinez.[4]

**J.    The Court may award declaratory relief.**

Declaratory relief is available to a party if it was pled in a complaint. *Kam-Ko Bio-Pharm Trading Co., Ltd. v. Mayne Pharma Inc.*, 560 F.3d 935, 943 (9th Cir. 2009). It must also be brought in an appropriate motion. *Id.* Plaintiff Martinez pled for declaratory relief in her Complaint under the so-labeled "Fifth Cause of Action." (Compl. ¶¶ 98-101.) She brings this request for declaratory relief in the instant Motion for Partial Summary Judgment and Declaratory Judgment. Thus, since the record and filings reflect the fact that all parties continue to contest their various rights and legal relations, the Court may proceed to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201.

---

[4] Ms. Martinez is primarily focused on bringing the county into compliance with its legal obligation and to obtain injunctive relief if needed. She seeks only to establish liability for damages on summary adjudication in hopes that the Court's clarification of the County's legal obligation will be the catalyst for a change of policy and settlement of the entire matter ahead of any need to try a specific amount of damages.

## V.  CONCLUSION

For the above reasons, Plaintiff is entitled to partial summary judgment on liability for her First Cause of Action for Violation of Title II of the ADA, for liability on her damages claim for deliberate indifference against Defendant Alameda County, and for declaratory judgment under her so-labeled Fifth Cause of Action. The Court should:

1. declare that Defendant Alameda County's refusal to modify its policy against reading and transcribing information on paper forms for people with disabilities who cannot otherwise access those paper forms is contrary to the requirements of Title II of the Americans with Disabilities Act;

2. find that Plaintiff is a prevailing party as to Defendant Alameda County; and

3. instruct the parties (within 30 days) to each submit proposed orders enjoining Defendant Alameda County from continuing to refuse to provide qualified reader auxiliary services to Ms. Martinez.

DATED: May 13, 2022                              Respectfully submitted,

TRE LEGAL PRACTICE

*/s/ Timothy R. Elder*

Timothy R. Elder

*Attorneys for Plaintiff*