UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISAMARIA MARTINEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF ALAMEDA, et al.,<br><br>    Defendants. | Case No. 20-cv-06570-TSH<br><br>**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 44, 48 |

## I. INTRODUCTION

Plaintiff Lisamaria Martinez brings this action against Defendants Alameda County, Melissa Wilk, Eva He, and Maria Laura Briones for alleged violations of the Americans with Disabilities Act ("ADA"), the California Unruh Civil Rights Act ("Unruh Act"), and the Disabled Persons Act. Pending before the Court are Martinez's Motion for Partial Summary Judgment and Declaratory Judgment, ECF No. 44, and Defendants' Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment. ECF No. 48. Having considered the arguments made, the papers submitted in support thereof, and the record in this case, the Court **DENIES** Martinez's Motion for Partial Summary Judgment and Declaratory Judgment and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment.[1]

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 6, 16.

## II. BACKGROUND[2]

**A.  Factual Background**

This action arises from a March 29, 2019 incident in the Alameda County Clerk-Recorder's Office ("CRO"). ECF No. 49-1, Plaint. Reply State. of Undisputed Facts ("P's Reply Sur") ¶¶ 2, 5. The CRO "examines documents for acceptability of recording" and is "responsible for issuing marriage licenses, performing weddings, filing fictitious business names, and certifying oaths of office for notaries." ECF Nos. 48-5, Exh. B (Employee Information Handbook) at 27; P's Reply SUR ¶ 4. CRO clerks are "trained to examine a document . . . and compare it against [a] list of specific filing and recording requirements, which are considered ministerial in nature." ECF Nos. 48-5, Exh. A. (PMK Depo.) at 59:25, 60: 1-4; P's Reply SUR ¶ 36. However, the CRO does not fill out, complete, modify, or otherwise alter forms. P's Reply Sur. ¶ 37. CRO patrons, after learning of deficiencies from a CRO clerk, may then correct and file forms while still at the CRO. *Id*. ¶ 39.

On March 29, 2019, Martinez visited the CRO to file a Fictitious Business Name Statement ("FBNs"). *Id*. ¶¶ 7, 10. CRO clerk Angelina Moran reviewed Martinez's FBNs and told Martinez that corrections were required before Martinez could file her FBNs. *Id*. ¶¶ 12, 13. Martinez requested assistance in making the corrections because she is blind. *Id*. ¶ 14. Moran told Martinez that Moran was prohibited from modifying Martinez's FBNs because of CRO's policy prohibiting clerks from completing or modifying forms for patrons ("CRO's Policy"). *Id*. ¶ 17. Martinez then spoke with CRO supervisor Maria Laura Briones and demanded[3] Briones or someone else in the CRO make the corrections to Martinez's FBNs. *Id*. ¶ 21. Briones declined to make the changes to Martinez's FBNs because of CRO's Policy and then gave Martinez a letter explaining the corrections to be made and a self-addressed envelope. *Id*. at ¶¶ 24, 27. Martinez left the CRO and returned to the CRO on May 31, 2019, which is when she was able to file her FBNs. *Id*. ¶ 33.

---

[2] The following facts are undisputed unless otherwise noted.
[3] Martinez disputes the accuracy of the word "demanded" based on audio recordings of the March 19, 2019 incident. P's Reply SUR ¶ 21.

**B.     Procedural Background**

On September 18, 2020, Martinez filed the instant action, alleging five causes of action: 1) violation of Title II of the ADA (against Defendant Alameda County), 2) violation of Title V of the ADA (against Individual Defendants Melissa Wilk, Eva He, and Maria Laura Briones), 3) violation of the Unruh Civil Rights Act (against All Defendants), 4) violation of the Disabled Persons Act (against all Defendants), and 5) Declaratory Relief (against All Defendants). ECF No. 1.

On May 13, 2022, Martinez filed a Motion for Partial Summary Judgment and Declaratory Judgment. ECF No. 44. On June 10, 2022, Defendants filed an Opposition to Martinez's Motion for Partial Summary Judgment and Declaratory Judgment and Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment. ECF No. 48. On July 1, 2022, Martinez filed an Opposition to Defendants' Motion for Summary Judgment and Partial Summary Judgment and Reply to Defendants' Opposition to Martinez's Motion for Partial Summary Judgment and Declaratory Judgment. ECF No. 49. On July 8, 2022, Defendants filed a Reply in Support of Defendants' Motion for Summary Judgement or, in the Alternative, Partial Summary Judgment. ECF No. 50.

