Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohhlegal.com
Nicholas D. Fine, Esq. (SBN: 285017)
nfine@ohhlegal.com
**ORBACH HUFF + HENDERSON LLP**
6200 Stoneridge Mall Road, Suite 225
Pleasanton, CA  94588
Telephone:      (510) 999-7908
Facsimile:       (510) 999-7918

Attorneys for Defendant
COUNTY OF ALAMEDA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LISAMARIA MARTINEZ,<br><br>         Plaintiff,<br><br>v.<br><br>COUNTY OF ALAMEDA,<br><br>         Defendant. | Case No.  20-cv-06570-TSH<br><br>**DEFENDANT COUNTY OF ALAMEDA'S OPPOSITION TO PLAINTIFF'S SUR REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON DECLARATORY RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:         February 9, 2023<br>TIME:          10:00 a.m.<br>DEPT:          Courtroom G (15th Floor)<br>JUDGE:       Hon. Thomas S. Hixson |

**TABLE OF CONTENTS**

**Page(s)**

I.   INTRODUCTION .................................................................................................................. 1

II.  LEGAL ARGUMENT ........................................................................................................... 3

   A.   The County Has Not Committed a Discovery Violation ....................................... 3

   B.   Plaintiff's Entire Sur-Reply Argument Relies on a Non-Existent Legal Standard ............. 6

   C.   Plaintiff's Demand for Prospective Declaratory Relief Remains Moot ............................ 9

III. CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Biosafe-One, Inc. v. Hawks*,
　639 F.Supp.2d 358 (S.D.N.Y. 2009)...................................................................................5

*Brown v. Buhman*,
　822 F.3d 1151 (10th Cir. 2016) ........................................................................................5-6

*Cropp v. Larimer Cnty., Colorado*,
　793 F.App'x 771 (10th Cir. 2019) ......................................................................................10

*Genesis Healthcare Corp. v. Symczyk*,
　133 S. Ct. 1523 (2013) ........................................................................................................6

*Graddy v. Educ. Credit Mgmt. Corp.*,
　615 B.R. 336 (N.D. Ga. 2020) ............................................................................................4

*In re Graddy*,
　852 F. App'x 509 (11th Cir. 2021) ......................................................................................5

*Lopez v. Garcia Apartments, LLC*,
　2014 WL 12696711 (C.D. Cal. Dec. 19, 2014) ..................................................................5

*Memmer v. Marin County Cts.*,
　169 F.3d 630 (9th Cir. 1999) ..............................................................................................9

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
　601 F.3d 1096 (10th Cir. 2010) ..........................................................................................5

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*,
　318 F.3d 592 (4th Cir. 2003) ..............................................................................................5

**Regulations**

28 C.F.R. section:
　35.160...................................................................................................................................9
　35.160(a)(1) .......................................................................................................................10

**Rules**

Federal Rules of Civil Procedure, Rule:
　26(e) ...............................................................................................................................3, 4
　37..........................................................................................................................................5
　37(c) ................................................................................................................................3, 4
　37(c)(1) ................................................................................................................................5

## I.   INTRODUCTION

This is not a complicated action to analyze. As an initial matter, no accommodation was required in the first place where the communication between Plaintiff and the CRO's clerks were clearly effective, as demonstrated by Plaintiff's own audio recordings. Plaintiff has yet to cite any authority even remotely suggesting that "effective communication" under the ADA includes an obligation to serve as a scribe, because it does not. This is a legal issue that is dispositive of this matter. Further, even if an accommodation was required, the applicable law provides that Plaintiff was not entitled to her choice of accommodation on the day of the incident and the CRO was already providing a reasonable accommodation that is explicitly endorsed by the Department of Justice ("DOJ"), by allowing patrons to file FBNS's by mail. Moreover, neither the ADA, its regulations, nor the DOJ's technical guidance imposes any obligation on the CRO to provide "scribe services." The CRO did not violate the ADA on the day of the incident and had no legal obligation to serve as Plaintiff's scribe.

