Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohhlegal.com
Nicholas D. Fine, Esq. (SBN: 285017)
nfine@ohhlegal.com
**ORBACH HUFF + HENDERSON LLP**
6200 Stoneridge Mall Road, Suite 225
Pleasanton, CA  94588
Telephone:     (510) 999-7908
Facsimile:      (510) 999-7918

Attorneys for Defendant
COUNTY OF ALAMEDA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LISAMARIA MARTINEZ,<br><br>                   Plaintiff,<br><br>v.<br><br>COUNTY OF ALAMEDA,<br><br>                   Defendant. | Case No.  20-cv-06570-TSH<br><br>**SUPPLEMENTAL DECLARATION OF MATT YANKEE IN SUPPORT OF DEFENDANT COUNTY OF ALAMEDA'S OPPOSITION TO PLAINTIFF'S SUR REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON DECLARATORY RELIEF**<br><br>DATE:         February 9, 2023<br>TIME:          10:00 a.m.<br>DEPT:         Courtroom G (15th Floor)<br>JUDGE:       Hon. Thomas S. Hixson |

I, Matt Yankee, declare as follows:

1. I am the Assistant Controller for the County of Alameda ("County"), Auditor-Controller/Clerk-Recorder Agency and have been employed in that Agency since 2011. If called and sworn as a witness to testify, I am competent to testify and would testify from my own personal knowledge as to the facts set forth in this Declaration, except as to those matters that are stated on information and belief herein.

2. This Supplemental Declaration is submitted for the purposes of presenting evidence in support of the County's Opposition to Plaintiff Lisamaria Martinez's ("Plaintiff") Sur Reply in support of Motion for Summary Judgment on Declaratory Relief.

3. Regarding the kiosk in the CRO that has Jobs Access with Speech ("JAWS") screen access software and an electronic version of the FBNS that persons with vision disabilities can complete on the kiosk, I understand that Plaintiff has asserted, for the first time, that there are aspects of the FBNS (other than the signature line) that are inaccessible using JAWS.

4. While I can confirm the CRO tested JAWS to ensure it can read the version of the FBNS that is installed on the kiosk, I am not blind and I could not possibly replicate the experience a blind individual would have using the kiosk. However, even if there is some text or checkbox on the form that cannot be read by JAWS, that is completely irrelevant where CRO clerks are authorized to and will assist the person with vision disabilities using the kiosk, including reading any unrecognized text to the individual with a vision disability, guiding that individual to any unrecognized checkboxes or lines, reading back the information typed into the form by the individual to ensure it is accurate, and otherwise ensuring that the individual has completely filled out the FBNS properly. For instance, if there is a line or checkbox on the form that cannot be recognized by JAWS, CRO employees will read that portion of the FBNS to the individual with a vision disability, guide the individual with a vision disability to that line or checkbox using the kiosk's mouse/cursor such that the individual can then check the box or type in the requisite information himself or herself, and the CRO employee will then read the information back to the individual with a vision disability to ensure it is accurate. In other words, to the extent sighted assistance is necessary to allow the person with a vision disability to complete the FBNS on the CRO's kiosk, the CRO will provide that assistance.

5.	It is not as though persons using the kiosk are on an island – they are in the CRO and surrounded by CRO employees who will assist them.  Indeed, the only difference between this arrangement and the scribe services Plaintiff demands is that, under this arrangement, the CRO's employees would not be personally/physically completing the FBNS for the individual with a vision disability, and would thus be avoiding the significant potential liability concerns that would arise from the provision of scribe services.

6.	Further, as previously stated, the CRO's employees will also print the completed FBNS for the individual with a vision disability and assist them with signing the form, such that it can be filed right then and there.

7.	As an example of this, a person representing that she had a vision disability visited the CRO on July 26, 2022, and asked the CRO to provide her with scribe services on an FBNS.  I was immediately contacted by Jocelyn Cole, the Division Chief for the CRO, while the disabled individual was still in the CRO.  The CRO clerk assisting the customer advised the customer that the CRO was prohibited from completing the FBNS for the individual.  I then engaged the customer with Ms. Cole and offered to allow her to use one of the CRO's kiosks to complete the FBNS.  Ms. Cole and I arranged to have a County employee in the Information Technology department set up the FBNS on the kiosk.  I then guided the individual through completing the form and read the form to her, but the customer input all of her information herself using the kiosk.  I then read the information back to the individual to confirm it was accurate.  The CRO then printed the FBNS for the customer, the customer signed it, and the CRO filed it.  At that point in time, the CRO did not even have JAWS screen access software on the kiosk, which only would have enhanced the customer's experience.  This was a simple and straightforward process that allowed the customer to obtain the service she was seeking, while allowing the CRO to avoid the significant liability that would arise from the provision of scribe services.  To the extent any disabled individuals would prefer to use this method rather than using JAWS, the CRO will continue to provide this method as an alternative accommodation as well, whereby the disabled individual using the kiosk would rely solely on human assistance from CRO staff, rather than JAWS, but would still input all of the information himself or herself.

///

8. Finally, the kiosk in the CRO, with JAWS screen access software and an electronic version of the FBNS, is and has been available to disabled members of the public since October 2022.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 19th day of January, 2023, at Oakland, California.



_____
Matt Yankee