Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohhlegal.com
Nicholas D. Fine, Esq. (SBN: 285017)
nfine@ohhlegal.com
**ORBACH HUFF + HENDERSON LLP**
6200 Stoneridge Mall Road, Suite 225
Pleasanton, CA  94588
Telephone:      (510) 999-7908
Facsimile:       (510) 999-7918

Attorneys for Defendant
COUNTY OF ALAMEDA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LISAMARIA MARTINEZ,<br><br>           Plaintiff,<br><br>v.<br><br>COUNTY OF ALAMEDA,<br><br>           Defendant. | Case No.  20-cv-06570-TSH<br><br>**DEFENDANT COUNTY OF ALAMEDA'S OBJECTION AND STATEMENT OF CONTROVERTING FACTS IN RESPONSE TO PLAINTIFF'S SUPPLEMENTAL STATEMENT OF UNDISPUTED FACTS REGARDING PLAINTIFF'S SUR REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON DECLARATORY RELIEF**<br><br>DATE:         February 9, 2023<br>TIME:         10:00 a.m.<br>DEPT:         Courtroom G (15th Floor)<br>JUDGE:       Hon. Thomas S. Hixson |

Def County's Objection and Stm of Controverting Facts in Response to Plaintiff's Supp Stm of Facts [20-cv-06570-TSH]

Defendant County of Alameda ("County") hereby submits this Objection and Statement of Controverting Facts in Response to Plaintiff Lisamaria Martinez's ("Plaintiff") Supplemental Statement of Undisputed Facts regarding Plaintiff's Sur Reply in support of Motion for Summary Judgment on Declaratory Relief, with references to evidence.

**OBJECTIONS TO PLAINTIFF'S EVIDENCE**

### I. Declaration of Karen McCall

The County objects to the entirety of the Declaration of Karen McCall on the ground Plaintiff previously stipulated to waive expert evidence in this matter and now seeks to assert such evidence after the fact. See Dkt. 41.

The County objects to the entirety of the Declaration of Karen McCall on the ground it is irrelevant, as well as confusing and misleading, and calls for a very incorrect legal conclusion, where it ignores that the CRO offers a reasonable modification in the form of allowing patrons to file FBNS's by mail, and relies on a non-existent standard under the ADA concerning "independent completion" with respect to the electronic FBNS on the kiosk reserved for persons with disabilities in the CRO. There is no legal standard under the ADA whereby a modification is only reasonable if it allows a disabled person to act completely independently, and Plaintiff has cited no authority suggesting otherwise. Indeed, she specifically demands scribe services in this matter and argues that scribe services constitute a reasonable modification, but scribe services inherently require human assistance and do not allow for "independent completion" of the FBNS. And, even if the electronic version of the FBNS on the kiosk in the CRO cannot be completed entirely independently by a person with a vision disability using the JAWS screen access software that is installed on that kiosk, that is irrelevant and does not render the FBNS on the kiosk "inaccessible" where CRO staff members are authorized to and will assist the person with a vision disability in using the kiosk. This would actually require less human assistance, and provide more independence, to the disabled person where the disabled individual would be the one inputting the requisite information into the FBNS, with any necessary guidance and sighted assistance from CRO staff. Federal Rules of Evid. 401, 403, 703.

The County objects to the entirety of the Declaration of Karen McCall on the ground Ms. McCall has not used the kiosk in the CRO equipped with screen access software and has not attempted to complete the FBNS installed on the kiosk, despite that kiosk being available to all disabled members of the public during

ORBACH HUFF + HENDERSON LLP

business hours. As such, Ms. McCall lacks personal knowledge to state that the FBNS on the CRO's kiosk is inaccessible and her opinion is irrelevant. Federal Rules of Evid. 401, 602, 701, 901.

Paragraphs 6 and 7 – Vague and ambiguous, call for speculation, call for legal conclusions, and lack foundation. Federal Rules of Evid. 701, 702, 703, 800, 801, 901; Fed. R. Civ. P. 56(e).

Exhibit D – Hearsay, lacks foundation. Federal Rules of Evid. 801-802, 901.

