TIMOTHY ELDER (CA BAR NO. 277152)
KRISTOPHER A. NELSON (CA BAR NO. 342552)
**TRE LEGAL PRACTICE**
1155 Market Street, Tenth Floor
San Francisco, CA 94103
Telephone:     (415) 873-9199
Facsimile:     (415) 952-9898
Email: telder@trelegal.com, knelson@trelegal.com

S. Tomiyo Stoner (CA Bar No. 289246)
**Undaunted Law Firm, P.C.**
1500 Dragon St. Suite 160
Dallas, Texas 75039
Telephone:     (214) 415-7340
E-mail: tstoner@undauntedlaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LISAMARIA MARTINEZ**, <br><br> Plaintiff, <br><br> v. <br><br> **COUNTY OF ALAMEDA**, **MELISSA WILK**, in her individual capacity, **EVA HE**, in her individual capacity, **MARIA LAURA BRIONES**, in her individual capacity, <br><br> Defendants. | Case No. 3:20-cv-06570-TSH <br><br> **NOTICE OF MOTION AND MOTION TO BIFURCATE** <br><br><br> Hearing Date: November 2, 2023 <br> Time: 10:00 am <br> Courtroom: via Zoom video conference <br> Judge: Hon. Thomas S. Hixson |

## NOTICE OF MOTION AND MOTION TO BIFURCATE

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 15, on November 2, 2023 at 10:00 AM, or as soon thereafter as the matter may be heard, via Zoom video conference, Plaintiff Lisamaria Martinez will respectfully move this Court to bifurcate this trial into two separate phases under Federal Rule of Civil Procedure 42(b) in order to increase convenience and judicial economy, reduce the risk of jury confusion, and avoid prejudice to the parties. The first phase would be held before a jury and consider the evidence necessary to determine liability and damages for discrimination against Ms. Martinez in 2019. The second phase would be a bench trial to evaluate evidence necessary to determine potential injunctive relief, including changes made by Defendants after the events of 2019.

This Motion is based on this Notice and Motion, the below Memorandum of Points and Authorities, and such other and further evidence and argument as the Court may permit.

## MEMORANDUM OF POINTS & AUTHORITIES

## I.  INTRODUCTION

To increase convenience and judicial economy, reduce the risk of jury confusion, and avoid prejudice to the parties, Plaintiff proposes bifurcating the upcoming trial into two separate phases under Federal Rule of Civil Procedure 42(b):

In the **first phase**, the jury would be presented with a narrow trial of the claims involving Ms. Martinez's visits to Defendant County of Alameda's Clerk-Recorder's Office (CRO) in 2019 and, if Defendants maintain that Ms. Martinez could have completed the process at home or through some other auxiliary aid or service available at the time, considering evidence of why a home-based or other then-available option was not accessible to Ms. Martinez. Despite the CRO's legal obligation to provide auxiliary aids and services to enable effective communication and to prioritize the aid or service she preferred, Ms. Martinez alleges that the County rejected her request for a human scribe and provided no other equally effective alternative. This dispute centers on evidence, including expert opinion, as to the state of things as they were in 2019 rather than how they might be now or in the future. Ms. Martinez seeks damages under the California Disabled Persons Act (DPA) and the Americans with Disabilities Act (ADA) for this failure. As such, Defendants have the right to a jury, which will also determine whether or not the intent requirement has been met on the question of damages.

The **second phase**—necessary only if the jury found in Plaintiff's favor in the first phase—would be a continued bench trial or hearing immediately to follow the jury's verdict to evaluate the evidence of now-available auxiliary aids and services and future plans by the CRO in order to determine what equitable relief would be appropriate. The dispute in this second phase centers on evidence, including expert opinion, as to current and future policies, practices, and impacts now and into the future. To achieve her anti-discrimination goals of equitable relief, Ms. Martinez seeks an injunction under the ADA and California Government Code Section 11135 against the County. As such, there is no right to a jury for that remedy.

