Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohhlegal.com
Nicholas D. Fine, Esq. (SBN: 285017)
nfine@ohhlegal.com
**ORBACH HUFF + HENDERSON LLP**
6200 Stoneridge Mall Road, Suite 225
Pleasanton, CA  94588
Telephone:     (510) 999-7908
Facsimile:      (510) 999-7918

Attorneys for Defendant
COUNTY OF ALAMEDA, MELISSA WILK, EVA HE,
AND MARIA LAURA BRIONES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LISAMARIA MARTINEZ,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>COUNTY OF ALAMEDA, MELISSA WILK, in her individual capacity, EVA HE, in her individual capacity, MARIA LAURA BRIONES, in her individual capacity,<br><br>　　　　　　Defendants. | Case No.  20-cv-06570-TSH<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO BIFURCATE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:         November 2, 2023<br>TIME:          10:00 a.m.<br>DEPT:         Zoom (Video Conference)<br>JUDGE:       Hon. Thomas S. Hixson |

Defs' Opposition to Plt's Motion to Bifurcate; P&A [20-cv-06570-TSH]

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL AND PROCEDURAL BACKGROUND.................................................... 2

    A. The Incident ......................................................................................................... 2

    B. The CRO's Implementation of an Additional Accommodation ........................... 3

    C. Procedural History ............................................................................................... 5

III. LEGAL ARGUMENT .................................................................................................... 6

    A. Legal Standard ..................................................................................................... 6

    B. The County is Entitled to a Jury Trial to Determine the Reasonableness of the Kiosk Accommodation .................................................................................... 6

    C. The Issues Are Clearly Not Separable ................................................................. 9

    D. Bifurcation Would Compromise Judicial Economy and Inconvenience the Court, Counsel, the Parties and the Jury ........................................................... 10

    E. There Are No Concerns of Juror Confusion or Prejudice to Plaintiff ............... 10

    F. Bifurcation Would Prejudice the County .......................................................... 12

IV. CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Am. Cargo Transp., Inc. v. United States*,
  625 F.3d 1176 (9th Cir. 2010) ............................................................................................... 7

*Angelo v. Armstrong World Indus.*,
  11 F.3d 957 (10th Cir. 1993) ............................................................................................... 12

*Bates v. United Parcel Serv.*,
  204 F.R.D. 440 (N.D. Cal. 2001) .......................................................................................... 6

*Bax v. Doctors Medical Center of Modesto, Inc.*,
  52 F.4th 858 (9th Cir. 2022) .................................................................................................. 7

*Bayer v. Neiman Marcus Grp., Inc.*,
  861 F.3d 853 (9th Cir. 2017) ................................................................................................. 7

*Burton v. Mountain W. Farm Bureau Mut. Ins. Co.*,
  214 F.R.D. 598 (D. Mont. 2003) ......................................................................................... 12

*Coppi v. City of Dana Point*,
  88 F.Supp.3d 1122 (C.D. Cal. 2015) .................................................................................... 7

*Deocampo v. City of Vallejo*,
  2007 WL 1614572 (E.D. Cal. 2007) ..................................................................................... 6

*Dowling v. MacMarin, Inc.*,
  156 F.3d 1236 (9th Cir. 1998) .............................................................................................. 7

*Green v. Baca*,
  226 F.R.D. 624 (C.D. Cal. 2005) .......................................................................................... 6

*Hangarter v. Provident Life & Accident Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004) ................................................................................................ 6

*Holtzclaw v. Certainteed Corp.*,
  795 F.Supp.2d 996 (E.D. Cal. 2011) .................................................................................... 7

*Houseman v. U.S. Aviation Underwriters*,
  171 F.3d 1117 (7th Cir. 1999) ............................................................................................ 12

*Lozano v. Cnty. of Santa Clara*,
  2017 WL 945025 (N.D. Cal. Jan. 13, 2017) ......................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

*Lujan v. Pac. Mar. Ass'n*,
    165 F.3d 738 (9th Cir. 1999) .................................................................................................. 8

*Payan v. Los Angeles Cmty. Coll. Dist.*,
    Case No. 17-cv-1697-SVW-SK, 2018 WL 6164269 (C.D. Cal. Oct. 16, 2018) ............... 8, 9

*Sanford v. Red Robin Int'l, Inc.*,
    2005 WL 3439689 (E.D. Cal. Dec. 14, 2005) ........................................................................ 8

*Sec. & Exch. Comm'n v. Pac. W. Cap. Grp., Inc.*,
    2018 WL 6822607 (C.D. Cal. Feb. 13, 2018) ...................................................................... 12

*Sheehan v. City & County of San Francisco*,
    743 F.3d 1211 (9th Cir. 2014) ................................................................................................ 8

