UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISAMARIA MARTINEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF ALAMEDA, et al.,<br><br>    Defendants. | Case No. 20-cv-06570-TSH<br><br>**ORDER DENYING MOTION TO BIFURCATE**<br><br>Re: Dkt. No. 94 |

## I.  INTRODUCTION

Plaintiff Lisamaria Martinez, who is blind, brings this disability rights action against Defendants County of Alameda, Melissa Wilk, Eva He, and Maria Laura Briones for their alleged exclusion from participation in or denial of benefits concerning services at the County Clerk-Recorder's Office in 2019. Pending before the Court is Martinez's Motion to Bifurcate, in which she requests the Court separate the trial into two phases under Federal Rule of Civil Procedure 42(b). ECF No. 94. Defendants filed an opposition (ECF No. 95)[1] and Martinez filed a reply (ECF No. 96). Having considered the arguments made and the record in this case, the Court **DENIES** Martinez's motion for the following reasons.[2]

---

[1] In a footnote in the opposition, the County argues the individual defendants have been dismissed because the Court previously dismissed Martinez's Title V ADA claim in its order resolving Defendants' initial motion for summary judgment. Opp'n at 1 n.1 (citing ECF No. 54). However, Martinez filed an amended complaint after the Court's order (ECF No. 84), which includes causes of action against the individual defendants. As Defendants did not move to dismiss these claims, and the issue does not impact the Court's decision regarding bifurcation, the Court declines to address it here.

[2] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 6, 16.

## II. BACKGROUND

On March 29, 2019, Martinez visited the County of Alameda Clerk-Recorder's Office ("CRO") to file a fictitious business name statement ("FBNS") for her small business. First Am. Compl. ¶ 13, ECF No. 84. CRO clerk Angelina Moran reviewed Martinez's form and told her corrections were required before Martinez could file it. *Id.* ¶ 17. Martinez requested assistance in making the corrections because she is blind, but Moran told she could not assist because it was the CRO's policy that the FBNS is a legal document that must be completed by the business owner. *Id.* ¶¶ 18-19. Martinez then spoke with CRO supervisor Maria Laura Briones, who also declined to make the changes under the same policy. *Id.* ¶¶ 20-23.

Martinez filed this case on September 18, 2020, alleging five causes of action: (1) violation of Title II of the ADA, (2) violation of Title V of the ADA, (3) violation of the Unruh Civil Rights Act, (4) violation of the Disabled Persons Act, and (5) Declaratory Relief. ECF No. 1. On August 11, 2022, the Court granted Defendants' motion for summary judgment as to Martinez's Title V claim. ECF No. 54. Martinez subsequently filed an amended complaint on July 10, 2023, alleging: (1) violation of Title II of the ADA, (2) violation of Title V of the ADA, (3) violation of California Civil Code section 11135, (4) violation of the Disabled Persons Act, and (5) Declaratory Relief. ECF No. 84. Martinez seeks a declaration that Defendants are operating the CRO in a manner that discriminates against people with disabilities; an order enjoining Defendants from violating Titles II and V of the ADA and section 11135; compensatory damages "for the humiliation, indignity, shock, and emotional distress that Ms. Martinez experienced as a result of the unlawful policies, practices, and conduct of Defendants and their agents and employees pursuant to Titles II and V of the ADA and the DPA"; and statutory damages in the amount of $1,000 for each violation of the Disabled Persons Act. A jury trial is scheduled for March 25, 2024. ECF No. 87.

Martinez filed the present motion on September 27, 2023. She proposes bifurcating the trial into two phases:

> In the **first phase**, the jury would be presented with a narrow trial of the claims involving Ms. Martinez's visits to Defendant County of Alameda's Clerk-Recorder's Office (CRO) in 2019 and, if

2

> Defendants maintain that Ms. Martinez could have completed the process at home or through some other auxiliary aid or service available at the time, considering evidence of why a home-based or other then-available option was not accessible to Ms. Martinez. Despite the CRO's legal obligation to provide auxiliary aids and services to enable effective communication and to prioritize the aid or service she preferred, Ms. Martinez alleges that the County rejected her request for a human scribe and provided no other equally effective alternative. This dispute centers on evidence, including expert opinion, as to the state of things as they were in 2019 rather than how they might be now or in the future. Ms. Martinez seeks damages under the California Disabled Persons Act (DPA) and the Americans with Disabilities Act (ADA) for this failure. As such, Defendants have the right to a jury, which will also determine whether or not the intent requirement has been met on the question of damages.
>
> The **second phase**—necessary only if the jury found in Plaintiff's favor in the first phase—would be a continued bench trial or hearing immediately to follow the jury's verdict to evaluate the evidence of now-available auxiliary aids and services and future plans by the CRO in order to determine what equitable relief would be appropriate. The dispute in this second phase centers on evidence, including expert opinion, as to current and future policies, practices, and impacts now and into the future. To achieve her anti-discrimination goals of equitable relief, Ms. Martinez seeks an injunction under the ADA and California Government Code Section 11135 against the County. As such, there is no right to a jury for that remedy.

