1  Kevin E. Gilbert, Esq. (SBN: 209236)
   kgilbert@ohhlegal.com
2  Nicholas D. Fine, Esq. (SBN: 285017)
   nfine@ohhlegal.com
3  **ORBACH HUFF & HENDERSON LLP**
   6200 Stoneridge Mall Road, Suite 225
4  Pleasanton, CA  94588
   Telephone:     (510) 999-7908
5  Facsimile:     (510) 999-7918
6
7  Attorneys for Defendant
   COUNTY OF ALAMEDA
8
9                    UNITED STATES DISTRICT COURT
10                 NORTHERN DISTRICT OF CALIFORNIA
11                    SAN FRANCISCO DIVISION
12  LISAMARIA MARTINEZ,                      Case No.  20-cv-06570-TSH
13              Plaintiff,
14  v.                                       **DEFENDANT COUNTY OF ALAMEDA'S
                                             TRIAL BRIEF**
15  COUNTY OF ALAMEDA,
                                             PTC:       February 15, 2024
16              Defendant.                   TIME:      10:00 a.m.
                                             DEPT:      Courtroom G, 15th Floor
17                                           JUDGE:     Hon. Thomas Hixson
                                             TRIAL:     March 25, 2024
18
19
20
21
22
23
24
25
26
27
28

ORBACH HUFF & HENDERSON LLP

# TABLE OF CONTENTS

**Page(s)**

I. FACTUAL BACKGROUND ................................................................................................ 1

II. PROCEDURAL BACKGROUND ..................................................................................... 2

III. DISPUTED AND UNDISPUTED FACTUAL ISSUES .................................................. 3

    A. Principal Factual Issues in Dispute ................................................................ 3

    B. Principal Factual Issues Not in Dispute ......................................................... 3

IV. LEGAL ISSUES ............................................................................................................... 4

    A. Plaintiff's Claims and the County's Defenses ............................................... 5

        1. The ADA Claim Under Title II .......................................................... 5

            a. Plaintiff Received All of the Benefits of the CRO's Programs, Activities, or Services That She Sought ...............7

            b. CRO Clerks Were Able to Effectively Communicate with Plaintiff ..........8

            c. The Law Does Not Support Plaintiff's Title II ADA Claim ..................9

            d. Plaintiff Was Not Entitled to Her Choice of Accommodation .................11

            e. "Scribe" Services Do Not Constitute a Reasonable Accommodation .......12

            f. If An Accommodation Was Required, the CRO Provided a Reasonable Accommodation ...............13

    B. Plaintiff's Claim for Monetary Damages Under the ADA ............................. 13

    C. Plaintiff's DPA Claim ................................................................................... 15

    D. Plaintiff's Claim Under Government Code Section 11135 ............................ 18

    E. Plaintiff's Claims for Prospective Injunctive and Declaratory Relief ........... 19

    F. Unresolved Legal Issues ............................................................................... 20

V. EVIDENTIARY ISSUES ............................................................................................... 21

VI. RELIEF SOUGHT .......................................................................................................... 25

VII. BIFURCATION OF TRIAL .......................................................................................... 25

VIII. CONCLUSION ............................................................................................................... 25

ORBACH HUFF & HENDERSON LLP

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

<u>Federal Cases</u>

4

*A.G. Paradise Valley Unified School Dist. No. 69,*
   815 F.3d 1195 (9th Cir. 2016) ...................................................................................6

5

6

*Alexander v. Kujok,*
   158 F.Supp.3d 1012 (E.D. Cal. 2016) ........................................................................8

7

8

*Anderson v. City of Blue Ash,*
   798 F.3d 338 (6th Cir. 2015) ....................................................................................8

9

*Barber ex rel. Barber v. Colo. Dep't of Revenue,*
   562 F.3d 1222 (10th Cir. 2009) .................................................................................15

10

11

*Bax v. Drs. Med. Ctr. of Modesto, Inc.,*
   52 F.4th 858 (9th Cir. 2022) ....................................................................................19

12

13

*Bay Area Addiction Research v. City of Antioch,*
   179 F.3d 725 (9th Cir. 1999) ....................................................................................10

14

*Botosan v. Paul McNally Realty,*
   216 F.3d 827 (9th Cir. 2000) ....................................................................................10

15

16

*Bryan Cnty. v. Brown,*
   520 U.S. 397 (1997)..................................................................................................14

17

18

*C & C Products, Inc. v. Messick,*
   700 F.2d 635 (11th Cir. 1983) .................................................................................19

19

20

*Calderon v. Moore,*
   518 U.S. 149 (1996)..................................................................................................19

21

*Church of Scientology v. United States,*
   506 U.S. 9 (1992)......................................................................................................19

22

23

*City of Canton v. Harris,*
   489 U.S. 378 (1988)..................................................................................................14

24

25

*Cropp v. Larimer Cnty., Colorado,*
   793 F.App'x 771 (10th Cir. 2019) ............................................................................8

26

27

*Cullen v. Netflix, Inc.,*
   880 F.Supp.2d 1017 (N.D. Cal. 2012) ......................................................................15

28

ORBACH HUFF & HENDERSON LLP

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]

**TABLE OF AUTHORITIES**

**Page(s)**

*Dunn v. City of Los Angeles,*
   No. 15-0413, 2017 WL 7726710 (C.D. Cal. Apr. 26, 2017) ........................................ 16-17

*Duvall v. County of Kitsap,*
   260 F.3d 1124 (9th Cir. 2001) ....................................................................... *passim*

*Fraihat v. U.S. Immigr. & Customs Enf't,*
   445 F.Supp.3d 709 (C.D. Cal. 2020) ...................................................................11

*Gebser v. Lago Vista Independent School District,*
   524 U.S. 274 (1998)..................................................................................14

*Hindel v. Husted,*
   875 F.3d 344 (6th Cir. 2017) .........................................................................12

*Hubbard v. 7-Eleven, Inc.,*
   433 F.Supp.2d 1134 (S.D. Cal. 2006) .............................................................19, 20

*Independent Living Res. v. Oregon Arena Corp.,*
   982 F.Supp. 698 (D. Or. 1997) ................................................................... 19-20

*Karimi v. Golden Gate Sch. of L.,*
   361 F.Supp.3d 956 (N.D. Cal. 2019) ...................................................................19

*Kirola v. City and County of San Francisco,*
   74 F.Supp.3d 1187 (N.D. Cal. 2014) ..................................................................19

*Kirola v. City and County of San Francisco,*
   860 F.3d 1164 (9th Cir. 2017) .......................................................................19

*Kornblau v. Dade Cnty.,*
   86 F.3d 193 (11th Cir. 1996) ..........................................................................8

*Kremens v. Bartley,*
   431 U.S. 119 (1977)...................................................................................19

*L.W. v. Grubbs,*
   92 F.3d 894 (9th Cir. 1996) ..........................................................................14

*Leibel v. City of Buckeye,*
   556 F.Supp.3d 1042 (D. Ariz. 2021) ............................................................. 10-11

*Liese v. Indian River County Hospital District,*
   701 F.3d 334 ........................................................................................14

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

ORBACH HUFF & HENDERSON LLP

1

**TABLE OF AUTHORITIES**

2                                                                                           **Page(s)**

3  *Lonberg v. City of Riverside*,
4     571 F.3d 846 (9th Cir. 2009) ................................................................................6

5  *Mark H. v. Lemahieu*,
      513 F.3d 922 (9th Cir. 2008) ..............................................................................13
6
   *Mullen v. Chester County Hosp.*,
7     2015 U.S. Dist. LEXIS 57060 (E.D. Penn. 2015) ..............................................12

8  *North Carolina v. Rice*,
9     404 U.S. 244 (1971) ............................................................................................19

10 *Oliver v. Ralphs Grocery Co.*,
      654 F.3d 903 (9th Cir. 2011) ..............................................................................19
11
   *Or. Paralyzed Veterans of Am. v. Regal Cinemas, Inc.*,
12    339 F.3d 1126 (9th Cir. 2003) ............................................................................10

13 *Payan v. Los Angeles Cnty. Coll. Dist.*,
14    2019 WL 9047062 (C.D. Cal. Apr. 23, 2019) .....................................................8

15 *Petersen v. Hastings Public Schools*,
      31 F.3d 705 (8th Cir. 1994) ................................................................................11
16
   *San Francisco Taxi Coalition v. City and County of San Francisco*,
17    979 F.3d 1220 (9th Cir. 2020) ............................................................................18

18 *Sarfaty v. City of Los Angeles*,
19    2017 WL 6551234 (C.D. Cal. 2017).....................................................................16

20 *Silva v. Baptist Health South Florida, Inc.*,
21    856 F.3d 824 (11th Cir. 2017) ..........................................................................8, 9

