TIMOTHY ELDER (CA BAR NO. 277152)
KRISTOPHER A. NELSON (CA BAR NO. 342552)
**TRE LEGAL PRACTICE**
1155 Market Street, Tenth Floor
San Francisco, CA 94103
Telephone:    (415) 873-9199
Facsimile:    (415) 952-9898
Email: telder@trelegal.com, knelson@trelegal.com

S. Tomiyo Stoner (CA Bar No. 289246)
**Undaunted Law Firm, P.C.**
600 California St., Floor 7
San Francisco, CA 94108
Telephone:    (214) 415-7340
E-mail: tstoner@undauntedlaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LISAMARIA MARTINEZ**, <br><br> Plaintiff, <br><br> v. <br><br> **COUNTY OF ALAMEDA**, **MELISSA WILK**, in her individual capacity, **EVA HE**, in her individual capacity, **MARIA LAURA BRIONES**, in her individual capacity, <br><br> Defendants. | Case No. 3:20-cv-06570-TSH <br><br> **PLAINTIFF'S TRIAL BRIEF** |

**PLAINTIFF'S TRIAL BRIEF**

**TABLE OF CONTENTS**

I. PLAINTIFF'S THEORY OF THE CASE ........................................................................ 1

   A. Title II of the ADA ................................................................................................... 1

      1. Failure to Provide Effective Communications ............................................. 2

      2. In order to seek damages under the ADA, Ms. Martinez will show that Defendant acted with deliberate indifference. ............................................................................. 3

   B. California Disabled Persons Act ............................................................................ 4

   C. California Government Code section 11135 ....................................................... 4

   D. Standard of Proof ................................................................................................... 4

II. KEY EVIDENCE & MOTIONS IN LIMINE ................................................................. 4

III. DISPUTES OF LAW ........................................................................................................ 5

   A. Is a "scribe" a valid auxiliary aid or service under Title II of the ADA? ........... 5

   B. What is the correct legal standard is for measuring the sufficiency of an alternative auxiliary aid or service? ................................................................................................... 6

      1. How should the Title II regulatory standards be used when evaluating possible injunctive relief? ................................................................................................................ 7

   C. The state-funding requirement under Section 11135 .......................................... 8

   D. Applicability of the CDPA to the CRO ................................................................. 9

   E. Intent and Statutory Damages under the CDPA ................................................. 9

   F. California Government Code section 27203(d) ................................................. 10

   G. Is writing on an FBNS form the unauthorized practice of law? ...................... 10

IV. PROCEDURAL ISSUES ................................................................................................ 11

   A. Separation of liability issues and injunctive relief. ............................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Altizer v. Highsmith*, 52 Cal. App. 5th 331 (2020) .................................................................. 10

*Bonnette v. D.C. Court of Appeals*, 796 F. Supp. 2d 164 (D.D.C. 2011) ....................................... 5

*Cohen v. City of Culver City*, 754 F.3d 690 (9th Cir. 2014) ...................................................... 4, 9

*Donald v. Cafe Royale*, 218 Cal. App. 3d 168 (1990) ................................................................ 10

*Duvall v. Cty. of Kitsap*, 260 F.3d 1124 (9th Cir. 2001) ........................................................ 2, 3, 12

*Jankey v. Los Burritos, Inc.*, 343 Fed. Appx. 262 (9th Cir.2009) ................................................. 10

*Lonberg v. City of Riverside*, 2007 WL 2005177 (C.D. Cal. May 16, 2007) ................................ 9

*Lonberg v. City of Riverside*, 300 F. Supp. 2d 942 (C.D. Cal. 2004) ........................................... 9

*People v. Landlords Prof'l Servs.*, 215 Cal. App. 3d 1599 (1989) ............................................... 10

*People v. Sipper*, 61 Cal. App. 2d Supp. 844 (1943) ................................................................... 10

*Pilling v. Bay Area Rapid Transit*, 881 F.Supp.2d 1152 (2012) .................................................. 9

