Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohhlegal.com
Nicholas D. Fine, Esq. (SBN: 285017)
nfine@ohhlegal.com
**ORBACH HUFF + HENDERSON LLP**
6200 Stoneridge Mall Road, Suite 225
Pleasanton, CA  94588
Telephone:      (510) 999-7908
Facsimile:      (510) 999-7918

Attorneys for Defendant
COUNTY OF ALAMEDA

ORBACH HUFF + HENDERSON LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LISAMARIA MARTINEZ,<br><br>                     Plaintiff,<br><br>v.<br><br>COUNTY OF ALAMEDA,<br><br>                     Defendant. | Case No.  20-cv-06570-TSH<br><br>**DEFENDANT COUNTY OF ALAMEDA'S OPPOSITION TO PLAINTIFF LISAMARIA MARTINEZ'S MOTIONS *IN LIMINE* NOS. 1-3; DECLARATION OF NICHOLAS D. FINE**<br><br>PTC:        February 22, 2024<br>TIME:       10:00 a.m.<br>DEPT:       Courtroom G, 15th Floor<br>JUDGE:     Hon. Thomas Hixson<br>TRIAL:      March 25, 2024 |

## TABLE OF CONTENTS

**Page(s)**

I.  SUMMARY OF ARGUMENT AND KEY FACTS ................................................................. 1

II.  RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* NO. 1 .......................................... 2

III.  OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 2 ................................... 3

IV.  OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 3 ................................... 6

V.  CONCLUSION ............................................................................................................... 8

DECLARATION OF NICHOLAS D. FINE ............................................................................ 9

ORBACH HUFF + HENDERSON LLP

Defendant COUNTY OF ALAMEDA ("Defendant" or "County") hereby submits its consolidated Oppositions to Plaintiff's first three Motions *in Limine*.  As discussed herein, each of Plaintiff's Motions *in Limine* should be denied.

## I.     SUMMARY OF ARGUMENT AND KEY FACTS

Plaintiff Lisamaria Martinez ("Plaintiff"), a disability-rights activist with a vision disability, claims to have been subjected to disability discrimination on March 29, 2019, by employees of the County Clerk-Recorder's Office ("CRO"), when Plaintiff sought to file a Fictitious Business Name Statement ("FBNS") at the CRO's physical office in Oakland, California.  Specifically, and despite the fact Plaintiffs' own recordings of the incident reflect fluent communications between Plaintiff and the County's employees, Plaintiff alleges that the County failed to provide Plaintiff with an auxiliary aid or service, in the form of "scribe services," which Plaintiff claims was necessary to ensure "effective communication" between Plaintiff and the County and for Plaintiff to enjoy the benefits of the CRO's programs, services, or activities.  Plaintiff brings suit for disability discrimination under the ADA and derivative state statutes.

Plaintiff now brings three Motions *in Limine*, seeking to:  (1) exclude any defenses or assertions of undue burden or fundamental alteration by the County ("Plaintiff's MIL 1"), (2) exclude the March 29, 2019, text message from Jocelyn Cole to Matt Yankee ("Plaintiff's MIL 2"), and (3) to limit evidence of alleged "subsequent remedial measures" ("Plaintiff's MIL 3").  With respect to Plaintiff's MIL 1, the County is not asserting an "undue burden or fundamental alteration" defense in this matter, and as such, that motion is unopposed.  However, to the extent Plaintiff identifies specific evidence that Plaintiff believes to apply to an "undue burden or fundamental alteration" defense (namely, evidence pertaining to the County's argument that the provision of scribe services would create undesirable situations where the County's employees would be asked to provide legal advice and/or engage in the unauthorized practice of law), the County intends to offer that evidence for other purposes, including but not limited to the defense that "scribe services" do not constitute a reasonable accommodation or appropriate auxiliary aid or service.

With respect to Plaintiff's MIL 2, whether the text message between Ms. Cole and Mr. Yankee should be excluded as impermissible hearsay should be analyzed at the time of trial, in the proper testimonial context, not in the contextual vacuum of a motion *in limine*.  However, if the Court is inclined to rule on the text message now, it is admissible under several exceptions to the hearsay rule, including the present sense

Def Co/Alameda's Opp to Plt's Motions *in Limine* Nos. 1-3; Dec of N. Fine [20-cv-06570-TSH]

ORBACH HUFF + HENDERSON LLP

impression exception, business record exception, public record exception, and the "catch-all" exception.

