UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISAMARIA MARTINEZ, <br> Plaintiff, <br> v. <br> COUNTY OF ALAMEDA, et al., <br> Defendants. | Case No. 20-cv-06570-TSH <br><br> **PRETRIAL ORDER** <br> Re: Dkt. Nos. 103, 104, 110, 111 |

## I. MOTIONS IN LIMINE

Pending before the Court are Plaintiff Lisamaria Martinez's Motions in Limine, ECF Nos. 110, 111, and Defendant Alameda County's Motions in Limine, ECF Nos. 103, 104.  For the reasons stated below, the Court **DENIES** Defendant's Motions in Limine Nos. 1–2, **GRANTS IN PART AND DENIES IN PART** Defendant's Motion in Limine No. 3, **GRANTS** Plaintiff's Motion in Limine No. 1, and **DENIES** Plaintiff's Motions in Limine Nos. 2–4.

**A.     Legal Standard**

Motions in limine are a "procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).  Like other pretrial motions, motions in limine are "useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017). Accordingly, "a ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." *Id.*; *see Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984) (explaining that a court may rule in limine "pursuant to the district court's inherent authority to manage the course of trials").  However, "[a] motion in limine is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such

1  motions has passed." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013),
2  *aff'd*, 574 U.S. 418 (2015).
3        In many instances, rulings "should be deferred until trial, so that questions of foundation,
4  relevancy, and potential prejudice may be resolved in proper context." *United States v. Pac. Gas*
5  *& Elec. Co.*, 178 F. Supp. 3d 927, 941 (N.D. Cal. 2016). For example, in order to exclude
6  evidence on a motion in limine, "the evidence must be inadmissible on all potential grounds."
7  *McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1167 (D. Nev. 2014). Thus, denial of
8  a motion in limine to exclude certain evidence does not mean that all evidence contemplated by
9  the motion will be admitted, only that the court is unable to make a comprehensive ruling in
10 advance of trial. *Id.* Moreover, even if a district court does rule in limine, the court may "change
11 its ruling at trial because testimony may bring facts to the district court's attention that it did not
12 anticipate at the time of its initial ruling." *City of Pomona*, 866 F.3d at 1070; *see also Ohler v.*
13 *United States*, 529 U.S. 753, 758 n.3 (2000) ("[I]n limine rulings are not binding on the trial judge,
14 and the judge may always change his mind during the course of a trial.").

**B.     Federal Rules of Evidence 401, 402, and 403**

16       Federal Rule of Evidence 402 provides that "[r]elevant evidence is admissible" unless the
17 U.S. Constitution, a federal statute, the Federal Rules of Evidence, or "other rules prescribed by
18 the Supreme Court" provide otherwise. Fed. R. Evid. 402. Evidence is "relevant" if: (1) "it has
19 any tendency to make a fact more or less probable than it would be without the evidence"; and (2)
20 "the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is
21 not admissible." Fed. R. Evid. 402. Federal Rule of Evidence 403 permits a court to exclude
22 relevant evidence "if its probative value is substantially outweighed by a danger of one or more of
23 the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting
24 time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

**C.     Defendant's Motions in Limine**

    **1.     Defendant's Motion in Limine No. 1**

27       Defendant moves to exclude evidence that any other public entities have provided Plaintiff
28 or anyone else with "scribe services." ECF No. 103 at 1. Defendant argues that this evidence is

irrelevant under Federal Rules of Evidence 401 and 402, unduly prejudicial, confusing, misleading to the jury under Federal Rule of Evidence 403, hearsay, speculative and unsupported, and lacking in foundation. *Id.* at 3.