### III.   LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To carry this burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec.*

3

1  *Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

The Court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Id*. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. However, it is not the Court's task to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id*. Thus, the Court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

## IV.   DISCUSSION

Martinez moves for summary judgment on her Title II claims and seeks declaratory judgment. ECF No. 44. Defendants move for summary judgment on all of Martinez's claims. ECF No. 48. The Court will address each accordingly.

### A.   Title II Claims

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To demonstrate a violation of Title II, "a plaintiff must show that: (1) [s]he is a 'qualified individual with a disability'; (2) [s]he was 'excluded from participation in or was denied

4

the benefits of the services, programs, or activities of a public entity' or otherwise 'subjected to discrimination by any such entity'; and (3) the exclusion, denial, or discrimination was 'by reason of such disability.'" *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001) (internal citations omitted).

### 1. Qualified Individual a Disability

The parties do not dispute that Martinez is blind and qualifies as an individual with a disability. *See* P's Reply Sur ¶ 6.

### 2. Exclusion from Participation in or Denied Benefits of Services, Programs or Activities of a Public Entity or Otherwise Subjected to Discrimination

The parties disagree over what qualifies as service, program, or benefit under Title II. Defendants argue that the CRO's act of advising individuals of technical deficiencies is only incidental to a normal government function and does not qualify as a service, program, or activity. ECF No. 48 at 10. Martinez argues that a patron's ability to use CRO's in-person services qualifies as a service, program, or activity. ECF No. 49 at 4-6.

Here, it is undisputed that the CRO "examines documents for acceptability of recording," the CRO "fil[es] fictitious business names," and CRO clerks are "trained to examine a document . . . and compare it against [a] list of specific filing and recording requirements, which are considered ministerial in nature." ECF Nos. 48-5, Exh. A. (PMK Depo.) at 59:25, 60: 1-4; 48-5, Exh. B (Employee Information Handbook) at 27. Therefore, the Court finds that both filing completed forms at the CRO and the CRO's advising patrons of forms' technical deficiencies qualify as services, programs, or benefits under Title II.[4] *See Where Do We Go Berkeley v. California Dept. of Transp.*, 32 F.4th 852, 861 (9th Cir. 2022) (Title II "applies to a wide range of public functions, such as access to public sidewalks, medical licensing, and zoning."); *Barden v.*

---

[4] Defendants argue that filling out or modifying forms does not qualify as a service, program, activity, or benefit of the CRO. ECF No. 48 at 10. Martinez does not appear to dispute this argument, and instead argues that Defendants should have provided her an auxiliary service that would allow her to fill out or modify her FBNs. *See* ECF Nos. 44 at 7; 49 at 9-11. Accordingly, the Court finds filling out or modifying forms is not a CRO service, program, activity, or benefit. The Court addresses Martinez's argument regarding auxiliary service in a separate section. *See infra* Section A(2)(a).

5

*City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) (Title II involves 'anything a public entity does") (internal citations and quotations omitted).

The Court next considers whether Martinez was excluded from participation in or denied benefits of Alameda County's services, programs, or activities. Generally, "a disability discrimination claim may be based on one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation." *Payan v. Los Angeles County College District*, 11 F.4th 729, 738 (9th Cir. 2021) (internal citations and quotations omitted).

Martinez argues two theories of Title II liability: a) failure to make reasonable accommodation and b) disparate impact.

### a.     Failure to Make Reasonable Accommodation

Martinez argues she was excluded from participation in the CRO's filing services because Defendants did not provide her with an auxiliary aid to assist Martinez to correct her FBNs. ECF No. 44 at 7-10. Defendants argue Defendants were not required to provide an auxiliary aid because the CRO effectively communicated with Martinez. ECF Nos. 48 at 11; 50 at 12.

Title II requires public entities to "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." *Duvall*, 260 F.3d at 1136 (citing 28 C.F.R § 35.160(b)(1)). Although "[t]he type of auxiliary aid or service[5] necessary to ensure effective communication will vary . . . a public entity shall give primary consideration to the requests of individuals with disabilities." 28 C.F.R § 35.160 (b)(2). "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *Id*.

---

[5] Auxiliary aids and services includes:

> Qualified readers; taped texts; audio recordings; Brailled materials and displays; screen reader software; magnification software; optical readers; secondary auditory programs (SAP); large print materials; accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision

28 C.F.R. § 35.104.

1  However, "a public entity need not, under Title II, 'take any action that it can demonstrate would
2  result in a fundamental alteration in the nature of a service, program, or activity or in undue
3  financial and administrative burdens.'" *K.M. ex rel Bright v. Tustin Unified School Dist.*, 725 F.3d
4  1088, 1097 (9th Cir. 2013) (citing 28 C.F.R. § 35.164).