Regardless, even if the Court is not satisfied with this analysis, or determines that scribe services are a recognized accommodation under Title II of the ADA for persons with vision disabilities (they are not), Plaintiff's claim that the CRO must provide scribe services moving forward has been mooted by the CRO's implementation of an additional reasonable modification, in lieu of scribe services, which is the CRO's decision to make as a matter of law. The purpose of providing this additional reasonable modification is to allow persons with disabilities such as Plaintiff to complete an FBNS in the physical CRO themselves, in a manner that does not expose the CRO to significant potential liability. This is not an unreasonable position and this is not a difficult problem to solve.

Specifically, in addition to allowing patrons to file FBNS's by mail, the CRO implemented a further reasonable modification in the form of reserving one of the CRO's kiosks for persons with disabilities. The CRO then equipped that kiosk with an electronic version of the FBNS and JAWS screen access software, in order to allow persons with vision disabilities to complete an FBNS on the kiosk, in the CRO. Although neither Plaintiff, nor her counsel or experts, have even attempted to use the kiosk to see how it works, they nonetheless proclaim that this is not a reasonable modification because JAWS allegedly does not recognize 100% of the CRO's electronic FBNS, and therefore, the kiosk allegedly does not allow disabled persons to "independently complete" the FBNS. The problem with this argument is that the ADA does not have an

"independent completion" standard and Plaintiff has cited no authority suggesting otherwise. There is simply nothing in the ADA providing that modifications are only "reasonable" if they allow for "independent completion" by the disabled person. Plaintiff has effectively conceded this point where she claims that scribe services constitute a reasonable modification under the ADA (they do not). Scribe services inherently rely on assistance from another human and do not allow for "independent completion" of the FBNS. In other words, the majority of Plaintiff's Sur-Reply relies on a non-existent legal standard.

The fact is, whether or not JAWS is able to read and convey the FBNS to the disabled person with 100% accuracy is completely irrelevant because CRO staff members have been authorized and directed to assist persons with disabilities who are using the kiosk, to the absolute extent possible, so long as the disabled person inputs the requisite information himself or herself. For example, if JAWS is unable to read any text on the FBNS, a CRO employee will read that text to the disabled individual. CRO staff members will also move the mouse/cursor to the correct line or checkbox such that the disabled individual can then check the box or input the required information. In addition, CRO staff members will read the information back to the individual to ensure it is accurate, and otherwise ensure the FBNS has been completed properly. Further, if a disabled person would simply prefer to rely on a CRO staff member's guidance and assistance when using the kiosk, rather than using JAWS, a CRO staff member will read the entire FBNS to the disabled individual, line by line, and ensure the individual is inputting the information in the correct places in the FBNS. This exact situation occurred in July 2022, before the CRO had obtained a license to use JAWS, when a person with a vision disability demanded scribe services relative to an FBNS. She was instead able to complete the FBNS herself on the kiosk, with Mr. Yankee's guidance and assistance.

This arrangement is literally no different than the arrangement Plaintiff is demanding, except that it provides a method for the disabled individual to input the requisite information into the FBNS himself or herself, and therefore, protects the CRO from the significant potential liability associated with scribe services. The CRO's implementation of this additional reasonable modification should have put a swift end to this matter, as it renders Plaintiff's claim for prospective declaratory relief moot, and the parties have been confident throughout this matter that they will be able to resolve Plaintiff's demand for retrospective monetary relief. However, Plaintiff steadfastly refuses to recognize any accommodation as reasonable if it does not involve scribe services, which is unreasonably narrow and simply meritless.