## II.   Declaration of Lucia Greco

The County objects to the entirety of the Declaration of Lucia Greco on the ground it is irrelevant, confusing and misleading. The fact one CRO employee allegedly violated the CRO's policy (prohibiting employees from completing or altering forms for patrons that are filed or recorded in the CRO) has no bearing on whether the CRO violated the ADA on the day of the incident, whether the CRO is obligated to provide scribe services under the ADA, or whether the CRO provides reasonable modifications in the form of allowing patrons to file the FBNS by mail and offering disabled patrons the opportunity to complete an FBNS on a kiosk in the CRO using JAWS screen-access software and/or with the guidance and sighted assistance of CRO staff. Federal Rules of Evid. 401, 403.

Paragraph 5-10 – Hearsay. Federal Rules of Evid. 801-802.

Paragraph 13 – Vague and ambiguous, improper lay opinion, calls for speculation, lacks foundation, calls for a legal conclusion. Federal Rules of Evid. 701, 703, 901. Further, Ms. Greco has not used the kiosk in the CRO equipped with JAWS screen access software and has not attempted to complete the FBNS installed on the kiosk. As such, Ms. Greco lacks personal knowledge to state that the FBNS on the CRO's kiosk is inaccessible and her lay opinion is irrelevant. Federal Rules of Evid. 401, 602, 701, 901.

## III.   Declaration of Steven Clark

The County objects to the entirety of the Declaration of Steven Clark on the ground Plaintiff previously stipulated to waive expert evidence in this matter and now seeks to assert such evidence after the fact. See Dkt. 41.

The County objects to the entirety of the Declaration of Steven Clark on the ground it is irrelevant, as well as confusing and misleading, and calls for a very incorrect legal conclusion, where it ignores that the CRO offers a reasonable modification in the form of allowing patrons to file FBNS's by mail, and relies on a non-existent standard under the ADA concerning "independent completion" with respect to the electronic FBNS on

ORBACH HUFF + HENDERSON LLP

the kiosk reserved for persons with disabilities in the CRO. There is no legal standard under the ADA whereby a modification is only reasonable if it allows a disabled person to act completely independently, and Plaintiff has cited no authority suggesting otherwise. Indeed, she specifically demands scribe services in this matter and argues that scribe services constitute a reasonable modification, but scribe services inherently require human assistance and do not allow for "independent completion" of the FBNS. And, even if the electronic version of the FBNS on the kiosk in the CRO cannot be completed entirely independently by a person with a vision disability using the JAWS screen access software that is installed on that kiosk, that is irrelevant and does not render the FBNS on the kiosk "inaccessible" where CRO staff members are authorized to and will assist the person with a vision disability in using the kiosk. This would actually require less human assistance, and provide more independence, to the disabled person where the disabled individual would be the one inputting the requisite information into the FBNS, with any necessary guidance and sighted assistance from CRO staff.

The County objects to the entirety of the Declaration of Steven Clark on the ground Mr. Clark has not used the kiosk in the CRO equipped with screen access software and has not attempted to complete the FBNS installed on the kiosk, despite that kiosk being available to all disabled members of the public during business hours. As such, Mr. Clark lacks personal knowledge to state that the FBNS on the CRO's kiosk is inaccessible and his opinion is irrelevant. Federal Rules of Evid. 401, 602, 701, 901.

Exhibit B – Hearsay, lacks foundation. Federal Rules of Evid. 801-802, 901.

Paragraphs 7, 8 - Vague and ambiguous, call for speculation, call for a legal conclusion, lack foundation. Federal Rules of Evid. 701, 703, 901.

## STATEMENT OF CONTROVERTING FACTS

43. The FBNS form in PDF format showing a "rev date" of 10/18, made available to the public online, and relied on by Ms. Martinez on or around her visit to the CRO on March 29, 2019 was not accessible under any professional standard and could not be independently completed by a blind person who needs non-visual access through screen reader technology such as JAWS. (Decl. of Karen McCall in Support of Pl.'s Statement of Facts and Oppo to Def's Mot. For Summ. J. on Declar. Relief ("McCall Expert Decl."), Exh. D at PL_EXPERT0003, 0013.)