Simply put, the crux of Ms. Martinez's case for liability and damages is that the CRO failed to provide her with effective communication when she completed her fictitious business name

1   ("FBN") application in 2019. The County hopes to efface the clear evidence of its prior

2   wrongdoing by improperly presenting the jury with recent evidence of the steps it has taken in

3   response to this litigation. The County's unusual suggestion of trying injunctive relief before the

4   jury will require unnecessarily extending the jury trial for extra days, and will confuse the jury

5   with irrelevant expert testimony, all to the prejudice of Ms. Martinez. So that the parties may

6   effectively prepare their cases for trial, the court should offer guidance by bifurcating the

7   proceedings.

8   ## II.  LEGAL STANDARD

9   "Rule 42(b) of the Federal Rules of Civil Procedure confers broad discretion upon the district

10  court to bifurcate a trial, thereby deferring costly and possibly unnecessary proceedings pending

11  resolution of potentially dispositive preliminary issues." *Zivkovic v. Southern California Edison*

12  Co., 302 F.3d 1080, 1088 (9th Cir. 2002) (citing *Exxon Co. v. Sofec, Inc.,* 54 F.3d 570, 575 (9th

13  Cir.1995)). Courts consider several factors in determining whether bifurcation is appropriate,

14  including whether the issues are clearly separable, and whether bifurcation would increase

15  convenience and judicial economy, reduce the risk of jury confusion, and avoid prejudice to the

16  parties. *See* Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial § 16:160.4

17  (2010); *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982). An additional factor considered by

18  courts when evaluating bifurcation is "whether [the issues sought to be tried separately] are

19  triable by jury or the court." *Ameritas Life Ins. Corp. v. Fed. Ins. Co.*, No. 4:16-CV-3006, 2017

20  WL 432693, at *2 (D. Neb. Jan. 31, 2017). "Because legal and equitable issues are committed to

21  different factfinders, it is common and appropriate to hold separate jury and bench trials on the

22  different issues." *Illinois Tool Works, Inc. v. MOC Prod. Co.*, 946 F. Supp. 2d 1042, 1044 (S.D.

23  Cal. 2012) (citation omitted); *see also Auto Konnect, LLC v. BMW of N. Am., LLC*, No. 18-14019,

24  2022 WL 1724497, at *5 (E.D. Mich. May 27, 2022). Such separation is "particularly appropriate

25  where the equitable issues involve facts that are irrelevant or marginally relevant to the liability

26  issues to be decided by the jury …." *Id.*

27

28

### III. ARGUMENT

#### A.    The trial should be bifurcated into two phases.

Plaintiff proposes to bifurcate the trial into two distinct phases—legal and equitable claims—which would assist with allowing the appropriate finder of fact to evaluate the evidence appropriate to the relief at issue in that phase while maximizing convenience and economy and minimizing jury confusion and any potential prejudice to the parties. *See, e.g., Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001) (bifurcation between equitable and legal claims is permissible provided that, where there are any overlapping issues, legal claims tried to a jury are determined prior to equitable claims tried to a judge); *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th Cir. 1989) (bifurcation between legal and equitable claims is within the court's discretion). *See also, e.g.,* Order Granting Plaintiff's Motion to Bifurcate, *San Bruno Mountain Watch v. Cypress Amloc Land Co.*, No. 3:04-cv-03385, ECF No. 102 (N.D. Cal. Nov. 3, 2005); Order Regarding Further Proceedings, *Payan v. Los Angeles Comm. Coll. Dist.*, No. 2:17-cv-01697, ECF No. 437 (C.D. Cal. Aug. 10, 2021).

#### B.    It is not appropriate to try injunctive relief to the jury.

Injunctive relief is not typically or historically tried to the jury. *See, e.g., Scott v. Neely*, 140 U.S. 106 (1891); *Bennett v. Butterworth*, 52 U.S. 669 (1851). Evaluating the evidence to determine whether injunctive relief is appropriate, including whether such a question is moot, is a matter for the Court rather than a jury to decide, and bifurcation is an appropriate mechanism to assign this task fairly and efficiently to the most appropriate fact-finder. *See, e.g., Danjaq*, 263 F.3d at 962; *Dollar Sys.*, 890 F.2d at 170.