*Sommers v. City of Santa Clara*,
    516 F.Supp.3d 967 (N.D. Cal. 2021) ...................................................................................... 8

*Svege v. Mercedes-Benz Credit Corp.*,
    329 F.Supp.2d 283 (D. Conn. 2004) ...................................................................................... 6

*Transcon. Ins. Co. v. St. Paul Mercury Ins. Co.*,
    2006 WL 3859009 (D. Mont. Dec. 1, 2006) ........................................................................ 12

*U.S. E.E.O.C. v. UPS Supply Chain Sols.*,
    620 F.3d 1103 (9th Cir. 2010) ................................................................................................ 8

*Vinson v. Thomas*,
    288 F.3d 1145 (9th Cir. 2002) ............................................................................................ 8, 9

*Yanni v. City of Seattle*,
    2005 WL 2180011 (W.D. Wash. Sept. 9, 2005) .................................................................. 12

*Yphantides v. County of San Diego*,
    --F.Supp.3d-- (S.D. Cal. Mar. 9, 2023) .................................................................................. 8

**Regulations**

28 C.F.R. section 35.104 ................................................................................................................ 5

**Federal Rules**

Federal Rules of Civil Procedure:
    42(b) ......................................................................................................................... 6, 11, 12

## I. INTRODUCTION

Plaintiff seeks to bifurcate and try her claim for liability and retrospective relief to a jury first, before then trying her claim for prospective injunctive relief to the Court in a bench trial. The primary basis of her request appears to be her contention that the County of Alameda[1] is not entitled to a jury trial on Plaintiff's claim for prospective injunctive relief. Plaintiff is misguided.

While it may be the role of the Court to determine whether injunctive relief is appropriate, the County is entitled to have a jury adjudicate questions of material fact. Under well-established law, whether a particular accommodation is reasonable under the Americans with Disabilities Act ("ADA") is such a question of material fact. That is exactly the case here. Indeed, assuming for argument's sake that the jury finds in favor of Plaintiff on liability,[2] the primary question underlying Plaintiff's demand for prospective injunctive relief is whether the CRO's most recent accommodation for persons with vision disabilities – which involves the use of a computer kiosk, screen-reader software, and corresponding human assistance to electronically complete an FBNS – constitutes a reasonable accommodation under the ADA. This is because the removal of barriers to access prior to trial has the effect of mooting a claim for prospective injunctive relief under the ADA, and it is ultimately within the discretion of the public entity to determine the type of accommodation to provide. Accordingly, while it may ultimately be the Court which decides whether to issue prospective injunctive relief, that decision

---

[1] Plaintiff previously named as Defendants certain individual County employees, including Melissa Wilk, Eva He, and Maria Laura Briones, and alleged that they violated Title V of the ADA. The Court previously dismissed the Title V claim in response to the County's initial motion for summary judgment. Dkt. 54, at 9:13-10:2. The dismissal of the Title V claim operated as a dismissal of the individual Defendants. The Title V claim was the only ADA claim asserted against the individual Defendants, and Plaintiff represented (as confirmed in the Court's order on the initial cross-MSJ's) that her state law claims are solely derivative of her ADA claims. Id., at 10:3-13. Therefore, because the Title V claim was dismissed against the individual Defendants, there are no surviving causes of action that remain asserted against the individual Defendants.

[2] The County continues to maintain that the communication between the CRO and Plaintiff on the day of the incident was effective, such that no accommodation in the form of an auxiliary aid or service was required, and that if an accommodation was required on the day of the incident, the CRO provided Plaintiff with such a reasonable accommodation in the form of allowing patrons to file FBNS's by mail. The County recognizes that if the jury finds in favor of the County on either of those points, there can be no liability to the County and no basis for the Court to issue prospective injunctive relief. Thus, in order to respond to Plaintiff's arguments in the Motion, much of this Opposition is written in *arguendo*, meaning it assumes for argument's sake that the jury finds for Plaintiff on liability such that Plaintiff's demand for prospective injunctive relief is at issue.

must be based on the *jury's* determination of the underlying factual question regarding whether the CRO's kiosk accommodation reasonably removes the alleged barriers to access.