Mot. at 3.

### III.   LEGAL STANDARD

A court may bifurcate a trial for "convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). A court has "broad discretion" in deciding whether to bifurcate. *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) (citation omitted). "Bifurcation, however, is the exception, not the norm as a single proceeding will generally be a more efficient and reasonable means of resolving the action." *San Bernardino Cty. v. Ins. Co. of the State of Pa.*, 2023 WL 2629888, at *1 (C.D. Cal. Feb. 6, 2023); *GEM Acquisitionco, LLC v. Sorenson Grp. Holdings, LLC*, 2010 WL 1729400, at *3 (N.D. Cal. Apr.27, 2010). "Courts 'consider several factors in determining whether bifurcation is appropriate, including separability of the issues, simplification of discovery and conservation of resources, and prejudice to the parties.'" *Jones v. Nat'l R.R. Passenger Corp.*, 2018 WL 6606247, at *4 (N.D. Cal. Dec. 17, 2018) (quoting *McDermott v. Potter*, 2010 WL 956808, at *1 (N.D. Cal. Mar. 12, 2010)). "The party seeking bifurcation bears the burden of showing that bifurcation is justified in

3

the given circumstances." *San Bernardino Cty.*, 2023 WL 2629888, at *1 (citation omitted); *GEM Acquisitionco*, 2010 WL 1729400, at *2.

## IV. DISCUSSION

### A. Separability of the Issues

The Seventh Amendment to the United States Constitution preserves the right to a jury trial for legal claims but not for equitable claims, such as a claim for injunctive relief. *See* U.S. Const. amend. VII; *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001). Federal courts may separate legal and equitable claims "so long as the legal and equitable issues are distinct." *Danjaq*, 263 F.3d at 962. "When the legal and equitable issues overlap and the evidence is intertwined," however, "the district court must take care not to impinge on the right to a jury." *Id.* For that reason, in cases involving overlapping legal and equitable claims, "the legal claims involved in the action must be determined prior to any final court determination of the equitable claims." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962)

The Court agrees with Martinez that factual determinations regarding any discrimination she experienced at a discrete time in 2019 may entirely foreclose the issue of injunctive relief. *See San Bruno Mountain Watch v. Cypress Amloc Land Co.*, 2005 WL 8177591, at *1 (N.D. Cal. Nov. 3, 2005) ("If the trier of fact concludes that Defendants have no liability, there will be no need to conduct discovery or hear evidence on purely remedial issues."). In their opposition, Defendants state the CRO has long had computer kiosks in the physical CRO for patrons to use, and since about October 2022 it has reserved one of those kiosks for use by persons with disabilities and equipped that kiosk with Jobs Access With Speech screen-reader software. Opp'n at 3. The CRO then installed a blank, fillable .pdf version of the FBNS on the kiosk, so that persons with vision disabilities could complete the form on the kiosk in the CRO. *Id.* However, the relevant evidence here is separable into two distinct categories: (1) evidence regarding the actual auxiliary aids available to Martinez in 2019 and (2) evidence regarding new auxiliary aids and services introduced after suit was filed. The jury must first consider auxiliary aids and services made available to Martinez. *See Martinez v. Cty. of Alameda*, 2022 WL 3327924, at *4 (N.D. Cal. Aug. 11, 2022) ("[W]hat would be considered effective communication, whether an appropriate request

1 for accommodation was made, and whether Defendants met their 'duty to gather sufficient
2 information from the disabled individual and qualified experts as needed to determine what
3 accommodations are necessary,' based on the audio recordings and testimony 'requires a fact-
4 specific, individualized analysis of Martinez's circumstances.") (cleaned up) (quoting *Duvall v.*
5 *Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)).  Thus, the County's improvements and
6 current post-suit actions are not relevant to this phase of Martinez's case, as none were made
7 available to her.  Martinez's discrimination claim centers on evidence as to the state of things as
8 they were in 2019, not how they might be now or in the future.  If the jury determinates
9 Defendants are not liable for discrimination, there is no need to look to subsequent changes and
10 determine what equitable relief would be appropriate.