22 *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*,
      806 F.3d 451 (9th Cir. 2015) ..............................................................................14
23
24 *Tucker v. Tennessee*,
      539 F.3d 526 (6th Cir. 2008) ................................................................................8
25
   *Updike v. Multnomah Cnty.*,
26    870 F.3d 939 (9th Cir. 2017) ....................................................................6, 8, 11

27 *Vinson v. Thomas*,
28    288 F.3d 1145 (9th Cir. 2002) .........................................................................6, 13

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

## State Cases

*Brennon B. v. Sup. Ct.*,
    57 Cal.App.5th 367 (2020) ...........................................................................................16

*Carter v. City of Los Angeles*,
    224 Cal.App.4th 808 (2014) ....................................................................................16, 17

*City of Irvine v. Southern California Assn. of Governments*,
    175 Cal.App.4th 506 (2009) .........................................................................................12

*Crawford v. State Bar of California*,
    54 Cal.2d 659 (1960) ....................................................................................................12

*Jackson v. County of Amador*,
    186 Cal.App.4th 514 (2010) .........................................................................................12

*People for the Ethical Treatment of Animals, Inc. v. California Milk Producers Advisory Bd.*,
    125 Cal.App.4th 871 (2005) .........................................................................................18

*Urhausen v. Longs Drug Stores Cal., Inc.*,
    155 Cal.App.4th 254 (2007) .........................................................................................15

*Wells v. One2One Learning Foundation*,
    39 Cal.4th 1164 (2006) ...........................................................................................17, 18

## Federal Statutes

42 U.S.C. section:
    12101............................................................................................................................5
    12132...................................................................................................................*passim*
    12134..........................................................................................................................10
    12203(b)........................................................................................................................2
    12206(c)(1) .................................................................................................................10

## State Statutes

Business & Profession Code section:
    6125-6126 ...................................................................................................................12

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

Civil Code section:

14.................................................................................................................................18
54(c)............................................................................................................................5
54.1(a)(3)....................................................................................................................15
54.3.............................................................................................................16, 17, 18, 21
54.3(a).........................................................................................................................16
51-53...........................................................................................................................2
54-55.3........................................................................................................................2, 5

Government Code section:

11135...................................................................................................................... *passim*
11135(a)......................................................................................................................18
12900...........................................................................................................................17
27203(d)...................................................................................................................12, 21

## **Regulations**

28 C.F.R. section:

35.104................................................................................................................9, 10, 20, 22
35.160..............................................................................................................6, 9, 11
35.160(a)(1)...................................................................................................6, 8, 11, 21
35.160(b)(1)............................................................................................................6, 8
35.160(b)(2).........................................................................................................6, 11
36.303(c)(1)...............................................................................................................9

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]

**TO THE HONORABLE COURT AND ALL COUNSEL OF RECORD:**

Pursuant to section H of the Updated Case Management Order (Dkt. 87), Defendant COUNTY OF ALAMEDA ("County") submits the following Trial Brief for the March 25, 2024, jury trial.

## I.       FACTUAL BACKGROUND

Plaintiff Lisamaria Martinez ("Plaintiff"), a disability-rights activist with a vision disability, claims to have been subjected to disability discrimination on March 29, 2019, by employees of the County Clerk-Recorder's Office ("CRO"), when Plaintiff sought to file a Fictitious Business Name Statement ("FBNS") at the CRO's physical office in Oakland, California.  Specifically, and despite the fact Plaintiff's own recordings of the incident reflect fluent communications between Plaintiff and the County's employees, Plaintiff alleges that the County failed to provide Plaintiff with an auxiliary aid or service, in the form of "scribe services," which Plaintiff claims was necessary to ensure "effective communication" between Plaintiff and the County and for Plaintiff to enjoy the benefits of the CRO's programs, services, or activities.  To the contrary, the communications between the County and Plaintiff were effective without the need for an auxiliary aid or service and Plaintiff received all of the benefits of the CRO's relevant services, programs, or activities.  Moreover, even if an accommodation was required, the CRO offered and continues to offer reasonable accommodations.

The pertinent facts are not in dispute, as the relevant interactions were captured on audio recordings taken by Plaintiff, which will be offered as evidence at trial.  On March 29, 2019, Plaintiff was seeking to file an FBNS for her business, Be Confident Be You Coaching, LLC.  She obtained an electronic version of a blank FBNS that the CRO makes available online and filled it out at home using screen-reader software called Job Access with Speech ("JAWS"), which allows individuals with vision disabilities to perceive written text on a computer screen.  Plaintiff then visited the CRO the afternoon of March 29, 2019, to file her FBNS but CRO employees determined that Plaintiff had made several errors in the form which had to be corrected before it could be filed.  When Plaintiff demanded that CRO employees make the corrections for Plaintiff, the employees advised Plaintiff that they could not modify or complete forms for patrons that are filed or recorded in the CRO.  Instead, the employees accommodated Plaintiff by providing her with verbal and written directions (in what the CRO refers to as a "Go Back Letter") regarding the exact corrections that needed to be

ORBACH HUFF & HENDERSON LLP

made to the FBNS such that it could be filed.  The CRO also provided Plaintiff with a self-addressed envelope and advised Plaintiff that she could mail in her corrected FBNS for filing without having to return to the CRO.

Plaintiff left the CRO and used the information in the Go Back Letter to complete a new, correct FBNS.  However, rather than mailing in the FBNS for filing with the self-addressed envelope the CRO provided her, Plaintiff voluntarily opted to return to the CRO on May 31, 2019, and filed the FBNS.

## II.   PROCEDURAL BACKGROUND

On September 18, 2020, Plaintiff filed her Complaint against the County and several individual County employees[1] ("Individual Defendants") alleging five causes of action for: (1) Violation of Title II of the ADA (42 U.S.C. § 12132); (2) Violation of Title V of the ADA (42 U.S.C. § 12203(b)); (3) Violation of the Unruh Civil Rights Act (Cal. Civil Code §§ 51-53); (4) Violation of the Disabled Persons Act (Cal. Civil Code §§ 54-55.3); and (5) Declaratory Relief.

The parties have each previously filed two dispositive motions, including motions for summary judgment and partial summary judgment.  The Court denied all such motions except for a portion of the County's initial Motion for Summary Judgment, in which the Court dismissed Plaintiff's claim under Title V of the ADA against the Individual Defendants.[2]  Dkt. 54, at 9:12-10:2.

On July 10, 2023, Plaintiff filed her operative Amended Complaint alleging the same causes of action against the same Individual Defendants, except that Plaintiff replaced her claim for Violation of the Unruh Civil Rights Act with the current Third Cause of Action for Violation of California Government Code section 11135 against the County.

///

///

---

[1] The individual County employees previously named as Defendants include Melissa Wilk ("Wilk"), Maria Laura Briones ("Briones"), and Eva He ("He") ("Individual Defendants").  As discussed further below, the Court previously dismissed the only claims against the Individual Defendants.

[2] The dismissal of the Title V claim operates as a dismissal of the Individual Defendants.  The Title V claim was the only federal ADA claim asserted against the Individual Defendants, and Plaintiff has represented (as confirmed in the Court's order on the cross-MSJ's) that her state law claims are solely derivative of her ADA claims. Dkt. 54, at 10:3-13; Dkt. 49, at 22:1-16.  Therefore, because the Title V claim has been dismissed against the Individual Defendants, and was the only ADA claim asserted against them, the state law claims against the Individual Defendants did not survive, either.  There are no surviving causes of action that remain asserted against the Individual Defendants.

ORBACH HUFF & HENDERSON LLP

III.   **DISPUTED AND UNDISPUTED FACTUAL ISSUES**

A.      **Principal Factual Issues in Dispute**

The factual issues that remain to be decided include the following:

- If an auxiliary aid or service was required, whether Ms. Martinez's requested auxiliary aid (a scribe) under the primary consideration doctrine was necessary for her full enjoyment of the CRO's filing benefits, including whether the aids or services made available by the CRO to Ms. Martinez in 2019 were effective;

- If an auxiliary aid or service was required, whether Ms. Martinez's requested auxiliary aid (a scribe) is required today under the primary consideration doctrine, including whether the aids or services currently made available by the CRO to Ms. Martinez (mail filing, self-service online forms and computer kiosks) are effective.

- Whether the communications between the CRO's employees and Ms. Martinez were effective on the day of the incident for purposes of the ADA's effective communication requirement, without the need for an auxiliary aid or service.

- Whether Plaintiff was able to participate equally in the benefits of the CRO's services, programs, or activities, without the need for an auxiliary aid or service.

- Whether the CRO's FBNS program was funded directly by the State of California or received financial assistance from the State of California at the time of the incident giving rise to this action.

- If Plaintiff prevails on establishing a violation of the ADA, whether the CRO's employees demonstrated deliberate indifference to Plaintiff's rights.