*Ruben v. City of Los Angeles*, Case No. 15–2378–BRO–PJW (C.D. Cal. Feb. 24, 2017) ............ 9

*Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807 (9th Cir. 1999) ............................................ 3

**Statutes**

29 U.S.C.. § 794 ............................................................................................................................. 9

California Gov't Code § 11135 .......................................................................................... 1, 4, 8, 9

California Gov't Code § 27203 .................................................................................................... 10

Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.* ............... passim

**Other Authorities**

ADA Best Practices Tool Kit for State and Local Governments (Feb. 27, 2007) .......................... 8

Dep't of Justice, Civil Rights Div., Disability Rights Section, ADA Requirements, Effective
    Communication 1 (January 31, 2014), https://www.ada.gov/effective-comm.pdf ............... 2, 7

**Regulations**

28 C.F.R § 35.160 .................................................................................................................. passim

28 C.F.R. § 35.104 ................................................................................................................. 2, 5, 7

28 C.F.R. § 35.164 ......................................................................................................................... 3

## I.   PLAINTIFF'S THEORY OF THE CASE

At trial, Plaintiff Lisamaria Martinez intends to pursue three claims against Defendant County of Alameda related to its Clerk-Recorder's Office (CRO):[1] (1) disability discrimination in violation of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.*, through a showing that Defendant failed to provide Ms. Martinez with the auxiliary aids and services and effective communication needed to allow her equal access to the CRO's programs, services, and activities; (2) disability discrimination in violation of California's Disabled Persons Act predicated on a finding of liability under the ADA; and (3) disability discrimination in violation of California Government Code section 11135 predicated on a finding of liability under the ADA.

These claims under Title II of the ADA , California Gov't Code § 11135, and California Civil Code §§ 54-55.3 (the California Disabled Person Act or CDPA) can be summarized as follows:

1. Whether the County of Alameda failed to provide effective communication needed to ensure that Plaintiff Lisamaria Martinez had an equal opportunity to enjoy the benefits of filing forms and being advised of any deficiencies at the CRO on March 29, 2019 when it refused her request for a reader/scribe to act as an auxiliary aid or service.
2. Whether the current post-litigation arrangements made at the CRO, now including a kiosk that can be requested in person and that a staff member can be asked to assist with, are equally effective to Plaintiff's requested reader/scribe service so as to overcome the primary consideration doctrine.

### A.   Title II of the ADA

To show a violation of Title II of the ADA, Ms. Martinez must prove that she is a qualified individual with a disability, that she was either excluded from participation in or denied the benefits of Defendant's services, programs, or activities, or was otherwise discriminated against

---

[1] Although Plaintiff contends claims against the individual defendants remain, she intends to request their removal from this action to simplify the case at trial.

by Defendant, and that such exclusion, denial of benefits, or discrimination was by reason of her disability.

The parties agree that she is a qualified individual with a disability (blindness). The Court has found that both filing completed FBNS forms at the CRO and the CRO's advising patrons of forms' technical deficiencies qualify as services, programs, or benefits under Title II. (Order Re: Motions for Summary Judgment 5, ECF No. 54.)

### 1.     *Failure to Provide Effective Communications*

Although other approaches are available to satisfy the elements of a Title II claim (such as (animus discriminatory treatment or a failure to make reasonable modifications to policies, practices or procedures), Ms. Martinez relies only on Title II's effective communication and auxiliary aids or services regulations in order to demonstrate discrimination on the basis of disability. Title II's regulations require public entities like Defendant to "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities … an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1136 (9th Cir. 2001) (citing 28 C.F.R § 35.160). Under these regulations, discrimination on the basis of disability includes the failure to ensure that communication with individuals with disabilities is equally effective as communication with others. *See* 28 C.F.R. § 35.160. Effective communication requires that disabled people like Ms. Martinez can receive information from, and convey information to, public entities like the County. *See* 28 C.F.R. § 35.104; 28 C.F.R. § 35.160, Dep't of Justice, Civil Rights Div., Disability Rights Section, ADA Requirements, Effective Communication 1 (January 31, 2014), https://www.ada.gov/effective-comm.pdf.