Finally, rather than requesting the exclusion of specific evidence at trial, Plaintiff's MIL 3 instead requests a specific jury instruction, which is not a proper purpose of a motion *in limine* and should be denied for that reason alone.  Further, Plaintiff's MIL 3 is fatally vague, in that it fails to describe any specific evidence to be excluded, and is directly contrary to applicable law.  As an aside, if Plaintiff refers to *any* actions by the County, in front of the jury, as "subsequent remedial measures," which is entirely inaccurate, the County will immediately seek a mistrial.

## II.    RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* NO. 1

In Plaintiff's MIL 1, Plaintiff asks the Court to preclude the County from "rely[ing] on any assertions, claims, or defenses of undue burdens or fundamental alterations."  Plaintiff's MIL 1, at 2:4-5.  Plaintiff appears to be referring to the ADA defense set forth in 28 C.F.R. section 35.164, which provides that a public entity is not required "to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or undue financial and administrative burdens."  28 C.F.R. § 35.164.  However, as counsel for the County advised counsel for Plaintiff during the meet and confer efforts that precipitated the parties' respective motions *in limine*, the County is *not* asserting an undue burden/fundamental alteration defense.  As such, Plaintiff's MIL 1 is moot and unopposed.

However, to the extent Plaintiff specifically references the County's prior argument that the provision of scribe services would create undesirable situations where the County's clerks would be asked to provide legal advice and/or engage in the unauthorized practice of law, and may inadvertently do so, the County intends to offer that argument at trial and to present corresponding evidence.  The County is not offering such argument or evidence for purposes of an "undue burden/fundamental alteration" defense, but for other purposes, including but not limited to the County's defense that the provision of "scribe services" does not constitute a reasonable accommodation[1] under the ADA, and, more specifically, is not an "appropriate auxiliary aid or

---

[1] "'Although Title II of the ADA uses the term "reasonable modification" rather than "reasonable accommodation," *these terms create identical standards' and may be used interchangeably*."  *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021) (emphasis added), quoting *McGary v. City of Portland*, 386 F.3d 1259, 1268 (9th Cir. 2004).  Moreover, "despite the titles' different application and different standards for relief on the merits, the answer to the *constitutional question* of what amounts to injury under Article III is the same."  *Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164, 1175 (9th Cir. 2017).

Def Co/Alameda's Opp to Plt's Motions *in Limine* Nos. 1-3; Dec of N. Fine [20-cv-06570-TSH]

ORBACH HUFF + HENDERSON LLP

ORBACH HUFF + HENDERSON LLP

1  service" under 28 C.F.R. section 35.160(b)(1).

2      Accordingly, the County does not oppose Plaintiff's MIL 1 to the extent it seeks to preclude evidence

3  or argument pertaining to an undue burden/fundamental alteration defense.  However, the County opposes any

4  effort to preclude evidence pertaining to the County's argument that the provision of scribe services would lead

5  to the County's clerks being asked to provide legal advice and engage in the unauthorized practice of law.

6  **III.    OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 2**

7      In Plaintiff's MIL 2, Plaintiff seeks to exclude the text message that County/CRO employee, Jocelyn

8  Cole, sent to the Assistant Controller for the County, Matt Yankee, on March 29, 2019, regarding and

9  immediately following Plaintiff's visit to the CRO that day.  Plaintiff's MIL 2, at 5:3-6.  Plaintiff argues that the

10  text message constitutes hearsay under Federal Rule of Evidence 802, and further contends, without any

11  explanation or argument, that the text message should also be excluded under Federal Rules of Evidence 402,

12  403, 701, and 801.  Id.

13      First, however, Plaintiff's MIL 2 is premature.  Any such hearsay objection should be made at the time

14  the evidence is offered at trial, once the text message is provided with testimonial context.  Indeed, courts have

15  recognized that it "is almost always better situated during the actual trial to assess the value and utility of

16  evidence." *Ditton v. BNSF Railway Co.*, 2014 WL 12928305, *1 (C.D. Cal. Jan. 6, 2014), quoting *Wilkins v.*

17  *Kmart Corp.*, 487 F.Supp.2d 1216, 1218 (D. Kan. 2007).  Therefore, "'a better practice is to deal with

18  questions of admissibility of evidence as they arise [in actual trial]' as opposed to tackling the matter in a

19  vacuum on a motion in limine." *Id.*, quoting *Sperberg v. The Goodyear Tire and Rubber Co.*, 519 F.2d 708,

20  712 (6th Cir. 1975).