The Court finds evidence that other public entities have provided the same services Martinez alleges she requested and was denied is relevant to her claim that scribe services are an effective auxiliary aid or service, and to Defendant's argument that scribe services do not constitute a reasonable accommodation. *See* ECF No. 109 [Plaintiff's Trial Brief] at 5; ECF No. 101 [Defendant County of Alameda's Trial Brief] at 12. The Court finds the probative value of such evidence is not necessarily substantially outweighed by the risk of unfair prejudice and that such evidence is unlikely to confuse or mislead the jury. Although Defendant contends that evidence regarding the provision of scribe services by other entities is inadmissible hearsay, it does not establish that this evidence consists of out-of-court statements offered to prove the truth of the matter asserted. *See* ECF No. 103 at 4; Fed. R. Evid. 802. Accordingly, the Court **DENIES** Defendant's Motion in Limine No. 1 without prejudice to Defendant raising its arguments regarding undue prejudice, speculation, hearsay, or lack of foundation at trial.

**2.      Defendant's Motion in Limine No. 2**

Defendant moves to exclude evidence "of other individuals' experiences with the County or other public entities, particularly other persons with disabilities who have requested accommodations from the County or other public entities." ECF No. 103 at 5. Defendant argues this evidence is irrelevant, unduly prejudicial, confusing, misleading to the jury, hearsay, speculative and unsupported, and lacking in foundation. *Id.*

Martinez plans to call two witnesses, Marco Salsiccia and Lucia Greco, to testify about their experiences receiving scribe services in December 2022 to complete and file a paper Fictitious Business Name Statement ("FBNS") form at the County Clerk-Recorder's Office ("CRO") in Oakland. ECF No. 105-1 [Joint Pretrial Conference Statement] at 2. Martinez also anticipates she may call Raymond Macapagal, a blind individual, to testify about his experience using the County's computer kiosk and JAWS screen reader. *Id.* at 5.

Defendant argues that because the ADA's Title II effective communication standards are

1 individualized and context-dependent, all evidence introduced at trial regarding appropriate
2 auxiliary aids or services must be limited to Martinez specifically, and to the circumstances of her
3 March 29, 2019, visit to the to the CRO.  ECF No. 103 at 6.  But Defendant confuses the legal
4 requirement that a public entity undertake a fact-specific investigation to determine an appropriate
5 aid or service, with an evidentiary requirement.  *See Duvall v. County of Kitsap*, 260 F.3d 1124,
6 1138 (9th Cir. 2001); 28 C.F.R. § 35.160(b)(2).  The Court finds that Salsiccia's and Greco's
7 testimony that they received scribe services to complete FBNS forms, at the same office where
8 Martinez alleges she was denied services to complete her own FBNS form, is relevant at minimum
9 to Martinez's claim that scribe services are an effective auxiliary aid or service, to her claims for
10 declaratory and injunctive relief, to her claim for monetary damages (*see Duvall*, 260 F.3d at
11 1138–39 (holding that proof of intentional discrimination to recover monetary damages under
12 Title II of the ADA is satisfied by a showing of deliberate indifference), and for impeachment.
13 The Court also finds that Macapagal's testimony is relevant to Martinez's claims for declaratory
14 and injunctive relief.  *See* Defendant's Trial Brief at 20 (maintaining that the CRO's JAWS-
15 equipped computer kiosk moots Martinez's claims for declaratory and injunctive relief.)
16       The Court finds the probative value of such evidence is not substantially outweighed by
17 the risk of unfair prejudice, confusion of the issues, or misleading the jury.  Although Defendant
18 contends that this evidence is fatally speculative and constitutes inadmissible hearsay, Martinez
19 contends she plans to call these witnesses to discuss their own personal experiences visiting the
20 CRO, which would be supported by personal knowledge and would not necessarily involve any
21 hearsay statements.  *See* Fed. R. Evid. 602, 802.
22       Accordingly, the Court **DENIES** Defendant's Motion in Limine No. 2 without prejudice to
23 Defendant raising objections at trial to testimony that is unduly prejudicial, confuses the issues or
24 misleads the jury, constitutes hearsay or speculation, or is lacking in foundation.
25       **3.**     **Defendant's Motion in Limine No. 3**
26       Defendant moves to limit the testimony of Plaintiff's expert witnesses, Steven Clark,
27 Karen McCall, and Eve Hill.  ECF No. 104 at 1.  Defendant argues Plaintiff's expert witnesses
28 "should be precluded from offering opinions that are irrelevant, lack foundation, lay, speculative,

4

conclusory, prejudicial, based on hearsay and draw legal and factual conclusions." *Id.* Defendant raises four concerns with the anticipated testimony of Plaintiff's experts, which the Court addresses in turn below.