The Court finds genuine issues of material fact preclude summary judgment on Martinez's reasonable accommodation claims. Martinez has introduced evidence that Defendants were aware of Martinez's disability and that Defendants ignored Martinez's requests for assistance and for someone to help her fill out the forms as a reasonable accommodation. *See Updike v. Multnomah County*, 870 F.3d 939, 9555 (9th Cir. 2017) ("Updike has introduced evidence that County jail employees were aware of Updike's disability, yet ignored his repeated requests to turn on closed captioning. . . there is a genuine factual dispute on deliberate indifference."). Defendants offer March 29, 2019 recordings as evidence that the CRO effectively communicated with Martinez. However, what would be considered effective communication, whether an appropriate request for accommodation was made, and whether Defendants met their "duty to gather sufficient information from the disabled individual and qualified experts as needed to determine what accommodations are necessary," *Duvall*, 260 F.3d at 1139, based on the audio recordings and testimony "requires a fact-specific, individualized analysis of [Martinez's] circumstances[.]" *See Payan v. Los Angeles Cmty. Coll. Dist*, Case No. 17-cv-1697-SVW-SK, 2018 WL 6164269, at *10 (C.D. Cal. Oct. 16, 2018) (citing *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002)) (internal quotations omitted). This required fact-finding and credibility determination are more appropriate for a jury. *See Yates v. East Side Union High School District*, Case No. 18-cv-2966-JS, 2021 WL 3665861, at *6 (N.D. Cal. Aug. 18, 2021) ("Yates has adduced evidence that Williams knew about her suicide attempt . . . because Mrs. Yates told her during a meeting. Yates has also produced evidence showing that Williams refused to interview her during the investigation. These are all issues ripe for a jury determination.") Accordingly, the Court **DENIES** the parties' motions for summary judgment as to Martinez's reasonable accommodation claims.

### b. Disparate Impact

Martinez claims CRO's Policy has a disparate impact on the visually impaired because patrons who are not impaired are able to use CRO's in-person filing services. ECF No. 44 at 12-13. Defendants argue the CRO offers different methods for disabled individuals to receive the benefits of the CRO's programs, activities and services. ECF No. 50 at 18.

"[T]o challenge a facially neutral government policy on the ground that it has a disparate impact on people with disabilities, the policy must have the effect of denying meaningful access to public services." *K.M.*, 725 F.3d at 1102. "If a public entity's practices or procedures deny people with disabilities meaningful access to its programs or services, causing a disparate impact, then the public entity is required to make reasonable modifications to its practices or procedures." *Payan*, 11 F.4th at 738. "To assert a disparate impact claim, a plaintiff must allege that a facially neutral government policy or practice has the 'effect of denying meaningful access to public services' to people with disabilities." *Id*. (citing *K.M.*, 725 F.3d at 1102).

Here, the CRO's Policy applies equally to all patrons. Patrons may file documents that were corrected at the CRO. ECF Nos. 48-5, Exh. A. (PMK Depo.) at 59:25, 60: 1-4; 48-5, Exh. B (Employee Information Handbook) at 27; and 48-5, Exhibit L (March 29, 2019 audio recording) at 6:27-6:54. If CRO's Policy denies those with disabilities "meaningful access" to the CRO's filing services, then Defendants would be required to make reasonable modifications to its practices or procedures. *See Payan,* 11 F.4th at 738 (Title II prohibits various forms of discrimination, including "providing an unequal opportunity to participate in the program or service, or providing the entity's program or service in a way that is not effective in affording the individual with a disability an equal opportunity to obtain the same result as provided to others.").

However, there are genuine issues of material fact precluding summary judgment on Martinez's disparate impact claims. As discussed above, there are genuine issues as to whether Martinez was prevented from participating equally in CRO's activities, services, programs, or benefits. *See Payan,* 11 F.4th at 738 ("Although disparate impact and failure to accommodate are distinct theories of liability, they share some overlap."); *cf. Memmer v. Marin County Courts*, 169 F.3d 630 9th Cir. 1999) ("Because Memmer was not disadvantaged in any way by her disability, it

8

1  logically follows that no accommodations during the pre-trial stage were required.")  Defendants
2  offer evidence of alternative methods of filing documents at the CRO, such as mailing and the
3  CRO's plan to have an "upgraded software suite" where visually impaired patrons may use kiosks
4  to modify their forms.  SUF 55.  Whether patrons are denied meaningful access under the CRO's
5  Policy despite the option to mail documents and the CRO's plan raises genuine issues of material
6  fact precluding summary judgment.  *See Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996)
7  ("There is a genuine dispute of material fact as to whether the plaintiffs' proposed modifications to
8  Hawaii's quarantine amount to reasonable modifications which should be implemented, or
9  fundamental alterations which the state may reject.") (internal citations and quotations omitted).
10 Accordingly, the Court **DENIES** the parties' motions for summary judgment as to Martinez's
11 disparate impact claims.