1  Finally, even if the Court is unwilling to adjudicate as a matter of law that the CRO did not violate the
2  ADA on the day of the incident and/or that Plaintiff's demand for prospective declaratory relief has been
3  mooted by the CRO's implementation of an additional reasonable modification in the form of the kiosk,
4  Plaintiff's Motion must be denied because there are, at minimum, triable questions of material fact concerning
5  whether the communications between Plaintiff and the CRO were ineffective such that a modification was
6  required in the first place, whether the allowance of mail-filing FBNS's constitutes a reasonable
7  accommodation under Title II of the ADA, and whether the implementation of the kiosk constitutes a
8  reasonable accommodation under Title II of the ADA.

## II. LEGAL ARGUMENT

### A. The County Has Not Committed a Discovery Violation

Plaintiff argues that the County violated Federal Rules of Civil Procedure 26(e) and 37(c) with respect to the supplemental facts set forth in the County's Opposition to Plaintiff's Motion for Summary Judgment on Declaratory Relief, and the County's MSJ on the same claim, by failing to supplement prior disclosures and discovery responses with such facts. That is not accurate.

First, to the extent Plaintiff suggests that the facts concerning the kiosk in the CRO were somehow unexpected or a surprise, that is entirely disingenuous. Fact discovery closed on April 11, 2022. See Dkt. 41. In Plaintiff's deposition of the County of Alameda on February 4, 2022, County representative Matt Yankee disclosed that: (1) the County has a longstanding contract with a vendor who supports the County's Clerk-Recorder System; (2) the vendor provided the CRO with an upgraded software suite that partially went live in or about January 2020; (3) the vendor has continued to work on additional components for the suite, including an electronic FBNS that can be completed on kiosks that are already physically located in the CRO for patrons to use, as well as online; and (4) that the County had already had preliminary discussions regarding providing additional software on one of the kiosks for accessibility purposes. See Dkt. 48-2 (County's Separate Statement of Uncontroverted Facts in support of Motion for Summary Judgment, or in the alternative, Partial Summary Judgment), Facts 52-55. In fact, the County's plan to install disability access software on a kiosk in the CRO has been known to Plaintiff's counsel for over a year. Indeed, these facts were disclosed to Plaintiff *prior* to Mr. Yankee's deposition as the County's person most knowledgeable, as evidenced by an email from Plaintiff's counsel dated January 27, 2022, wherein he asked counsel for the County, "Would Mr. Yankee be

ORBACH HUFF + HENDERSON LLP

the designee should we wish to depose Alameda County on the *kiosk accessibility planning / contracting / development / maintenance*?" Supplemental Declaration of Nicholas D. Fine ("Supp. Fine Dec."), submitted concurrently herewith, ¶ 3, Ex. 1. Counsel for the County responded in the affirmative and agreed that Plaintiff's counsel could depose Mr. Yankee on the issue. Id. Therefore, any notion that these facts constitute some surprise or were not disclosed is simply incorrect and disingenuous.

The *only* change, which occurred *after* the close of fact discovery, is that the CRO wanted to install these accessibility features as soon as possible for the purpose of providing an even better experience for its customers, but the vendor working on the new FBNS suite was simply taking longer than anticipated. Therefore, in or about October 2022, five months after the close of fact discovery, the County took it upon itself to implement a solution, by purchasing and installing JAWS screen access software on a kiosk in the CRO, reserved that kiosk for disabled persons, and installed an electronic PDF of the FBNS on the kiosk, such that persons with vision disabilities can complete an FBNS on the kiosk in the CRO, using the screen access software and/or the assistance of a CRO staff member. See Dkt. 63-1 (County's Supplemental Statement of Uncontroverted Facts in support of Opposition to Plaintiff's Motion for Summary Judgment on Declaratory Relief and County's Motion for Summary Judgment on Declaratory Relief), Facts 7-14. This is a minor adjustment to the plan that was previously disclosed to Plaintiff, did not occur until after the close of fact discovery, and is entirely consistent with Mr. Yankee's disclosures in his deposition.