///

///

ORBACH HUFF + HENDERSON LLP

**Defendants' Response:**

43. Disputed but irrelevant. The County notes that while Plaintiff now seeks to discredit the ability to complete the electronic FBNS using JAWS, she testified otherwise in her deposition. She testified that prior to her March 29, 2019, visit to the CRO, which is the subject of this action, she completed the FBNS on her computer at home using JAWS, and that the only aspect of the form that she could recall required human assistance was signing the form. Further, "independent completion" is not the applicable standard under the ADA, as exemplified by the entire basis for this action – Plaintiff's demand for scribe services. Scribe services would not entail "independent completion" because Plaintiff is explicitly demanding that someone else fill out the FBNS for her. Plaintiff cannot demand scribe services, which is inherently dependent on another individual transcribing information for her, and then reject electronic assistance on the ground it does not allow for "independent completion," particularly where she does not cite any authority suggesting that the ADA employs such a standard. It does not. Further, while the County disagrees with Plaintiff that the FBNS on the CRO's kiosk is inaccessible using JAWS, that is ultimately irrelevant where CRO employees are authorized to and will assist individuals using the kiosk.

For example, if JAWS is unable to read any text on the FBNS, a CRO employee will read that text to the disabled individual. CRO staff members will also move the mouse/cursor to the correct line or checkbox such that the disabled individual can then check the box or input the required information. In addition, CRO staff members will read the information back to the individual to ensure it is accurate, and otherwise ensure the FBNS has been completed properly. Further, if a disabled person would simply prefer to rely on a CRO staff member's guidance and assistance when using the kiosk, rather than using JAWS, a CRO staff member will read the entire FBNS to the disabled individual, line by line, and ensure the individual is inputting the information in the correct places in the FBNS. This exact situation occurred in July 2022, before the CRO had obtained a license to use JAWS, when a person with a vision disability demanded scribe services relative to an FBNS. She was instead able to complete the FBNS herself on the kiosk, with Mr. Yankee's guidance and sighted assistance.

Indeed, the only difference between this arrangement and the scribe services Plaintiff demands is that, under this arrangement, the CRO's employees would not be personally/physically completing the FBNS for the

individual with a vision disability, and would thus be avoiding the significant potential liability that would arise from the provision of scribe services.

Finally, Plaintiff's Fact No. 43 is not material or relevant where the communication between the CRO's clerks and Plaintiff on the day of the incident was effective such that no accommodation was required, and because the CRO, at the time of the incident, already provided (and continues to provide) a reasonable modification in the form of allowing patrons to file the FBNS by mail.  See Dkt. 48-2 (County's Separate Statement of Uncontroverted Facts in support of Motion for Summary Judgment, or in the alternative, Partial Summary Judgment), Facts 8-9, 27-28, 31 49-51; Dkt. 63-1 (County's Supplemental Separate Statement of Uncontroverted Facts in support of Opposition to Plaintiff's Motion for Summary Judgment on Declaratory Relief and County's Motion for Summary Judgment on Declaratory Relief), Facts 7-14; Supplemental Declaration of Matt Yankee in support of County's Opposition to Plaintiff's Sur Reply in support of Motion for Summary Judgment on Declaratory Relief ("Supp. Yankee Dec."), ¶¶ 3-7.

44.     The FBNS form in PDF format showing a "rev date" of 4/21 and made available to the public online was not accessible under any professional standard and could not be independently completed by a blind person who needs non-visual access through screen reader technology such as JAWS.  (McCall Expert Decl., Exh. D at PL_EXPERT0003, 0013.)

**Defendants' Response:**

44.     Disputed but irrelevant.  The County notes that while Plaintiff now seeks to discredit the ability to complete the electronic FBNS using JAWS, she testified otherwise in her deposition.  She testified that prior to her March 29, 2019, visit to the CRO, which is the subject of this action, she completed the FBNS on her computer at home using JAWS, and that the only aspect of the form that she could recall required human assistance was signing the form.  Further, "independent completion" is not the applicable standard under the ADA, as exemplified by the entire basis for this action – Plaintiff's demand for scribe services.  Scribe services would not entail "independent completion" because Plaintiff is explicitly demanding that someone else fill out the FBNS for her.  Plaintiff cannot demand scribe services, which is inherently dependent on another individual transcribing information for her, and then reject electronic assistance on the ground it does not allow for "independent completion," particularly where she does not cite any authority suggesting that the ADA employs

such a standard. It does not. Further, while the County disagrees with Plaintiff that the FBNS on the CRO's kiosk is inaccessible using JAWS, that is ultimately irrelevant where CRO employees are authorized to and will assist individuals using the kiosk.