This longstanding division is efficient, logical, and appropriate for this matter, as factual determinations regarding the discrimination Ms. Martinez experienced at a discrete time in 2019 may entirely foreclose the issue of injunctive relief. To the extent injunctive relief can ever be tried to a jury, it is not appropriate here, as the jury will be required to unanimously agree on a highly technical determination regarding the appropriate equitable process for ongoing compliance with the ADA. Not only will this lead to jury confusion, it will create a scenario where a deadlocked jury is more likely to result in wasting judicial resources.

## C. The issues are clearly separable.

Whether Plaintiff was discriminated against in 2019 and should be awarded damages is an issue clearly separable from whether the County must make changes to policies and practices going forward to avoid discrimination. The legal standards, testimony, and evidence to be evaluated for each issue are distinct rather than duplicative; where there is overlap, the jury findings from the first phase can simply be used in the second phase without requiring the evidence be represented to the judge a second time. In this case as in others where the courts approved of bifurcation, "[a]lthough the same witnesses may testify in both phases, the issues and testimony are different." *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 965 (10th Cir. 1993). The relevant evidence in this matter is clearly separable into two distinct categories: (1) evidence regarding the actual auxiliary aids available to Ms. Martinez (if any) in 2019, and (2) evidence regarding new auxiliary aids and services introduced after suit was filed.

In an ADA case involving auxiliary aids or services, it is only appropriate for the jury to consider auxiliary aids and services made available to the plaintiff. Even auxiliary aids available on-site during the time of the encounter need not factor into the analysis if they were not available to the Plaintiff. *See, e.g., Paulone v. City of Federick*, 787 F. Supp. 2d 360 (D. Md. 2011) ("An inaccessible accommodation is no accommodation at all," as when, for example, a communication device is owned by a public entity but never actually made available to a disabled requestor.) Here, Defendant Alameda County's planned improvements and current post-suit actions simply are not relevant to the first jury phase of Ms. Martinez's case, as none were ever available to Ms. Martinez. Evidence of new technologies such as a recently installed kiosk and a recently implemented online form, therefore, do not factor into the equation when approaching the questions of "what would be considered effective communication" in 2019, nor are they relevant to the elements of every other claim about liability from the discrimination she experienced in 2019 that the jury needs to hear.

Likewise, assessing deliberate indifference to establish damages for events in 2019 does not necessitate an examination of changes made after litigation began. Deliberate indifference occurs where there is "both knowledge that a harm to a federally protected right is substantially likely,

NOTICE OF MOTION AND MOTION TO BIFURCATE

and a failure to act upon that likelihood." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001). A plaintiff must therefore show two elements: (1) notice and (2) a failure to act. *Id.* The initial element of notice is squarely resolved without reference to any event after 2019, as Ms. Martinez alleges that she gave notice during her initial visit to the CRO. The second element of failure to act is also conclusively resolved in a similar timeline. The failure to act element is satisfied by alleging the defendant did not "undertake the fact-specific investigation necessary to determine what constitutes a reasonable accommodation." *Id.* The relevant fact-specific investigation must occur before the denial of an auxiliary aid or service, *id.* at 1139-40*,* and accordingly, can likewise be resolved without referencing events after 2019.

### D.    Bifurcation would reduce the risk of jury confusion.

If the Defendant presents the jury with evidence regarding technologies introduced after suit was filed, the jury is likely to be confused. After hearing what might be days of expert testimony regarding several different systems, jurors will have a difficult time understanding and agreeing upon key facts. Confusion is particularly likely as the visual elements of various versions of the FBN form may be identical. For example, testimony about how the identical FBN form is "tagged" to be accessible for users of screen-reading technology, jurors, or even witnesses, could easily become confused about the version of the form being discussed and whether it is relevant to liability for events in 2019 or for present injunctive relief. Likewise, while the substance of the FBN online form is the same as the PDF form, the accessibility issues presented by the online form format are completely different. Discussion of, for example, "the signature block," may lead to jury confusion if the specific form in question is not spelled out every time or if a juror fails to hear or pay attention to the minute details.