And, given that the County is entitled to have a jury determine whether the CRO's kiosk accommodation constitutes a reasonable accommodation under the ADA, bifurcation becomes entirely nonsensical. Indeed, Plaintiff admits that the "crux" of her case "is that the CRO failed to provide her with effective communication when she completed her [FBNS] in 2019." Motion, at 3:27-4:1. Under the ADA, analyzing effective communication requires consideration of the individual circumstances of each case and a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow equal access. Thus, for purposes of liability, to determine whether there was effective communication on the day of the incident and, if not, whether allowing patrons to file FBNS's by mail constituted a reasonable accommodation, the jury must conduct a fact-specific, individualized analysis of Plaintiff's specific, individual circumstances. Then, if the jury finds liability, it must consider *this exact same evidence of Plaintiff's specific, individual circumstances* to determine whether the CRO's most-recent kiosk accommodation constitutes a reasonable accommodation under the ADA. As such, bifurcation would result in a substantial amount of the exact same evidence being presented to the jury twice, would compromise judicial efficiency, waste the time and resources of the Court, the parties, and the jury, and prejudice the County through the delay, increased expense, and inconvenience that would result from such unnecessary and impractical bifurcation.

For these reasons, the County respectfully requests that the Court deny Plaintiff's Motion to Bifurcate, with prejudice.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Incident

Plaintiff, who is blind, was seeking to file an FBNS for her business. She obtained an electronic version of a blank FBNS that the CRO makes available online and filled it out at home using her own JAWS screen-reader software. Plaintiff then visited the CRO the afternoon of March 29, 2019, to file her FBNS. Clerk Angelina Moran ("Moran") reviewed Plaintiff's FBNS and determined that Plaintiff had made several errors in the form which had to be corrected before it could be filed. Plaintiff demanded that Moran make the corrections on the FBNS for Plaintiff, due to Plaintiff being blind. This

was the *only* accommodation Plaintiff claims she requested from Moran. Moran advised Plaintiff that Moran was prohibited from modifying the FBNS for Plaintiff due to the CRO's policy prohibiting its clerks from completing or modifying forms for patrons that are filed or recorded in the CRO ("Policy"). Plaintiff then demanded that Moran's supervisor, Briones, make the corrections for Plaintiff. Briones advised Plaintiff that she was prohibited from doing so due to the CRO's Policy. Briones then prepared a letter for Plaintiff which explained the corrections Plaintiff needed to make to the FBNS before it could be filed and provided it to Plaintiff ("Go-Back Letter").[3] Plaintiff used the information in the Go-Back Letter to correctly complete a new FBNS at home using JAWS. However, rather than mail the corrected FBNS in for filing, she voluntarily returned to the CRO on May 31, 2019, and a CRO clerk filed the FBNS for Plaintiff.

### B. The CRO's Implementation of an Additional Accommodation

The CRO has long had computer kiosks in the physical CRO for patrons to use, in what the CRO calls the "Public Files" room. Since in or about October 2022, the CRO has reserved one of those kiosks for use by persons with disabilities and equipped that kiosk with Jobs Access With Speech ("JAWS") screen-reader software. The CRO then installed a blank, fillable electronic (.pdf) version of the FBNS on the kiosk, so that persons with vision disabilities could complete the electronic FBNS on the kiosk in the CRO, using JAWS. Further, the CRO recently implemented a new FBNS software suite that the County's vendor has been developing since before this action was filed, and which is now available on the kiosks in the CRO and online.[4] The CRO has verified that the new FBNS software

---

[3] The Go-Back Letter specifically advised Plaintiff that she could mail her corrected FBNS back in to the CRO for filing and Briones provided Plaintiff with a self-addressed envelope for that purpose. Indeed, at the time of the incident and continuing through the present day, the CRO allows all patrons to file FBNS's by mail, which serves not only as a convenience for members of the public, but an accommodation for persons with disabilities who may otherwise allege that they face barriers to access in the CRO's physical office. Dep't of Justice, Title II Primer (https://archive.ada.gov/regs2010/titleII_2010/title_ii_primer.html), p. 9 (allowing mail or email filing of government forms constitutes a reasonable accommodation for services that are otherwise inaccessible to individuals with disabilities in the physical government office).

[4] The CRO installed the blank, fillable (.pdf) version of the FBNS on the kiosk in the CRO reserved for persons with disabilities because the new FBNS software suite was taking longer to develop and implement than expected, and the CRO wanted to ensure that persons with vision disabilities could take advantage of the kiosk equipped with JAWS, immediately. Therefore, the fillable (.pdf) version of the FBNS was installed on the kiosk as a stop-gap, until the new FBNS software suite was completed.

- 3 -

Defs' Opposition to Plt's Motion to Bifurcate; P&A [20-cv-06570-TSH]

suite is compatible with the version of JAWS installed on the kiosk reserved for persons with disabilities. Accordingly, persons with vision disabilities have the opportunity to complete an electronic version of the FBNS in the CRO, on a computer kiosk reserved for persons with disabilities and equipped with JAWS, whether using the new FBNS software suite or the fillable (.pdf) FBNS.