11 Martinez argues the second phase would focus solely on injunctive relief, for which she
12 argues there is no jury trial right.  Defendants disagree, arguing that they do have a jury trial right
13 in the proposed second phase of the trial.  To be clear, the issue in the proposed second phase is: if
14 the jury finds liability based on what happened in 2019, do the changes Defendants made in 2022
15 resolve the legal violation such that there is no ongoing violation to enjoin?

16 The Court need not decide right now whether there is a right to a jury trial to determine
17 whether changes made in 2022 ended a legal violation that the jury may find occurred in 2019.
18 Even if there is no jury trial right, the Court can send that issue to the jury for an advisory verdict.
19 Indeed, the Court can send that issue to the jury, and then in post-trial motions the parties can
20 argue whether the jury's verdict on that issue was advisory or binding.

21 Accordingly, the Court finds it appropriate to have the jury consider whether the CRO's
22 subsequent modifications reasonably removed the alleged barriers.  The Court can determine
23 whether the jury's findings on this issue are advisory or binding at a later time, if necessary.

24 **B.    Judicial Economy**

25 "Bifurcation is often in the interest of efficiency and judicial economy when the resolution
26 of one claim may obviate the need to adjudicate one or more other claims."  *Desmare v. New*
27 *Mexico*, 2007 WL 5231690, at *2 (D.N.M. Aug. 14, 2007) (citing *Mandeville v. Quinstar Corp.*,
28 109 F. App'x 191, 194 (10th Cir. 2004)); *see also Amato v. City of Saratoga Springs, N.Y.*, 170

1  F.3d 311, 316 (2d Cir. 1999) (bifurcation appropriate where "the litigation of the first issue might

2  eliminate the need to litigate the second issue").

3        Martinez argues bifurcation serves the interest of judicial economy because, "[i]f the jury

4  rules against [her] on liability, there is no need to hear the evidence relevant only to injunctive

5  relief, such as expert analysis of new technologies and systems the CRO put in place after the

6  events of 2019. Additionally, overlapping evidence presented to the jury in the first phase will

7  also be heard by the Court and need not be repeated in the second phase." Mot. at 8. However, as

8  explained above, the Court intends to send both issues to the jury. Judicial economy favors having

9  the same jury that decides whether there was a legal violation in 2019 also decide (whether in an

10  advisory or binding capacity) whether that violation was cured in 2022.

11        Further, if the Court bifurcates trial and the jury finds in Martinez's favor on liability, the

12  jury would then determine whether the CRO's subsequent modifications are reasonable under the

13  same factual circumstances. Thus, the same evidence from Martinez's proposed first phase of trial

14  would have to be presented to the jury again in the proposed second phase – the same witnesses,

15  the same testimony, the same audio recordings, the same documents, etc. Bifurcation is not

16  appropriate when the same evidence is applicable to the issues that Martinez seeks to separate, as

17  it would lead to the duplication of evidence, an ineffective use of judicial time and resources, and

18  inconvenience to the parties, their counsel, and the jury. *See Matsushita Elec. Indus. Co. v. CMC*

19  *Magnetics Corp.*, 2007 WL 219779, at *2 (N.D. Cal. Jan. 29, 2007) ("Overlap in the evidence as

20  between the two claims may militate in favor of one slightly longer trial rather than two long

21  trials.").

22  **C.**    **Prejudice**

23        Martinez also argues the failure to bifurcate will significantly prejudice her as "[a]llowing

24  extensive evidence regarding the CRO's after-litigation remedies to be heard by the jury—where it

25  is irrelevant to any of the elements of liability or damages for events in 2019, including the

26  evaluation of intent—might result in the jury feeling that past harms have already been corrected

27  and thus impermissibly allow this to influence their findings about events in 2019, including

28  damages." Mot. at 8. She maintains these prejudicial effects are avoided if the trial is bifurcated

1  such that the jury does not hear evidence of later changes at the CRO. *Id.* However, any such
2  concern of prejudice can easily be abated by a jury instruction that evidence pertaining to the
3  CRO's subsequent modifications is not relevant to the question of liability and retrospective relief.
4  *See, e.g., Sec. & Exch. Comm'n v. Pac. W. Cap. Grp., Inc.*, 2018 WL 6822607, at *1–2 (C.D. Cal.
5  Feb. 13, 2018) ("Under the circumstances, given the overlapping evidence . . . , and the court's
6  ability to issue appropriate jury instructions, including instructions to mitigate any potential
7  prejudice to Moving Defendants, the court finds that bifurcation is not warranted."); *Hickman v.
8  City of Berkeley*, 2012 WL 12910620, at *17 (N.D. Cal. Nov. 1, 2012) ("Separate trials are not
9  necessary to avoid prejudice, which can be addressed, if necessary, by appropriate jury
10 instructions."); *Tuey v. Mammoth Mountain Ski Area*, 2009 WL 928328, at *11 (E.D. Cal. Apr. 6,
11 2009) ("The danger of this prejudice, however, may be mitigated by instructing the jury not to
12 allow sympathy to influence the verdict.").[3]