B.      **Principal Factual Issues Not in Dispute**

The factual issues that are not in dispute are as follows:

- Defendant County of Alameda is a public entity within the meaning of the ADA.

- Plaintiff Lisamaria Martinez is blind and disabled within the meaning of the ADA.

- Ms. Martinez visited the CRO on March 29, 2019, to file her FBNS.

- On March 29, 2019, Ms. Martinez explained, and Defendant understood, that she is blind.

- When Ms. Martinez spoke with CRO staff on March 29, 2019, she was told that her FBNS form could not be accepted without corrections.

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

ORBACH HUFF & HENDERSON LLP

- Ms. Martinez requested the CRO on March 29, 2019, enter corrected information on a paper FBNS form.

- The CRO's employees advised Ms. Martinez that they were prohibited from modifying the FBNS for Plaintiff as they do not complete or modify legal forms for patrons, especially where they are already signed under penalty of perjury, and as such, they did not make corrections to Plaintiff's FBNS for Plaintiff while she was at the CRO on March 29, 2019.

- Ms. Martinez could not file her FBNS during her visit to the CRO on March 29, 2019, because it had not been correctly filled out by Ms. Martinez.

- The County's employees advised Ms. Martinez of the technical deficiencies in the FBNS during her visit to the CRO on March 29, 2019, and Ms. Martinez fully understood the County's employees' comments.

- The CRO created a "Go Back Letter" for Ms. Martinez during that visit, setting forth, in writing, the specific corrections that needed to be made to Ms. Martinez's FBNS before it could be filed, along with a self-addressed envelope so that Ms. Martinez could mail in her corrected FBNS for filing.

- Ms. Martinez used the "Go Back Letter" and the advice therein by the County's employees to complete a new FBNS.

- Plaintiff visited the CRO again on May 31, 2019, and the CRO accepted and filed a FBNS that had been correctly completed by Ms. Martinez.

- The CRO's services, programs, activities, or benefits include filing completed forms at the CRO and the CRO's advising patrons of forms' technical deficiencies.

- Filling out and/or modifying forms for patrons does not constitute a service, program, activity, or benefit of the CRO.

## IV.   LEGAL ISSUES

Discussed below in subdivision E are several outstanding legal issues that should be resolved prior to trial and for which it would be improper to ask the jury to render a legal decision. However, to provide context to those questions, the County first discusses Plaintiff's claims, the County's defenses, and the applicable law.

///

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

A. **Plaintiff's Claims and the County's Defenses**

1. **The ADA Claim Under Title II**

Because Plaintiff's Title V claim has been dismissed, Plaintiff's claims are limited to four causes of action against the County for violation of Title II of the ADA (42 U.S.C. § 12132), violation of California Government Code section 11135, violation of the California Disabled Persons Act ("DPA") (Cal. Civ. Code §§ 54-55.3), and declaratory relief.  Plaintiff has conceded and the Court has already acknowledged that Plaintiff's claims for violation of the DPA and declaratory relief are not independent, but are instead derivative of the claim for violation of Title II of the ADA.  See Dkt. 54, at 10:3-9 ("Martinez argues her remaining state claims survive summary judgment because of her viable Title II claims. … Given the Court's findings of genuine issues of material facts precluding summary judgment of Martinez's Title II claims, the Court DENIES Defendants' Motion for Summary Judgment as to Martinez's Unruh Act and DPA claims."), 10:23-11:25 ("However, given the Court's findings regarding genuine disputes of material facts precluding summary judgment on Martinez's Title II claims, the Court DENIES Martinez's request for declaratory judgment."); see Amended Complaint, ¶¶ 94 ("Each violation of Ms. Martinez's rights under Title[] II…as described above, also constitute a violation of her rights under the DPA. Cal. Civ. Code § 54(c)."), 99 (declaratory relief premised on alleged violation of Title II of ADA).  The same is true of Plaintiff's claim under Government Code section 11135.  Amended Complaint ¶ 84 ("Defendants' violations of Plaintiff's rights under Titles II and V of the federal ADA, 42 U.S.C. §§ 12101 *et seq.* … also constitute a violation of Plaintiff's rights under … section 11135 …").

Accordingly, all of Plaintiff's claims depend on whether Plaintiff can establish a violation of section 12132 of Title II of the ADA, which provides that persons with disabilities shall not "by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  To state a prima facie case for violation of Title II, "a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).  "This prohibition against discrimination is universally understood as a requirement to provide

'meaningful access.'" *Lonberg v. City of Riverside*, 571 F.3d 846, 851 (9th Cir. 2009).  A plaintiff may establish prohibited discrimination under section 12132 by showing that a public entity denied her a "reasonable accommodation" necessary to achieve meaningful access to the benefits of a public entity's services, programs, or activities.  *A.G. Paradise Valley Unified School Dist. No. 69*, 815 F.3d 1195, 1206 (9th Cir. 2016).  The provision of an auxiliary aid or service is considered an "accommodation" under the ADA and is derived from 28 C.F.R. section 35.160.  28 C.F.R. § 35.160; *Duvall v. County of Kitsap*, 260 F.3d 1124, 1136 (9th Cir. 2001).  28 C.F.R. section 35.160(a)(1) provides that a "public entity shall take appropriate steps to ensure that communications with" disabled individuals "are as effective as communications with others."  Id., § 35.160(a)(1).  To ensure effective communication, section 35.160(b)(1) provides that the public entity "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities…an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity."  Id., § 35.160(b)(1).  For individuals with vision disabilities, "auxiliary aids and services" include:

> (2) Qualified readers; taped texts; audio recordings; Brailled materials and displays; screen reader software; magnification software; optical readers; secondary auditory programs (SAP); large print materials; accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision.

28 C.F.R. § 35.160(b)(2).  Like any other accommodation, whether a particular auxiliary aid or service constitutes a reasonable accommodation depends on the individual circumstances of each case and requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow her to meet the program's standards.  *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002); *Updike v. Multnomah Cnty.*, 870 F.3d 939, 958 (9th Cir. 2017) ("However, whether the County provided appropriate auxiliary aids *where necessary* is a fact-intensive exercise.").

Although Plaintiff's claims have somewhat evolved throughout this action, she has narrowed her Title II claim to solely allege a failure to accommodate, which contends that the County violated the ADA's "effective communication requirement."  Specifically, Plaintiff alleges that the communications between the CRO and Plaintiff were not as effective as the CRO's communications with others regarding the FBNS, and that this gave rise to an alleged obligation to provide Plaintiff with an "appropriate auxiliary aid or service."  Plaintiff alleges that she demanded "scribe services," that such services constitute a recognized auxiliary aid or

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

1   service under the ADA, and that the County's alleged failure to provide her with scribe services prevented her

2   from equally participating in the benefits of the CRO's services, programs, or activities.  Her claim fails.

3         **a.**      **Plaintiff Received All of the Benefits of the CRO's Programs, Activities, or**

4         **Services That She Sought**

5         Plaintiff's claims fail for the initial reason that she cannot establish she was excluded from participation

6   in, or denied the benefits of, any program, service, or activity of the County that she sought to receive, let alone

7   by reason of her disability, as required to establish a violation of 42 U.S.C. section 12132.  42 U.S.C. § 12132;

8   *Duvall*, 260 F.3d at 1135.  The Court previously issued findings regarding certain functions that do and do not

9   fall within the benefits of the CRO's programs, services, or activities, including holding that:  (1) "filing

10   completed forms at the CRO and the CRO's advising patrons of forms' technical deficiencies qualify as

11   services, programs, or benefits under Title II"; and (2) "filling out or modifying forms is ***not*** a CRO service,

12   program, activity or benefit."  Dkt. 54, at 5:14-6:2 & n. 4.  Accordingly, the analysis must first address whether

13   Plaintiff was denied the benefits of the CRO's services, programs, or activities that other, non-disabled

14   individuals enjoy.  The undisputed evidence confirms she was not.