Although "[t]he type of auxiliary aid or service necessary to ensure effective communication will vary [based on individualized factors] … a public entity shall give primary consideration to the requests of individuals with disabilities." 28 C.F.R § 35.160(b)(2). The regulations make available undue burden and fundamental alteration defenses, provided the public entity considers the appropriate factors and provides a written justification; in such a situation, the entity must still "ensure that, to the maximum extent possible, individuals with disabilities receive the

benefits or services provided by the public entity." 28 C.F.R. § 35.164. Whatever is provided must still provide communications with the disabled individual are "as effective as communications with others." 28 C.F.R. § 35.160.

At trial, Ms. Martinez will show she was excluded from participation in the CRO's filing services because Defendants did not provide her with an auxiliary aid that she needed in order to facilitate two-way communication regarding her FBNS form and thus to file it in-person on March 29, 2019, as someone who is not blind would have been able to do.

### 2. In order to seek damages under the ADA, Ms. Martinez will show that Defendant acted with deliberate indifference.

Although Defendant's fundamental liability under Title II does not require showing the intent to discriminate (neither animus nor deliberate indifference is required), since Ms. Martinez also intends to seek allowable damages, she will present evidence of those damages and show that Defendant acted with deliberate indifference to her rights under the law. (She does not contend that the County acted with animus.)

A public entity is deliberately indifferent if it knows that the disabled individual needs an auxiliary aid or service and fails to determine through a fact-specific investigation what that would constitute. *See Duvall*, 260 F.3d at 1139 (discussing deliberate indifference in the context of reasonable accommodations/modifications); *Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999). A public entity may not "mere[ly] speculat[e]" that a requested auxiliary aid or service is not feasible but must determine what auxiliary aids or services are necessary based on information gathered from the individual with a disability and, where needed, from qualified experts. *Id.* Ms. Martinez will show that Defendant failed to meet that minimum standard here and thus acted with deliberated indifference because the County was placed on notice of her right to receive an auxiliary aid or service and that a violation of the ADA would occur if she did not receive an appropriate auxiliary aid, but the County dismissed her request and refused to provide her any auxiliary aid or service not generally available to the public at large.

### B. California Disabled Persons Act

Ms. Martinez intends to focus on the provision of the California Disabled Persons Act (CDPA) that any violation of the Americans with Disabilities Act is a violation of the CDPA. Cal. Civ. Code §§ 54(c), 54.1(d); *Cohen v. City of Culver City*, 754 F.3d 690, 701 (9th Cir. 2014) ("A violation of the ADA constitutes a violation of the California DPA"). (*See also* Order re: Motions for Summary Judgment 10, ECF No. 54.) Ms. Martinez does not need to show intent (including deliberate indifference) to prove a violation of the ADA and thus a violation of the CDPA. *Cohen*, 754 F.3d at 701 (Plaintiff "may recover damages for an ADA violation under the California statutes he invokes without a showing of intentional discrimination").

### C. California Government Code section 11135

Ms. Martinez asserts a related claim under Section 11135 of the California Government Code, which makes a federal ADA violation a violation of state law if the program is conducted by the state or received funding or financial assistance from the state. Ms. Martinez will show that Defendant County of Alameda received state funds and funded the operations of the CRO, including FBNS filing—something that all counties in the state are obligated to perform under the aegis of state mandates.

### D. Standard of Proof

Ms. Martinez's claims must be proven by a preponderance of the evidence.

## II. KEY EVIDENCE & MOTIONS IN LIMINE

Key evidence includes significant portions of Ms. Martinez's encounter at the CRO that were recorded as audio and will likely be presented as evidence. It is anticipated the FBNS that Ms. Martinez attempted to file will be introduced, along with the form she did ultimately file. Expert testimony will be used to demonstrate the inaccessibility of the FBNS forms and the flaws with the electronic options the County claims were available to Ms. Martinez.