21      To the extent the Court is inclined to rule now, the text message is not offered for the truth of the matter

22  asserted therein and is admissible under the present sense impression exception to the hearsay rule.  Fed. Rules

23  Evid. § 803(1).  Under that exception, "[a] statement describing or explaining an event or condition, made

24  while or immediately after the declarant perceived it" is not excluded by the hearsay rule.  Id.  Thus, there are

25  three elements to the present sense impression exception:  (1) subject matter (describing or explaining an event

26  or condition); (2) perception (by a declarant perceiving the event or condition); and (3) time (during such

27  perception or immediately thereafter).  Id.; *United States v. Portsmouth Paving Corp.*, 694 F.2d 312, 323 (4th

28  Cir. 1982); *United States v. Mitchell*, 145 F.3d 572, 576 (3rd Cir. 1998).

ORBACH HUFF + HENDERSON LLP

1       Citing no interpretive authority whatsoever, Plaintiff challenges the third element – time – and claims

2  that the "text message … appears to have been sent well after Ms. Martinez departed from the CRO,

3  invalidating it as a 'present sense impression.'"  Plaintiff's MIL 2, at 5:8-10.  This is factually inaccurate.

4  Plaintiff testified that she arrived at the CRO at the "hour of 1:00 p.m." on March 29, 2019, and estimates that

5  she spent approximately "three hours there that day."  Declaration of Nicholas D. Fine ("Fine Decl."), ¶ 3, Ex.

6  A, at 50:5-22, 70:4-9.  Therefore, according to Plaintiff, she left the CRO at approximately 4:00 p.m. on March

7  29, 2019, and the text from Ms. Cole to Mr. Yankee that is the subject of Plaintiff's MIL 2 was sent at 4:47

8  p.m., a mere 47 minutes later.  Id., ¶ 4, Ex. B.  This satisfies the "time" element of the present sense impression

9  exception to the hearsay rule.[2]  While there is no per se rule indicating what time interval would be too long

10  under Rule 803(1), the Advisory Committee Notes to Rule 803(1) confirm that "precise contemporaneity"

11  often is impossible and that, therefore, a slight time lapse between the event and the statement is allowable.

12  Fed. R. Evid. 803(1), Advisory Committee Note.  Admissibility depends on the facts of the particular case.

13  *United States v. Blakey*, 607 F.2d 779, 785-786 (7th Cir. 1979), abrogated on other grounds as recognized by

14  *United States v. Harty*, 930 F.2d 1257, 1263 (7th Cir. 1990).  The time limit for determining whether the

15  statement is made immediately after the event observed is constrained by reasonableness, "[b]ut that does not

16  mean an event must be instantaneous."  *United States v. Orm Hieng*, 679 F.3d 1131, 1142, fn. 2 (9th Cir.

17  2012); see also *Blakey*, 607 F.2d at 779, 785-786 (not error to admit statement made at most 23 minutes after

18  event); *In re Tony Dong Xing Fu*, 2019 WL 1313825, at *2, fn. 3 (statement made up to 36 minutes after event

19  observed qualified as present sense impression); *compare Kenney v. Floyd*, 700 F.3d 604, 609 (1st Cir. 2012)

20  (statements offered more than one month after the event observed were too removed in time to qualify as a

21  present sense impression).  Ms. Cole's text message was sent shortly after Plaintiff left the CRO on March 29,

22  2019, according to Plaintiff's own testimony and the time stamp on the text message.  Accordingly, the text

23  message is admissible under the present sense impression exception to the hearsay rule.  Fed. R. Evid. 803(1).

24       Further, the text message is admissible under the business records exception to the hearsay rule

25  because:  (1) the record was made by a regularly conducted business activity; (2) the record was kept in the

---

[2] Considering that the text was *sent* at 4:47 p.m., Ms. Cole started writing the text message *before* that time.  And, given the length of the text message, the substance of the events she described, and the detail she provided, it is likely she started writing the text message *well* before 4:47 p.m., and therefore much closer to the approximate time of Plaintiff's departure from the CRO.

Def Co/Alameda's Opp to Plt's Motions *in Limine* Nos. 1-3; Dec of N. Fine [20-cv-06570-TSH]

regular course of the CRO's business; (3) it is the regular practice of the CRO to make the record; and (4) the record was made by a person with knowledge or from information transmitted by a person with knowledge. *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1258 (9th Cir. 1984).  Text messages may properly qualify as business records for purposes of Rule 803(6).  *United States v. Osborne*, 677 Fed.Appx. 648, 653-655 (11th Cir. 2017) (it was not plain error to admit text messages under business records exception to hearsay rule).