### a. Opinions by Plaintiff's expert witnesses' opinions concerning interpretation of the law or ultimate questions of fact

Defendant seeks to exclude specific opinions and testimony from each of Plaintiff's three expert witnesses, which Defendant contends impermissibly concern the interpretation of federal law and ultimate questions of fact. *Id.* at 8–10. First, Defendant seeks to exclude the following opinions and corresponding testimony from Plaintiff's expert Steven Clark:

> (1) The County's FBNS form, in PDF format, is not "accessible," which is clearly a reference to ADA standards (Fine Decl., ¶ 3, Ex. A, at PL_EXPERT0027).
>
> (2) The County's FBNS form, in PDF format, cannot be "independently completed by a blind person who needs non-visual access through screen reader technology," particularly to the extent Mr. Clark is suggesting that the ADA contains an "independent completion" standard for reasonable accommodations (*Id.*, Ex. A at PL_EXPERT0027).
>
> (3) That the above two opinions "are true no matter which screen reader or PDF viewer might be used" (*Id.*, Ex. A at PL_EXPERT0027).
>
> (4) The County's electronic FBNS form/software wizard cannot be "independently completed by an average blind person who needs non-visual access through screen reader technology," particularly to the extent Mr. Clark is suggesting that the ADA contains an "independent completion" standard for reasonable accommodations (*Id.*, Ex. A at PL_EXPERT0044).
>
> (5) The process for a blind applicant to use the electronic FBNS form on the CRO's kiosk adds significant time and complexity to the process that a sighted applicant would experience. (*Id.*, Ex. A at PL_EXPERT0044).
>
> (6) Providing scribe services to fill out a paper FBNS at the check-in desk as described by Ms. Greco would be much faster and less complex and confusing for a blind person than the process involving the CRO's kiosk and electronic FBNS. (*Id.*, Ex. A at PL_EXPERT0044-45.)

*Id.* at 8–9.

Defendant's motion is granted as to example 1, Clark's anticipated testimony that the

5

1  County's FBNS form is not "accessible under any professional standard," ECF No. 104 at 15,
2  because it amounts to a legal conclusion regarding the form's efficacy as an auxiliary aid or
3  service. *See United States v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015) ("an expert cannot
4  testify to a matter of law amounting to a legal conclusion."); 28 C.F.R. § 35.160(b)(2) ("[i]n order
5  to be effective, auxiliary aids and services must be provided in accessible formats, in a timely
6  manner, and in such a way as to protect the privacy and independence of the individual with a
7  disability.") *See also Sharp v. Islands Rest.-Carlsbad*, 900 F. Supp. 2d 1114, 1122 (S.D. Cal.
8  2012) (holding that statement in declaration that the cash register counter was 'accessible' within
9  the meaning of the ADA is a legal conclusion and thus inadmissible"); *Arroyo v. Denaco, LLC*,
10 No. 19-cv-3592-FMO-JEM, 2020 WL 2477682, at *2 (C.D. Cal. Mar. 20, 2020) (finding that
11 allegations in complaint regarding whether paths of travel were "accessible" and "in conformance
12 with the ADA standards" constituted legal conclusions rather than factual allegations). The Court
13 likewise grants Defendant's motion as to Clark's opinion that the FBNS form "is not accessible"
14 "no matter which screen reader or PDF viewer might be used." ECF No. 104 at 15.