## B.  Title V Claims

Defendants move for summary judgment on Martinez's Title V claims and argue individuals may not be individually liable under Title V.  ECF No. 48 at 21.

The Court agrees.  Courts in the Ninth Circuit have found individuals are not liable under Title V.  *See Gamino v. Yosemite Community College District*, Case No. 18-cv-00391-LJO-SAB, 2018 WL 1870447, at *8 (E.D. Cal. Apr. 17, 2018) ("A public entity is any state or local government or a department, agency or other instrumentality of a State or local government.  Defendants cannot be sued in their individual capacities under the ADA"); *Cable v. Dept. of Dev. Services of State of California,* 973 F. Supp. 937, 943 (C.D. Cal. July 15, 1997) ("[C]ourts in the Ninth Circuit have held individuals cannot be held liable for damages under section 2000e . . . Accordingly, the Court holds individuals cannot be held liable under Title V of the ADA."). Moreover, Martinez fails to address Defendants' Title V individual liability argument and asserts, without supporting caselaw, that the "ADA does expressly contemplate bringing actions against individual persons in limited circumstances involving retaliation, interference, coercion, or intimidation under Title IV."  ECF No. 49 at 21.  Martinez's claims against Individual Defendants arise under Title V, and Martinez fails to cite any caselaw supporting individual liability under

Title V.  The Court **GRANTS** Defendants' Motion for Summary Judgment as to Martinez's Title V claims.[6]

### C.   Remaining State Claims

Defendants move for Summary judgment on Martinez's Unruh Act and Disabled Persons Act ("DPA") claims.  ECF No. 48 at 24-25.  Martinez argues her remaining state claims survive summary judgment because of her viable Title II claims. ECF No. 49 at 22.

Given the Court's findings of genuine issues of material facts precluding summary judgment of Martinez's Title II claims, the Court **DENIES** Defendants' Motion for Summary Judgment as to Martinez's Unruh Act and DPA claims.  *See Cohen v. City of Culver* City, 754 F.3d 690, 701 (9th Cir. 2014) ("A violation of the ADA constitutes a violation of the California DPA."); *Lentini v. California Center for the Arts, Escondido,* 370 F.3d 837, 847 (9th Cir. 2004) ("Because the Unruh Act has adopted the full expanse of the ADA, it must follow, that the same standards for liability apply under both Acts.") (internal citation and quotations omitted).

### D.   Declaratory Judgment

Martinez seeks declaratory judgment and requests the Court:

> 1. declare that Defendant Alameda County's refusal to modify its policy against reading and transcribing information on paper forms for people with disabilities who cannot otherwise access those paper forms is contrary to the requirements of Title II of the Americans with Disabilities Act;
> 2. find that Plaintiff is a prevailing party as to Defendant Alameda County; and
> 3. instruct the parties (within 30 days) to each submit proposed orders enjoining Defendant Alameda County from continuing to refuse to provide qualified reader auxiliary services to Ms. Martinez.

ECF No. 44 at 18-19.

However, given the Court's findings regarding genuine disputes of material facts precluding summary judgment on Martinez's Title II claims, the Court **DENIES** Martinez's request for declaratory judgment.  *See MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007) (finding dispute must be "real and substantial" and "admit []specific relief through a decree

---

[6] Because the Court finds individuals cannot be held liable under Title V of the ADA, the Court declines to address Defendants' qualified immunity argument.

of a conclusive nature, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts") (internal citations and quotations omitted); *Amaretto Ranch Breedables v. Ozimals, Inc.*, 907 F.Supp.2d 1080, 1085 (N.D. Cal. 2012) ("[T]he Declaratory Judgment Act vests district courts with discretion over whether to grant declaratory relief.")

## V.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Martinez's Motion for Partial Summary Judgment and Declaratory Judgment.  The Court **GRANTS** Defendants' Motion for Summary Judgment as to Martinez's Title V claims and **DENIES** Defendants' Motion for Summary Judgment as Martinez's Title II, Unruh Act, and DPA claims.

**IT IS SO ORDERED.**

Dated: August 11, 2022

THOMAS S. HIXSON
United States Magistrate Judge

11