Moreover, because the County did not install JAWS screen access software on the kiosk in the CRO reserved for disabled persons until October 2022, five months after the close of fact discovery, the County could not possibly have included facts concerning JAWS in its initial disclosures or discovery responses, because the facts did not yet exist. See Dkt. 63-1, Facts 7-14; Dkt. 41. And, nowhere in Rule 26(e) or 37(c) do they require the supplementation of prior disclosures or discovery responses following the close of fact discovery, with information that arose thereafter.[1] Fed. Rules Civ. Proc., Rules 26(e) and 37(c).

Further, even if some violation had occurred – which it did not – there has been no prejudice to Plaintiff here. *Graddy v. Educ. Credit Mgmt. Corp.*, 615 B.R. 336, 344–45 (N.D. Ga. 2020), aff'd sub

---

[1] Nor has Plaintiff provided any evidence that such facts would have been responsive to Plaintiff's written discovery, such as identifying which specific response allegedly should have been supplemented. See generally, Plaintiff's Opposition to County's Motion for Summary Judgment on Declaratory Relief ("Opposition").

- 4 -

ORBACH HUFF + HENDERSON LLP

nom. *In re Graddy*, 852 F. App'x 509 (11th Cir. 2021) (requiring a showing of prejudice to exclude evidence that was allegedly not timely disclosed); *Biosafe-One, Inc. v. Hawks*, 639 F.Supp.2d 358, 370 (S.D.N.Y. 2009), aff'd, 379 F.App'x 4 (2d Cir. 2010) (requiring a showing of prejudice under F.R.C.P. Rule 37); *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003) (the basic purpose of Rule 37(c)(1) is "preventing surprise and prejudice to the opposing party."). Indeed, the County is not *hiding* the kiosk with disability access features. Rather, the kiosk in the CRO with JAWS and an electronic version of the FBNS has been publicly available to all disabled patrons of the CRO since October 2022. See Dkt. 63-1, Facts 7-14. Therefore, even if Plaintiff did not become aware that a kiosk in the CRO had been equipped with JAWS and an electronic version of the FBNS until the County filed its Opposition to Plaintiff's Motion for Summary Judgment on Declaratory Relief on December 8, 2022, Plaintiff had 8 days until her Reply was due on December 16, 2022, and twenty days passed before Plaintiff filed her Sur Reply on December 28, 2022. As such, Plaintiff (who is blind), her attorney (who is blind), and her expert (Ms. McCall, who is blind), were all qualified and had ample time to use and experience the kiosk themselves, by simply visiting the CRO. The kiosk remains accessible to Plaintiff to this day and will continue to remain available. Finally, Plaintiff was clearly not prejudiced were she responded to the facts she now challenges as improper and provided supporting expert declarations, which, although unpersuasive, nevertheless evidence that Plaintiff has not been prejudiced.

Finally, the mere fact the CRO implemented this additional reasonable modification after the close of fact discovery does not preclude the admissibility of the evidence. Rather, the removal of alleged barriers to access prior to trial can have the effect of mooting a plaintiff's ADA claim and mootness is a jurisdictional defect *that can be raised at any time.* See *Lopez v. Garcia Apartments, LLC,* 2014 WL 12696711, at *3 (C.D. Cal. Dec. 19, 2014). Thus, the facts at issue are admissible to determine if modifications and/or technological advancements have mooted Plaintiff's claims as well as whether the Court continues to have jurisdiction over this matter. Mootness is a threshold issue, as federal court jurisdiction depends on a live case or controversy— without a live, concrete controversy, the court cannot consider the plaintiff's claims no matter how meritorious. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Brown v. Buhman*, 822

- 5 -

1   F.3d 1151, 1165 (10th Cir. 2016) (internal quotations omitted) (quoting *Genesis Healthcare Corp. v. Symczyk,*

2   133 S. Ct. 1523, 1528 (2013)). Accordingly, the challenged facts are admissible and must be considered.