For example, if JAWS is unable to read any text on the FBNS, a CRO employee will read that text to the disabled individual. CRO staff members will also move the mouse/cursor to the correct line or checkbox such that the disabled individual can then check the box or input the required information. In addition, CRO staff members will read the information back to the individual to ensure it is accurate, and otherwise ensure the FBNS has been completed properly. Further, if a disabled person would simply prefer to rely on a CRO staff member's guidance and assistance when using the kiosk, rather than using JAWS, a CRO staff member will read the entire FBNS to the disabled individual, line by line, and ensure the individual is inputting the information in the correct places in the FBNS. This exact situation occurred in July 2022, before the CRO had obtained a license to use JAWS, when a person with a vision disability demanded scribe services relative to an FBNS. She was instead able to complete the FBNS herself on the kiosk, with Mr. Yankee's guidance and sighted assistance.

Indeed, the only difference between this arrangement and the scribe services Plaintiff demands is that, under this arrangement, the CRO's employees would not be personally/physically completing the FBNS for the individual with a vision disability, and would thus be avoiding the significant potential liability that would arise from the provision of scribe services.

Finally, Plaintiff's Fact No. 44 is not material or relevant where the communication between the CRO's clerks and Plaintiff on the day of the incident was effective such that no accommodation was required, and because the CRO, at the time of the incident, already provided (and continues to provide) a reasonable modification in the form of allowing patrons to file the FBNS by mail. See Dkt. 48-2, Facts 8-9, 27-28, 31, 49-51; Dkt. 63-1, Facts 7-14; Supp. Yankee Dec., ¶¶ 3-7.

45. The most current FBNS form in PDF format showing a "rev date" of 11/22 and made available to the public online is not accessible under any professional standard, cannot be independently completed by a blind person who needs non-visual access through screen reader technology such as JAWS, and represents a degradation on accessibility when compared to the previous one with a "rev date" of 4/21. (McCall Expert

Decl., Exh. D at PL_EXPERT0003, 0013; Decl. of Steven Clark in Support of Pl.'s Statement of Facts and Oppo to Def.'s Mot. For Summ. J. on Declar. Relief ("Clark Expert Decl."), Exh. B at PL_EXPERT0027); *see also* Def.'s Suppl. Statement of Facts in Support of Motion for Summary Judgment ¶ 9, ECF No. 63-1.)

**Defendants' Response:**

45. Disputed but irrelevant. The County notes that while Plaintiff now seeks to discredit the ability to complete the electronic FBNS using JAWS, she testified otherwise in her deposition. She testified that prior to her March 29, 2019, visit to the CRO, which is the subject of this action, she completed the FBNS on her computer at home using JAWS, and that the only aspect of the form that she could recall required human assistance was signing the form. Further, "independent completion" is not the applicable standard under the ADA, as exemplified by the entire basis for this action – Plaintiff's demand for scribe services. Scribe services would not entail "independent completion" because Plaintiff is explicitly demanding that someone else fill out the FBNS for her. Plaintiff cannot demand scribe services, which is inherently dependent on another individual transcribing information for her, and then reject electronic assistance on the ground it does not allow for "independent completion," particularly where she does not cite any authority suggesting that the ADA employs such a standard. It does not. Further, while the County disagrees with Plaintiff that the FBNS on the CRO's kiosk is inaccessible using JAWS, that is ultimately irrelevant where CRO employees are authorized to and will assist individuals using the kiosk.

For example, if JAWS is unable to read any text on the FBNS, a CRO employee will read that text to the disabled individual. CRO staff members will also move the mouse/cursor to the correct line or checkbox such that the disabled individual can then check the box or input the required information. In addition, CRO staff members will read the information back to the individual to ensure it is accurate, and otherwise ensure the FBNS has been completed properly. Further, if a disabled person would simply prefer to rely on a CRO staff member's guidance and assistance when using the kiosk, rather than using JAWS, a CRO staff member will read the entire FBNS to the disabled individual, line by line, and ensure the individual is inputting the information in the correct places in the FBNS. This exact situation occurred in July 2022, before the CRO had obtained a license to use JAWS, when a person with a vision disability demanded scribe services relative to an FBNS. She was instead able to complete the FBNS herself on the kiosk, with Mr. Yankee's guidance and sighted assistance.

Indeed, the only difference between this arrangement and the scribe services Plaintiff demands is that, under this arrangement, the CRO's employees would not be personally/physically completing the FBNS for the individual with a vision disability, and would thus be avoiding the significant potential liability that would arise from the provision of scribe services.