Likewise, because there were multiple changes to the system over time, it is likely jurors will be confused as to which version of the system is being discussed. Rather than taking the jury down the confusing path of evaluating multiple systems, it is more appropriate for a jury to examine Ms. Martinez's visit to the CRO and the alternative options for completing an FBN form available at that time, if any. Simple bifurcation into two phases and proper exclusion of inadmissible evidence readily avoids this likely potential for juror confusion.

**E.     Bifurcation will increase convenience and judicial economy.**

"Bifurcation is often in the interest of efficiency and judicial economy when the resolution of one claim may obviate the need to adjudicate one or more other claims." *Desmare v. New Mexico*, No. 07-199, 2007 WL 5231690, at *2 (D.N.M. Aug. 14, 2007) (citing *Mandeville v. Quinstar Corp.*, 109 F. App'x 191, 194 (10th Cir. 2004)); *see also, e.g, Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir.1999) (bifurcation appropriate where "the litigation of the first issue might eliminate the need to litigate the second issue").

Here, bifurcation serves the interest of judicial economy. If the jury rules against Plaintiff on liability, then there is no need to hear the evidence relevant only to injunctive relief, such as expert analysis of new technologies and systems at the CRO that were put in place after the events of 2019. Additionally, overlapping evidence presented to the jury in the first phase will also be heard by the Court and need not be repeated in the second phase.

**F.     Bifurcation avoids prejudice to the parties.**

The failure to bifurcate will significantly prejudice Ms. Martinez. Allowing extensive evidence regarding the CRO's after-litigation remedies to be heard by the jury—where it is irrelevant to any of the elements of liability or damages for events in 2019, including the evaluation of intent—might result in the jury feeling that past harms have already been corrected and thus impermissibly allow this to influence their findings about events in 2019, including damages. The potentially prejudicial effects of this evidence are avoided if the trial is bifurcated such that the jury does not hear evidence of later changes at the CRO, which are in any case only relevant to judicial evaluation of injunctive relief.

The likelihood of prejudice is particularly strong when jurors will be asked to determine whether there has been "deliberate indifference" in Defendants' treatment of Ms. Martinez in 2019. Although subsequent changes are irrelevant to the legal question of deliberate indifference, jurors may hesitate to find intent after hearing extensive evidence of subsequent attempts to provide effective communication, even if those well-meaning attempts fall short of legal requirements.

**G.      Defendants' Seventh Amendment Rights are not impaired by Plaintiff's proposed bifurcation.**

Although federal courts are no longer divided into entirely separate divisions for law and equity, that division still matters when considering the Seventh Amendment right to a jury trial and bifurcation. *See, e.g., Dollar Sys*, 890 F.2d at 170 ("the district judge acted within his authority in bifurcating the legal and equitable claims pursuant to Fed.R.Civ.P. 42"). Under Plaintiff's proposal of bifurcating the trial into two phases, by first conducting a jury trial on Plaintiff's claims about events in 2019, including her claims for damages (legal claims), and only then considering her claims for equitable relief (i.e., an injunction) in a second bench trial or hearing immediately following the jury verdict, the Seventh Amendment rights of Defendants are not impaired. *See Beacon Theatres, Inc. v. Westover*, 359 US 500, 510-511 (1959); *see also Danja*, 263 F3d at 961-962.

## IV. CONCLUSION

For the above reasons, Plaintiff Lisamaria Martinez asks the Court to bifurcate the trial into two phases and limit the presentation of evidence of actions after the 2019 incidents to the second phase, held after the jury is excused.

DATED: September 27, 2023            Respectfully submitted,

TRE LEGAL PRACTICE

*/s/ Timothy Elder*
Timothy R. Elder

*Attorneys for Plaintiff*