Moreover, persons with vision disabilities have the option of relying on JAWS for assistance, or if they would prefer, on the guidance and assistance of a CRO staff member. Indeed, CRO staff members have been authorized and directed to reasonably assist persons with disabilities who are using the kiosk, to the absolute extent possible, so long as the disabled person inputs the requisite information himself or herself. For example, if a person with a vision disability would simply prefer not to use JAWS, a CRO staff member will view the FBNS on the kiosk's screen, read the FBNS to the disabled individual, and move the mouse cursor to the correct location so that the disabled individual can enter his or her applicable information. Further, if a person with a vision disability opts to use JAWS and JAWS is unable to read any of the text that the disabled individual needs to perceive, a CRO staff member will read that text to the disabled individual and ensure the cursor is in the correct location for the disabled individual to enter his or her information. CRO staff members will also read the information the individual entered into the FBNS back to the individual, to ensure it is accurate, and otherwise confirm the FBNS has been completed properly. CRO staff will also print the FBNS for the disabled patron, assist him or her with signing it, and file it. To this end, the CRO now has metal "signature guides" available in the CRO, which can assist persons with vision disabilities in signing documents.[5]

///

///

///

---

However, the CRO has not and will not remove the fillable (.pdf) version of the FBNS from the kiosk, even though the new software suite has been implemented. Rather, the CRO is keeping both options available on the kiosk in case there is ever a situation where one or the other is rendered temporarily unavailable.

[5] For purposes of simplicity, this accommodation and *all* of its components – including the computer kiosk, JAWS screen-reader software, the two electronic versions of the FBNS, and the associated human assistance by CRO staff members to complete, print and sign the form – is referred to herein as the "Kiosk Accommodation."

This Kiosk Accommodation is no different than the "scribe services" Plaintiff is demanding, except that it provides a method for the disabled individual to input the requisite information into the FBNS himself or herself, and therefore, protects the CRO from the significant potential liability associated with scribe services.[6]

**C.   Procedural History**

Trial is scheduled to commence on March 25, 2024.  The parties both previously filed two motions for summary judgment/adjudication.  Relevant to Plaintiff's pending Motion, the Court previously issued an Order on the first round of cross-motions for summary judgment filed by the parties, in which the Court held, in part:

(1)   "However, what would be considered effective communication, whether an appropriate request for accommodation was made, and whether Defendants met their 'duty to gather sufficient information from the disabled individual and qualified experts as needed to determine what accommodations are necessary,' … based on the audio recordings and testimony 'requires a fact-specific, individualized analysis of [Martinez's] circumstances[.]' [Citations omitted.]  This required fact-finding and credibility determination are more appropriate for a jury."  See Dkt. 54, Order on Cross-MSJ's, at 7:13-20.

(2)   "Defendants offer evidence of alternative methods of filing documents at the CRO, such as mailing and the CRO's plan to have an 'upgraded software suite' where visually impaired patrons may use kiosks to modify their forms. … Whether patrons are denied meaningful access under the CRO's policy despite the option to mail documents and the CRO's plan raises genuine issues of material fact precluding summary judgment."  Id., at 9:1-6.

///

///

---

[6] In addition to 28 C.F.R. section 35.104 itself, the Department of Justice's ("DOJ") technical guidance makes it abundantly clear that the Kiosk Accommodation constitutes a reasonable accommodation/auxiliary aid for blind individuals, including the Tool Kit of Best Practices (which provides that there "are a variety of auxiliary aids and services" for "individuals…who are blind or have low vision," including "materials in electronic format on compact discs or in emails…," and that "screen readers," "computer terminals," and "materials in electronic format" are acceptable), and the "ADA Update: A Primer for State and Local Governments" and "Effective Communication" manuals.  See https://archive.ada.gov/pcatoolkit/toolkitmain.htm, https://archive.ada.gov/regs2010/titleII_2010/title_ii_primer.html, https://archive.ada.gov/effective-comm.htm.

### III. LEGAL ARGUMENT

#### A. Legal Standard

Federal Rules of Civil Procedure Rule 42(b) states in relevant part that a court may "[f]or convenience, to avoid prejudice, or to expedite and economize . . . order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. Rules Civ. Proc. 42(b).  Factors to be considered in deciding whether to order separate trials include:  avoiding prejudice, separability of the issues, convenience, judicial economy, and risk of confusion.  *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 448 (N.D. Cal. 2001).  "Rule 42(b) merely allows, but does not require, a trial court to bifurcate cases in furtherance of convenience or to avoid prejudice." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (emphasis in original) (internal quotation marks omitted).  Indeed, unless it can be demonstrated that bifurcation is worthwhile, "separation of issues for trial is not to be routinely ordered." *Deocampo v. City of Vallejo*, 2007 WL 1614572, *1 (E.D. Cal. 2007) (quoting 1996 Amend. to Adv Comm. Notes to Rule 42(b)).  Bifurcation is "the exception, not the rule, and the movant must justify bifurcation on the basis of the substantial benefits that it can be expected to produce." *Svege v. Mercedes-Benz Credit Corp.*, 329 F.Supp.2d 283, 284 (D. Conn. 2004).  The decision on whether to bifurcate a trial is reserved for the court's discretion. *Green v. Baca*, 226 F.R.D. 624, 630 (C.D. Cal. 2005) ("Whether to bifurcate is a decision reserved to the trial court's 'sound discretion.'").