13       Further, in making its determination, the Court must also consider prejudice to Defendants.
14 *See Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999) ("Next, the
15 Court must be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving
16 party.") (citing *Angelo v. Armstrong World Indus.*, 11 F.3d 957, 964 (10th Cir. 1993)).
17 Defendants argue bifurcation would increase their litigation costs and increase the time in which
18 this matter would be resolved, which are valid concerns. *See Transcon. Ins. Co. v. St. Paul
19 Mercury Ins. Co.*, 2006 WL 3859009, at *4 (D. Mont. Dec. 1, 2006) ("The risk of prejudice to
20 Alpine does not outweigh the delay, expense, and inconvenience that would result to St. Paul and
21 the Court from bifurcation. Bifurcation would require the Court, parties, attorneys, and many
22 witnesses to go through two trials, thereby delaying a final judgment."); *Burton v. Mountain W.
23 Farm Bureau Mut. Ins. Co.*, 214 F.R.D. 598, 613 (D. Mont. 2003) ("The risk of prejudice to

---

[3] In her reply, Martinez also argues that evidence of auxiliary aids and services not available when she visited the CRO in 2019 is inadmissible under the Federal Rules of Evidence because it would be more unfairly prejudicial than probative. Reply at 5. However, this new argument is more properly raised in a motion in limine, not in a reply brief. *See Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003) ("[W]e decline to consider new issues raised for the first time in a reply brief."); *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 672 F.3d 1160, 1166 n.8 (9th Cir. 2012)) (noting that arguments raised for the first time in a reply brief are waived).

7

1  Mountain West from trying all issues together does not outweigh the delay, expense, and
2  inconvenience that would result from bifurcation.  Bifurcation would require the parties, attorneys
3  and many witnesses to go through two trials, thereby delaying a final judgment.  Mountain West
4  has not satisfied its burden of proving that the prejudice it may suffer outweighs these other
5  concerns.  Additionally, any prejudice to Mountain West can be cured through limiting
6  instructions.  Therefore, the Court will not exercise its discretion to bifurcate the trial of claims in
7  this case.").

**D.     Juror Confusion**

Finally, Martinez argues that if Defendants present the jury with evidence regarding technologies introduced after suit was filed, the jury is likely to be confused. Mot. at 7.  She contends that "[a]fter hearing what might be days of expert testimony regarding several different systems, jurors will have a difficult time understanding and agreeing upon key facts.  Confusion is particularly likely as the visual elements of various versions of the FBN form may be identical." *Id.*  However, any trial presents at least some risk of jury confusion and, as Martinez herself notes, the relevant evidence can be classified into two categories: evidence regarding the auxiliary aids available to her in 2019 and whether she faced discrimination on that date, and evidence regarding any new auxiliary aids and services introduced after she filed suit.  *Id.* at 6.  Her argument presumes, without citing any authority, that a jury of her peers would be unable to understand this distinction.  The Court finds no evidence suggesting that the average juror would be unable to understand and distinguish between these two basic accommodations or the evidence and expert analysis thereof.  Further, once again, any such risk can be addressed by specific jury instructions. *See Am. Steel & Stairways, Inc. v. Lexington Ins. Co.*, 2013 WL 4425704, at *2 (N.D. Cal. Aug. 14, 2013) ("Obviously, any trial involving more than one related claim presents at least some risk of jury confusion.  But the Court does not believe that Defendants will be unduly prejudiced by either jury confusion or evidence of a settlement offer if these two claims are tried together.  The risk of jury confusion, if any, can be addressed by specific jury instructions and a special verdict form.").  Finally, as noted above, if a jury finds in Martinez's favor in her proposed first phase of trial, it would still need to resolve factual questions in her proposed second phase.  The Court finds

8

1  any risk of confusion is outweighed by the possibility of multiple proceedings involving the jury.

2  *See Matsushita Elec. Indus. Co.*, 2007 WL 219779, at *2 ("At all events, the risk of jury confusion

3  must be weighed with the risk of inconvenience to the jury caused by a multiplicity of

4  proceedings.").

## V.  CONCLUSION

For the reasons stated above, the Court **DENIES** Martinez's motion to bifurcate.

**IT IS SO ORDERED.**

Dated: November 1, 2023

THOMAS S. HIXSON
United States Magistrate Judge