15         To the contrary, there is no dispute that when Plaintiff attempted to file her FBNS on March 29, 2019,

16   multiple CRO staff members, including Moran and Briones, verbally explained to Plaintiff, step by step, the

17   specific corrections that had to be made to Plaintiff's FBNS before it could be filed.  These exchanges were

18   captured on Plaintiff's own audio recordings of the incident.  CRO staff then went further and created a "Go

19   Back Letter," which also explained to Plaintiff, in writing, the specific corrections that had to be made to

20   Plaintiff's FBNS before it could be filed.  Plaintiff clearly understood these instructions as she testified in her

21   deposition that she used the information in the "Go Back Letter" to complete a new, correct FBNS, that she

22   was able to file on May 31, 2019.  Accordingly, there is simply no dispute that Plaintiff, like every other

23   customer of the CRO, received the benefit of being advised of the technical deficiencies in her FBNS.  Further,

24   and also like every other customer of the FBNS, once Plaintiff made the necessary corrections to her FBNS,

25   she was able to file her FBNS on May 31, 2019.  Why Plaintiff opted to wait two months to file her corrected

26   FBNS is something Plaintiff will have to explain to the jury, particularly where the CRO provided her with a

27   self-addressed envelope so Plaintiff could mail in her corrected FBNS as soon as she completed it.  Regardless,

28   one thing is for certain, Plaintiff's voluntary decision to wait two months to file her FBNS does not result in

ORBACH HUFF & HENDERSON LLP

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]

1   liability to the County.  Plaintiff received every single benefit of the CRO's programs, services, or activities that

2   she sought, in the same manner as any other customer of the CRO – she was advised of her FBNS's technical

3   deficiencies and was able to file her FBNS once those deficiencies were corrected.  *Kornblau v. Dade Cnty.*, 86

4   F.3d 193, 194 (11th Cir. 1996) ("The purpose of the Act is to place those with disabilities on an equal footing,

5   not to give them an unfair advantage.").

6                       **b.     CRO Clerks Were Able to Effectively Communicate with Plaintiff**

7              Because Plaintiff's Title II claim is premised on the County's alleged failure to provide a particular

8   auxiliary aid or service, the Court must first determine whether the communications between Plaintiff and the

9   CRO were ineffective such that an auxiliary aid or service was required in the first place.  28 C.F.R. §

10  35.160(b)(1); *Updike*, 870 F.3d at 958 ("However, whether the County provided appropriate auxiliary aids

11  *where necessary* is a fact-intensive exercise."); *Payan v. Los Angeles Cnty. Coll. Dist.*, 2019 WL 9047062, at

12  *2 (C.D. Cal. Apr. 23, 2019) ("…§ 35.160(b)(1) contemplates a narrower focus into whether 'auxiliary aids

13  and services' are 'necessary' to ensure that disabled students receive the same benefits as their peers.").  If the

14  CRO was able to effectively communicate with Plaintiff, no auxiliary aid was required.  *Id.*  Notably, the ADA

15  does not require "perfect communication" – it only requires "effective communication," meaning a level of

16  communication substantially equal to that afforded to non-disabled individuals.  28 C.F.R., § 35.160(a)(1);

17  *Cropp v. Larimer Cnty., Colorado*, 793 F.App'x 771, 783-84 (10th Cir. 2019); *Silva v. Baptist Health South*

18  *Florida, Inc.*, 856 F.3d 824, 835, n. 7 (11th Cir. 2017); *Tucker v. Tennessee,* 539 F.3d 526, 538 (6th Cir. 2008)

19  (§35.160 does not "require that every potential auxiliary device be on standby so that whatever request a

20  particular individual makes can be accommodated"), *abrogated on other grounds by Anderson v. City of Blue*

21  *Ash*, 798 F.3d 338 (6th Cir. 2015).

22             Unfortunately, "[c]ase law provides no definition of what constitutes effective communication."

23  *Alexander v. Kujok*, 158 F.Supp.3d 1012, 1020 (E.D. Cal. 2016).  However, the Department of Justice

24  ("DOJ"), which promulgated Title II's regulations, has opined that "effective communications" means ensuring

25  "that the person with a communication disability can receive information from, and convey information to, the

26  covered entity."  U.S. Dept. of Justice, ADA Requirements, *Effective Communication*, January 2014, at p. 5.

27  This definition was echoed in *Silva v. Baptist Health South Florida, Inc.*, 856 F.3d 824 (11th Cir. 2017), a case

28  involving Title III of the ADA and its analogous "effective communication" requirement in 28 C.F.R. section

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

36.303(c)(1), in which the court held that the "relevant inquiry" was whether the defendant's (a hospital) failure to offer an auxiliary aid impaired "the patient's ability to exchange medically relevant information with hospital staff." *Silva*, 856 F.3d at 829, 831, & 833-834.  As *Silva* made clear, ***the "focus" of the ADA's effective communication requirement is "on the communication itself, not on the downstream consequences of alleged communication difficulties***, which could be "remote, attenuated, ambiguous, or fortuitous." *Id.*, at 834 (emphasis added).  Thus, nowhere in Title II, its regulations, case law, the DOJ's "Effective Communication" technical assistance manual, or any other DOJ technical guidance is it provided that "effective communication" goes beyond the actual communications between the person with a disability and the public entity, and somehow extends to requiring the physical act of completing or modifying forms for customers with disabilities.  See generally, 42 U.S.C. § 12132; 28 C.F.R. §§ 35.104, 35.160; U.S. Dept. of Justice, ADA Requirements, *Effective Communication*, January 2014.

To this end, Plaintiff audio-recorded most of her interactions with CRO staff on the day of the incident, which clearly reflect that the CRO's communications with Plaintiff were just as effective as the CRO's communications with others, without the use of an auxiliary aid or service.  Moran and Briones both spoke extensively with Plaintiff, including explaining the information required by the FBNS, the errors Plaintiff had made, and how to correct those errors so that the FBNS could be filed, which is exactly what CRO clerks *do for all patrons, whether disabled or not*.  The CRO's communications with Plaintiff were clearly just as effective as the CRO's communications with other patrons.

### c.       The Law Does Not Support Plaintiff's Title II ADA Claim

Even if the communication between the CRO and Plaintiff is not found to have been effective, the regulations relied on by Plaintiff do not expressly require a public entity to provide a blind individual with "scribe" or any similar services as an auxiliary aid or service.  Nowhere are such services so much as mentioned in any of the applicable statutes or regulations.  Nor has Plaintiff, after several years of litigation, been able to cite a single case, state or federal, where a court has held that a public entity is required to physically fill out or modify legal forms for patrons with disabilities pursuant to Title II of the ADA.  Thus it stands, none of the statutes or regulations cited by Plaintiff in the Complaint, nor any other ADA statutes or regulations, expressly require public entities to physically fill out or modify legal forms for persons with disabilities.

ORBACH HUFF & HENDERSON LLP

Rather, the *only* material Plaintiff has cited which actually supports her position is the "ADA *Best Practices* Tool Kit for State and Local Governments," which the U.S. Department of Justice ("DOJ") published in 2007.  And while it is true the DOJ is granted authority to issue technical assistance relative to Title II of the ADA and its regulations (42 U.S.C. § 12134, 12206(c)(1)), that technical assistance must be disregarded if it is inconsistent with the regulation it purports to interpret.  *Botosan v. Paul McNally Realty*, 216 F.3d 827, 834 (9th Cir. 2000); *Bay Area Addiction Research v. City of Antioch*, 179 F.3d 725, 732, n. 11 (9th Cir. 1999); *Or. Paralyzed Veterans of Am. v. Regal Cinemas, Inc.*, 339 F.3d 1126, 1131 (9th Cir. 2003).  That is exactly the case here.  Indeed, on one page of the "Tool Kit," in one sentence, it provides that a "qualified reader," which is a recognized auxiliary aid/service under 28 C.F.R. section 35.104, "would also need to be capable of assisting the individual in completing forms by accurately reading instructions and recording information on each form..."  U.S. DOJ ADA Tool Kit of Best Practices, Ch. 3, p. 7 (February 23, 2007).  This one sentence in the Tool Kit is the only known instance of this particular guidance by the DOJ, and the "Tool Kit" also includes extensive disclaimers that it is not "a final agency action," "has no legally binding effect," and "do[es] not establish legally enforceable responsibilities beyond what is required by the terms of the applicable statutes, regulations, or binding judicial precedent."  *Id.*  This is unsurprising considering that this guidance does not conform whatsoever to the ADA's applicable regulation.  Indeed, a "qualified reader" means "a person who is able to *read* effectively, accurately, and impartially using any necessary specialized vocabulary."  28 C.F.R. § 35.104, emphasis added.  Nowhere in that definition is there a requirement that the "qualified reader" have the capability to *write* so as to fill out legal forms for patrons.  As such, the DOJ's guidance directly contradicts the requirements of the regulation it purports to interpret.

What seems to have happened in the ADA's Tool Kit of "Best Practices" is that the DOJ was setting forth practices it *desires* to see performed, but which are not actually required by the ADA.  "Best practices" are not the same thing as legal requirements.[3]  See, e.g., *Leibel v. City of Buckeye*, 556 F.Supp.3d 1042, 1082

---

[3] Plaintiff also points to Appendix B to 28 C.F.R. Pt. 35 (nonbinding DOJ "Guidance on ADA Regulation on Nondiscrimination on the Basis of Disability in State and Local Government Services," July 26, 1991).  However, that guidance merely provides that "readers should be provided when necessary for equal participation and opportunity to benefit from any governmental service, program, or activity," such as when necessary to assist a disabled person in "reviewing public documents, examining demonstrative evidence, and filling out voter registration forms or forms needed to receive public benefits."  28 C.F.R. Pt. 35, App. B (2011), 56 Fed. Reg. 35694-01 (July 26, 1991).  While that assistance would certainly include reading and

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

ORBACH HUFF & HENDERSON LLP

1   (D. Ariz. 2021) ("Indeed, industry best practices are aspirational, generally requiring a higher standard of care

2   than the industry standard of care."); *Fraihat v. U.S. Immigr. & Customs Enf't*, 445 F.Supp.3d 709, 724 (C.D.