The most significant evidentiary issues Plaintiff is asking the Court to consider through motions *in limine* are:

- In an effort to streamline the admission of government documents and regulatory text, Plaintiff is filing a Pretrial Request for Judicial Notice to admit evidence of regulatory text and administrative guidance.
- Although Defendant has recently represented to Plaintiff that it will not seek to assert the affirmative defenses of undue burden or fundamental alteration, Plaintiff asks that for the explicit exclusion of these affirmative defenses as well as less structured assertions of undue burdens and fundamental alterations that might fall short of full affirmative defenses.
- Plaintiff requests that a specific text message be excluded from evidence in favor of witness testimony.
- Plaintiff requests limits on the use of subsequent remedial evidence by Defendant, including on the presenting of evidence and testimony regarding later-introduced technologies and systems to the jury and permission to review and object to such evidence outside of the hearing of the jury.
- Plaintiff seeks to limit testimony of Defendant's expert that asserts conclusions of law that impermissibly intrude on the roles of the Court or the jury.

### III. DISPUTES OF LAW

    A.    **Is a "scribe" a valid auxiliary aid or service under Title II of the ADA?**

Acting as a reader/scribe (that is, writing on a paper form under the direction of a disabled individual) can qualify as an "auxiliary aid or service" under Title II of the ADA. "Notetakers," for example, write on behalf of disabled individuals and are explicitly listed in the regulations. 28 C.F.R. § 35.104. "Qualified readers," sometimes also referred to as "human readers" to distinguish them from "screen reader" computer programs, also assist in writing and filling out forms. *See, e.g., Bonnette v. D.C. Court of Appeals*, 796 F. Supp. 2d 164, 171 (D.D.C. 2011) ("Bonnette did use human readers, however, to fill out forms and read small amounts of hand-written material where the length of text to be read was no more than a few pages.") There are numerous other examples of qualified readers acting as scribes and writing examination answers, filling out forms, and performing similar activities. Qualified readers frequently also assist with

completing paperwork, as demonstrated in numerous governmental publications, including one in use by the State of California's Court system.[2]

The list of available auxiliary aids in the regulations is lengthy but not exhaustive, as it explicitly allows—subject to the requirement that alternatives must be "as effective as communications with others", 28 C.F.R. § 35.160 —"other effective methods of making visually delivered materials available to individuals who are blind or have low vision." *Id.* As the appendix to the regulations makes clear, the list provided in the regulations "not an all-inclusive or exhaustive catalogue of possible or available auxiliary aids or services. It is not possible to provide an exhaustive list, and an attempt to do so would omit the new devices that will become available with emerging technology." 28 CFR part 35, app. A at 560 (2009).

Related to this issue is County's emphasis that it provided a "go back letter": the letter, which is given to all patrons, regardless of disability, was provided to Ms. Martinez on paper, and thus was not accessible to Ms. Martinez without an auxiliary aid or service.

### B.   What is the correct legal standard is for measuring the sufficiency of an alternative auxiliary aid or service?

Under the regulations governing both Title III (private entities that are public accommodations) and Title II (public entities like the County) any alternative to Ms. Martinez's requested aid or service must be "effective." *See* 28 C.F.R. § 36.303 (Title III); 28 C.F.R. § 35.160 (Title II). That is the end of the measure of sufficiency under Title III. Under Title II, however, the public entity has two more obligations: first, to give primary consideration to Ms. Martinez's request, 28 C.F.R. § 35.160 (b)(2) *and,* second, to ensure that these alternative auxiliary aids or services still provide communications with disabled individuals like Ms. Martinez that are "as effective as communications with others," 28 C.F.R. § 35.160 (a)(1).