The text message is likewise admissible under the public records exception to the hearsay rule, which makes admissible records or statements of public offices or agencies setting forth "the office's activities," amongst other categories of admissible public records and statements.  Fed. R. Evid. 803(8)(A)(i).  The text message from Ms. Cole to Mr. Yankee was made by Ms. Cole, in her capacity as an employee of the County, it specifically describes the CRO's activities on March 29, 2019, relative to the incident at issue in this lawsuit, and therefore satisfies the public record exception to the hearsay rule.  Moreover, even if the text message was not admissible under the foregoing exceptions to the hearsay rule, which it is, it would nonetheless be admissible under the "catch all" exception set forth in Rule 807, particularly where it was made immediately after the event it describes and Plaintiff has not identified any evidence or indicia that the text message is not trustworthy.  Fed. R. Evid. 807.

Additionally, regarding relevance, the text message is directly relevant to whether the County Defendants were "deliberately indifferent" to Plaintiff's rights.  Because Plaintiff seeks monetary damages from the County under the ADA, Plaintiff must not only establish a violation of the ADA, but also deliberate indifference.  To prevail on a claim for monetary damages under Title II, "plaintiffs must prove a mens rea of 'intentional discrimination' … [and] that standard may be met by showing 'deliberate indifference'…"  *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008), quoting *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).  In order to establish a discriminatory intent, the Ninth Circuit applies the deliberate indifference test.  *Duvall*, 260 F.3d at 1138.  That standard "requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood."  *Id*. at 1139, citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1988).  With respect to the second element, Plaintiff is required to show that, after becoming aware of the specific barriers encountered by Plaintiff, the CRO failed to act.  *Liese v. Indian River County Hospital District*, 701 F.3d 334, 349, citing to *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998).  This element requires something more than negligence.  *Duvall*, 260 F.3d at

- 5 -

1139. Indeed, "deliberate indifference does not occur where a duty to act may simply have been overlooked, or a complaint may reasonably have been deemed to result from events taking their normal course." *Id.*, at 1139-1140. "Rather, in order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.*, at 1140. The standard is even higher than gross negligence – deliberate indifference requires a culpable mental state. *L.W. v. Grubbs*, 92 F.3d 894, 899-900 (9th Cir. 1996). The text message Plaintiff seeks to exclude is directly relevant to the County's employees' mental state and whether their conduct, if violative of the ADA (it was not), constituted mere negligence or a deliberate failure to act.

For these reasons, Plaintiff's MIL 2 should be denied.

## IV.    OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 3

There are a multitude of problems with Plaintiff's MIL 3. First, while the County understands Plaintiff is making an attempt at persuasion, Plaintiff does not appear to understand the seriousness of her inaccurate labeling of the CRO's computer-kiosk accommodation as a "subsequent remedial measure." If Plaintiff or her counsel references any County action as a "subsequent remedial measure," in front of the jury, the County will immediately seek a mistrial. The County's computer-kiosk accommodation is not a "subsequent remedial measure," and there was nothing to "remedy," as Plaintiff improperly seeks to imply.

As Plaintiff is well aware, the County has maintained from the initiation of this action that the communications between the County's employees and Plaintiff on March 29, 2019, were effective such that no auxiliary aid or service was required, that Plaintiff was not denied participation in or the benefits of the CRO's programs, services or activities, and that even if an accommodation was required, the CRO already offered a reasonable accommodation at the time of the incident. Specifically, the CRO provided Plaintiff with a "go-back" letter regarding the specific corrections that had to be made to her FBNS before it could be filed, informed Plaintiff that she could file her corrected FBNS by mail, and provided Plaintiff with a self-addressed envelope so she could do so. As such, Plaintiff cannot establish any violation of Title II of the ADA by the County on March 29, 2019, because the County was in compliance. The CRO's implementation of an additional accommodation, in the form of a computer kiosk with screen-reader software and electronic versions of the FBNS, shows the CRO's never-ending goal of improving accessibility for its customers wherever reasonable and practicable, above and beyond any legal obligations the CRO may have. It is not, and has never

ORBACH HUFF + HENDERSON LLP

- 6 -

been, a "subsequent remedial measure," and that phrase must be excluded from trial as it will improperly lead the jury to believe the County implemented the kiosk accommodation to "remedy" a violation of the ADA, and unduly prejudice the County.

Second, Plaintiff's MIL 3 does not appear to be a motion *in limine* at all, but instead appears to be a written argument for a particular jury instruction. See Plaintiff's MIL 3, at 7:3-8. A motion *in limine* seeks to limit or exclude evidence at trial; it is not the time or place to argue for specific jury instructions. *Barry v. Shell Oil Co.*, 2018 WL 2327369, at *1 (D. Alaska May 22, 2018) ("The purpose of *motions in limine* is not to re-iterate matters which are set forth elsewhere in the Rules of Civil Procedure or Rules of Evidence …"). The parties separately submitted proposed jury instructions to the Court and will presumably have an opportunity to argue those proposed instructions. Further, Plaintiff's proposed jury instruction is argumentative and improperly written in a persuasive manner. The instruction, if one is given, must set forth a neutral statement of the law regarding the specific question the jury will be tasked with answering.