15  Defendant argues that the CRO's electronic fillable FBNS form moots Martinez's claims
16 for injunctive and declaratory relief because "a person with a vision disability can complete an
17 electronic FBNS in the CRO, on the CRO's computer kiosk." Defendant's Trial Brief at 20. The
18 Court finds it is more likely than not that the remaining examples of Clark's anticipated testimony
19 are based on sufficient facts, reflect a reliable application of reliable principles and methods to
20 those facts, and would help the jury to understand the evidence regarding Martinez's claims for
21 declaratory and injunctive relief. Fed. R. Evid. 702. As to example 4, the Court finds Clark's
22 anticipated testimony that the County's electronic FBNS form "cannot be independently
23 completed by an average blind person who needs non-visual access through screen reader
24 technology," ECF No. 104 at 15, does not amount to a legal conclusion. The Court is not aware of
25 any statutes, regulations, or case law indicating that "independent completion" is a legal standard
26 under the ADA, and neither the parties' respective trial briefs nor their proposed jury instructions
27 mention "independent completion" as a legal standard for evaluating reasonable accommodations
28 or auxiliary aids or services. Accordingly, Defendant's motion regarding examples 2–6 of Clark's

anticipated testimony is otherwise denied.

Defendant seeks to exclude the following opinions and corresponding testimony from Plaintiff's expert Karen McCall:

> (1) The four versions of the County's FBNS form, in PDF format, are not "accessible," which is clearly a reference to ADA standards (Fine Decl., ¶ 4, Ex. B, at PL_EXPERT0040);
>
> (2) The four versions of the County's FBNS form, in PDF format, cannot be "independently completed" by a blind person who needs non-visual access through screen reader technology," particularly to the extent Ms. McCall is suggesting that the ADA contains an "independent completion" standard for reasonable accommodations (*Id.*, Ex. B, at PL_EXPERT0040);
>
> (3) That two of the versions of the County's FBNS form, in PDF format, represent a degradation on "accessibility" when compared with a prior version, to the extent McCall is testifying as to "accessibility" requirements under the ADA (*Id.*, Ex. B, at PL_EXPERT0040).
>
> (4) The problems allegedly identified in the third version Ms. McCall analyzed in December 2022 allegedly have not been addressed as of the date of her supplemental report, which pertains again to her opinions regarding "accessibility." (*Id.*, Ex. B, at PL_EXPERT0040).

ECF No. 104 at 9.

Defendant's motion is granted as to example 1, McCall's anticipated testimony that the four versions of the County's FBNS form she reviewed "are not accessible under any professional standard," ECF No. 104 at 59, because it amounts to a legal conclusion regarding the form's efficacy as an auxiliary aid or service. Defendant's motion is denied as to example 2, McCall's anticipated testimony that those four forms "cannot be independently completed by a blind person who needs non-visual access through screen reader technology." ECF No. 104 at 59. The Court grants Defendant's motion as to example 3, regarding McCall's opinion that two versions of the FBNS form "represent a degradation on accessibility when compared to" an earlier version of the form, because it amounts to a legal conclusion. McCall may, however, provide testimony comparing the versions of the forms, including alleged "degradation" from one version to a later version, to the extent her testimony does not include legal conclusions about accessibility. Defendant's motion is denied as to example 4. McCall's identification of problems with the PDF

7

forms and her testimony as to whether they persist are not legal conclusions.

Defendant seeks to exclude the following opinions and corresponding testimony from Plaintiff's rebuttal expert, Eve Hill:

> (1) That the County's expert witness, Cris Vaughan, is "not an expert" (Fine Decl., ¶ 5, Ex. C, at p. 1);
>
> (2) A scribe is a common auxiliary aid provided by Title II entities to effectively communicate with blind people (*Id.*, Ex. C, at p. 3);
>
> (3) The County's offered auxiliary aids when Plaintiff visited the CRO on March 29, 2019, were not "equally effective" to Plaintiff's requested aid, particularly to the extent Ms. Hill is asserting that a public entity has an obligation to provide an auxiliary aid or service that is "equally effective" to the auxiliary aid or service requested by the person with a disability (*Id.*, Ex. C, at p. 3);
>
> (4) The County's expert has not shown that the County's alternative aids offered today on the computer are "equally effective" to the requested scribe, particularly to the extent Ms. Hill is asserting that a public entity has an obligation to provide an auxiliary aid or service that is "equally effective" to the auxiliary aid or service requested by the person with a disability (*Id.*, Ex. C, at p. 4).