3         **B.**      **Plaintiff's Entire Sur-Reply Argument Relies on a Non-Existent Legal Standard**

4         Plaintiff argues that "undisputed expert testimony gathered in response to Defendant's new factual

5   assertions demonstrates that Defendant's FBNS PDF form is not accessible and does not permit a blind person

6   to nonvisuually fill out and complete the [FBNS] form using JAWS or another screen reader." Opp., at 3:24-

7   27. To make this argument, Plaintiff relies on the declarations she submitted concurrently with her Opposition,

8   particularly, the Declarations of Karen McCall and Steven Clark. However, the problem with those

9   declarations is that they both rely upon a non-existent legal standard, whereby they claim that the CRO's kiosk

10  with JAWS and an electronic FBNS does not constitute a reasonable modification because the FBNS allegedly

11  cannot be "independently completed" by persons with vision disabilities. Declaration of Karen McCall in

12  support of Plaintiff's Opposition ("McCall Dec."), ¶ 7; Declaration of Steven Clark in support of Plaintiff's

13  Opposition ("Clark Dec."), ¶ 8; Opp., at 6:23-7:1.

14        However, Plaintiff has cited no law, and none exists, providing that a modification is only reasonable if

15  it allows a person with a disability to accomplish a given task without any human assistance, whatsoever.

16  There is no "independent completion" standard for reasonable modifications. Indeed, consider that Plaintiff

17  demands scribe services in this action, which inherently involves the use of another human to complete an

18  FBNS for Plaintiff, and thus does not allow for "independent completion." Yet, Plaintiff contends that scribe

19  services somehow do constitute a reasonable modification under the ADA. Nowhere does Plaintiff even

20  attempt to explain why this nonexistent "independent completion" standard applies to the CRO's provision of a

21  kiosk with an electronic FBNS, but not scribe services, because she simply cannot.

22        And, to this end, while the CRO disagrees that the CRO's version of JAWS is incompatible with the

23  PDF of the FBNS installed on the kiosk in the CRO[2], that is ultimately irrelevant where CRO employees have

24  been authorized to and will assist individuals using the kiosk. County's Supp. Sep. Stat., Fact 12;

25  Supplemental Declaration of Matt Yankee in support of County's Opposition to Plaintiff's Sur Reply in

26  support of Motion for Summary Judgment on Declaratory Relief ("Supp. Yankee Dec."), ¶¶ 3-7. For instance,

---

[2] The County notes that neither Plaintiff nor any of her experts or counsel have even attempted to use the kiosk in the CRO, to determine if the County's version of JAWS is compatible with the version of the FBNS installed on the kiosk. See generally, Opp. and supporting declarations.

ORBACH HUFF + HENDERSON LLP

if JAWS does not recognize certain text on the FBNS, the CRO's employees will read that text to the disabled individual who is using the kiosk. Id. If there is a line or checkbox on the form that cannot be recognized by JAWS, CRO employees will guide the individual with a vision disability to that line or checkbox using the kiosk's mouse/cursor, such that the individual can then check the box or type in the requisite information. Id. The CRO will also read the information back to the individual to confirm it is accurately stated in the FBNS. Id. In other words, to the extent visual assistance is required, the CRO will provide it.[3] Id.

Notably, because CRO staff members will provide assistance to persons with vision disabilities using the kiosk, JAWS is not even necessary to render the kiosk a reasonable accommodation. If a disabled person would simply prefer to rely on a CRO staff member's guidance and assistance when using the kiosk, rather than relying upon JAWS, a CRO staff member will read the entire FBNS to the disabled individual, line by line, and ensure the individual is inputting the required information in the correct places in the FBNS, so long as the disabled individual is actually inputting the information himself or herself. Supp. Yankee Dec., ¶¶ 3-7. Again, the staff member will also read back the information to confirm it is accurate, print the form, assist the individual with signing it, and the CRO will then file the FBNS right then and there. See Dkt. 63-1, Facts 12, 13; Supp. Yankee Dec., ¶¶ 3-7.