Finally, Plaintiff's Fact No. 45 is not material or relevant where the communication between the CRO's clerks and Plaintiff on the day of the incident was effective such that no accommodation was required, and because the CRO, at the time of the incident, already provided (and continues to provide) a reasonable modification in the form of allowing patrons to file the FBNS by mail.  See Dkt. 48-2, Facts 8-9, 27-28, 31, 49-51; Dkt. 63-1, Facts 7-14; Supp. Yankee Dec., ¶¶ 3-7.

46. The most current electronic FBNS form available online in PDF format has instructions that could be read at least in part by a screen reader, but the form fields could not be completed or filled out with a screen reader.  (Decl. of Lucia Greco in Support of Pl.'s Statement of Facts and Oppo. To Def.'s Mot. For Summ. J. on Declar. Relief ("Greco Decl.") ¶¶ 12-13.)

**Defendants' Response:**

46.     Disputed but irrelevant.  The County notes that while Plaintiff now seeks to discredit the ability to complete the electronic FBNS using JAWS, she testified otherwise in her deposition.  She testified that prior to her March 29, 2019, visit to the CRO, which is the subject of this action, she completed the FBNS on her computer at home using JAWS, and that the only aspect of the form that she could recall required human assistance was signing the form.  Further, "independent completion" is not the applicable standard under the ADA, as exemplified by the entire basis for this action – Plaintiff's demand for scribe services.  Scribe services would not entail "independent completion" because Plaintiff is explicitly demanding that someone else fill out the FBNS for her.  Plaintiff cannot demand scribe services, which is inherently dependent on another individual transcribing information for her, and then reject electronic assistance on the ground it does not allow for "independent completion," particularly where she does not cite any authority suggesting that the ADA employs such a standard.  It does not.  Further, while the County disagrees with Plaintiff that the FBNS on the CRO's kiosk is inaccessible using JAWS, that is ultimately irrelevant where CRO employees are authorized to and will assist individuals using the kiosk.

For example, if JAWS is unable to read any text on the FBNS, a CRO employee will read that text to the disabled individual. CRO staff members will also move the mouse/cursor to the correct line or checkbox such that the disabled individual can then check the box or input the required information. In addition, CRO staff members will read the information back to the individual to ensure it is accurate, and otherwise ensure the FBNS has been completed properly. Further, if a disabled person would simply prefer to rely on a CRO staff member's guidance and assistance when using the kiosk, rather than using JAWS, a CRO staff member will read the entire FBNS to the disabled individual, line by line, and ensure the individual is inputting the information in the correct places in the FBNS. This exact situation occurred in July 2022, before the CRO had obtained a license to use JAWS, when a person with a vision disability demanded scribe services relative to an FBNS. She was instead able to complete the FBNS herself on the kiosk, with Mr. Yankee's guidance and sighted assistance.

Indeed, the only difference between this arrangement and the scribe services Plaintiff demands is that, under this arrangement, the CRO's employees would not be personally/physically completing the FBNS for the individual with a vision disability, and would thus be avoiding the significant potential liability that would arise from the provision of scribe services.

Finally, Plaintiff's Fact No. 46 is not material or relevant where the communication between the CRO's clerks and Plaintiff on the day of the incident was effective such that no accommodation was required, and because the CRO, at the time of the incident, already provided (and continues to provide) a reasonable modification in the form of allowing patrons to file the FBNS by mail. See Dkt. 48-2, Facts 8-9, 27-28, 31, 49-51; Dkt. 63-1, Facts 7-14; Supp. Yankee Dec., ¶¶ 3-7.

47. Any of the versions of the electronic FBNS form in PDF format, which Defendants admit they downloaded from their website onto the reserve kiosk for blind people in the CRO (*see* Def.'s Suppl. Statement of Facts in Support of Motion for Summary Judgment ¶ 9, ECF No. 63-1), cannot be independently completed by a blind person with JAWS or another screen reader even if the instructions or some elements can be read by JAWS. (McCall Expert Decl., Exh. D at PL_EXPERT0003, 0013; Clark Expert Decl., Exh. B at PL_EXPERT0027; Greco Decl. ¶¶ 12-13.)