Plaintiff seeks to bifurcate trial into two phases, the first being a jury trial dedicated to adjudicating whether the County has liability for the events Plaintiff alleges to have occurred on the day of the incident, March 29, 2019, and the second being a bench trial to adjudicate whether the Kiosk Accommodation precludes Plaintiff's claim for prospective injunctive relief.  Motion, at 3:6-26.  Bifurcation is not appropriate here where the issues are clearly not separable and because bifurcation would lead to the duplication of a significant amount of evidence, compromise judicial economy, inconvenience all involved, and prejudice the County.

#### B. The County is Entitled to a Jury Trial to Determine the Reasonableness of the Kiosk Accommodation

Plaintiff disingenuously contends there is no right to a jury trial for her proposed second phase of trial, whereby the Court would determine in a bench trial whether the CRO's Kiosk Accommodation

constitutes a reasonable accommodation under the ADA.  Motion, at 3:26.  Plaintiff's sole argument in this regard is that the County is not entitled to a jury trial on a claim for prospective injunctive relief, and thus, the County's Seventh Amendment right to a jury trial would not be impaired.  Motion, at 9:3-12.  However, Plaintiff's argument is premised on a flawed analysis, in that she is conveniently focusing on the relief sought and ignoring the primary factual question which must be answered to determine whether prospective injunctive relief is warranted, and for which there is clearly a right to a jury trial.

Specifically, in the event the jury finds for Plaintiff on liability, such that Plaintiff's demand for prospective injunctive relief is at issue, then there would exist a question of material fact regarding whether the Kiosk Accommodation constitutes a reasonable accommodation under the ADA.  This is because the removal of barriers to access prior to trial has the effect of mooting a claim for prospective injunctive relief under the ADA.[7]  *Dowling v. MacMarin, Inc.*, 156 F.3d 1236, 1236 & n. 1 (9th Cir. 1998) (holding that being "fully in compliance with the ADA" due to "recent renovations" renders an ADA claim moot); *Coppi v. City of Dana Point,* 88 F.Supp.3d 1122, 1138 (C.D. Cal. 2015) ("In the ADA context, a defendant's voluntary removal of barriers, where permanent, may moot a plaintiff's claim."); *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010) (in cases where the government is a defendant, there is a presumption that the government acts in good faith and its cessation of allegedly illegal conduct should be treated with more solicitude by the courts than similar actions taken by private parties."); *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017) ("A plaintiff who cannot reasonably be expected to benefit from prospective relief ordered against the defendant has no claim for an injunction.").

Thus, if the Kiosk Accommodation reasonably removes the alleged barriers to access regarding FBNS's, then Plaintiff's demand for prospective injunctive relief would be rendered moot, and it is well-established in the Ninth Circuit and in federal courts generally that whether a particular accommodation is reasonable under the ADA is a question of fact for the jury, not the Court.  See *Holtzclaw v. Certainteed Corp.*, 795 F.Supp.2d 996, 1019 (E.D. Cal. 2011) ("the reasonableness of an accommodation is an issue for the

---

[7] Notably, the public entity is entitled to select the type of accommodation to provide, to remove the alleged barriers to access, so long as it is reasonable.  *Bax v. Doctors Medical Center of Modesto, Inc.*, 52 F.4th 858, 867 (9th Cir. 2022) ("The ADA regulations applicable to public accommodations, however, make clear that 'the ultimate decision as to what measures to take rests with the public accommodation, provided that the method chosen results in effective communication.'").