3   Cal. 2020), *order clarified*, 2020 WL 6541994 (C.D. Cal. Oct. 7, 2020), and *rev'd and remanded*, 16 F.4th 613

4   (9th Cir. 2021) ("The Pandemic Response Requirements set forth 'mandatory requirements' for all facilities

5   housing ICE detainees as well as best practices").  DOJ guidance simply does not support Plaintiff's position

6   that public entities have an obligation under the ADA to provide "scribe services."

7               **d.     Plaintiff Was Not Entitled to Her Choice of Accommodation**

8               Assuming for argument's sake that an accommodation was required on the day of the incident (none

9   was), Plaintiff has repeatedly and inaccurately argued that, in essence, she was entitled to any auxiliary aid or

10  service of her choosing and that public entities are obligated to bend to her will.  Indeed, this mindset can be

11  observed in her treatment of the CRO's employees on the day of the incident, as is evident from her own

12  recordings.  To reach this conclusion, Plaintiff cites 28 C.F.R. section 35.160(b)(2), which provides that, "[i]n

13  determining what types of auxiliary aids and services are necessary, a public entity shall give primary

14  consideration to the requests of individuals with disabilities."  In Plaintiff's mind, the words "primary

15  consideration" mean that the person with a disability cannot be denied the auxiliary aid or service of her choice.

16  That, of course, is not the law.  In reality, and assuming an accommodation is required, a public entity is not

17  obligated to provide the person with a disability the auxiliary aid or service of her choice, so long as the public

18  entity can demonstrate that another effective means of communication exists.  28 C.F.R. Pt. 35.160, Appendix

19  A (2011) ("The public entity shall honor the choice [of the individual with a disability] unless it can

20  demonstrate that another effective means of communication exists …"); *Petersen v. Hastings Public Schools*,

21  31 F.3d 705, 708 (8th Cir. 1994), quoting 28 C.F.R. Pt. 35.160, App. A, at 463; *Updike*, 870 F.3d at 950.

22  While Plaintiff will argue that the auxiliary aid or service selected by the public entity must result in "equally"

23  effective communication as the auxiliary aid or service, that is not the law, as clearly set forth in Appendix A to

24  section 35.160.  Indeed, the ADA only requires that the communication between a public entity and a person

25  with a disability be "as effective as communications with others" (28 C.F.R. § 35.160(a)(1)), it does not hold

26  the public liable for failing to meet some heightened standard dreamt up by the person with a disability.

27

28  explaining information to the individual filling out the form, nowhere does it state that the "reader" is required
    to physically complete or modify the form for the individual.

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]

e.     **"Scribe" Services Do Not Constitute a Reasonable Accommodation**

There are good reasons for the CRO to prohibit its clerks from altering or completing forms for patrons that are filed or recorded in the CRO.  A recorder is subject to liability for altering, changing, obliterating, or inserting any new matter in any records deposited in the recorder's office, unless the recorder is merely correcting an indexing error.  Cal. Gov. Code § 27203(d).  The recorder may only "make marginal notations on records as part of the recording process."  *Id.*  While the ADA may, in some circumstances, trump state law where the two conflict (*Hindel v. Husted*, 875 F.3d 344, 349 (6th Cir. 2017)), this statute clearly does not conflict with the ADA where nothing in Title II of the ADA or the corresponding regulations require public entities to physically fill out or alter legal forms for patrons with vision disabilities, as discussed above.  Accordingly, the CRO's clerks are prohibited as a matter of law from altering, changing, obliterating, or inserting any new matter on forms filed or recorded in the CRO, such as an FBNS.  As the County's Person Most Knowledgeable testified, the CRO's position, which is consistent with the statute, is that a document is deposited in the CRO the moment the CRO takes possession of a form from a patron.

Moreover, requiring clerks to complete or modify forms for patrons that are filed or recorded in the CRO would inevitably lead to potential civil liability for transcription errors and situations where CRO clerks are asked to engage in the unauthorized practice of law.  Indeed, "it has never been the duty of the county recorder to make determination of…whether a document was sufficiently or correctly drafted to accomplish its purpose…" 67 Ops.Cal.Atty.Gen. 93, 96 (1984); see *City of Irvine v. Southern California Assn. of Governments*, 175 Cal.App.4th 506, 521 (2009).  It is not a county recorder's place to practice law.  *Jackson v. County of Amador*, 186 Cal.App.4th 514, 522 (2010).  The practice of law in California "includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured although the matter may or may not be []pending in a court." *Crawford v. State Bar of California*, 54 Cal.2d 659, 667-668 (1960).  The unauthorized practice of law in California is a crime.  Cal. Bus. & Prof. Code §§ 6125-6126.  And, committing a crime is not a reasonable accommodation.  See *Mullen v. Chester County Hosp.*, 2015 U.S. Dist. LEXIS 57060, *26 (E.D. Penn. 2015) ("a request to allow an illegal act cannot, logically, qualify as a request for a reasonable accommodation.").  Accordingly, requiring clerks to fill out legal forms for patrons that are filed or recorded in the CRO is simply not reasonable and does not constitute a reasonable accommodation. ///

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

1

2

**f.     If An Accommodation Was Required, the CRO Provided a Reasonable**

**Accommodation**

3

Even if Plaintiff can show the communications between her and the CRO were ineffective on the day

4

of the incident, she cannot establish that the accommodations offered by the CRO were unreasonable and that

5

she was unable to participate equally in CRO's services, programs, or activities.  *Duvall*, 260 F.3d at 1137.  As

6

noted above, whether a particular accommodation is reasonable depends on the individual circumstances of

7

each case and requires a fact-specific, individualized analysis of the disabled individual's circumstances and the

8

accommodations that might allow him to meet the program's standards.  *Vinson v. Thomas*, 288 F.3d 1145,

9

1154 (9th Cir. 2002).  Here, the CRO provided Plaintiff with a reasonable accommodation that allowed her to

10

participate equally in the CRO's services, programs, or activities.  Indeed, the CRO explained to Plaintiff,

11

verbally and in writing via the Go Back Letter, the specific corrections that needed to be made to Plaintiff's

12

FBNS before it could be filed, and thus, Plaintiff received the CRO's service of being advised of the technical

13

deficiencies in her FBNS.  The CRO also provided Plaintiff with a self-addressed envelope so that Plaintiff

14

could mail in her corrected FBNS for filing, and thus participate in the CRO's service of filing forms for

15

patrons without having to return to the CRO.[4]  Plaintiff later testified that she used the information in the Go

16

Back Letter to complete a new, correct FBNS, but voluntarily returned to the CRO on May 31, 2019, and filed

17

her FBNS in person.  Regardless of Plaintiff's voluntary decision to forego mail-filing her FBNS, there can be

18

no dispute that the accommodations provided to Plaintiff by the CRO allowed Plaintiff to participate in, and

19

receive the benefits of, the CRO's services, programs, or activities.

20

**B.     Plaintiff's Claim for Monetary Damages Under the ADA**

21

Because Plaintiff seeks monetary damages from the County under the ADA, Plaintiff must not only

22

establish a violation of the ADA, but also deliberate indifference.  To prevail on a claim for monetary damages

23

under Title II, "plaintiffs must prove a mens rea of 'intentional discrimination' … [and] that standard may be

24

met by showing 'deliberate indifference'…"  *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008), quoting

25

26

[4] The DOJ offers guidance in this regard, providing an example in its Title II Primer whereby mail and email constitute reasonable accommodations for services that are otherwise inaccessible to individuals with disabilities in a physical government office.  U.S. DOJ ADA, *ADA Update: A Primer for State and Local Governments*, p. 9 (June 2015) ("If an application for a particular city program must be made in person at an inaccessible office, the city could allow a person with a mobility disability to complete and submit the application by mail or email.").

27

28

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

ORBACH HUFF & HENDERSON LLP

*Duvall*, 260 F.3d at 1138.  In order to establish a discriminatory intent, the Ninth Circuit applies the deliberate indifference test.  *Duvall*, 260 F.3d at 1138.  That standard "requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id*. at 1139, citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1988).  "[W]hen the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test" regarding "knowledge" by the public entity.  *Duvall*, 260 F.3d at 1139.