Fundamentally, auxiliary aids and services must afford a disabled individual "an equal opportunity to participate in, and enjoy the benefits of, filing completed forms at the CRO or

---

[2] May I Help You? Legal Advice vs. Legal Information: A Resource Guide for Court Clerks" (California Judicial Council Access and Fairness Advisory Committee), https://www.courts.ca.gov/documents/mayihelpyou.pdf; "Can the court system help me fill out a form as an accommodation," NYCOURTS.GOV Accessibility General FAQ's, https://ww2.nycourts.gov/Accessibility/faqs.shtml

being advised by the CRO of forms' technical deficiencies." 28 C.F.R. § 35.104; 28 C.F.R. § 35.160, *Dep't of Justice, Civil Rights Div., Disability Rights Section,* ADA Requirements, Effective Communication 1 (January 31, 2014), https://www.ada.gov/effective-comm.pdf; *K.M. ex rel Bright v. Tustin Unified School Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013); *Duvall v. County of Kitsap*, 260 F. 3d 1124, 1136 (9th Cir. 2001). *See also* Order re: Motions for Summary Judgment 6, ECF No. 54. This focus on equality of participation and enjoyment under Title III requires more than a focus on merely the end result.

As another specific example, Plaintiff anticipates Defendants will claim the "go back letter" was an auxiliary aid, when by the operation of law, it cannot be considered the basis for effective communication. The paper letter provided to her only addressed communication from the CRO to Ms. Martinez and did not permit Ms. Martinez to communicate her changes to the CRO on the same day as others filing their FBNS forms on March 29, 2019. While the type of auxiliary aid or services necessary to ensure effective communication will vary, an auxiliary aid or service that is not timely is not effective, much less as effective as communications with non-disabled individuals who do get timely access to communications. Similarly, providing an auxiliary aid that is not accessible is also a failure by the County: the printed "go back" letter provided to Ms. Martinez could not be read by Ms. Martinez at the time of her visit, in contrast to others who could read theirs during their visits, and therefore did not provide communications with Ms. Martinez that were as effective as communications with others.

The application only of an effectiveness standard under Title II of the ADA, as Defendant seeks to do in its jury instructions and elsewhere, is thus incorrect as a matter of law.

### 1. How should the Title II regulatory standards be used when evaluating possible injunctive relief?

Although Ms. Martinez has not yet personally used the kiosk systems in place presently at the CRO, the regulatory standards under Title II do not change the evaluation. Plaintiff intends to introduce expert and witness testimony demonstrating inadequacies in the system that result in the failure to deliver communications with disabled individuals like Ms. Martinez that is as effective as communications with non-disabled individuals, as the regulations require. *See* 28

1  C.F.R. § 35.160. The County must still give "primary consideration" to Ms. Martinez request and
2  Defendant's still have the burden of showing that the CRO's kiosk is sufficient "to ensure that
3  communications with applicants, participants, members of the public, and companions with
4  disabilities are as effective as communications with others." *Id.*; *see also* U.S. Dep't of Justice,
5  Ch. 3 § 4, ADA Best Practices Tool Kit for State and Local Governments (Feb. 27, 2007),
6  https://www.ada.gov/pcatoolkit/chap3toolkit.htm. Accordingly, when it comes to evaluating new
7  alternatives like a kiosk, the County still cannot merely establish that the kiosk is "effective."

C.   The state-funding requirement under Section 11135

California Government Code section 11135 (a) reads in the relevant part: "any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

While there is a limited amount of available case law currently about Section 11135, a court in the Northern District has already held that the County of Alameda is subject to 11135, in *Cal. Council of the Blind v. Cty. of Alameda*, 985 F. Supp. 2d 1229, 1245 (N.D. Cal. 2013).

Neither the limited dicta Defendant cites to in *Kirola v. City and County of San Francisco*, 74 F.Supp.3d 1187, 1249 (N.D. Cal. 2014) nor *San Francisco Taxi Coalition v. City and County of San Francisco*, 979 F.3d 1220, 1227-1228 (9th Cir. 2020) supports Defendant's view in support of their proposed jury instructions that state funding must be directed specifically to the processing FBNS forms. In *San Francisco Taxi Coalition*, the question is whether the SFMTA, a huge entity charged with public transportation, parking enforcement, issuing street construction permits, and various other functions, receiving state funds in an unspecified quantity, would be subject to Section 11135 in taxi medallion programs. In contrast, the Office of the Recorder, a creation of the State Constitution, Article II, paragraph 5, and an admitted recipient of state funds, has a far narrower scope. Unlike the taxi medallion program, which was not alleged to have directly received state funds, the CRO admits it has received funds from the County's general fund, which Plaintiff can demonstrate receives approximately 40% of its funding from the State of California.