Third, to the extent Plaintiff also requests an order that, "prior to testimony regarding any auxiliary aids and services, or policy modifications, not previously disclosed, Defendant should first seek permission of the Court and allow Plaintiff an opportunity to object outside of the hearing of the jury" (Plaintiff's MIL 3, at 7:20-27), this is not a proper request. Besides the fact Plaintiff is effectively seeking to force the County to "pre-try" its case for Plaintiff, her request is also fatally vague for purposes of a motion *in limine*.

"[M]otions in limine must identify the evidence at issue and state with specificity why such evidence is inadmissible." *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, No. CV 08-8525PSGPJWX, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010). A motion that "does not refer to particular pieces of evidence that plaintiff seeks to exclude" can and should be summarily denied. See *Amavisca v. Foss Mar. Co.*, No. CV 13-3550 FMO (RZX), 2014 WL 12603198, at *1 (C.D. Cal. Nov. 18, 2014); *Bullard v. Wastequip Mfg. Co. LLC*, No. 14-CV-01309-MMM, 2015 WL 13757143, at *7 (C.D. Cal. May 4, 2015) ("failure to specify the evidence" that a motion *in limine* "seek[s] to exclude constitutes a sufficient basis upon which to deny th[e] motion").

Where a party seeks to exclude a broad category of evidence without reference to the particularly objectionable evidence, the request should ordinarily be denied as the Court is almost always better situated to rule on evidentiary issues in their factual context during trial. See *Sperberg v. Goodyear Tire & Rubber Co.*,

ORBACH HUFF + HENDERSON LLP

519 F.2d 708, 712 (6th Cir.1975) ("A better practice is to deal with questions of admissibility of evidence as they arise."); *Wilkins v. Kmart Corp.*, 487 F.Supp.2d 1216, 1218 (D.Kan.2007) ("[A] court is almost always better situated during the actual trial to assess the value and utility of evidence."); *Ditton v. BNSF Railway Co.*, 2014 WL 12928305, *1 (C.D. Cal. Jan. 6, 2014). "Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial.  Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Matrix Int'l Textile, Inc. v. Monopoly Textile, Inc.*, 2017 WL 2929377, at *1 (C.D. Cal. May 14, 2017).

Plaintiff does not clearly specify what evidence she seeks to exclude or articulate why that evidence is inadmissible.  Instead, she presents broad generalizations and suggests they support a blanket exclusion of otherwise relevant evidence, absent the Court's advance permission to present it.  For instance, the County does not know how Plaintiff defines "auxiliary aids and services," "policy modifications," or "not previously disclosed."  Due to such vagueness and the failure to specify particular evidence to be excluded, Plaintiff's MIL 3 should be denied.

## V.     CONCLUSION

The County does not oppose Plaintiff's MIL 1 to the extent it seeks to exclude evidence or argument of an undue burden/fundamental alteration defense, but opposes any effort to exclude evidence pertaining to the County's argument that the provision of "scribe services" would create undesirable situations where the County's employees would be asked to provide legal advice and/or engage in the unauthorized practice of law, and may inadvertently do so.  Further, for the reasons discussed herein, the County respectfully requests that Plaintiff's MIL 2 and MIL 3 be denied.

Dated:  February 8, 2024                     Respectfully submitted,

**ORBACH HUFF + HENDERSON LLP**

By:    */s/ Nicholas D. Fine*
        Kevin E. Gilbert
        Nicholas D. Fine
        Attorneys for Defendant
        COUNTY OF ALAMEDA

ORBACH HUFF + HENDERSON LLP

## DECLARATION OF NICHOLAS D. FINE

I, Nicholas D. Fine, if called upon to testify will competently testify as follows:

1.      I am an attorney at law licensed to practice before this Court.  I am an attorney with the law firm of Orbach Huff & Henderson LLP, attorneys of record for Defendant COUNTY OF ALAMEDA ("Defendant" or "County").  I have personal knowledge of the matters set forth herein below and if called upon to testify will competently testify thereto.

2.      This Declaration is submitted in support of Defendant's Oppositions to Motions *in Limine* Nos. 1-3, filed by Plaintiff LISAMARIA MARTINEZ ("Plaintiff").

3.      Attached hereto as **Exhibit A** is a true and correct copy of relevant portions of the transcript of the Deposition of Plaintiff Lisamaria Martinez, taken remotely on March 23, 2022.