ECF No. 104 at 10.

The Court denies Defendant's motion to exclude Hill's opinion and anticipated testimony that the County's expert witness, Cris Vaughan, "is not an expert." *Id.* Defendant designated Mr. Vaughan as "an expert on accessibility under the ADA." Joint Pretrial Appendix at 7. Contrary to Defendant's characterization of Hill's written opinion, Hill does not conclude that Vaughan is not qualified to serve as an expert altogether. Rather, Hill concludes, based on Vaughan's expert report, curriculum vitae, and consulting and law practice websites, that Vaughan "appears to have expertise in the . . . physical access and technical construction-related requirements of the ADA," but that he "is not an expert in whether auxiliary aids are effective in providing equally effective communication to consumers with disabilities." ECF No. 104 at 79-80. This testimony does not constitute either an improper interpretation of the law nor does it consist of a conclusion of ultimate facts. Defendant also contends that Hill plans to testify that Vaughan "is not a credible witness." ECF No. 104 at 11. But Hill's expert report neither speaks directly to Vaughan's credibility nor does it undermine the jury's role in deciding his credibility. Accordingly, the Court denies Defendant's motion as to Hill's opinion that Vaughan is not an expert in whether auxiliary

8

aids are effective in providing equally effective communication to consumers with disabilities.

The Court denies Defendant's motion as to example 2, Hill's opinion and anticipated testimony that "[a] scribe is a common auxiliary aid provided by Title II entities to effectively communicate with blind people." ECF No. 104 at 81. The Court finds this statement does not go to the ultimate issue of whether a scribe was an appropriate auxiliary aid for Martinez during her visit to the CRO, the resolution of which requires a fact-intensive inquiry. *See, e.g.*, *Brown v. Department of Public Safety and Correctional Services*, 383 F. Supp. 3d 519, 557 (D. Md. 2019) ("The type of auxiliary aids required to be provided involves a fact intensive inquiry often ill-suited for summary judgment.") (cleaned up). Accordingly, the Court denies Defendant's motion to exclude this opinion.

The Court grants Defendant's motion as to examples 3 and 4, regarding Hill's anticipated testimony as to whether the auxiliary aids the County offered Martinez in March 2019 and the auxiliary aids the County offers today are "equally effective" to the scribe services Martinez requested. ECF No. 104 at 82–83. Testimony concluding whether two auxiliary aids are "equally effective" is a legal conclusion about ultimate factual issues in this case. *See, e.g.*, Plaintiff's Trial Brief at 1 (characterizing one of the issues for trial as "Whether the current post-litigation arrangements made at the CRO . . . are *equally effective* to Plaintiff's requested reader/scribe service so as to overcome the primary consideration doctrine.") (emphasis added); ECF No. 106 [Joint Proposed Jury Instructions] at 9 (proposing that jurors be instructed that "the defendant must honor the choice of auxiliary aid or service requested by the individual with a disability unless it can prove that another equally effective means of communication exists.")

### b. Clark's opinions are not necessarily cumulative of McCall's opinions.

Defendant contends that Clark's opinions are cumulative of McCall's opinions because Clark intends to present testimony regarding the accessibility of the County's FBNS form in PDF format, while McCall intends to present testimony of the four PDF-format versions of the County's FBNS form she reviewed. Plaintiff argues that "any cumulative testimony will be minimal but necessary" in the context of the actual trial. Plaintiff contends that Clark's testimony will focus on the process for the blind applicant to use the kiosk system the CRO implemented

after Martinez's visits to the CRO that are at issue in the case, which involves using the electronic FBNS form on the computer at the CRO, while McCall's analysis will "focus on the electronic FBNS forms made available by the CRO in PDF format for use on a variety of devices, including the . . . form made available to Ms. Martinez immediately prior to her visits to the CRO in 2019, as well as later revisions to that form." ECF No. 118 at 3–4.  Accordingly, the Court denies Defendant's motion regarding without prejudice to Defendant raising objections at trial to testimony that is unnecessarily cumulative.