---

[3] For these reasons, and the reasons set forth in the County's Objection and Statement of Controverting Facts in Response to Plaintiff's Separate Statement of Facts (Dkt. 48-1), Plaintiff's purported Facts Nos. 7 and 39 are not "substantively undisputed," as Plaintiff disingenuously claims. Opp., at 5:18-6:19. Rather, those facts are explicitly *disputed*. Dkt. 48-1, at 2:24-4:5, 29:17-30:16. As noted in the County's responses to those purposed facts, Plaintiff, in her deposition, confirmed she completed the FBNS at home using JAWS prior to visiting the CRO on March 29, 2019, and could not specifically identify any aspect of the form that was inaccessible, other than the fact she needed human assistance to sign it. Id.; see also Dkt. 48-2, Facts 8, 9. That is not "establishing" that the form is "inaccessible," particularly where CRO employees will assist persons with disabilities with signing the FBNS. Dkt. 48-2, Facts 50, 55; Dkt. 63-1, Fact 13. The word "Disputed" in the County's responses to Plaintiff's alleged facts 7 and 39 could not be clearer, and the reasons therefor are very much substantive. As for Plaintiff's purported experts, they rely on some apparently contrived "independent completion" standard that does not exist under the ADA, as discussed above. Thus, the fact Plaintiff may require some level of human assistance to complete the FBNS at home does not render the CRO's allowance of mail filing FBNS's an unreasonable accommodation. As a brief example, it is entirely possible a person with a disability would need human assistance to place an government application in the mail. Yet, the DOJ has expressly stated that if a physical government office is inaccessible with respect to filing government forms, it constitutes a reasonable modification to allow for mail filing. See Dkt. 63, at 7:11-16; ECF No. 48-4 (Declaration of Nicholas D. Fine in Support of County's Prior MSJ), ¶ 22, Ex. T at p. 9. It is not the County's obligation under the ADA to ensure Plaintiff can do absolutely everything a sighted person can do, without assistance. That is not the standard under the ADA.

1    As an example, the CRO had a customer with a vision disability visit the CRO on July 26, 2022, who demanded that the CRO complete an FBNS for the customer. Supp. Yankee Dec., ¶ 7. Instead, the CRO immediately arranged to download a copy of the FBNS on one of the kiosks in the CRO and the blind individual completed the form herself, with Mr. Yankee providing guidance and assistance, including reading the FBNS to the individual, and reading the individual's answers back to her to ensure they were accurate. Id. The CRO then printed and filed the FBNS for the disabled individual the same day. Id. This was a simple and straightforward process that allowed the disabled individual to complete the FBNS herself, with the assistance of the CRO's staff, and avoided the significant liability associated with scribe services.[4]

The only difference between this arrangement and the scribe services Plaintiff demands, is that under this arrangement, the CRO's employees would not be personally completing the FBNS for the individual with a vision disability, and would thus be avoiding the significant potential liability that would arise from the provision of scribe services. Moreover, because the disabled individual would actually be marking the checkboxes and typing in the requisite information himself or herself, this arrangement provides a far more "independent" experience than simply having a CRO employee complete the FBNS for Plaintiff, which is entirely dependent.[5]

---

[4] Notably, this occurred before the CRO purchased JAWS screen access software, which only would have enhanced the customer's experience at the kiosk. Id.