///

**Defendants' Response:**

47. Disputed but irrelevant. The County notes that while Plaintiff now seeks to discredit the ability to complete the electronic FBNS using JAWS, she testified otherwise in her deposition. She testified that prior to her March 29, 2019, visit to the CRO, which is the subject of this action, she completed the FBNS on her computer at home using JAWS, and that the only aspect of the form that she could recall required human assistance was signing the form. Further, "independent completion" is not the applicable standard under the ADA, as exemplified by the entire basis for this action – Plaintiff's demand for scribe services. Scribe services would not entail "independent completion" because Plaintiff is explicitly demanding that someone else fill out the FBNS for her. Plaintiff cannot demand scribe services, which is inherently dependent on another individual transcribing information for her, and then reject electronic assistance on the ground it does not allow for "independent completion," particularly where she does not cite any authority suggesting that the ADA employs such a standard. It does not. Further, while the County disagrees with Plaintiff that the FBNS on the CRO's kiosk is inaccessible using JAWS, that is ultimately irrelevant where CRO employees are authorized to and will assist individuals using the kiosk.

For example, if JAWS is unable to read any text on the FBNS, a CRO employee will read that text to the disabled individual. CRO staff members will also move the mouse/cursor to the correct line or checkbox such that the disabled individual can then check the box or input the required information. In addition, CRO staff members will read the information back to the individual to ensure it is accurate, and otherwise ensure the FBNS has been completed properly. Further, if a disabled person would simply prefer to rely on a CRO staff member's guidance and assistance when using the kiosk, rather than using JAWS, a CRO staff member will read the entire FBNS to the disabled individual, line by line, and ensure the individual is inputting the information in the correct places in the FBNS. This exact situation occurred in July 2022, before the CRO had obtained a license to use JAWS, when a person with a vision disability demanded scribe services relative to an FBNS. She was instead able to complete the FBNS herself on the kiosk, with Mr. Yankee's guidance and sighted assistance.

Indeed, the only difference between this arrangement and the scribe services Plaintiff demands is that, under this arrangement, the CRO's employees would not be personally/physically completing the FBNS for the

1  individual with a vision disability, and would thus be avoiding the significant potential liability that would arise
2  from the provision of scribe services.
3        Finally, Plaintiff's Fact No. 47 is not material or relevant where the communication between the CRO's
4  clerks and Plaintiff on the day of the incident was effective such that no accommodation was required, and
5  because the CRO, at the time of the incident, already provided (and continues to provide) a reasonable
6  modification in the form of allowing patrons to file the FBNS by mail.  See Dkt. 48-2, Facts 8-9, 27-28, 31, 49-
7  51; Dkt. 63-1, Facts 7-14; Supp. Yankee Dec., ¶¶ 3-7.

9  48.    The entire process of transcribing dictated information onto an FBNS form with the CRO staff member
10  acting as a scribe took less than five minutes to complete.  (Greco Decl. ¶ 9.)
11        **Defendants' Response:**
12  48.    Undisputed that the process of transcribing dictated information onto an FBNS form would
13  likely not take an extensive period of time, but irrelevant.  It has never been the County's argument that scribe
14  services, relative to an FBNS, would require an undue expenditure of time.  Nor has the County argued that the
15  provision of scribe services, relative to the FBNS, would be difficult.  Rather, the County has always
16  maintained that it is the significant potential liability that would arise from the provision of scribe services
17  which constitutes the basis for the CRO's policy prohibiting its employees from completing or altering forms
18  for patrons that are filed or recorded in the CRO.  Moreover, while completing an FBNS may not take much
19  time, the implications of Plaintiff's demand for scribe services in this matter are much broader.  Plaintiff is not
20  contending that only the County/CRO has an obligation to provide scribe services, or that the County/CRO
21  only has an obligation to provide such services with respect to an FBNS.  Rather, Plaintiff is arguing that all
22  public entities have an obligation to provide scribe services to persons with vision disabilities on *any* forms
23  related to public services, activities, programs, and benefits.  Not all such forms are as simple and brief as the
24  FBNS.  Indeed, consider the potential implications if the Court were to find that the ADA requires public
25  entities to serve as a personal scribe for a person with a disability, let alone any time a disabled individual
26  demands it.  Court clerks would be required to transcribe pleadings for persons with vision disabilities seeking
27  to use the courts.  Government clerks would be required to do the same on public forms that are much longer

1  and more complicated than an FBNS. Neither the ADA nor the DOJ has provided any guidance on this, likely

2  because there is simply no obligation under the ADA to provide the scribe services Plaintiff demands.