ORBACH HUFF + HENDERSON LLP

1 jury"); *Yphantides v. County of San Diego*, --F.Supp.3d--, 2023 WL 2438916, *11 (S.D. Cal. Mar. 9, 2023)
2 ("the reasonableness of an accommodation is an issue for the jury"); *Sommers v. City of Santa Clara*, 516
3 F.Supp.3d 967, 990 (N.D. Cal. 2021) ("the Ninth Circuit noted that the reasonableness of an accommodation is
4 ordinarily a question of fact left for the jury") (citing *Sheehan v. City & County of San Francisco*, 743 F.3d
5 1211, 1233 (9th Cir. 2014)).  Indeed, "[d]etermining the reasonableness of accommodations under the dual
6 prongs of effective communications and equal opportunity 'depends on the individual circumstances of each
7 case' and requires a 'fact-specific, individualized analysis of the disabled individual's circumstances and the
8 accommodations that might allow him to meet the program's standards" (*Payan v. Los Angeles Cmty. Coll.*
9 *Dist.*, Case No. 17-cv-1697-SVW-SK, 2018 WL 6164269, at *10 (C.D. Cal. Oct. 16, 2018) (citing *Vinson v.*
10 *Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002)); *U.S. E.E.O.C. v. UPS Supply Chain Sols.*, 620 F.3d 1103, 1110
11 (9th Cir. 2010) (the determination of whether a particular accommodation is reasonable is ordinarily a question
12 of fact that is best left to the jury); *Lujan v. Pac. Mar. Ass'n*, 165 F.3d 738, 743 (9th Cir. 1999); *Lozano v. Cnty.*
13 *of Santa Clara*, 2017 WL 945025, at *8 (N.D. Cal. Jan. 13, 2017).

14       Accordingly, while it may ultimately be within the province of the Court to order injunctive relief, it is
15 properly the province of the jury to determine the material factual disputes underlying the demand for
16 injunctive relief, such as the reasonableness of the Kiosk Accommodation.  In fact, in ruling on the prior
17 cross-motions for summary judgment, this Court has already held that whether the CRO's
18 accommodations constitute reasonable accommodations under the ADA "raises genuine issues of
19 material fact."  See Dkt. 54, at 9:1-9 ("Defendants offer evidence of alternative methods of filing
20 documents at the CRO, such as mailing and the CRO's plan to have an 'upgraded software suite' where
21 visually impaired patrons may use kiosks to modify their forms. … Whether patrons are denied
22 meaningful access under the CRO's Policy despite the option to mail documents and the CRO's plan
23 raises genuine issues of material fact precluding summary judgment."); see also id., at 7:13-21 (holding
24 that whether an accommodation allows for effective communication, such that it constitutes a reasonable
25 accommodation under the ADA, is a question of fact "more appropriate for a jury."); see also *Sanford v.*
26 *Red Robin Int'l, Inc.*, 2005 WL 3439689, at *2 (E.D. Cal. Dec. 14, 2005) ("At oral argument, plaintiff's counsel
27 argued that although some barriers may be moot, plaintiff has not seen the changes made and therefore cannot
28 be certain that the alleged barriers have been removed in accordance with the ADA.  However, as plaintiff's

counsel went on to concede, even if defendants' recent changes are also not ADA compliant, the very fact that changes have been made leaves open questions of fact sufficient to defeat a motion for summary judgment. Therefore, because disputed issues of material fact remain…").

For these reasons, the County is entitled to have a jury determine the reasonableness of the Kiosk Accommodation, which constitutes a well-established question of fact. Thereafter, and depending on the jury's factual finding, the Court would determine whether to order prospective injunctive relief.

### C. The Issues Are Clearly Not Separable

Plaintiff disingenuously argues that the "issues are clearly separable," contending that the relevant evidence can be classified into two categories, including evidence regarding the auxiliary aids available to Plaintiff on the day of the incident, and evidence regarding any new auxiliary aids and services introduced after Plaintiff filed suit. Motion, at 6:2-12. Her entire argument is that the County's "planned improvements and current post-suit actions simply are not relevant to the first jury phase of [Plaintiff's] case, as none were ever available to [Plaintiff]." Id., at 6:19-25.

However, bifurcation would be nonsensical in this context given that the jury must decide the reasonableness of the Kiosk Accommodation, which is not separable from the jury's analysis of liability. Indeed, Plaintiff admits that the "crux" of her case "is that the CRO failed to provide her with effective communication when she completed her [FBNS] in 2019." Motion, at 3:27-4:1. "Determining the reasonableness of accommodations under the dual prongs of effective communications and equal opportunity 'depends on the individual circumstances of each case' and requires a 'fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards." See *Payan v. Los Angeles Cmty. Coll. Dist.,* Case No. 17-cv-1697-SVW-SK, 2018 WL 6164269, at \*10 (C.D. Cal. Oct. 16, 2018) (citing *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002)). Thus, for purposes of liability, to determine whether there was effective communication on the day of the incident and, if not, whether allowing patrons to file FBNS's by mail constituted a reasonable accommodation, the jury must conduct a fact-specific, individualized analysis of the evidence of Plaintiff's specific, individual circumstances on the day of the incident. Then, if the jury finds liability, it must consider *this exact same evidence of Plaintiff's specific, individual circumstances* to determine whether the Kiosk Accommodation constitutes a reasonable accommodation under the ADA.