To satisfy the second element of deliberate indifference, Plaintiff is required to show that, after becoming aware of the specific barriers encountered by Plaintiff, the CRO failed to act.  Specifically, Plaintiff must establish that an official who, at a minimum, has the authority to address the alleged discrimination and to institute corrective measures on the organization's behalf and who has actual knowledge of discrimination in the organization's programs, failed to adequately respond.  *Liese v. Indian River County Hospital District*, 701 F.3d 334, 349, citing to *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998).  This element requires something more than negligence.  *Duvall*, 260 F.3d at 1139.  Indeed, "deliberate indifference does not occur where a duty to act may simply have been overlooked, or a complaint may reasonably have been deemed to result from events taking their normal course." *Id.*, at 1139-1140.  "Rather, in order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.*, at 1140.  Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cnty. v. Brown*, 520 U.S. 397, 410, (1997).  The standard is even higher than gross negligence – deliberate indifference requires a culpable mental state.  *L.W. v. Grubbs*, 92 F.3d 894, 899-900 (9th Cir. 1996).  The state actor must "recognize[] [an] unreasonable risk and actually intend[ ] to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *Id*.  The defendant must "know[] that something is going to happen but ignores the risk and exposes [the plaintiff] to it." *Id*.  Notably, this required element of deliberateness defeats any argument that every failure to meet an ADA standard is per se deliberate indifference.  *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 469-70 (9th Cir. 2015).  Such an approach "would impermissibly convert the deliberate indifference standard into a strict liability standard." *Id.*; see also *Liese*, 701 F.3d at 343 ("failure to provide an interpreter on request is not necessarily

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]

deliberately indifferent to an individuals' rights"); *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1232 (10th Cir. 2009) (declining to hold that rejecting requested accommodation "results per se in deliberate indifference").

Plaintiff cannot establish either element. Regarding the first element, for the same reasons discussed above, there was no reason for the CRO's staff to believe Plaintiff needed an accommodation for purposes of communication. They were able to communicate with Plaintiff effectively, without the need for an auxiliary aid or service, as is evident in Plaintiff's own audio-recordings of the incident. Further, even if Plaintiff could establish that an auxiliary aid or service was required for purposes of effective communication, which she cannot, she cannot satisfy the second element of deliberate indifference where the CRO nevertheless acted to ensure Plaintiff was accommodated. Specifically, two separate CRO staff members explained the technical deficiencies in Plaintiff's FBNS to Plaintiff, which had to be corrected before the FBNS could be filed. The staff members did so verbally and in writing by providing Plaintiff with a "Go Back Letter," setting forth the exact corrections that had to be made to the FBNS, along with a self-addressed envelope so Plaintiff could mail in her corrected FBNS for filing.

Accordingly, Plaintiff cannot establish deliberate indifference and cannot recover monetary damages under the ADA.

### C.     Plaintiff's DPA Claim

As noted, Plaintiff's DPA claim is expressly derivative of Plaintiff's claim under Title II of the ADA. See Dkt. 84 (Amended Complaint), ¶ 94. Plaintiff has not asserted an *independent* claim under the DPA, only a derivative DPA claim based on an alleged violation of Title of the ADA. *Id.* Indeed, the DPA ensures "full and equal access" to places of public accommodations and defines "full and equal access" to "mean access that complies with the regulations developed under the federal ADA or under state statutes, if the latter imposes a higher standard." *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1025 (N.D. Cal. 2012), citing Cal. Civ. Code § 54.1(a)(3) and *Urhausen v. Longs Drug Stores Cal., Inc.*, 155 Cal.App.4th 254, 263 (2007). Thus, "[a]n independent DPA claim requires a showing that accessibility regulations promulgated under California law exceed those set by the ADA." *Cullen*, 880 F.Supp.2d at 1025. Plaintiff here has not pointed to any relevant standards established by California law that exceed those set by the ADA. See generally, Dkt. 84 (Amended Complaint). As such, Plaintiff's DPA claim is exclusively derivative of Plaintiff's claim under Title II of the

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]

1   ADA.  Thus, because Plaintiff cannot establish liability under the ADA, she cannot establish liability under the

2   DPA.

3   Further, even if Plaintiff could establish a violation of the ADA and thus a violation of the DPA,

4   Plaintiff would nonetheless be precluded from recovering the statutory damages she seeks under the DPA,

5   which must be analyzed separately.  Specifically, Plaintiff seeks monetary damages under the DPA in the form

6   of statutory awards/penalties, pursuant to California Civil Code section 54.3(a).  Dkt. 84, ¶¶ 94-97.  The

7   problem with this demand for relief is that the published opinion in the *Carter/Fahmie* (*Carter v. City of Los*

8   *Angeles*, 224 Cal.App.4th 808 (2014)) matter confirms that such statutory damages are improper and

9   unavailable as against a public entity.  See *Sarfaty v. City of Los Angeles*, 2017 WL 6551234 (C.D. Cal. 2017)

10  (citing *Carter* for the proposition that damages under section 54.3 are unavailable as against a public entity and

11  stating, "[t]he test of the [DPA] also indicates that the City is not liable for damages under this section" and

12  "[b]ecause the most relevant state court authority indicates that damages are not available under Section 54.3,

13  the Plaintiffs' claims fail as a matter of law.").  Indeed, while the obligations under the DPA are applicable to

14  the County, the damages provision (section 54.3) is limited in its application to a "person or persons, firm or

15  corporation," which does not include public entities.

16  The penalty and damages provisions of the DPA are contained within Civil Code section 54.3(a) and

17  authorize a plaintiff to seek damages in only limited situations for a violation of the rights established in the

18  preceding provisions of the DPA.  In relevant part, section 54.3(a) provides that "[a]ny person or persons, firm

19  or corporation" who violates the DPA is subject to monetary damages under the DPA.  Cal. Civ. Code §

20  54.3(a), emphasis added.  Thus, damages are only recoverable if the County is considered a "person," "firm" or

21  "corporation" under the DPA.  However, the County does not fall into any of these categories and therefore

22  cannot be liable for DPA damages.

23  Indeed, this conclusion was confirmed in *Carter/Fahmie*, which involved a class action litigation based

24  upon allegations that the City of Los Angeles violated Title II of the ADA, the Unruh Civil Rights Act, and the

25  DPA.  *Carter*, 224 Cal.App.4th at 825.  Specifically, the Court of Appeal agreed with the lower court in

26  determining that statutory damages were unlikely under the DPA and the Unruh Act, as against a public entity.

27  *Id.*; see also *Brennon B. v. Sup. Ct.*, 57 Cal.App.5th 367, 389-390 (2020); *Dunn v. City of Los Angeles*, No. 15-

28

ORBACH HUFF & HENDERSON LLP

0413, 2017 WL 7726710, at *3–4 (C.D. Cal. Apr. 26, 2017).  The lower court found that statutory damages against the City under the DPA and Unruh were "incidental" because they were legally questionable, stating:

> The settlement and trial judges below deemed appellants' damages claim to be "incidental" because they were legally questionable.  In other words, statutory damages were a "long shot" and the right to them "highly questionable" because **no California court would likely consider a municipal entity to be liable under the Unruh Civil Rights Act or the Disabled Persons Act**; the released damages claims were of minimal value and therefore incidental.  We happen to agree that statutory damages are unlikely here.

*Carter*, 224 Cal.App.4th at 825, emph. added.  The conclusion of both the lower court and the Appellate Court is unambiguous and confirms that damages under section 54.3 of the DPA are not recoverable as against a public entity.

Courts have routinely interpreted the provisions of the DPA, Unruh Act, and the False Claims Act concurrently.  See e.g., *Carter*, 224 Cal.App.4th at 824-826 (discussing DPA and Unruh concurrently).  Thus, the California Supreme Court's decision in *Wells v. One2One Learning Foundation*, 39 Cal.4th 1164 (2006) is instructive, as it is an authoritative declaration of California law on whether a statute considers a governmental entity a "person."  In *Wells*, a school district asserted that it and other public school districts were not "persons" under the California False Claims Act ("CFCA").  In determining whether the public entity was a "person" under the CFCA, the court noted that in other statutory contexts "the Legislature has demonstrated that similar definitions of 'persons' do not include public entities, and that legislators know how to include such entities directly when they intend to do so." *Id*. at 1190-1191.  In reaching that conclusion, the *Wells* Court examined the California Fair Employment and Housing Act ("FEHA") (Cal. Gov. Code § 12900, *et seq*.), which defines "person" to "include one or more individuals, partnerships, associations, corporations, limited liability companies, legal representatives, trustees, trustees in bankruptcy, and receivers or other fiduciaries." *Id*. at 1191.

Clearly, that definition does not include governmental entities.  On the other hand, elsewhere in the FEHA, an "employer" is defined, as "any *person* regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly, *the state or any political or civil subdivision of the state, and cities*, except as otherwise specified." *Id*., emph. added.  The *Wells* Court concluded that the legislature intentionally added governmental entities in the definition of "employer," but not in the definition of

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

1   "person" or "persons" and found that this "conceptual separation" of "persons" from governmental entities was

2   an additional indication that the CFCA's definition of "person" was not meant to include governmental entities.