Analysis of federal funding under the Rehabilitation Act is identical or nearly identical to that under Section 11135, except that it regards state rather than federal funding. *See, e.g., Melton v. Cal. Dep't of Developmental Servs.*, No. 20-cv-06613-YGR, 2021 U.S. Dist. LEXIS 214662, at *40 (N.D. Cal. Nov. 5, 2021) ("Section 11135 'is identical to the Rehabilitation Act except that the entity must receive State financial assistance rather than Federal financial assistance.'"). *See also Y.G. v. Riverside Unified Sch. Dist.*, 774 F. Supp. 2d 1055, 1065 (C.D. Cal. 2011); *D.K. ex rel. G.M. v. Solano County Office of Educ.*, 667 F. Supp. 2d 1184, 1191 (E.D. Cal. 2009). Under this analogous standard, programs and activities are defined broadly to encompass "all of the operations" of the department or agency and each "other instrumentality of a State or of a local government." 29 U.S.C.. § 794. The County appears to contend in its responses to discovery that it returns funds to the general fund. However, no applicable law exempts entities that eventually return funds. Accordingly, the CRO and its activities are funded by the State of California for the purpose of Section 11135.

### D. Applicability of the CDPA to the CRO

The Ninth Circuit previously confirmed that the California Disabled Persons Act applies to public entities, which would include Defendant County of Alameda and thus the CRO. *See Cohen v. City of Culver City*, 754 F.3d 690, 701 (9th Cir. 2014) (applying the CDPA with an underlying ADA violation applies to a public entity). Other courts also agree that the CDPA applies to public entities. *See, e.g., Pilling v. Bay Area Rapid Transit*, 881 F.Supp.2d 1152, 1163 (2012) (finding that the plaintiff "stated a claim under the DPA" against BART, a public entity, because he had an underlying ADA claim); *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942 (C.D. Cal. 2004); *Lonberg v. City of Riverside*, 2007 WL 2005177 (C.D. Cal. May 16, 2007); *Ruben v. City of Los Angeles*, Case No. 15–2378–BRO–PJW, ECF No. 56 (C.D. Cal. Feb. 24, 2017).

### E. Intent and Statutory Damages under the CDPA

The California Disabled Persons Act and its statutory damages provision does not require a finding of intent (including deliberate indifference) when it is based on a violation of the ADA. Cal. Civ. Code §§ 54(c), 54.1(d), 54.3; *Cohen*, 754 F.3d at 701 ("A violation of the ADA

constitutes a violation of the California DPA" and Plaintiff "may recover damages for an ADA violation under the California statutes he invokes without a showing of intentional discrimination"). *See also Jankey v. Los Burritos, Inc.*, 343 Fed. Appx. 262, 264 (9th Cir.2009) ("A plaintiff who establishes a violation of the ADA ... need not prove intentional discrimination in order to obtain damages under section 52."); *Donald v. Cafe Royale*, 218 Cal. App. 3d 168, 176 (1990); (Order re: Motions for Summary Judgment 10, ECF No. 54).

### F. California Government Code section 27203(d)

California Government Code section 27203(d) prohibits "any recorder to whom an instrument … is delivered for record" (not "any employee of the CRO who is handed a form") from "alter[ing], chang[ing], obliterate[ing], or insert[ing] any new matter in any records deposited in the recorder's office, unless the recorder is correcting an indexing error." First, Ms. Martinez requested assistance with writing on a paper FBNS form. Handing a form to a County employee for that purpose is not asking for it to be recorded nor does it automatically result in it being deposited. Second, the County could simply have met her explicit request by having a staff member other than a "recorder" write on the paper form on her behalf. Third, federal laws like the ADA pre-empt state law when there is a conflict.