4.      Attached hereto as **Exhibit B** is a true and correct copy of the text message from Jocelyn Cole to Matt Yankee, dated March 29, 2019, 4:47 p.m., which the County produced to counsel for Plaintiff on February 1, 2022.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 8th day of February, 2024, in Pleasanton, California.

/s/ *Nicholas D. Fine*
Nicholas D. Fine

ORBACH HUFF + HENDERSON LLP

Def Co/Alameda's Opp to Plt's Motions *in Limine* Nos. 1-3; Dec of N. Fine [20-cv-06570-TSH]

# EXHIBIT A

1                    UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3                      SAN FRANCISCO DIVISION

4

5    LISAMARIA MARTINEZ,                    |
                          Plaintiff,        |
6                                           |  Case No.
     vs.                                    |  20-cv-06570-TSH
7                                           |
     COUNTY OF ALAMEDA, MELISSA WILK,       |
8    in her individual capacity, EVA HE,    |
     in her individual capacity, MARIA      |
9    LAURA BRIONES, in her individual       |
     capacity,                              |
10                        Defendants.       |
     _____/

11

12                          VOLUME I

13                     VIDEOTAPED REMOTE

14              DEPOSITION OF LISAMARIA MARTINEZ

15                 Wednesday, March 23, 2022

16

17

18

19   REPORTED BY:

20   DEBRA J. SKAGGS, CSR 7857

21

22                      EMERICK AND FINCH
                    Certified Shorthand Reporters
23               18 Crow Canyon Court, Suite 125
                    San Ramon, California 94583
24               emerickfinch@emerickfinch.com
                 (925) 831-9029   (800) 331-9029
25

**CERTIFIED COPY**

925-831-9029                                    emerickfinch@emerickfinch.com

Page 2

```
 1                    REMOTE APPEARANCES

 2   FOR THE PLAINTIFF:
         TRE LEGAL PRACTICE
 3       BY: ALBERT ELIA, ATTORNEY AT LAW (Pro Hac Vice)
             TIMOTHY RYAN ELDER, ATTORNEY AT LAW
 4       1155 Market Street, Tenth Floor
         San Francisco, California 94103
 5       (415) 873-9199 Fax: (415) 952-9898
         aelia@trelegal.com  telder@trelegal.com
 6
     FOR THE DEFENDANTS COUNTY OF ALAMEDA, MELISSA WILK, EVA
 7   HE, AND MARIA LAURA BRIONES:

 8       ORBACH HUFF & HENDERSON LLP
         BY: NICHOLAS D. FINE, ATTORNEY AT LAW
 9       6200 Stoneridge Mall Road, Suite 225
         Pleasanton, California 94588
10       (510) 999-7908 Fax: (510) 999-7918
         nfine@ohhlegal.com
11
     ALSO PRESENT:
12
         CASSIA LEET, VIDEOGRAPHER
13       MediaEdge, LLC

14                         --o0o--

15

16

17

18

19

20

21

22

23

24

25
```

Emerick and Finch, Certified Shorthand Reporters
LISAMARIA MARTINEZ

925-831-9029                                     emerickfinch@emerickfinch.com

Page 3

```
 1                          INDEX

 2                                                     PAGE

 3      Proceedings                                      5

 4      Mr. Fine                                         6

 5   AFTERNOON SESSION:

 6      Ms. Fine (Resumed)                              89

 7                        EXHIBITS

 8   DEFENDANTS' EXHIBITS:                             PAGE

 9   Exhibit 1 - 14 pages - Complaint for Discrimination in

10              Violation of the ADA, the California UNRUH

11              Civil Rights Act, and the California Disabled

12              Persons Act                             37

13   Exhibit 2 - 26 pages - Plaintiff Martinez's Response to

14              Defendant He's First Set of

15              Interrogatories                         41

16   Exhibit 3 - 9 pages - Plaintiff Martinez's Response to

17              Defendant He's First Set of Requests for

18              Admission                               46

19   Exhibit 4 - 3 pages - Document entitled: "Claim Against

20              the County of Alameda"                  48

21   Exhibit 5 - 1 page - Bates - PL0009 - Document entitled:

22              "Fictitious Business Name Statement"    91

23                        --o0o--

24

25
```