### c. Defendant has not demonstrated that Clark lacks expertise to support his testimony.

Defendant contends it is improper for Mr. Clark to testify to the following opinions:

> 1.  That "the process for a blind applicant to use the electronic FBNS form on the computer in the Clerk Recorder's Oakland office adds significant time and complexity to the process that a sighted applicant would experience[;]" and
>
> 2. That "providing scribe services to fill out a paper FBNS form at the check-in desk as described by Ms. Greco would be much faster and less complex and confusing for a blind person than the process that the County has constructed . . ."

ECF No. 104 at 11; *see* ECF No. 104 at 20-21, Ex. A, at PL_EXPERT0044–45.

Defendant argues that Clark lacks expertise to support his testimony because he is not blind and because he is not an expert in whether a *particular* accommodation would be reasonable for a *particular* individual.  Clark's resume indicates that he has worked for over 36 years as an engineer, manager, or co-owner for companies focused on providing adaptive technologies for the blind, and that he has conducted numerous scripting and PDF modification projects to improve accessibility for public agencies and private companies.  *See* ECF No. 104 at 33–35.  Defendant does not dispute Clark's credentials or experience.  And Defendant provides no support for its implication that a person must be blind to be an expert on adaptive technology and accessibility in a disability discrimination action brought by a blind plaintiff.

Instead, Defendant largely repeats its argument that because the ADA requires an individualized analysis of a disabled person and their specific circumstances, any generalized evidence or expert testimony is improper and irrelevant.  *See* ECF No. 104 at 11.  But the cases

10

1  Defendant cite do not go that far; they merely support the proposition that the reasonableness of an
2  accommodation is fact-specific and individualized. It does not follow that an expert in adaptive
3  technology for blind and low-vision people lacks expertise to opine on the time it would take for a
4  typical blind applicant to fill out a particular form using a particular screen-reader as compared to
5  a sighted applicant, the complexity of that process, or the relative complexity and time demands of
6  using one auxiliary aid or service compared to another. The Court agrees with Plaintiff that
7  Clark's testimony is relevant for the jury to be able to assess the efficacy and adequacy to
8  Martinez of the CRO's PDF forms and computer system. *See* ECF No. 118 at 4–5. Accordingly,
9  the Court denies Defendant's motion regarding Clark's expertise to support these two opinions.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion in Limine No. 3.

**D.    Plaintiff's Motions in Limine**

   **1.    Plaintiff's Motion in Limine No. 1**

Plaintiff moves to exclude defenses or assertions of undue burden or fundamental alteration. Plaintiff contends that Defendant has failed to meet the minimum requirements to assert undue burden or fundamental alteration defenses, and that it has not identified evidence in support of these defenses or assertions. ECF No. 110 at 2. Defendant does not oppose this motion, and the County confirmed in its response that "is *not* asserting an undue burden/ fundamental alteration defense." ECF No. 115 at 1–2 (emphasis in original). However, Defendant opposes "any effort to exclude evidence pertaining to the County's argument that the provision of 'scribe services' would create undesirable situations where the County's employees would be asked to provide legal advice and/or engage in the unauthorized practice of law, and may inadvertently do so." *Id.* at 8. The County plans to offer such evidence "for other purposes, including but not limited to the defense that 'scribe services' do not constitute a reasonable accommodation or appropriate auxiliary aid or service." *Id.* at 1. The Court agrees that its order on Plaintiff's Motion in Limine No. 1 does not extend to evidence introduced for purposes other than assertions of undue burden or fundamental alteration. The Court notes, however, that it rejected Defendant's argument that the provision of scribe services would itself constitute the

11

unauthorized practice of law in its previous order denying Defendants' Motion to Dismiss:

> Defendants suggest that assisting Martinez would constitute the unauthorized practice of law, but long-standing California precedent contradicts this assertion: acting as a scrivener to perform "the clerical service of filling in the blanks on a particular form in accordance with information furnished" is not the unlicensed practice of law in California. *People v. Sipper*, 61 Cal. App. 2d Supp. 844, 846–47 (1943); *Altizer v. Highsmith*, 52 Cal. App. 5th 331, 341 (2020); *People v. Landlords Prof'l Servs.*, 215 Cal. App. 3d 1599, 1608 (1989); Tuft, Peck and Mohr, Cal. Practice Guide: Professional Responsibility (The Rutter Group 2019) ¶¶ 1:203 to 1:204.1, p. 1-125.