[5] To the extent Plaintiff attacks the Declaration of Matt Yankee in support of County's Opposition to Plaintiff's Motion for Summary Judgment on Declaratory Relief and County's Motion for Summary Judgment on Declaratory Relief ("Yankee Dec.") (Dkt. 63-3), such attacks are unfounded and should be disregarded. Plaintiff contends that Mr. Yankee does not have personal knowledge that "the JAWS screen access software allows persons with vision disabilities to perceive written text on a computer screen," which is the *only* statement in that particular declaration by Mr. Yankee that was asserted on information and belief. Id., ¶ 3. Why Plaintiff would challenge this particular statement is a mystery, as she has admitted this exact fact in her deposition and it is a matter of common knowledge that the entire purpose of JAWS screen access software is to allow persons with vision disabilities to access written text on a computer screen. Dkt. 63-3, ¶ 3; Dkt. 48-2, Facts 8-9. As for how Mr. Yankee "acquired his knowledge" concerning the ability of JAWS to read the FBNS on the kiosk (see Opp., at 4:25-28), he is the Assistant Controller for the County's Auditor-Controller/Clerk-Recorder Agency; it is his job to have this knowledge, and as noted, he served as the County's person most knowledgeable regarding the kiosk. For this same reason, it is not speculative that CRO employees will be able to review the FBNS on the kiosk, assist with correcting the FBNS, print the FBNS for disabled individuals, and assist them with signing the FBNS. Opp., at 5:5-8. It is Mr. Yankee's job to know, understand and convey the types of assistance CRO clerks are authorized and directed to provide. Indeed, Mr. Yankee's declaration is explicitly based on his personal knowledge, as stated therein. Dkt. 63-3, ¶ 1. As for the claim that JAWS' ability to "read" the FBNS is not the same thing as the ability to actually fill the form in, none of

### C. Plaintiff's Demand for Prospective Declaratory Relief Remains Moot

Plaintiff argues that, "Defendant claims the case is now moot because it now complies with the ADA," and cites authority stating that the County has a "heavy burden" of persuading the court that this action should be dismissed. Opp., at 9:5-18. That is not accurate. The County has always maintained that it complied with the ADA on the day of the incident, that no modification was required in the first place because the communication between the CRO and Plaintiff was effective, and that even if a modification was required, the CRO offered a reasonable modification in the form of allowing patrons to file FBNS's by mail. *In addition*, the County argued that to the extent the Court finds that allowing mail filing of FBNS's does not constitute a reasonable accommodation, Plaintiff's claim for prospective declaratory relief is moot where the CRO now provides a further reasonable accommodation through the reservation of a kiosk in the CRO for disabled persons with screen access software and an electronic version of the FBNS. Dkt. 63, at 23:13-25:22.

Further, Plaintiff fails to set forth any argument and appears to simply rely on her assertion that the case is not moot because the electronic FBNS on the kiosk allegedly does not allow for "independent completion." Opp., at 9:5-18. As discussed above, that standard does not exist under the ADA. And, to be clear, Plaintiff is not entitled to her choice of accommodation (*Memmer v. Marin County Cts.*, 169 F.3d 630, 634 (9th Cir. 1999); 28 C.F.R. Pt. 35, App. A § 35.160 (2011)), and the DOJ has expressly authorized the provision of government forms in an electronic format as a reasonable accommodation (ECF No. 48-4, ¶¶ 19, 20, 22, Ex. Q at pp. 2-4, 20, 22, Ex. R at Ch. 1, p. 10, Ch. 3, p. 3-4, Ex. T at p. 7-9). The kiosk clearly serves as a reasonable accommodation under the ADA, even in the absence of screen access

---

Plaintiff's experts ever explain what they mean when they claim they are unable to actually write in the form nonvisually. McCall Dec., ¶ 6; Clark Dec., ¶ 7. Keyboards work the same for everyone. To the extent the issue is JAWS being unable to read answers that have been typed into the form, or being unable to read the associated question, CRO staff members will perform the reading for the individual using the kiosk. Supp. Yankee Dec., ¶¶ 3-7. Finally, regarding Plaintiff's assertion that Mr. Yankee is somehow unqualified to offer testimony regarding the CRO's future plans to implement the electronic FBNS suite that the County's vendor is working on, and the CRO's plan to ensure the FBNS suite is accessible using screen-access software, Mr. Yankee does not need to be an expert to testify to these facts. He is offering these facts as the Assistant Controller for the County's Auditor-Controller/Clerk-Recorder Agency, for which it is Mr. Yankee's job to know and understand the CRO's plans to develop the FBNS suite and to make it accessible, and Mr. Yankee is personally involved in that process, as he testified. Dkt. 48-2, Facts 52-55; Dkt. 63-1, Facts 1-6. However, again, compatibility between the electronic FBNS and JAWS is ultimately irrelevant where a person with a vision disability can complete the FBNS himself or herself on the kiosk with the assistance of a CRO clerk, even in the absence of screen access software. Supp. Yankee Dec., ¶¶ 3-7.