3   Moreover, Plaintiff's Fact No. 48 is not material or relevant where the communication between the

4  CRO's clerks and Plaintiff on the day of the incident was effective such that no accommodation was required,

5  and because the CRO, at the time of the incident, already provided (and continues to provide) a reasonable

6  modification in the form of allowing patrons to file the FBNS by mail. In addition, the CRO also now provides

7  persons with vision disabilities with the opportunity to complete an FBNS on a kiosk in the CRO equipped

8  with JAWS screen access software. Persons with vision disabilities may choose to rely upon JAWS to

9  complete the FBNS and/or the guidance and sighted assistance of a CRO staff member. Again, as a public

10 entity, the type of reasonable accommodation to be provided is solely within the discretion of the County.

11 *Memmer v. Marin County Cts.*, 169 F.3d 630, 634 (9th Cir. 1999); *Leine v. Cal. Dep't of Rehab.*, 205

12 F.3d 1351, *2 (9th Cir. 1999, not published); 28 C.F.R. Pt. 35, App. A § 35.160 (2011)); see Dkt. 48-2,

13 Facts 8-9, 27-28, 31, 49-51; Dkt. 63-1, Facts 7-14; Supp. Yankee Dec., ¶¶ 3-7.

15 49.  Providing scribe services at the CRO is already readily workable, fast, and effective, as demonstrated

16 by current CRO staff's capacity to provide this auxiliary aid or service when requested by some blind people.

17 (Greco Decl. ¶¶ 2-11.)

18 **Defendants' Response**:

19 49.  Disputed, but irrelevant. It has never been the County's argument that scribe services, relative

20 to an FBNS, would require an undue expenditure of time. Nor has the County argued that the provision of

21 scribe services, relative to the FBNS, would be difficult. Rather, the County has always maintained that it is the

22 significant potential liability that would arise from the provision of scribe services which constitutes the basis

23 for the CRO's policy prohibiting its employees from completing or altering forms for patrons that are filed or

24 recorded in the CRO. Moreover, while completing an FBNS may not take much time, the implications of

25 Plaintiff's demand for scribe services in this matter are much broader. Plaintiff is not contending that only the

26 County/CRO has an obligation to provide scribe services, or that the County/CRO only has an obligation to

27 provide such services with respect to an FBNS. Rather, Plaintiff is arguing that all public entities have an

28 obligation to provide scribe services to persons with vision disabilities on *any* forms related to public services,

activities, programs, and benefits. Not all such forms are as simple and brief as the FBNS. Indeed, consider the potential implications if the Court were to find that the ADA requires public entities to serve as a personal scribe for a person with a disability, let alone any time a disabled individual demands it. Court clerks would be required to transcribe pleadings for persons with vision disabilities seeking to use the courts. Government clerks would be required to do the same on public forms that are much longer and more complicated than an FBNS. Neither the ADA nor the DOJ has provided any guidance on this, likely because there is simply no obligation under the ADA to provide the scribe services Plaintiff demands.

Moreover, Plaintiff's Fact No. 49 is not material or relevant where the communication between the CRO's clerks and Plaintiff on the day of the incident was effective such that no accommodation was required, and because the CRO, at the time of the incident, already provided (and continues to provide) a reasonable modification in the form of allowing patrons to file the FBNS by mail. In addition, the CRO also now provides persons with vision disabilities with the opportunity to complete an FBNS on a kiosk in the CRO equipped with JAWS screen access software. Persons with vision disabilities may choose to rely upon JAWS to complete the FBNS and/or the guidance and sighted assistance of a CRO staff member. Again, as a public entity, the type of reasonable accommodation to be provided is solely within the discretion of the County. *Memmer*, 169 F.3d at 634; *Leine*, 205 F.3d at *2; 28 C.F.R. Pt. 35, App. A § 35.160; see Dkt. 48-2, Facts 8-9, 27-28, 31, 49-51; Dkt. 63-1, Facts 7-14; Supp. Yankee Dec., ¶¶ 3-7.

Dated: January 19, 2023

Respectfully submitted,
**ORBACH HUFF + HENDERSON LLP**

By:  /s/ *Nicholas D. Fine*
     Kevin E. Gilbert
     Nicholas D. Fine
     Attorneys for Defendant
     COUNTY OF ALAMEDA