In other words, all of the evidence applicable to the question of liability is likewise applicable to the reasonableness of the Kiosk Accommodation – they are clearly not separable issues. As such, it would be a colossal waste of time and judicial resources for the jury to determine whether the communication between the CRO and Plaintiff was effective on the day of the incident, and whether allowing patrons to file FBNS's by mail constituted a reasonable accommodation, without also determining the reasonableness of the Kiosk Accommodation *based on the exact same evidence of the exact same factual circumstances*.

### D. Bifurcation Would Compromise Judicial Economy and Inconvenience the Court, Counsel, the Parties and the Jury

Offering virtually no argument at all, Plaintiff contends that bifurcation will increase convenience and judicial economy, because if the jury rules against Plaintiff on liability, then there would be no need to hear evidence relevant to Plaintiff's claim of prospective injunctive relief. Motion, at 8:8-12. However, as just discussed, the same evidence applies to both proposed phases of trial and Plaintiff is ignoring the obvious outcome should the Court bifurcate trial and should the jury find in Plaintiff's favor on liability.[8] Specifically, as just discussed, the jury would then need to determine whether the Kiosk Accommodation constitutes a reasonable accommodation *under the exact same factual circumstances that the jury just evaluated in determining liability*. The exact same evidence from Plaintiff's proposed first phase of trial would necessarily have to be presented to the jury again in the proposed second phase – the same witnesses, the same testimony, the same audio recordings, the same documents, etc. Bifurcation is not appropriate when the exact same evidence is applicable to the issues that Plaintiff seeks to separate, as it would lead to the duplication of evidence, a substantial waste of judicial time and resources, and inconvenience the Court, the parties, their counsel, and most importantly, the jury.

### E. There Are No Concerns of Juror Confusion or Prejudice to Plaintiff

Plaintiff repeatedly argues that the jury will be "confused" if the Court does not bifurcate trial, but it is clear from her arguments that "confusion" is not her real concern. Motion, at 7:11-14, see also

---

[8] Plaintiff appears to argue that if the jury finds in favor of Plaintiff on liability, then "overlapping evidence presented to the jury in the first phase will also be heard by the Court and need not be repeated in the second phase." Motion, at 8:11-12. Plaintiff is assuming in this argument that the County is not entitled to have the jury determine the reasonableness of the Kiosk Accommodation, which is incorrect as a matter of law, as discussed at length above.

Defs' Opposition to Plt's Motion to Bifurcate; P&A [20-cv-06570-TSH]

4:3-5.  In fact, she has not provided *any* authority or evidence that the specific circumstances of this case are likely to result in juror confusion if they are not bifurcated in the manner Plaintiff seeks.  Plaintiff simply asserts that the "jurors will have a difficult time understanding and agreeing upon key facts" (id., at 7:12-14), which is both wholly conclusory and presumes that the average juror lacks the intelligence to understand this matter.  Plaintiff, of course, offers no support for this grim assessment of jurors in California, likely because Plaintiff is not truly concerned about juror confusion.[9]  Rather, she is improperly attempting to use the bifurcation procedure to modify trial to the form she believes will give her the best odds of prevailing, not because bifurcation is actually warranted.  Indeed, it is not.

This is abundantly evident in Plaintiff's prejudice arguments, where she contends that "[a]llowing extensive evidence regarding the CRO's after-litigation remedies to be heard by the jury…might result in the jury feeling that past harms have already been corrected and thus impermissibly allow this to influence their findings about events in 2019, including damages."  Motion, at 8:14-19.  Plaintiff further elaborates on this concern relative to her claim of deliberate indifference, stating that "jurors may hesitate to find intent after hearing extensive evidence of subsequent attempts to provide effective communication, even if those well-meaning attempts fall short of legal requirements."  Id., at 8:24-27.  Thus, Plaintiff's primary concern is not "juror confusion."  Rather, her concern pertains to trial strategy.  She simply believes she stands a better chance of prevailing if the jury does not hear evidence of the Kiosk Accommodation prior to deciding liability.  And, nowhere in Rule 42(b) does it provide that the Court should consider counsel's trial-strategy in determining whether bifurcation is appropriate.