3   *Id*. Further, the *Wells* Court also noted that when the CFCA was originally introduced in the California

4   Assembly, the definition of covered "persons" did explicitly include governmental entities, but such references

5   were eliminated before the law was adopted. *Id*. at 1191-1192. Therefore, the Court held that "the language,

6   structure, and history of the ... CFCA ... strongly suggest that public entities, including public school districts,

7   are not 'persons' subject to suit under the law's provisions." *Id*. at 1193.

8   Similarly, section 14 of the Civil Code, which is applicable to the DPA and the entire Civil Code

9   generally, defines a "person" as "a corporation as well as a natural person." Significantly, when section 14 was

10  originally enacted in 1872, a "person" was defined as "not only human beings, but bodies politic or corporate."

11  In 1874, all references to "bodies politic" were removed, and the definition of a "person" was limited to natural

12  persons and corporations, confirming the intentional exclusion of public entities from the definition of a

13  "person." The Legislature has made no efforts in the century thereafter to broaden the definition to include

14  public entities. See *People for the Ethical Treatment of Animals, Inc. v. California Milk Producers Advisory*

15  *Bd*., 125 Cal.App.4th 871, 905 (2005) (holding that the Legislature would have included public advisory board

16  in its definition had it intended to cover it). Civil Code section 54.3 must be read in harmony with *Wells'*

17  rationale and the explicit exclusion by the Legislature of public entities under section 14 of the Civil Code.

18  Accordingly, it is clear that the Legislature expressly intended to exclude public entities from the definition of

19  "person" in the referenced enactments. Because section 54.3 does not apply to public entities, Plaintiff cannot

20  recover statutory damages/penalties from the County under the DPA.

21  **D.     Plaintiff's Claim Under Government Code Section 11135**

22  Like Plaintiff's claim under the DPA, her claim under section 11135 is derivative of her claim under

23  Title II of the ADA. See Dkt. 84, ¶ 85. However, to establish a violation of section 11135, Plaintiff must not

24  only establish a violation of the ADA, but also that the CRO's FBNS program was directly funded by the State

25  of California, or received financial assistance from the State of California at the time of the incident giving rise

26  to this action; it is not enough that the *County in general* may have received state financial assistance. Gov.

27  Code § 11135(a); *San Francisco Taxi Coalition v. City and County of San Francisco*, 979 F.3d 1220, 1227-

28  1228 (9th Cir. 2020) (rejecting claim under section 11135 for failure to allege state funding of specific program

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

1  at issue and stating, "the state's infusion of money into one arm of local government does not necessarily reach

2  all limbs and digits of that government and thus it does not extend the state's anti-discrimination law to every

3  local government activity."); *Kirola v. City and County of San Francisco*, 74 F.Supp.3d 1187, 1249 (N.D. Cal.

4  2014) (rejecting claim under section 11135 and stating, "there is no evidence that each of the specific programs

5  to which she was allegedly denied access is state-funded or otherwise receives financial assistance from the

6  state") (reversed in part, on other grounds, in *Kirola v. City and County of San Francisco*, 860 F.3d 1164 (9th

7  Cir. 2017)).  The County is not aware of any evidence in this matter that the CRO's FBNS program was state

8  funded or received financial assistance from the state at the time of the incident underlying this action.

9       **E.**    **Plaintiff's Claims for Prospective Injunctive and Declaratory Relief**

10       It is well settled that the exercise of federal jurisdiction depends on the existence of a "case or

11  controversy" and federal courts are without authority to issue opinions on moot questions or abstract

12  propositions.  *Hubbard v. 7-Eleven, Inc.*, 433 F.Supp.2d 1134, 1140-48 (S.D. Cal. 2006); *Church of*

13  *Scientology v. United States*, 506 U.S. 9, 12 (1992); *North Carolina v. Rice*, 404 U.S. 244 (1971).  Thus,

14  because a party's claims must remain viable throughout litigation, it is appropriate to raise mootness at any

15  stage of a proceeding.  *Calderon v. Moore*, 518 U.S. 149, 150 (1996); *Karimi v. Golden Gate Sch. of L.*, 361

16  F.Supp.3d 956, 973 (N.D. Cal. 2019) ("From a practical perspective, cases can become moot at any time,

17  including – as is the case here – after the parties' pleadings have been filed," and noting that "mootness

18  describes a limitation of the federal courts' jurisdiction under the United States Constitution"); *C & C Products,*

19  *Inc. v. Messick,* 700 F.2d 635, 636 (11th Cir. 1983), quoting *Kremens v. Bartley*, 431 U.S. 119, 128 (1977)

20  ("'The case must be viable at all stages of the litigation; it is not sufficient that the controversy was live only at

21  its inception.'  The fact that the mooting event occurred after the decision below 'does not save the…claims

22  from mootness.  There must be a live case or controversy before this Court").  And, "[b]ecause private

23  plaintiffs can sue only for injunctive relief under the ADA, a defendant's voluntary removal of barriers to

24  accessibility prior to trial can moot an ADA claim."  *Bax v. Drs. Med. Ctr. of Modesto, Inc.*, 52 F.4th 858, 865

25  (9th Cir. 2022); see *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011) (defendant's voluntary

26  removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim); *Hubbard*, 433

27  F.Supp.2d at 1140-48 ("Because the only relief available under the ADA is injunctive, the fact the alleged

28  barrier has been remedied renders the issue moot"); *Independent Living Res. v. Oregon Arena Corp.*, 982

ORBACH HUFF & HENDERSON LLP

- 19 -

1  F.Supp. 698, 771 (D. Or. 1997) (stating that under the ADA, when "the challenged conditions have been

2  remedied, then these particular claims are moot absent any basis for concluding that [the] plaintiff[] will again

3  be subjected to the same wrongful conduct by [the] defendant") (disapproved on other grounds).

4       Since the incident giving rise to this action, the CRO has taken additional steps to ensure individuals

5  with vision disabilities can complete an FBNS in the CRO's physical office.  The CRO has individual

6  computer terminals (kiosks) located within the physical CRO, in the "Public Files" room.  The CRO has

7  procured a license for JAWS screen-reader software for individuals with vision disabilities and installed it on

8  one of the kiosks in the CRO, which is reserved for individuals with disabilities.  The CRO has also made

9  available on that kiosk a copy of an electronic fillable PDF of the FBNS, as well as the FBNS software suite

10  that the County's vendor implemented earlier this year.  Accordingly, at present, a person with a vision

11  disability can complete an electronic FBNS in the CRO, on the CRO's computer kiosk.  The person with a

12  disability has the option of using the screen-reader software or relying entirely on the sighted assistance of a

13  CRO staff member, who will read the FBNS to the person with a disability and ensure the cursor is in the

14  correct location of the form for the person with a disability to enter his or her information.  The CRO will also

15  print the FBNS for the person with a disability and assist that individual with signing the form so that it can be

16  filed.[5]  As such, any alleged barriers to accessibility at the time of the incident no longer exist and Plaintiff's

17  claims are moot.  *Hubbard*, 433 F.Supp.2d at 1140-48.

18      **F.**    **Unresolved Legal Issues**

19       Based on the foregoing, the parties require legal rulings on the following issues, for which the

20  applicable law and the County's position are set forth above:

21  ///

22  ///

23  _____

24  [5] In addition to 28 C.F.R. section 35.104 itself, the DOJ's technical guidance makes it abundantly clear that this constitutes an appropriate and reasonable modification/auxiliary aid for individuals with vision disabilities,

25  including the same Tool Kit of Best Practices that Plaintiff relies upon (providing that there "are a variety of auxiliary aids and services" for "individuals…who are blind or have low vision," including "materials in

26  electronic format on compact discs or in emails…," and that that "screen readers," "computer terminals," and "materials in electronic format" are acceptable auxiliary aids and services), the "ADA Update: A Primer for

27  State and Local Governments," and "Effective Communication."  Thus, Plaintiff's repeated contention that accessible electronic alternatives would not constitute a sufficient and reasonable auxiliary aid or service (if the

28  Court finds one is required), is contradicted by the regulation itself and the *consistent* corresponding guidance by the DOJ.  Plaintiff is not entitled to her choice of auxiliary aid or service.  28 C.F.R. Pt. 35, App. A.

- Whether "effective communication," within the meaning of 28 C.F.R. section 35.160(a)(1), goes beyond the communications between the individual with a disability and the public entity, and extends to the physical act of completing forms for persons with disabilities.