### G. Is writing on an FBNS form the unauthorized practice of law?

The County has repeatedly suggested that writing on a form might constitute the unauthorized practice of law. This position has already been rejected by this Court:

> Defendants suggest that assisting Martinez would constitute the unauthorized practice of law, but long-standing California precedent contradicts this assertion: acting as a scrivener to perform "the clerical service of filling in the blanks on a particular form in accordance with information furnished" is not the unlicensed practice of law in California. *People v. Sipper*, 61 Cal. App. 2d Supp. 844, 846-47 (1943); *Altizer v. Highsmith*, 52 Cal. App. 5th 331, 341 (2020); *People v. Landlords Prof'l Servs.*, 215 Cal. App. 3d 1599, 1608 (1989); Tuft, Peck and Mohr, Cal. Practice Guide: Professional Responsibility (The Rutter Group 2019) ¶¶ 1:203 to 1:204.1, p. 1-125.

(Order Denying Motion to Dismiss 10, ECF No. 22.)

Furthermore, just as government offices frequently use "neutral" interpreters, the County always had the option of using non-recorder personnel (receptionists, administrative assistants, security personnel, independent contractors, etc.) such that the duties of the recorder would not be implicated. Similarly, the law recognizes that individuals simply transcribing or translating on behalf of an individual with disabilities do not engage in the unauthorized practice of law. It is common practice in every court in the state for interpreters to translate the advice of attorneys without engaging in the unauthorized practice of law, including translating written documents. In fact, the State Bar of California expressly states that non-attorney immigration consultants can "complete forms for you to translate" without engaging in the unauthorized practice of law. *See, e.g.,* https://www.calbar.ca.gov/Public/Free-Legal-Information/Unauthorized-Practice-of-Law.

In short, it does not constitute the unauthorized practice of law to act as a scribe to write on a paper form under the direction of a disabled individual like Ms. Martinez.

### IV. PROCEDURAL ISSUES

#### A. Separation of liability issues and injunctive relief.

Plaintiff previously moved to bifurcate (ECF No. 94). In denying the motion, the Court determined the risk of confusion regarding the auxiliary aids made available to Martinez in 2019 and the current setup, could "be abated by a jury instruction that evidence pertaining to the CRO's subsequent modifications is not relevant to the question of liability and retrospective relief." (Order Denying Motion to Bifurcate 7, ECF No. 98.) The County appears to confuse the two in proposed jury instructions. Accordingly, Plaintiff suggests that the Court remind jurors of the distinction between prior liability and the assessment of the kiosk system for the purpose of making a determination regarding injunctive relief through an instruction such as the following prior to the introduction of evidence regarding the kiosk system and potentially also in the written instructions:

> The evidence about to be presented concerns technology that was not offered to Ms. Martinez during her visit to the CRO on March 29, 2019. Technology introduced after the March 29, 2019 visit is not relevant to the County's intent on March 29, 2019, nor to damages, if any, sustained by Ms. Martinez in conjunction with that visit.

The County also continues to assert that certain modifications were "planned" even prior to Ms. Martinez's visit to the CRO. Yet, Defendant does not offer evidence of any specific auxiliary aids or services contemplated prior to the March 29, 2019 visit. To the extent additional modifications were made after the March 29, 2019 visit, they are not relevant to the County's intent on March 29, 2019. Subsequent regret does not disprove intent (deliberate indifference here), which is assessed at the time an action or inaction occurred. (*See, e.g., Duvall*, 260 F.3d at 1132 (addressing training of one court reporter to learn the skill of real-time transcription, which is the auxiliary aid requested as not relevant to deliberate indifference.)

The Court has suggested the potential to use an advisory question on issues relating to whether the Defendant's current kiosk and self-service electronic offerings sufficiently demonstrate effective communication so as to overcome the primary consideration of the Plaintiff's requested reader/scribe. There is a pending legal question over what Ms. Martinez must show to demonstrate the need for injunctive relief and how that will be presented to the jury.

DATED: January 25, 2024

Respectfully submitted,

TRE LEGAL PRACTICE

*/s/ Timothy Elder*
Timothy R. Elder

*Attorneys for Plaintiff*