Emerick and Finch, Certified Shorthand Reporters
LISAMARIA MARTINEZ

Page 4

```
 1                        INDEX

 2                  EXHIBITS (CONTINUED)

 3   DEFENDANTS' EXHIBITS:                          PAGE

 4   Exhibit 6 - 1 page - Bates County 0012 - Document

 5               identified as the "Go Back Letter"

 6               dated 3/29/2019                     93

 7   Exhibit 7 - Audio file - Bates PL00003 - Audio file

 8               labeled "Recording with Briones (PL0003)"  97

 9   Exhibit 8 - 2 pages - Bates PL0012-13 - Ms. Martinez's

10               Facebook post dated May 31, 2019    167

11                        --o0o--

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 5

1             BE IT REMEMBERED that, pursuant to Notice, by

2     Judicial Council Emergency Rule 11, on Wednesday, March

3     23, 2022, commencing at the hour of 11:06 A.M., thereof,

4     taken also by Zoom videoconference and video, as noticed

5     by the Law Offices of ORBACH HUFF & HENDERSON LLP, 6200

6     Stoneridge Mall Road, Suite 225, Pleasanton, California,

7     was before me, DEBRA J. SKAGGS, CSR No. 7857, Certified

8     Shorthand Reporter in and for the State of California,

9     remotely appeared.

10                         --o0o--

11                      PROCEEDINGS

11:06:07   12             THE VIDEOGRAPHER:  Good morning.

11:06:07   13             This begins video number 1, Volume I, in the

11:06:11   14     deposition of Lisamaria Martinez, in the matter of

11:06:16   15     Lisamaria Martinez versus County of Alameda, et al.;

11:06:22   16     filed in the United States District Court, Northern

11:06:27   17     District of California, Case Number 20-cv-06570-TSH.

11:06:36   18             Today's date is March 23, 2022, and the time

11:06:41   19     on the video monitor is 11:06 A.M.  The deposition is

11:06:47   20     being taken remotely via Zoom, and was made at the

11:06:50   21     request of Defendant.

11:06:52   22             The court reporter producing the official

11:06:55   23     transcript of today's testimony is Debra Skaggs of

11:06:58   24     Emerick & Finch Certified Shorthand Reporters.  The

11:07:04   25     videographer is Cassia Leet of MediaEdge LLC.

Page 6

11:07:08   1            Will counsel please identify yourselves and

11:07:11   2    state whom you represent.

11:07:14   3            MR. FINE:  This is Nick Fine for Defendants

11:07:16   4    County of Alameda, Melissa Wilk, Eva He, and Maria Laura

11:07:19   5    Briones.

11:07:22   6            MR. ELIA:  This is Albert Elia, counsel for

11:07:24   7    the Plaintiff Lisamaria Martinez.

11:07:30   8            THE VIDEOGRAPHER:  Thank you.  Will the court

11:07:31   9    reporter please swear in the witness.

          10                    LISAMARIA MARTINEZ,

          11    produced as a witness herein, in the above-entitled

          12    action, who, being by me first remotely duly sworn or

          13    having affirmed, was thereupon examined and testified as

          14    a witness in said action.

          15                    --o0o--

          16                    EXAMINATION

          17    BY MR. FINE:

11:07:52  18    Q.      Good morning, Ms. Martinez.  Will you please

11:07:54  19    state your full name for the record.

11:07:56  20    A.      Yep.  My name is Lisamaria Martinez.

11:07:59  21    Q.      How are you doing today?

11:08:01  22    A.      I'm okay.

11:08:03  23    Q.      Good.

11:08:03  24            So my name is Nick Fine.  I represent the

11:08:05  25    Defendants in this matter, and I'm going to ask you some

Page 50

| | | |
|---|---|---|
| 12:14:26 | 1 | saying May, so. |
| 12:14:27 | 2 | MR. FINE:  We will -- there was a second visit |
| 12:14:28 | 3 | that we will discuss in May. |
| 12:14:32 | 4 | THE REPORTER:  Okay.  Thank you. |
| 12:14:36 | 5 | MR. FINE:  Q.  Did anyone go with you to |
| 12:14:38 | 6 | the CRO on March 29, 2019? |
| 12:14:41 | 7 | A.        No. |
| 12:14:42 | 8 | Q.        How did you get there? |
| 12:14:44 | 9 | A.        I walked and took BART. |
| 12:14:48 | 10 | Q.        Did you leave from your home? |
| 12:14:51 | 11 | A.        Yes. |
| 12:14:53 | 12 | Q.        Did you go straight to the CRO from your home? |
| 12:14:58 | 13 | A.        With the BART ride in between, yes. |
| 12:15:04 | 14 | Q.        So you left your home, walked to the BART |
| 12:15:06 | 15 | station, got on BART, took BART to what stop? |
| 12:15:11 | 16 | A.        Lake Merritt. |
| 12:15:13 | 17 | Q.        And you got off at Lake Merritt and then |
| 12:15:14 | 18 | walked to the CRO; is that correct? |