ECF No. 22 at 10.

Accordingly, the Court **GRANTS** Plaintiff's Motion in Limine No. 1.

### 2. Plaintiff's Motion in Limine No. 2

Plaintiff moves to exclude a March 29, 2012, text message from Jocelyn Cole to Matt Yankee. ECF No. 110 at 5. Plaintiff argues that the message should be excluded under Federal Rules of Evidence 402 (relevance), 403 (excluding relevant evidence for prejudice, confusion, waste of time, or other reasons), 701 (opinion testimony by lay witnesses), 801 (hearsay definitions and exclusions from hearsay), and as hearsay to the extent it is introduced to attest to the truth of the matter asserted. *Id.* Plaintiff argues that neither the business exception nor present sense impression exception to hearsay applies to the message, and that multiple witnesses have been designated who can directly testify to the matters discussed in the message. *Id.*

The Court agrees with Defendant that this motion in limine is premature. The Court declines to rule on the admissibility of this text message in the absence of testimonial context. Accordingly, the Court **DENIES** Plaintiff's Motion in Limine No. 2 without prejudice.

### 3. Plaintiff's Motion in Limine No. 3

Plaintiff moves to limit evidence of subsequent remedial measures. As Martinez does not identify the specific evidence she seeks to exclude, the motion is denied. Defendant contends the motion is fatally vague and objects to Martinez's characterization of the CRO's computer kiosk system as a "subsequent remedial measure." ECF No. 115 at 6-7.

Martinez requests that prior to the introduction of evidence regarding technologies the CRO implemented after Martinez's March 29, 2019 visit to the CRO, the jury be informed:

12

> The evidence about to be presented concerns technology that was not offered to Ms. Martinez during her visit to the CRO on March 29, 2019. Technology introduced after the March 29, 2019 visit is not relevant to County's intent on March 29, 2019, nor to damages, if any, sustained by Ms. Martinez in conjunction with that visit.

ECF No. 110 at 7. The Court finds this request is better suited as a proposed jury instruction, rather than a motion in limine. *See* Fed. R. Civ. P. 51. Further, Plaintiff has not yet demonstrated that this proposed instruction is necessary. The parties' pretrial filings do not indicate that anyone is planning to assert that Martinez was offered the use of a kiosk system on March 29, 2019. Nor does Defendant suggest that later-added technology reaches back to inform its intent earlier in time. In any event, if Plaintiff believes there is any confusion on these points after the close of evidence, she can renew her request for this instruction then.

Martinez also anticipates that witnesses for Defendant "may testify regarding recent, planned, or ongoing changes" in technology. Martinez contends "[s]uch evidence likely violates Rule 401, 402, or 801, depending on the specific evidence offered or purpose of that evidence." ECF No. 110 at 7. Martinez requests that Defendant allow Plaintiff an opportunity to object outside the presence jury before providing "testimony regarding any auxiliary aids and services, or policy modifications, not previously disclosed." *Id.* This request is premature, as Defendant has not indicated there are any new changes in the technology available at the CRO. Plaintiff can raise objections at trial if such evidentiary issues arise. Accordingly, the Court **DENIES** Plaintiff's Motion in Limine No. 3.