Def County's Opposition to Plt's Sur Reply ISO MSJ on Declaratory Relief; MPA [20-cv-06570-TSH]

software, given that CRO employees will provide any necessary sighted assistance that will allow the disabled individual to complete the form himself or herself on the kiosk. Supp. Yankee Dec., ¶¶ 3-7. Accordingly, Plaintiff's demand for prospective declaratory relief remains moot.[6]

## III. CONCLUSION

For these reasons, the County respectfully requests that the Court deny Plaintiff's MSJ, grant the County's MSJ, and dismiss Plaintiff's cause of action for declaratory relief.

Dated: January 19, 2023          Respectfully submitted,

**ORBACH HUFF + HENDERSON LLP**

By:   /s/ *Nicholas D. Fine*
            Kevin E. Gilbert
            Nicholas D. Fine
            Attorneys for Defendant
            COUNTY OF ALAMEDA

---

[6] Plaintiff simply did not address the County's argument that the ADA's "effective communication" requirement does not include an obligation to physically fill out forms for disabled individuals. Dkt. 63, at 9:22-28, fn. 6; see generally, Opp. Nowhere in Title II, its regulations, case law or the DOJ's "Effective Communication" technical assistance manual is it provided that "effective communication" includes an obligation to serve as a scribe. ECF No. 48-4, ¶ 19, Ex. Q. Nor has Plaintiff cited a single case, statute, or regulation to that effect. And, if effective communication does not include such an obligation as a matter of law, then no modification was required in the first place and the County is entitled to summary judgment where the communication between Plaintiff and the CRO was clearly effective, as reflected in Plaintiff's own audio recordings. 28 C.F.R., §§ 35.160(a)(1); *Cropp v. Larimer Cnty., Colorado*, 793 F.App'x 771, 783-84 (10th Cir. 2019); Dkt. 48-2, Fact 31. Indeed, Plaintiff does not claim that the communications between her and the CRO's clerks were ineffective other than the clerks' refusal to serve as Plaintiff's scribe, and she does not dispute anywhere that the clerks and Plaintiff spoke fluent English to each other. Moreover, Plaintiff has not addressed why this issue does not preclude her Motion. Given that no accommodation was required if the communication between Plaintiff and the CRO's clerks was effective on the day of the incident (28 C.F.R., §§ 35.160(a)(1); *Cropp*, 793 F.App'x at 783-84), and because Plaintiff's entire lawsuit is premised on her claim that she was entitled to an accommodation that was not provided, her Motion must be denied where the Court has already found that whether the communication between Plaintiff and the CRO was effective is a triable question of fact. ECF No. 54 (Order on Prior MSJ's) at 7:5-26. Similarly, Plaintiff's Motion is precluded by the Court's prior ruling that there exist triable questions of fact concerning whether allowing patrons to file FBNS's by mail, and whether the provision of the upgraded software suite, constitute reasonable accommodations. Id., at 8:23-9:11. And, for the same reasons, if the Court is unwilling to find that the provision of the kiosk reserved for disabled persons (with screen access software, an electronic version of the FBNS, and sighted assistance by CRO staff) constitutes a reasonable accommodation as a matter of law, then, at a minimum, there is a triable question of fact concerning whether the kiosk constitutes a reasonable accommodation. Id.