---

[9] The entire basis for Plaintiff's "confusion" argument appears to be the wholly conclusory assertion that, "[a]fter hearing what might be days of expert testimony regarding several different systems, jurors will have a difficult time understanding and agreeing upon key facts."  Motion, at 7:12-14.  To be clear, and putting Plaintiff's effort at persuasion aside, there are not "several different systems."  Rather, there are two basic accommodations that are not difficult to differentiate.  Specifically, to the extent the jury were to find that the communication between Plaintiff and the CRO was not effective on the day of the incident and that Plaintiff was entitled to a reasonable accommodation, the CRO's position is that it offered a reasonable accommodation at the time of the incident in the form of allowing patrons to file FBNS's by mail, as discussed above.  Separate and distinct from that accommodation is the Kiosk Accommodation that the CRO implemented in or about October 2022.  Plaintiff has offered no authority or evidence suggesting that the average juror would be unable to understand and distinguish between these two basic accommodations or the evidence and expert analysis thereof.

1  Plaintiff has not provided any cogent basis, authority, or evidence to support the notion that,
2  absent bifurcation in the manner she demands, the circumstances of this case will actually "confuse" the
3  jury, and her counsel's trial strategy preferences have no place in the bifurcation analysis.  Moreover,
4  any concern of "prejudice" resulting from the jury hearing evidence of the Kiosk Accommodation prior
5  to deciding liability is already abated by the inevitable jury instruction that evidence pertaining to the
6  Kiosk Accommodation is not relevant to the question of liability and retrospective relief.  Ordering
7  bifurcation in such circumstances, when a simple jury instruction would suffice, would be akin to using
8  a sledgehammer to crack a nut, and would result in significant delay and inconvenience.  *See e.g.*, *Sec. &*
9  *Exch. Comm'n v. Pac. W. Cap. Grp., Inc.*, 2018 WL 6822607, at *1–2 (C.D. Cal. Feb. 13, 2018) ("Under the
10 circumstances, given the overlapping evidence…, and the court's ability to issue appropriate jury instructions,
11 including instructions to mitigate any potential prejudice to Moving Defendants, the court finds that bifurcation
12 is not warranted."); *Yanni v. City of Seattle*, 2005 WL 2180011, at *2 (W.D. Wash. Sept. 9, 2005) ("The Court
13 also considers … whether the prejudice can be mitigated by other means, including limiting instructions.").

### F. Bifurcation Would Prejudice the County

15 While Plaintiff focuses on the purported prejudice that would result to her if bifurcation is not
16 ordered (there is none, and even if there was, it can easily be resolved by a jury instruction), Rule 42(b)
17 is focused on the prejudice to the *non-moving party*.  *See Houseman v. U.S. Aviation Underwriters*, 171
18 F.3d 1117, 1121 (7th Cir. 1999) ("Next, the Court must be satisfied that the decision to bifurcate does not
19 unfairly prejudice the non-moving party.  *See Angelo v. Armstrong World Indus.*, 11 F.3d 957, 964 (10th Cir.
20 1993).").  Here, bifurcation would severely prejudice the County by increasing its litigation costs and
21 drastically increasing the time in which the County can achieve a full and final resolution of its claims.
22 *Transcon. Ins. Co. v. St. Paul Mercury Ins. Co.*, 2006 WL 3859009, at *4 (D. Mont. Dec. 1, 2006) ("The risk of
23 prejudice to Alpine does not outweigh the delay, expense, and inconvenience that would result to St. Paul and
24 the Court from bifurcation. Bifurcation would require the Court, parties, attorneys, and many witnesses to go
25 through two trials, thereby delaying a final judgment."); *see also Burton v. Mountain W. Farm Bureau Mut.*
26 *Ins. Co.*, 214 F.R.D. 598, 613 (D. Mont. 2003) ("The risk of prejudice to Mountain West from trying all issues
27 together does not outweigh the delay, expense, and inconvenience that would result from bifurcation.
28 Bifurcation would require the parties, attorneys and many witnesses to go through two trials, thereby delaying a

- 12 -

Defs' Opposition to Plt's Motion to Bifurcate; P&A [20-cv-06570-TSH]

final judgment. Mountain West has not satisfied its burden of proving that the prejudice it may suffer outweighs these other concerns. Additionally, any prejudice to Mountain West can be cured through limiting instructions. Therefore, the Court will not exercise its discretion to bifurcate the trial of claims in this case."). Accordingly, the Court should deny the Motion where it would substantially and unduly prejudice the County.

## IV. CONCLUSION

For these reasons, the County respectfully requests that the Court deny Plaintiff's Motion to Bifurcate trial, with prejudice.

Dated:  October 11, 2023          Respectfully submitted,

**ORBACH HUFF + HENDERSON LLP**

By:  /s/ *Nicholas D. Fine*
      Kevin E. Gilbert
      Nicholas D. Fine
      Attorneys for Defendant
      COUNTY OF ALAMEDA, MELISSA WILK,
      EVA HE, AND MARIA LAURA BRIONES