- If an auxiliary aid or service was required, whether the "primary consideration" doctrine requires the public entity to honor the choice of auxiliary aid or service selected by the individual with a disability even when the public entity can demonstrate that another effective means of communication exists.  Plaintiff contends the auxiliary aid or service selected by the public entity must be "equally" as effective as the auxiliary aid or service demanded by the plaintiff, which the County disputes.

- Whether the specific County program at issue must be funded directly by the State of California, or receive financial assistance from the State of California, to satisfy the state funding element of a claim under California Government Code section 11135.

- Whether an FBNS is "deposited in the recorder's office" for purposes of Government Code section 27203(d) when possession of the FBNS is transferred from the individual who filled out the FBNS to an employee of the CRO.

- If an auxiliary aid or service was required, whether "scribe services" constitute a recognized and required auxiliary aid or service under the ADA and its corresponding regulations.

- If Plaintiff prevails, whether the DPA's damages provision in Civil Code section 54.3 applies to public entities such as the County.

- If an accommodation was required, whether Plaintiff's claims for prospective injunctive and declaratory relief are moot due to the County's implementation of new technology and equipment as well as additional processes for completion and submission of forms to the CRO's office.

## V.   EVIDENTIARY ISSUES

There are several potential evidentiary issues which the County wishes to bring to the Court's attention. The County merely seeks to provide notice to the Court about potential evidentiary issues that may arise.  As such, this is not an exhaustive list of evidentiary objections.  The County reserves its right to object to any evidence Plaintiff seeks to introduce at trial.  The potential evidentiary issues that are apparent to the County at present are as follows:

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

- The County objects to Plaintiff's Proposed Exhibit 1, which is Exhibit "H1" from the deposition of Eva He, and which purports to be a complete and verbatim recitation of Chapter 28 of the Code of Federal Regulations, Part 35.  However, the exhibit contains obsolete versions of the subject regulations.  For instances, the version proffered by Plaintiff at Exhibit "H1" excludes the definition of "qualified reader" which was added to 28 C.F.R. section 35.104 in or about 2010, and includes an out-of-date definition of "disability," which was amended and updated in or about 2016.

- The County objects to Plaintiff's Proposed Exhibit 12, "Martinez family mementos," which were not produced by Plaintiff in discovery, have no relevance to Plaintiff's claims in this action, and would only serve to confuse the jury and prejudice the County.

- The County objects to Plaintiff's Proposed Exhibit 13, "Photographs/promotional materials from Be Confident Be You," which were not produced by Plaintiff in discovery, have no relevance to Plaintiff's claims in this action, and would only serve to confuse the jury and prejudice the County.

- The County objects to Plaintiff's Proposed Exhibit 14, specifically with respect to "transcripts" of the recordings of "the incident in question," to the extent those transcripts are not certified and/or contain any transcription errors.

- The County objects to Plaintiff's Proposed Exhibit 18, "Can the court system help me fill out a form as an accommodation," which appears to be an informal "FAQ" (Frequently Asked Questions) issued by the New York State Unified Court System.  The exhibit has no relevance to an action pending in the United States District Court for the Northern District of California and constitutes nothing more than the New York State Unified Court System's opinions regarding interpretation of federal ADA law.  The New York State Unified Court System's opinions are not relevant to this matter, are not binding, are not even entitled to any degree of deference, and must be excluded.  The exhibit would serve to confuse the jury regarding the applicable law and prejudice the County.

///

///

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

- The County objects to Plaintiff's Proposed Exhibit 19, "How to ask for a court accommodation under the Americans with Disabilities Act," which appears to be informal court informational materials issued by the Massachusetts State Court System.  The exhibit has no relevance to an action pending in the United States District Court for the Northern District of California and constitutes nothing more than the Massachusetts Court System's opinions regarding interpretation of federal ADA law.  The Massachusetts Court System's opinions are not relevant to this matter, are not binding, are not even entitled to any degree of deference, and must be excluded.  The exhibit would serve to confuse the jury regarding the applicable law and prejudice the County.

- The County objects to Plaintiff's Proposed Exhibits 25 through 28, which include a "Demonstrative $100 bill," "Demonstrative clock timer," "Demonstrative ink pen," and "Demonstrative Kleenex package."  It is unclear if perhaps these items were copied and pasted from a different action.  None of the relevant facts of this matter involve a $100 bill, a clock timer, an ink pen, or a Kleenex package, and a civil jury trial in Federal Court is not the time to attempt some Matlock-esque demonstration with random materials that have no relation to the specific dispute to be tried.

- The County objects to Plaintiff's Proposed Exhibits 32 and 33, "Defendants' Discovery Responses" and "Defendants' Initial Disclosures," to the extent Plaintiff has not identified any particular portion of those materials that Plaintiff seeks to offer at trial.

- The County objects to Plaintiff's proposed witnesses, "Joseph A. Bakker," "Emily Grimm," "Marco Salsiccia," "Lucia Greco," and "Raymond Leimana Akahi Macapagal," none of whom were identified in Plaintiff's Rule 26 disclosures prior to the close of fact discovery on April 11, 2022.

- The County further objects to Plaintiff's proposed witness, "Joseph A. Bakker," who is alleged to be Plaintiff's husband.  Counsel for the County attempted to question Plaintiff about the areas of examination Mr. Bakker was anticipated to address in his testimony, but Plaintiff's counsel objected on grounds of marital privilege.  See Deposition Transcript of Plaintiff, at 74:8-74:20.  Plaintiff cannot now seek to introduce testimony she specifically precluded the

County from accessing during fact discovery. Moreover, Mr. Bakker's testimony is duplicative of Plaintiff's testimony, lacks foundation and the requisite personal knowledge, and is not relevant.

- The County further objects to proposed witness "Emily Grimm," particularly to the extent she "will testify as to the process of acting as a qualified reader as she performed it for Ms. Martinez." Plaintiff is referring to a simulation of "scribe services" that Ms. Grimm allegedly provided to Plaintiff, which has no relevance to the specific facts and circumstances of this case. The analysis at the heart of this case requires a fact-specific, individualized analysis of Ms. Martinez's individual circumstances during her visit to the CRO on March 29, 2019, not some simulation of "scribe services" that occurred in entirely different circumstances.

- The County further objects to proposed witness, "Marco Salsiccia," to the extent he will testify about his own experience filing an FBNS form at the CRO "between 12/8/2022 and 12/22/2022." The analysis at the heart of this case requires a fact-specific, individualized analysis of Ms. Martinez's individual circumstances during her visit to the CRO on March 29, 2019, not Mr. Salsiccia's circumstances. He is not a party to this case, has no personal knowledge relevant to this action, was not disclosed as a witness during fact discovery, and his testimony is entirely irrelevant.

- The County further objects to proposed witness, "Lucia Greco," to the extent she will testify about her own experience filing an FBNS form at the CRO "between 12/8/2022 and 12/22/2022" at the CRO. The analysis at the heart of this case requires a fact-specific, individualized analysis of Ms. Martinez's individual circumstances during her visit to the CRO on March 29, 2019, not Ms. Greco's circumstances. She is not a party to this case, was not disclosed as a witness during fact discovery, has no personal knowledge relevant to this action, and her testimony is entirely irrelevant.

- The County further objects to proposed witness, "Raymond Leimana Akahi Macapagal," to the extent he will testify about his own experience completing forms in the CRO, at some unknown time. The analysis at the heart of this case requires a fact-specific, individualized analysis of Ms. Martinez's individual circumstances during her visit to the CRO on March 29,

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

2019, not Mr. Macapagal's circumstances.  He is not a party to this case, was not disclosed as a witness during fact discovery, has no personal knowledge relevant to this action, and his testimony is entirely irrelevant.

- The County objects to Plaintiff's expert witnesses, Steven Clark, Karen McCall, and Eve Hill, to the extent their testimony involves improper opinion, interpretation of applicable law, and other legal conclusions, as set forth in the County's corresponding Motion *in Limine*.

## VI.  RELIEF SOUGHT

Plaintiff seeks declaratory relief, injunctive relief, compensatory damages, statutory awards, attorneys' fees and costs.

## VII.  BIFURCATION OF TRIAL

Plaintiff previously filed a regularly noticed motion to bifurcate trial, which the County opposed.  The Court denied the motion on November 1, 2023.  See Dkt. 98.  As such, this issue is moot.

## VIII.  CONCLUSION

In the hope of assuring the upcoming trial proceeds as efficiently as possible, the County respectfully requests the Court clearly articulate and limit the issues that may be tried to the jury.

Dated:  January 25, 2024

Respectfully submitted,
**ORBACH HUFF & HENDERSON LLP**

By:   */s/ Kevin E. Gilbert*
        Kevin E. Gilbert
        Nicholas D. Fine
        Attorneys for Defendant
        COUNTY OF ALAMEDA

ORBACH HUFF & HENDERSON LLP

Defendant County of Alameda's Trial Brief [20-cv-06570-TSH]