| 12:15:16 | 19 | A.        Yes. |
| 12:15:19 | 20 | Q.        Do you recall approximately what time you |
| 12:15:20 | 21 | arrived at the CRO? |
| 12:15:26 | 22 | A.        The hour of 1:00. |
| 12:15:29 | 23 | Q.        I should make clear, Ms. Martinez, that I am |
| 12:15:31 | 24 | aware that there are recordings regarding your visit to |
| 12:15:35 | 25 | the CRO that day.  But today what I really want is just |

925-831-9029                                      emerickfinch@emerickfinch.com

Page 70

| | | |
|---|---|---|
| 12:47:51 | 1 | the counter still when Laura left to ostensibly go speak |
| 12:47:58 | 2 | to a supervisor? |
| 12:47:59 | 3 | A.        I was. |
| 12:48:02 | 4 | Q.        And approximately how long did it take Laura |
| 12:48:04 | 5 | from the time she left until she eventually returned? |
| 12:48:17 | 6 | A.        To the best of my memory, I just remember it |
| 12:48:19 | 7 | feeling very, very long.  And knowing that I spent about |
| 12:48:27 | 8 | two and a half, three hours there that day, I probably |
| 12:48:32 | 9 | waited, if I had to give you a number, 20-plus minutes. |
| 12:48:39 | 10 | Q.        So Ms. -- so Laura returns, and now you're |
| 12:48:42 | 11 | having your second interaction with her that day; is |
| 12:48:44 | 12 | that right? |
| 12:48:47 | 13 | A.        I think so, yes. |
| 12:48:50 | 14 | Q.        To the best of your recollection, what |
| 12:48:53 | 15 | happened in that second interaction with Laura? |
| 12:49:02 | 16 | A.        That may have been the time that she suggested |
| 12:49:05 | 17 | that she write it down in a letter for me.  That may |
| 12:49:09 | 18 | have been the time that she did that.  I am not |
| 12:49:11 | 19 | 100 percent sure when that idea came up -- |
| 12:49:16 | 20 | Q.        Okay. |
| 12:49:16 | 21 | A.        -- without reviewing any materials. |
| 12:49:26 | 22 |          To be honest, my recollection of my |
| 12:49:30 | 23 | conversations with her were argumentative and trying to |
| 12:49:36 | 24 | understand what authority she had to deny providing a |
| 12:49:40 | 25 | reader and a scribe to me.  And I really just wanted to |

Page 194

1                    CERTIFICATE OF REPORTER

2

3           I, DEBRA J. SKAGGS, hereby certify that the

4    witness in the foregoing deposition was by me remotely

5    duly sworn to tell the truth, the whole truth, and

6    nothing but the truth in the within-entitled cause;

7

8           That said deposition was taken in shorthand by

9    me, a Certified Shorthand Reporter of the State of

10   California, and was thereafter transcribed into

11   typewriting, and that the foregoing transcript

12   constitutes a full, true, and correct report of said

13   deposition and of the proceedings which took place;

14

15          That I am a disinterested person to the said

16   action.

17

18          IN WITNESS WHEREOF, I have hereunto set my

19   hand this 11th day of April, 2022.

20

21   _____

22          DEBRA J. SKAGGS, CSR No. 7857

23

24

25                    ---oOo---

# EXHIBIT B



JC

Jocelyn ›

Mar 29, 2019, 4:47 PM

Hi Matt! Sorry to bother you on your vacation. 🙁 Just a heads up... We had a blind customer attempting to file an FBN (LLC) which was already typed.  GB couldn't accept it because there were sections that needed to be corrected and she also did not bring a copy of the Articles of Organization. Laura created a go-back letter and offered to read it to her and provided her with options to either bring it back or mail it to us. But she also wanted us to complete the FBN form for her and said she would file a complaint because we were not  in compliance with ADA - specifically the auxiliary aids. Laura provided her with options and forms are available to her.   Laura also talked to Eva.  Sorry!!! Just wanted to give you a heads up!  Have a good time in LA!! ☀️



up... We had a blind customer attempting to file an FBN (LLC) which was already typed.  GB couldn't accept it because there were sections that needed to be corrected and she also did not bring a copy of the Articles of Organization. Laura created a go-back letter and offered to read it to her and provided her with options to either bring it back or mail it to us. But she also wanted us to complete the FBN form for her and said she would file a complaint because we were not  in compliance with ADA - specifically the auxiliary aids. Laura provided her with options and forms are available to her.   Laura also talked to Eva.  Sorry!!! Just wanted to give you a heads up!  Have a good time in LA!! ☀️

Thanks for the heads up, appreciate it!!