  **4.**  **Plaintiff's Motion in Limine No. 4**

Plaintiff moves to limit the expert testimony of Defendant's expert Cris Vaughan to exclude testimony that amounts to a conclusion of law. ECF No. 111 at 4. Plaintiff asks the Court to exclude the below four examples of what it contends are legal conclusions, as well as "similar legal opinion testimony" contained in Vaughan's expert report:

> (1) "CRO personnel provided effective communication to Martinez to identify the changes that needed to be made to the FBNS." (Expert Report of Defendant's Expert Cris Vaughan ¶ 12.)
>
> (2) "The Alameda County CRO did not deny meaningful access to Martinez to file a FBNS on March 29, 2019." (Expert Report of

13

>Defendant's Expert Cris Vaughan ¶ 14.)
>
>(3) "By providing the above-described assistance, it is my opinion the CRO is furnishing appropriate auxiliary aids and services necessary to afford individuals with disabilities an equal opportunity to participate in and enjoy the benefits of the service program and activity of the CRO." (Expert Report of Defendant's Expert Cris Vaughan ¶ 21.)
>
>(4) "In my opinion, the auxiliary aids and services provided by the CRO for completion of a FBNS are effective, are provided in an accessible format, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability and are in compliance with the ADA regulation requiring auxiliary aids and services to be provided by a public entity." (Expert Report of Defendant's Expert Cris Vaughan ¶ 28.)

ECF No. 111 at 1.

The Court **DENIES** this motion without prejudice. Neither party provided the Court with Vaughan's report, so the Court is unable to evaluate any of these quoted statements in context.

In its opposition to Plaintiff's motion, Defendant asks that all expert witnesses and testimony be excluded altogether or "limited to opinions explored and elicited through hypothetical questioning only." ECF No. 116 at 1. The Court declines to do so. The Court finds expert analysis is necessary for the trier of fact to be able to consider the auxiliary aids and services made available to Martinez and, if the jury finds that a legal violation occurred in 2019, to determine whether the CRO's subsequent modifications reasonably removed the alleged barriers.

### E. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motions in Limine Nos. 1–2, **GRANTS IN PART AND DENIES IN PART** Defendant's Motion in Limine No. 3, **GRANTS** Plaintiff's Motion in Limine No. 1, and **DENIES** Plaintiff's Motions in Limine Nos. 2–4.

## II. OTHER ISSUES

### A. Witness Disclosures

Defendant objects to several of Plaintiff's proposed witnesses as untimely disclosed. However, Defendant did not provide the Court with Plaintiff's initial disclosures, so the Court is unable to evaluate the merits of this objection. Accordingly, this objection is **OVERRULED** without prejudice.

**B.     Length of Trial**

Each side has 20 hours total to present its case. The 20 hours include opening and closing statements, as well as any rebuttal. Opening statements must be limited to 45 minutes per side, and closing statements must be limited to one hour per side, including rebuttal.

**C.     Exhibits**

The parties shall submit four hard copies and one electronic copy of their exhibits, deposition designations, and written discovery designations. The hard copies shall be in tabbed binders. The binders and electronic copy must be delivered to the Clerk's Office by March 7, 2024. The parties shall also exchange their exhibits, deposition designations, and written discovery designations by March 7, 2024.

**D.     Juror Questionnaire**

The parties shall file an updated list of witnesses, counsel and parties who will be present at the trial, whether live or by deposition (i.e., not including parties that have been terminated and who are not expected to testify as a witness) by March 4, 2024. The purpose of this list is to include these names on the questionnaire that goes to prospective jurors, which asks if they know any of the case participants at trial.

**E.     Dismissal of Individual Defendants**

In their pretrial filings, the parties indicate that they plan to dismiss the individual Defendants without prejudice. The deadline for filing such a stipulation is March 4, 2024.

**F.     Start Date of Trial**

The trial will start on March 26, 2024.

**G.     Hardship Excusals and Equipment Check**

The Court shall conduct a hearing at 10:00 a.m. in Courtroom E, 15th floor, on March 25, 2024 to discuss juror hardship excusals. Following that hearing, the parties should proceed to Courtroom D to do a tech check on any equipment they plan to use at trial. The parties should therefore bring such equipment with them. For any equipment other than a laptop computer, the parties will need a court order authorizing them to bring it into the building. Accordingly, the parties shall file proposed orders authorizing them to bring their trial technology equipment into

15

the building, and specifically listing each item of equipment they wish to bring.

**IT IS SO ORDERED.**

Dated: February 29, 2024

_____
THOMAS S. HIXSON
United States Magistrate Judge