TIMOTHY ELDER (CA BAR NO. 277152)
KRISTOPHER A. NELSON (CA BAR NO. 342552)
**TRE LEGAL PRACTICE**
1155 Market Street, Tenth Floor
San Francisco, CA 94103
Telephone:    (415) 873-9199
Facsimile:    (415) 952-9898
Email: telder@trelegal.com, knelson@trelegal.com

S. Tomiyo Stoner (CA Bar No. 289246)
**Undaunted Law Firm, P.C.**
600 California St., Floor 7
San Francisco, CA 94108
Telephone:    (214) 415-7340
E-mail: tstoner@undauntedlaw.com

*Attorneys for Plaintiff*

Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohhlegal.com
Nicholas D. Fine, Esq. (SBN: 285017)
nfine@ohhlegal.com
**ORBACH HUFF + HENDERSON LLP**
6200 Stoneridge Mall Road, Suite 225
Pleasanton, CA 94588
Telephone: (510) 999-7908
Facsimile: (510) 999-7918

*Attorneys for Defendant County of Alameda*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LISAMARIA MARTINEZ**, | Case No. 3:20-cv-06570-TSH |
| Plaintiff, | **JOINT OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS** |
| v. | |
| **COUNTY OF ALAMEDA**, **MELISSA WILK**, in her individual capacity, **EVA HE**, in her individual capacity, **MARIA LAURA BRIONES**, in her individual capacity, | |
| Defendants. | |

1    Pursuant to the Court's Proposed Jury Instructions filed on February 28, 2024 (ECF No. 122),

2    the parties hereby submit their objections to the Court's proposed instructions, responses to the

3    other side's objections, proposed additional instructions, and responses to the other side's

4    proposed additional instructions.

5    Plaintiff also attaches Exhibit A showing a redline version of her proposed alterations to the

6    Court's Proposed Jury Instructions.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    OBJECTIONS TO INSTRUCTIONS..........................................................4

FINAL INSTRUCTION NO. 9: AMERICANS WITH DISABILITIES ACT ............................4
     Defendant's Objection to Final Instruction No. 9 ....................................4

     Plaintiff's Response to Defendant's Objection to Final Instruction No. 9.....................5

FINAL INSTRUCTION NO. 10: EFFECTIVE COMMUNICATION ..........................................7
     Plaintiff's Objection to Final Jury Instruction 10 ...................................8

     Defendant's Response to Plaintiff's Objection to Final Jury Instruction 10 ..................9

FINAL INSTRUCTION NO. 12: MONETARY DAMAGES UNDER THE AMERICANS
WITH DISABILITIES ACT.............................................................................12
     Defendant's Objection to Final Instruction No. 12....................................12

     Plaintiff's Response to Defendant's Objection to Final Instruction No. 12.....................13

FINAL INSTRUCTION NO. 13: CALIFORNIA DISABLED PERSONS ACT ........................16
     Plaintiff's Objection to Final Instruction No. 13.....................................16

     Defendant's Response to Plaintiff's Objection to Final Instruction No. 13.....................18

FINAL INSTRUCTION NO. 14: CALIFORNIA GOVERNMENT CODE SECTION 11135 ...24
     Defendant's Objection to Final Instruction Nos. 13 and 14 ....................................24

     Plaintiff's Response to Defendant's Objection to Final Instruction 13 and 14.......................24

     Plaintiff's Objection to Final Instruction No. 14....................................25

     Defendant's Response to Plaintiff's Objection to Final Instruction No. 14.....................25

FINAL INSTRUCTION NO. 18: INJUNCTION.........................................................27
     Defendant's Objection to Final Instruction No. 18....................................27

     Plaintiff's Response to Defendant's Objection to Final Instruction No. 18.....................28

     Plaintiff's Objection to Final Jury Instruction No. 18....................................28

     Defendant's Response to Plaintiff's Objection to Final Jury Instruction No. 18.....................29

II.   PROPOSED ADDITIONAL INSTRUCTIONS.................................................30
     Defendant's Proposed Additional Instruction No. 1 – Additional Effective Communication
     Instructions..............................................................................30

     Plaintiff's Response to Defendant's Proposed Additional Instruction No. 1 .........................33

     Defendant's Proposed Additional Instruction No. 2:  Cal. Government Code § 27203(d) ...... 36

     Plaintiff's Response to Defendant's Proposed Additional Instruction No. 2 .........................36

# I.   OBJECTIONS TO INSTRUCTIONS

### FINAL INSTRUCTION NO. 9: AMERICANS WITH DISABILITIES ACT

*The Americans with Disabilities Act provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.*

*For Plaintiff to recover under the Americans with Disabilities Act, she must prove each of the following three elements by a preponderance of the evidence:*

*First, that she is a qualified individual with a disability.*

*Second, that she was either excluded from participation in or denied the benefits of the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant.*

*Third, that such exclusion, denial of benefits, or discrimination was by reason of her disability.*

*The Parties agree the Plaintiff is a qualified individual with a disability and Defendant is a public entity that is required to comply with the Americans with Disabilities Act. Therefore, I instruct you to find that Plaintiff has satisfied the first element of her Americans with Disabilities Act claim.*

*The Court has found that both filing completed forms at the Clerk-Recorder's Office and the Clerk-Recorder's Office advising patrons of forms' technical deficiencies qualify as services, programs, or benefits provided by the Defendant.*

### Defendant's Objection to Final Instruction No. 9

Americans with Disabilities Act – The County objects to this Instruction only to the extent it is incomplete, and specifically with respect to the following language in the Instruction: "The Court has found that both filing completed forms at the Clerk-Recorder's Office and the Clerk Recorder's Office advising patrons of forms' technical deficiencies qualify as services, programs, or benefits provided by the Defendant." This language is derived from the Court's Order on the

parties' initial summary judgment/adjudication motions, Dkt. 54, in which the Court found that "both filing completed forms at the CRO and the CRO's advising patrons of forms' technical deficiencies qualify as services, programs, or benefits under Title II." Dkt. 54, at 5:18-20. In that same Order, and in connection with the foregoing finding, the Court also found that "filling out or modifying forms is not a CRO service, program, activity, or benefit." Dkt. 54, at 5:25-28, n. 4. The County requests that if the Court is going to include in the Jury Instructions the specific findings the Court previously made regarding the actions that *do* constitute a benefit, program, service, or activity of the CRO, that the Court likewise include the specific action that the Court previously determined does *not* constitute a benefit, program, service, or activity of the CRO. It is important that the jury understand that filling out or modifying forms for patrons is not something the CRO does for anybody as a standard program, service, activity, or benefit thereof, to avoid the belief that the CRO simply declined to do so for *Plaintiff*, which would be incorrect and prejudicial to the County. The County proposes that Final Instruction No. 9 be supplemented to state: "The Court has also found that filling out or modifying forms is not a CRO service, program, activity, or benefit.

**Plaintiff's Response to Defendant's Objection to Final Instruction No. 9**

The Court's proposed Final Instruction No. 9, as written, already correctly states the underlying elements that Plaintiff must prove for her ADA claim. It also includes an earlier finding that is directly relevant to the second element of this claim, specifically, that "both filing completed forms at the Clerk-Recorder's Office and the Clerk-Recorder's Office advising patrons of forms' technical deficiencies qualify as services, programs, or benefits provided by the Defendant." Defendant now seeks to insert an additional finding that is not directly relevant to any of the elements of an ADA claim: "that filling out or modifying forms is not a CRO service, program, activity, or benefit." Including this ancillary finding misleads the jury by (1) wrongly implying that this is something Plaintiff must either prove or disprove to make her case under the Americans with Disabilities Act when that is not the case and (2) creating the misleading impression that it matters under the law whether an auxiliary aid or service is or is not one of a public entity's usual programs, activities, or benefits.

Defendant's argument that "filling out or modifying forms is not a CRO service, program, activity, or benefit" is irrelevant to Plaintiff proving her ADA claim and, despite its accuracy, presented in this context would lead juries towards a misunderstanding of the law around auxiliary aids or services under the ADA. The core issue was whether Ms. Martinez was excluded from participation in or denied the benefits available to others at the CRO because she could not modify the paper FBNS form without an auxiliary aid.

This case is about "auxiliary" aids and services required specifically for people with disabilities. This means that the Defendant must provide *extra* auxiliary services for people with disabilities regardless of whether they offer that extra service to everyone.

The Defendant does not appear to offer Braille or sign language services to the seeing and hearing general public as part of its usual programs or activities. Finding that modifying forms is not a service of the CRO is no different from a finding that providing sign language interpretation or Braille transcription is not a program or service of the CRO and is similarly not relevant to establishing the elements of an ADA claim.

In instructing the jury on the law, the Court's instruction correctly advises the jury on its previous finding relevant to an element of Ms. Martinez's ADA claim: "filing completed forms at the Clerk-Recorder's Office and the Clerk-Recorder's Office advising patrons of forms' technical deficiencies." Because the form itself posed a communications barrier due to its format and her disability, the jury is correctly advised to opine as to whether auxiliary aids were necessary to allow her to file the form. Defendant can present The experience of a non-disabled consumer in its case to explain that Ms. Martinez's inability to file on that date was non-discriminatory and common to all customers. Moreover, the fact is also now partially in dispute because of evidence available that the County has filled out forms for other blind individuals as demonstrated by the testimony of Ms. Grecco and Mr. Salsiccia. Accordingly, Defendant's objection would involve a potentially counterfactual instruction.

The instruction should not change. This Court has already found an even-handed compromise in the instruction as written.

**FINAL INSTRUCTION NO. 10: EFFECTIVE COMMUNICATION**

The second element required under the Americans with Disabilities Act that Plaintiff must establish by a preponderance of the evidence is that she was either excluded from participation in or denied the benefits of the defendant's services, programs, or activities, or was otherwise discriminated against by the defendants. The Americans with Disabilities Act requires that a public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity. The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.

Auxiliary aids and services includes—

(1) Qualified interpreters on-site or through video remote interpreting (VRI) services; notetakers; real-time computer-aided transcription services; written materials; exchange of written notes; telephone handset amplifiers; assistive listening devices; assistive listening systems; telephones compatible with hearing aids; closed caption decoders; open and closed captioning, including real-time captioning; voice, text, and video-based telecommunications products and systems, including text telephones (TTYs), videophones, and captioned telephones, or equally effective telecommunications devices; videotext displays; accessible electronic and information technology; or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing;

(2) Qualified readers; taped texts; audio recordings; Brailled materials and displays; screen reader software; magnification software; optical readers; secondary auditory programs (SAP);

*large print materials; accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision;*

*(3) Acquisition or modification of equipment or devices; and*

*(4) Other similar services and actions.*

**Plaintiff's Objection to Final Jury Instruction 10**

Plaintiff objects to this instruction as misleading the jury by not fully conveying the law and potentially misleading or confusing the jury on what standards to use to evaluate the facts under the law.

First, the proposed instruction does not include the requirement under 28 C.F.R. § 35.160(a)(1) that the public entity has the obligation to ensure that communications are "as effective as communications with others" in addition to the stated obligations under 28 C.F.R. § 35.160(b)(1) and (2).

Second, the instruction does not help clarify what "primary consideration" means. Plaintiff proposes to add the explanation of this provided in 28 C.F.R. part 35, app. A at 580 (2009) and in the preamble to the 1991 title II regulations: "The public entity shall honor the choice of the individual with a disability unless it can demonstrate that another effective means of communication exists. Deference to the request of the individual with a disability is desirable because of the range of disabilities, the variety of auxiliary aids and services, and different circumstances requiring effective communication."

Third, although the instruction does include "[o]ther similar services and actions" from 28 C.F.R. § § 35.104 in the listing of possible auxiliary aids or services, it would clarify the purpose of this list without changing its meaning or application to add "but is not limited to" at the beginning in order to make sure jurors understand that this is not an all-inclusive list but rather a list of examples.

Fourth, the instruction does not make it clear that "communications" go in two directions. Plaintiff suggests including a quote directly from the Department of Justice's guidance on effective communication obligations to clarify that effective communication means: "The

purpose of the effective communication rules is to ensure that the person with a vision, hearing, or speech disability can communicate with, receive information from, and convey information to, the covered entity."

**Defendant's Response to Plaintiff's Objection to Final Jury Instruction 10**

Based on Plaintiff's objections, the County requests that the following language be added to Final Jury Instruction No. 10 and objects to any and all other language requested by Plaintiff:

"For communications between public entities and persons with disabilities to be 'effective,' they must be as effective as communications with others."

"If the communication between the public entity and the person with a disability is effective, then there is no obligation on the part of the public entity to provide an auxiliary aid or service to the person with a disability."

"If an auxiliary aid or service is required under the circumstances, then the public entity shall honor the choice of the individual with a disability unless it can demonstrate that another effective means of communication exists."

The County agrees with Plaintiff that Final Jury Instruction No. 10 should include the standard for effective communication set forth in 28 C.F.R. section 35.160(a)(1), whereby the communication with persons with disabilities must be "as effective as communications with others." Additionally, and in connection with that standard, the jury needs to understand that if the communication between the public entity and the person with a disability is effective, then there is no obligation on the part of the public entity to provide an auxiliary aid or service to the person with a disability.

With respect to Plaintiff's request to add the language from sections 35.160(b)(1) and (b)(2), it is unclear what Plaintiff is arguing or requesting, as it appears that language is already in Final Jury Instruction No. 10, verbatim.

Regarding Plaintiff's request to include the definition of "primary consideration," Plaintiff's objections do not include the specific language to which Plaintiff is referring and it is not clear from the sources Plaintiff cited. In the event Plaintiff is referring to the following language, the County agrees it should be included in Final Jury Instruction No. 10, with minor modifications,

1    as set forth above:  "The public entity shall honor the choice of the individual with a disability

2    unless it can demonstrate that another effective means of communication exists."  (There is no

3    need to include the additional language regarding 28 C.F.R. section 35.164 because the County is

4    not asserting an undue burden/fundamental alteration defense.)  To the extent Plaintiff is

5    referring to some other language in the sources Plaintiff cited, the County reserves its right to

6    object to the specific language, once identified.  Other than the foregoing sentence explaining

7    that there is no obligation to honor the choice of the individual with a disability if the public

8    entity can demonstrate that another effective means of communication exists, the County does

9    not believe any further instructions are necessary or warranted concerning the "primary

10   consideration" rule.

11       Note that due to a clerical error on Plaintiff's part during the joint filing process, the County

12   did not receive the following definition Plaintiff included regarding "primary consideration" until

13   the evening of the filing deadline: "The public entity shall honor the choice of the individual with

14   a disability unless it can demonstrate that another effective means of communication exists.

15   Deference to the request of the individual with a disability is desirable because of the range of

16   disabilities, the variety of auxiliary aids and services, and different circumstances requiring

17   effective communication." The County objects to everything after the word "exists," as the

18   language goes beyond the standard for primary consideration and into unnecessary and

19   improperly prejudicial commentary, which has no bearing on the question the jury will be tasked

20   with answering.  The County will be prepared to discuss this objection at the final Pretrial

21   Conference.

22       The County objects to the addition of the language "but is not limited to" into Final Jury

23   Instruction No. 10.  While Plaintiff does not indicate where specifically in Final Jury Instruction

24   No 10 that Plaintiff is requesting this language be inserted, it is not necessary in the first place.

25   The Court used the specific language from the regulation, 28 C.F.R. section 35.104, and the

26   existing inclusion of the phrase, "other similar services and actions" already accomplishes the

27   purpose Plaintiff purports to accomplish via the addition of "but is not limited to."

28

The County objects to the inclusion of any language from Department of Justice administrative guidance in the Jury Instructions, and in this case generally.  As that technical guidance expressly provides, including specifically the "Effective Communication" manual that Plaintiff cites, it is "not intended to be a final agency action, has no legally binding effect," and does "not establish legally enforceable responsibilities beyond what is required by the terms of the applicable statutes, regulations, or binding judicial precedent."  It would be inappropriate to include non-binding, unenforceable guidance in jury instructions, particularly where that guidance expressly provides that it does not impose any obligations other than those set forth in the applicable primary authority.  Further, Plaintiff's request here only reinforces the County's concern that Plaintiff is attempting to use non-binding DOJ guidance as "applicable law," and is attempting to use expert witnesses to "backdoor" that guidance in front of the jury as though it is applicable to the jury's analysis in this action.  It is not, the DOJ's non-binding and nonprecedential guidance has no place at trial or in the Jury Instructions, and the County requests that the parties discuss at the Final Pretrial Conference whether Plaintiff is presently intending to have her expert witnesses present the DOJ's guidance to the jury, such that the County may object and the issue may be resolved prior to trial.

While the County agrees with Plaintiff that the Jury Instructions should include a legal standard for "effective communication," the County implores the Court to rely either solely on the applicable regulation, 28 C.F.R. section 35.160, and/or binding Ninth Circuit precedent, such as the cases set forth in the County's objections to the Court's Proposed Jury Instructions, including *Silva v. Baptist Health South Florida, Inc.*, 856 F.3d 824, 833 (11th Cir. 2017) and *Bax v. Doctors Medical Center of Modesto, Inc.*, 52 F.4th 858, 866-867 (9th Cir. 2022).  The County has proposed an additional instruction in accordance with this authority.

Defendant does not object to this instruction.

**FINAL INSTRUCTION NO. 12: MONETARY DAMAGES UNDER THE**

**AMERICANS WITH DISABILITIES ACT**

*Plaintiff does not need to prove that the Defendant acted intentionally to prove that the Defendant violated the Americans with Disabilities Act. However, to recover monetary damages under the Americans with Disabilities Act, Plaintiff must prove intentional discrimination.*

*To prove intentional discrimination, Plaintiff must show by a preponderance of the evidence that the Defendant acted with deliberate indifference. Deliberate indifference means that the Defendant had knowledge that a harm to a federally protected right was substantially likely, and the Defendant failed to act upon that likelihood.*

*When the Plaintiff has alerted the public entity to her need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the Plaintiff has satisfied the first element of the deliberate indifference test.*

*In order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness.*

**Defendant's Objection to Final Instruction No. 12**

Monetary Damages Under the Americans with Disabilities Act – The County objects to this Instruction only to the extent it is incomplete, and specifically, that it should include additional detail regarding the standard for "deliberate indifference."  While the Instruction provides, correctly, that deliberate indifference involves "conduct that is more than negligent, and involves an element of deliberateness," it may be difficult for a jury of laypeople to understand the difference between simple negligence and deliberate indifference.  There is ample caselaw that may provide the jury with more guidance on this standard, including from the United States Supreme Court, which stated that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  Bd. of Cnty. Com'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 410, (1997).  As recently as 2023, this very Court, in an action under the ADA, cited Patel v. Kent Sch. Dist., 648 F.3d 965, 974 (9th Cir. 2011) for the proposition that deliberate indifference is "even higher than gross

negligence – deliberate indifference requires a culpable mental state.  The state actor must 'recognize[] [an] unreasonable risk and actually intend[] to expose the plaintiff to such risks without regard to the consequences to the plaintiff.'  In other words, the defendant 'knows that something is going to happen but ignores the risk and exposes [the plaintiff] to it.'"  M.P.G. by & through Guzman v. Antioch Unified Sch. Dist., No. 23-CV-01167-TSH, 2023 WL 4053794, at *4 (N.D. Cal. June 16, 2023).  The Court also cited Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001) to explain that one purpose of the deliberate indifference standard is to "distinguish between events that are properly actionable under the ADA … and those that instead 'may be attributable to bureaucratic slippage that constitutes negligence rather than deliberate action or inaction.'"  M.P.G. by & through Guzman, No. 23-CV-01167-TSH, 2023 WL 4053794, at *4.  To ensure that the jury has an understanding of the meaning of "deliberate indifference," the County requests that these concepts be incorporated into Final Instruction No. 12 following the last sentence of the Instruction, as follows:  "Deliberate indifference is a stringent standard of fault, requiring proof that the defendant disregarded a known or obvious consequence of his or her action.  This standard, deliberate indifference, is even higher than gross negligence and requires a culpable mental state.  The defendant must recognize an unreasonable risk and actually intend to expose the plaintiff to such risks without regard to the consequences to the plaintiff.

**Plaintiff's Response to Defendant's Objection to Final Instruction No. 12**

The Court's proposed Final Instruction No. 12 as written already correctly states the law as established by the Ninth Circuit. Defendant seeks to unfairly heighten the perceived standard for the jury to consider by introducing confusion into the clear language in the Ninth Circuit precedent around deliberate indifference through cases outside the context of the ADA and from cases with critically distinct underlying facts. In its objections here, Defendant attempts to reinsert the biased version of deliberate indifference that it already tried for in the proposed jury instructions (Joint Proposed Jury Instructions 37, ECF No. 106) that the Court has already rejected.

1    Defendant's reliance on *Patel v. Kent Sch. Dist.*, 648 F.3d 965 (9th Cir. 2011) is inapposite,

2    and misleading to a jury in the ADA context because *Patel* addressed a "Fourteenth Amendment

3    due process claim" pursuant to Section 1983 for an "alleged failure to properly supervise" in the

4    distinctly different context—and one that necessarily favors the government because of its

5    constitutional nature—of the "state-created danger exception" to the "general rule" when

6    interpreting the constitution that a government is not liable for failing to protect individuals

7    against danger. *Id.* at 968, 971-72, 974. But Plaintiff has brought an ADA case in which a

8    "deliberate indifference" measure of intent applies only to whether damages are available to her

9    under the statute rather than to examining whether a constitutional duty to protect exists and

10   includes an analysis of "affirmative conduct on the part of the state in placing the plaintiff in

11   danger" and "'deliberate indifference' to a 'known or obvious danger.'" *Id.* at 974 (citations

12   omitted). Defendant's reliance on *Bd. of Cnty. Com'rs of Bryan Cnty. v. Brown*, 520 U.S. 397

13   (1997) is similarly inapposite and misleading to a jury because it too involved a Section 1983

14   action, in this case the decision to hire a sheriff's deputy who allegedly injured the plaintiff. The

15   Court held that permitting this claim would risk serious constitutional and federalism issues and

16   was not what Congress intended. *Id.* at 415. Using an approach from the highly constitutionalized

17   context of Section 1983—in which courts are highly protective of the government because of

18   precedent around constitutional concerns, protectiveness towards the challenges of police

19   officers, and Congress' intent in enacting Section 1983—is unfairly prejudicial against Plaintiff in

20   the quite different context of applying Title II of the ADA to a public entity where there is no

21   such protective Congressional intent or precedent.

22       Moreover, the references to "administrative slippage" are not relevant to the facts in this case

23   where the Defendant has endorsed the view that what it did in 2019 was sufficient. Administrative

24   slippage refers to situations in which the government is willing to provide an ADA auxiliary aid

25   but fails to do so in a timely manner because of bureaucratic delay or disorganization, as when

26   there is a delay in locating and bringing in a specialized interpreter for a Deaf individual. That is

27   not the situation here.

28

1    The court rightly relied on the established Ninth Circuit precedents under the ADA to

2    determine the language for Final Instruction No. 12. As written, it is fairly balanced and should

3    not change.

4        Plaintiff has no objections to the Court's version of Final Instruction No. 12 as written.

**FINAL INSTRUCTION NO. 13: CALIFORNIA DISABLED PERSONS ACT**

*A violation of the Americans with Disabilities Act constitutes a violation of the California Disabled Persons Act. Therefore, if you find that the Defendant violated the Americans with Disabilities Act, you must find that it also violated the California Disabled Persons Act.*

*However, damages are not available against the Defendant under the California Disabled Persons Act.*

**Plaintiff's Objection to Final Instruction No. 13**

Plaintiff objects to the following sentence in the proposed instructions: "However, damages are not available against the Defendant under the California Disabled Persons Act."

First, this statement about damages provides no useful or relevant information to jurors that will help them apply the law to the facts in this matter and might, instead, mislead jurors to improperly consider damages to be a relevant part of their evaluation of whether or not there has been a violation of the ADA.

Second, Plaintiff maintains that case law favors her position that damages are available against Defendant as a public entity under the California Disabled Persons Act ("CDPA"). Under that statute, "[a]ny person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of [ ] public facilities . . . or otherwise interferes with the rights of an individual with a disability under Sections 54 … is liable for … damages … and attorney's fees." Cal. Civ. Code § 54.3.

The CDPA applies to entities like the County as a public entity. *See* Section 54(a) and (c) (ensuring access to public facilities including "streets, highways, sidewalks, walkways" and incorporating Title II of the ADA by reference). Although the statute does not define "person," "firm," or "corporation," the California Supreme Court and Courts of Appeal have repeatedly held that government entities are statutory "persons." *See, e.g., Regents of Univ. of California v. Super. Ct.*, 17 Cal.3d 533, 536 (1976) ("'person, association, copartnership or corporation'" included public entity); *City of Los Angeles v. City of San Fernando*, 14 Cal.3d 199, 276-77 (1975), *disapproved on other grounds in City of Barstow v. Mohave Water Agency*, 23 Cal.4th 1224, 1244-45 (2000) ("person, firm or corporation" in California Civil Code § 1007 includes

governmental agencies); *Flournoy v. State of Cal.*, 57 Cal.2d 497, 498-499 (1962) (applying to a state government a wrongful death statute attaching liability to any "person" responsible for another's death).

Additionally, cases in the Ninth Circuit have repeatedly found Section 54.3 to apply to public entities. *See, e.g., Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 947 (C.D. Cal. 2004) (Defendant's position that a public entity is not a "person" within the meaning of the CDPA "is simply not supported by case law, and the court therefore rejects it."); *Beauchamp v. City of Long Beach*, No. CV 10-01270-RGK JCX, 2011 WL 10978002 (C.D. Cal. May 3, 2011) at *3 ("Section 54.3 applies to public entities"). *See also Varga v. City of Culver City*, No. 210CV06578JHNFFMX, 2011 WL 13274221, at *2 (C.D. Cal. Mar. 15, 2011) (denying motion to dismiss and finding plaintiff sufficiently stated a claim for damages under Section 54.3 against defendant city).

In Defendant's cited authority, *Carter v. City of Los Angeles*, 224 Cal. App. 4th 808 (2014), a case involving sidewalk accessibility, the appellate court did not undertake any analysis of the CDPA, nor did it make any findings as to whether a plaintiff could recover statutory damages from a public entity. *See Carter*, 224 Cal. App 4th at 825. In fact, the court explicitly refrained from making such a determination, holding that it "need not determine the issue definitively … because the overarching point is that appellants deserve to litigate the merits of their [damages] claims, not have them dismissed out of hand … ." *Id.* The district court in *Sarfaty v. City of Los Angeles*, No. 2:17-CV-03594-SVW-KS, 2017 WL 6551234, at *6 (C.D. Cal. Aug. 28, 2017) did undertake a minimal and incomplete analysis of a single other California statute (Cal. Civ. Code § 14, which contrary to the implication here, expands the definition of "person" rather than limiting it) and no other case law to summarily find that a public entity did not fit under the CDPA's damages provision, but that court's decision to grant the defendant's motion to dismiss was reversed by the Ninth Circuit. *Sarfaty v. City of Los Angeles*, 765 F. App'x 280, 282 (9th Cir. 2019).

**Defendant's Response to Plaintiff's Objection to Final Instruction No. 13**

The County contends that the Instruction should be removed entirely.  However, to the extent the Court is inclined to keep it in, the County requests that the Court retain the language to which Plaintiff objects, to wit, ""However, damages are not available against the Defendant under the California Disabled Persons Act."

Plaintiff's DPA claim is expressly derivative of Plaintiff's claim under Title II of the ADA.  Plaintiff has not asserted an *independent* claim under the DPA, only a derivative DPA claim based on an alleged violation of Title II of the ADA.  Plaintiff does not dispute this.  Further, while Plaintiff argues that monetary damages are available under the DPA as against a public entity (they are not, as further discussed below), Plaintiff does not argue that the damages which are purportedly available under the DPA are in any way different or separate from the alleged damages she seeks under the ADA, nor does Plaintiff argue or attempt to establish that the DPA allows for a category of damages that the ADA does not.  Accordingly, Plaintiff's claim under the DPA is not only based on the exact same theory of liability as her ADA claim, it also seeks the exact same relief.  For that reason, the County does not see any purpose for this instruction as a whole, as there is no substantive difference between the claims, and the DPA claim is therefore redundant and duplicative of the ADA claim and should be dismissed.  See *M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1091 (9th Cir. 2012) ("It is well established that a district court has broad discretion to control its own docket, and that includes the power to dismiss duplicative claims.").  Further, by including this instruction, despite the fact the claim under the DPA is entirely duplicative and redundant of Plaintiff's ADA claim, the Court runs the risk of the jury returning an inconsistent verdict, whereby the jury may indicate liability under the ADA, but not the DPA, or vice-versa.  As such, the Instruction should be excluded entirely.

However, to the extent the Court is inclined to leave this Instruction in the Final Jury Instructions, the phrase to which Plaintiff objects should absolutely be included.  Otherwise, the County would be prejudiced to the extent the jury were to find in favor of Plaintiff and incorrectly believe that they are to award separate and additional damages for the claim under the

1  DPA.  Moreover, contrary to Plaintiff's contention, the Court's Instruction is correct that

2  monetary damages are not available under the DPA as against a public entity.

3      Specifically, Plaintiff seeks monetary damages under the DPA in the form of statutory

4  awards/penalties, pursuant to California Civil Code section 54.3(a).  The problem with this

5  demand for relief is that the published opinion in the *Carter/Fahmie* (*Carter v. City of Los*

6  *Angeles*, 224 Cal.App.4th 808 (2014)) matter confirms that such statutory damages are improper

7  and unavailable as against a public entity.  See *Sarfaty v. City of Los Angeles*, 2017 WL 6651234

8  (C.D. Cal. 2017) (citing *Carter* for the proposition that damages under section 54.3 are

9  unavailable as against a public entity and stating, "[t]he test of the [DPA] also indicates that the

10  City is not liable for damages under this section" and "[b]ecause the most relevant state court

11  authority indicates that damages are not available under Section 54.3, the Plaintiffs' claims fail as

12  a matter of law.").  Indeed, while the obligations under the DPA are applicable to the County, the

13  damages provision (section 54.3) is limited in its application to a "person or persons, firm or

14  corporation," which does not include public entities.

15      The penalty and damages provisions of the DPA are contained within Civil Code section

16  54.3(a) and authorize a plaintiff to seek damages in only limited situations for a violation of the

17  rights established in the preceding provisions of the DPA.  In relevant part, section 54.3(a)

18  provides that "[a]ny person or persons, firm or corporation" who violates the DPA is subject to

19  monetary damages under the DPA.  Cal. Civ. Code § 54.3(a), emphasis added.  Thus, damages are

20  only recoverable if the County is considered a "person," "firm" or "corporation" under the

21  DPA.  However, the County does not fall into any of these categories and therefore cannot be

22  liable for DPA damages.

23      Indeed, this conclusion was confirmed in *Carter/Fahmie*, which involved a class action

24  litigation based upon allegations that the City of Los Angeles violated Title II of the ADA, the

25  Unruh Civil Rights Act, and the DPA.  *Carter*, 224 Cal.App.4th at 825.  Specifically, the Court of

26  Appeal agreed with the lower court in determining that statutory damages were unlikely under

27  the DPA and the Unruh Act, as against a public entity.  *Id*.; see also *Brennon B. v. Sup. Ct.*, 57

28  Cal.App.5th 367, 389-390 (2020); *Dunn v. City of Los Angeles*, No. 15-0413, 2017 WL 7726710, at

*3–4 (C.D. Cal. Apr. 26, 2017).  The lower court found that statutory damages against the City under the DPA and Unruh were "incidental" because they were legally questionable, stating:

> The settlement and trial judges below deemed appellants' damages claim to be "incidental" because they were legally questionable.  In other words, statutory damages were a "long shot" and the right to them "highly questionable" because **no California court would likely consider a municipal entity to be liable under the Unruh Civil Rights Act or the Disabled Persons Act**; the released damages claims were of minimal value and therefore incidental.  We happen to agree that statutory damages are unlikely here.

*Carter*, 224 Cal.App.4th at 825, emph. added.  The conclusion of both the lower court and the Appellate Court is unambiguous and confirms that damages under section 54.3 of the DPA are not recoverable as against a public entity.

Courts have routinely interpreted the provisions of the DPA, Unruh Act, and the False Claims Act concurrently.  See e.g., *Carter*, 224 Cal.App.4th at 824-826 (discussing DPA and Unruh concurrently).  Thus, the California Supreme Court's decision in *Wells v. One2One Learning Foundation*, 39 Cal.4th 1164 (2006) is instructive, as it is an authoritative declaration of California law on whether a statute considers a governmental entity a "person."  In *Wells*, a school district asserted that it and other public school districts were not "persons" under the California False Claims Act ("CFCA").  In determining whether the public entity was a "person" under the CFCA, the court noted that in other statutory contexts "the Legislature has demonstrated that similar definitions of 'persons' do not include public entities, and that legislators know how to include such entities directly when they intend to do so."  *Id*. at 1190-1191.  In reaching that conclusion, the *Wells* Court examined the California Fair Employment and Housing Act ("FEHA") (Cal. Gov. Code § 12900, *et seq*.), which defines "person" to "include one or more individuals, partnerships, associations, corporations, limited liability companies, legal representatives, trustees, trustees in bankruptcy, and receivers or other fiduciaries."  *Id*. at 1191.

Clearly, that definition does not include governmental entities.  On the other hand, elsewhere in the FEHA, an "employer" is defined, as "any *person* regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly, *the state or any political or civil subdivision of the state, and cities*, except as otherwise specified."  *Id.*, emph. added.  The *Wells* Court concluded that the legislature intentionally added governmental entities in the definition of "employer," but not in the definition of "person" or "persons" and found that this "conceptual separation" of "persons" from governmental entities was an additional indication that the CFCA's definition of "person" was not meant to include governmental entities.  *Id.*  Further, the *Wells* Court also noted that when the CFCA was originally introduced in the California Assembly, the definition of covered "persons" did explicitly include governmental entities, but such references were eliminated before the law was adopted.  *Id.* at 1191-1192.  Therefore, the Court held that "the language, structure, and history of the ... CFCA ... strongly suggest that public entities, including public school districts, are not 'persons' subject to suit under the law's provisions."  *Id.* at 1193.

Similarly, section 14 of the Civil Code, which is applicable to the DPA and the entire Civil Code generally, defines a "person" as "a corporation as well as a natural person."  Significantly, when section 14 was originally enacted in 1872, a "person" was defined as "not only human beings, but bodies politic or corporate."  In 1874, all references to "bodies politic" were removed, and the definition of a "person" was limited to natural persons and corporations, confirming the intentional exclusion of public entities from the definition of a "person."  The Legislature has made no efforts in the century thereafter to broaden the definition to include public entities.  See *People for the Ethical Treatment of Animals, Inc. v. California Milk Producers Advisory Bd.*, 125 Cal.App.4th 871, 905 (2005) (holding that the Legislature would have included public advisory board in its definition had it intended to cover it).  Civil Code section 54.3 must be read in harmony with *Wells'* rationale and the explicit exclusion by the Legislature of public entities under section 14 of the Civil Code.  Accordingly, it is clear that the Legislature expressly intended to exclude public entities from the definition of "person" in the referenced enactments, and damages under the DPA are not available against the County as a result.

Plaintiff's arguments to the contrary lack merit.  Indeed, to the extent Plaintiff cites a number of cases which purportedly held government entities to be "statutory persons," none of those cases support Plaintiff's position.  In *Regents of Univ. of California v. Super. Ct.*, 17 Cal.3d 533, 536 (1976), the applicable statute applied to "corporations" and the subject university was a "public corporation."  *Id.*, at 536.  The action did not pertain to the statutory word "person."  Further, the court in that case also found that with respect to the specific conduct at issue, investing the university's endowment by issuing a loan, "the University [was] acting in a capacity no different from a private university, corporation, or individual investing in a similar manner."  *Id.*, at 537.  Plaintiff here does not allege that the County is a "public corporation" or that the County was acting in a capacity no different than a private person.  As general matter, private persons do not accept fictitious business name statements.  Plaintiff also cites *City of Los Angeles v. City of San Fernando*, 14 Cal.3d 199, 276-77 (1975), in which the court identified a specific amendment to the applicable statute, Civil Code section 1007, by which the Legislature "intended to enlarge the classes of property exempt from prescription by *any* party rather than to immunize such enlarged classes of property from prescription by private parties only."  *Id.*, at 274.  Plaintiff here has not identified any such action from the Legislature to render the damages provision in Civil Code section 54.3 applicable to public entities.  With respect to *Flournoy v. State of Cal.*, 57 Cal.2d 497, 498-499 (1962), which Plaintiff cites next, the Court in that case stated that "[w]e are satisfied that where governmental immunity may not be invoked no distinction can be made between an action for injuries to the person and one for wrongful death," and thus, where damages are available against a public entity for injury to the person, damages for wrongful death in Code of Civil Procedure section 377 must also apply to public entities.  However, Plaintiff here does not allege a claim for injury to person or wrongful death and the rationale in *Flournoy* simply does not apply here.  Plaintiff has not identified any analogous claim that is applicable to the County which would render Section 54.3 applicable, in the same sense as injury to person and wrongful death.

As for the cases Plaintiff cited which purportedly held that damages under Section 54.3 are available against a public entity, all but one are unpublished and every one of them was decided

before *Carter/Fahmie* and *Sarfaty*.  As for *Lonberg v. City of Riverside*, 300 F.Supp.2d 942, 947 (C.D. Cal. 2004), a different judge from the same District disagreed with *Lonberg* just one year later, stating that "*Lonberg* cited older California authority" and failed to consider more recent pronouncements.  <u>City of Rialto v. U.S. Dep't of Def., et al.</u>, 2005 WL 5519062, at *7 (C.D. Cal. Aug. 16, 2005), <u>aff'd in part sub nom.</u> <u>City of Rialto v. U.S. Dep't of Def.</u>, 274 F. App'x 515 (9th Cir. 2008).  Finally, to the extent Plaintiff contends that in *Sarfaty*, the district "court's decision to grant the defendant's motion to dismiss was reversed by the Ninth Circuit" in *Sarfaty v. City of Los Angeles*, 765 F. App'x 280, 282 (9th Cir. 2019), Plaintiff fails to point out that the Ninth Circuit only reversed the district court's decisions to dismiss the plaintiff's injunctive relief claims and the claim for damages under Plaintiff's federal ADA cause of action.  *See generally, id*.  The Ninth Circuit did not reverse the district court's decision to dismiss the state law damages claims, including the damages claim under the DPA, which confirms that decision was correct.  *See generally, id.*

Defendant presents an objection to Final Instruction No. 13 and presents the same objection to Final Instruction No. 14, which is addressed below Final Instruction 14.

Plaintiff responds to Defendant's objections below under Final Instruction 14.

1    **FINAL INSTRUCTION NO. 14: CALIFORNIA GOVERNMENT CODE SECTION**

2    **11135**

3    *California Government Code section 11135 provides that no person in the State of California*

4    *shall, on the basis of physical disability, be unlawfully denied full and equal access to the*

5    *benefits of, or be unlawfully subjected to discrimination under, any program or activity that is*

6    *conducted, operated, or administered by the state or by any state agency, is funded directly by*

7    *the state, or receives any financial assistance from the state.*

8    *Discrimination on the basis of disability in violation of section 11135 is established if Plaintiff*

9    *proves Defendant (1) violated the Americans with Disabilities Act; and (2) the program or*

10   *activity is conducted, operated, or administered by the state or by any state agency, is funded*

11   *directly by the state, or receives any financial assistance from the state.*

12   *However, damages are not available under California Government Code section 11135.*

13   **Defendant's Objection to Final Instruction Nos. 13 and 14**

14   The County objects to these Instructions, as well as to the state law claims being submitted to

15   the jury, as they are redundant and duplicative of Plaintiff's claim under the ADA.  As each of

16   those claims seek the exact same relief based on the exact same legal theory, the redundant state

17   law claims should be dismissed as duplicative.  See *M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082,

18   1091 (9th Cir. 2012) ("It is well established that a district court has broad discretion to control its

19   own docket, and that includes the power to dismiss duplicative claims.").  Further, providing

20   instructions on these claims is not only redundant, but would give the impression to the jury that

21   the Court is emphasizing those matters, thereby causing undue influence and juror confusion.

22   Thus, both Instructions should be removed.

23   **Plaintiff's Response to Defendant's Objection to Final Instruction 13 and 14**

24   These so-called "redundant and duplicative" claims should not be dismissed. Defendant

25   provides no citation to, nor is Plaintiff aware of, any precedent that indicates that a plaintiff

26   cannot simultaneously proceed with similar claims under state and federal law in the *same*

27   action. Defendant's use of *M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082 (9th Cir. 2012) is unavailing

28   as it involves the dismissal of claims "stated in identical terms" in *separate* actions as part of a

single order responding to two *separate* motions to dismiss involving the same parties. *Id.* at 1091. That is simply not the situation here.

Even when the elements to be proven are substantially similar because state law allows for a claim to be established if the federal ADA is violated, state law provides remedies that can vary from federal remedies, as well as different and independent support and calculations for those remedies. Additionally, Government Code 11135 requires an extra element of proof regarding the alleged state funding or financial assistance.

Finally, suddenly asking for the dismissal of claims on the eve of trial after multiple opportunities to brief the issue on summary judgment is prejudicial to Plaintiff.

### Plaintiff's Objection to Final Instruction No. 14

Consistent with her position above, Plaintiff requests the deletion of the statement that "damages are not available under California Government Code section 11135" as providing no useful or relevant information to jurors. Plaintiff does not object to the characterization of the law underlying this statement.

### Defendant's Response to Plaintiff's Objection to Final Instruction No. 14

The County contends that the Instruction should be removed entirely. However, to the extent the Court is inclined to keep it in, the County requests that the Court keep the language to which Plaintiff objects, to wit, "damages are not available under California Government Code section 11135."

The County does not see any purpose for this instruction as a whole, let alone the specific language to which Plaintiff objects. Moreover, the fact Plaintiff does not dispute the "characterization of the law underlying this statement" confirms that Plaintiff's cause of action under California Government Code section 11135 is entirely duplicative of Plaintiff's claim under the ADA and seeks the exact same relief. There is no substantive difference between the claims, whether with respect to the theory of liability or the damages sought. It is therefore redundant and duplicative of the ADA claim and should be dismissed. See *M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1091 (9th Cir. 2012) ("It is well established that a district court has broad discretion to control its own docket, and that includes the power to dismiss duplicative claims."). Further, by

including this instruction, despite the fact the claim under Section 11135 is entirely duplicative and redundant of Plaintiff's ADA claim, the Court runs the risk of the jury returning an inconsistent verdict, whereby the jury may indicate liability under the ADA, but not Section 11135, or vice-versa.  As such, the Instruction should be excluded entirely.  However, to the extent the Court is inclined to leave this Instruction in the Final Jury Instructions, the phrase to which Plaintiff objects should absolutely be included.  Otherwise, the County would be prejudiced to the extent the jury were to find in favor of Plaintiff and incorrectly believe that they are to award separate and additional damages for the claim under Section 11135.

The Parties raise no objections to Final Instructions 15, 16, and 17.

1    **FINAL INSTRUCTION NO. 18: INJUNCTION**

2    *If you find in favor of the Plaintiff on her claims under the Americans with Disabilities Act,*

3    *the California Disabled Persons Act, or California Government Code section 11135, then the*

4    *Court must determine whether to issue an injunction against further violations of those laws. To*

5    *obtain an injunction, Plaintiff must show by a preponderance of the evidence that the*

6    *Defendant's Clerk Recorder's Office will likely again violate its legal obligations described in*

7    *Final Instructions Nos. 9 and 10 with respect to individuals with a disability of blindness or*

8    *visual impairment.*

9        *You must decide whether the Defendant's Clerk Recorder's Office will likely again violate its*

10    *legal obligations described in Final Instructions Nos. 9 and 10 with respect to individuals with a*

11    *disability of blindness or visual impairment. In making this decision, you should consider*

12    *whether Defendant's Clerk Recorder's Office took any steps or implemented any measures after*

13    *March 29, 2019 that would make it more or less likely that it would violate these legal*

14    *obligations again.*

15        *By referring to the Defendant violating these legal obligations "again," I am not implying*

16    *that the Defendant violated its legal obligations on March 29, 2019. Whether or not it did so is*

17    *for you to decide.*

18    **Defendant's Objection to Final Instruction No. 18**

19    The County objects to this Instruction as unduly prejudicial to the County to the extent it

20    states: (1) "To obtain an injunction, Plaintiff must show by a preponderance of the evidence that

21    the Defendant's Clerk Recorder's Office will likely again violate its legal obligations described

22    in Final Instructions Nos. 9 and 10 with respect to individuals with a disability of blindness or

23    visual impairment"; and (2) "You must decide whether the Defendant's Clerk Recorder's Office

24    will likely again violate its legal obligations described in Final Instructions Nos. 9 and 10 with

25    respect to individuals with a disability of blindness or visual impairment." The County's

26    objection pertains to the Court's use of the word "again," which implies that the County did in

27    fact violate the ADA in the first place, on March 29, 2019. While the County recognizes that the

28    Court included a curative instruction, the County requests that the Court also substitute "in the

future," in place of "again." Thus, the Instruction would read as follows, regarding the two sentences identified above: (1) "To obtain an injunction, Plaintiff must show by a preponderance of the evidence that the Defendant's Clerk Recorder's Office will likely, in the future, violate its legal obligations described in Final Instructions Nos. 9 and 10 with respect to individuals with a disability of blindness or visual impairment"; and (2) "You must decide whether the Defendant's Clerk Recorder's Office will likely, in the future, violate its legal obligations described in Final Instructions Nos. 9 and 10 with respect to individuals with a disability of blindness or visual impairment." The curative instruction would read, "By referring to the Defendant violating these legal obligations 'in the future,' I am not implying that the Defendant violated its legal obligations on March 29, 2019. Whether or not it did so is for you to decide." This language would avoid asking the jury to decide, twice, whether the County violated the ADA "again," and would thus avoid the implication that liability is a given.

## Plaintiff's Response to Defendant's Objection to Final Instruction No. 18

The jury needs to understand that their assessment of the "future" violations is based on the same sort of violation found previously. There needs to be a link between the past violation and the potential future violation. "Again" tends to do this work in an efficient manner. When coupled with the disclaimer, there is no prejudice.

Plaintiff is amenable to alternative phrases that Court may select, such as "a future violation that is the same as the violation that you previously found" or "continue to violate the ADA in the same way that you found," but is concerned about any changes that would create additional confusion or that would sever this link between past and potential future violations.

## Plaintiff's Objection to Final Jury Instruction No. 18

Plaintiff objects to this instruction as being vague and confusing and as providing insufficient guidance to jurors as to what facts to use to evaluate whether Defendant is likely to meet its obligations in the future or not. Furthermore, the use of "more or less likely" is confusing and may lead jurors to apply an incorrect legal standard to the facts. Plaintiff suggests specifying what Defendant has now implemented in order to give jurors a clearer understanding of what

facts they are evaluating and using "more likely than not" instead of "more or less likely." The resulting paragraph would then read as follows:

> In making this decision, you should consider whether the installation of a computer kiosk equipped with screen reader software and staff assistance for clicking a mouse on the screen available for anyone who cannot independently use the JAWS screen reader software to accomplish the task suffice to remove the barriers that would otherwise make it more likely than not that Defendant's Clerk Recorder's Office would violate these legal obligations again.

### Defendant's Response to Plaintiff's Objection to Final Jury Instruction No. 18

The County objects to the entirety of the language requested by Plaintiff.

The County objects to Plaintiff's proposed additional language, which clearly assumes that the County violated the ADA on March 29, 2019. Plaintiff discusses "barriers" that the County disputes exist or ever existed, and includes the language, "violate these legal obligations again," which explicitly implies that the County has already violated them once. This would be extremely prejudicial to the County. In fact, the County already separately objected to Final Jury Instruction No. 18, in its existing form, on the ground that the Instruction's use of the word "again" prejudices the County by implying to the jury that the County violated its legal obligations on March 29, 2019. The only changes needed to this Instruction are to remove the word "again," in every instance in which it is used, and replace it with, "in the future." The County further objects to Plaintiff's attempt to summarize the County's kiosk accommodation system, which incorrectly describes and improperly minimizes the nature of the accommodation and usurps the County's witnesses' role in explaining that accommodation to the jury. Other than the use of the word "again," which should be replaced with "in the future," Final Jury Instruction No. 18 should not be further modified.

## II.  PROPOSED ADDITIONAL INSTRUCTIONS

### Defendant's Proposed Additional Instruction No. 1 – Additional Effective Communication Instructions

There does not appear to be any dispute that this case revolves around Title II's "effective communication" requirement.  Plaintiff's specific claim in this action is that the County violated Title II of the ADA by allegedly failing to ensure effective communication with Plaintiff through the provision of an appropriate auxiliary aid or service, and specifically, by declining to provide Plaintiff with the "scribe services" that she demanded and instead providing her with a "go back letter" and self-addressed envelope.  While the Court's Proposed Jury Instructions contain an Instruction entitled, "Effective Communication" (Final Instruction No. 10), that Instruction generally provides the public entity's obligation to furnish appropriate auxiliary aids and services when necessary to afford individuals with disabilities an equal opportunity to participate in, and enjoy the benefits of, a service, program or activity of a public entity.  The Instruction also identifies auxiliary aids and services that may be "necessary to ensure effective communication," but does not include the standard for effective communication or the circumstances that must be present before an obligation arises to provide an auxiliary aid or service.  Nor does the Instruction include the definition of "qualified reader" and it lacks context regarding the "primary consideration" requirement.

First, the Instruction must include the standard for effective communication such that the jury understands when an auxiliary aid or service is required in the first place.  At a minimum, the Instruction should include the standard set forth in 28 C.F.R. section 35.160, whereby the public entity must ensure that communications with persons with disabilities "are as effective as communications with others."  There is ample Ninth Circuit authority citing this standard. *Updike v. Multnomah County*, 870 F.3d 939, 949 & 958 (9th Cir. 2017); *K.M. ex rel. Bright v. Tustin Unified School Dist.*, 725 F.3d 1088, 1096 (9th Cir. 2013); *Ferguson v. City of Phoenix*, 157 F.3d 668, 672 (9th Cir. 1998).  The way the Proposed Jury Instructions currently read, it appears to be assumed that an auxiliary aid or service was required on March 29, 2019, and that the dispute is merely over the propriety of the auxiliary aid or service the County ultimately

provided.  That is not accurate.  The County's position has always been that no auxiliary aid or service was required in the first place because the communications between Plaintiff and the CRO were effective.  However, for the County to even have an opportunity to make that argument, the jury must understand what "effective communication" means.  Absent an instruction on the standard, the jury could be left to assume that the ADA requires perfect communication, which is simply not accurate.

The Ninth Circuit has provided additional guidance on this standard in cases involving the analogous "effective communication" requirement in Title III of the ADA, including in *Silva v. Baptist Health South Florida, Inc.*, 856 F.3d 824, 833 (11th Cir. 2017) and *Bax v. Doctors Medical Center of Modesto, Inc.*, 52 F.4th 858, 866-867 (9th Cir. 2022), which would assist the jury in understanding the specific standard they are to apply.  *See Bax v. Doctors Medical Center of Modesto, Inc.*, No. 117CV01348DADSAB, 2021 WL 3733113, at *37 (E.D. Cal. Aug. 24, 2021), *aff'd sub nom. Bax v. Drs. Med. Ctr. of Modesto, Inc.*, No. 21-16532, 2022 WL 4127521 (9th Cir. Sept. 12, 2022), and *aff'd sub nom. Bax v. Drs. Med. Ctr. of Modesto, Inc.*, 48 F.4th 1008 (9th Cir. 2022), and *aff'd sub nom. Bax v. Drs. Med. Ctr. of Modesto, Inc.*, 52 F.4th 858 (9th Cir. 2022) (explaining that the effective communication requirements under Title II and Title III, respectively, are "very similar," and that the only limited differences between the two regulations are limitations on the duty to provide a particular aid or service and the obligation of a public entity under Title II to give primary consideration to the choice of auxiliary aid or service requested by the individual with a disability).  In *Silva*, in which the plaintiffs alleged that the defendant hospital failed to provide appropriate auxiliary aids and services to deaf patients, the Ninth Circuit held that the "relevant inquiry is whether the hospitals' failure to offer an appropriate auxiliary aid impaired the patient's ability to exchange medically relevant information with hospital staff," and that the ADA "focus[es] on the communication itself, not on the downstream consequences of communication difficulties, which could be remote, attenuated, ambiguous, or fortuitous."  *Silva*, 856 F.3d at 829, 834.  In *Bax*, the Ninth Circuit cited *Silva* in holding that the "test" under an effective communication claim "is whether an individual has received an auxiliary aid sufficient to prevent any 'real hinderance' in her ability to exchange

1  information." *Bax*, 52 F.4th at 867.  Accordingly, the County requests an instruction in

2  accordance with this standard, as set forth below.

3      Second, to support her contention that the ADA contemplates and requires "scribes" as an

4  auxiliary aid or service for people who are blind or have low vision, Plaintiff has repeatedly

5  argued that "qualified readers" must act as scribes.  See Dkt. 61, at 9:12-16.  "Qualified readers" is

6  one of the auxiliary aids and services currently identified in Final Instruction No. 10.  Thus, if

7  Plaintiff intends to present this theory to the jury, the jury should be aware that one of the

8  regulations quoted by the Court in Final Instruction No. 10 – 28 C.F.R. section 35.104 – defines

9  "qualified reader" to mean "a person who is able to read effectively, accurately, and impartially

10  using any necessary specialized vocabulary."  The County requests an instruction containing this

11  definition, as set forth below.

12      Third, it would be prejudicial to the County to instruct the jury that public entities "shall give

13  primary consideration to the requests of individuals with disabilities," without providing the jury

14  with context.  As the Ninth Circuit has explained, the requirement to give "primary

15  consideration" to the request of the individual with a disability does not amount to an obligation

16  to honor that request if the public entity "can demonstrate that another effective means of

17  communication exists," as the County intends to argue it did in this case, should the jury find that

18  an auxiliary aid or service was required.  *Updike v. Multnomah Cnty.*, 870 F.3d 939, 950 (9th Cir.

19  2017) (quoting 28 C.F.R. pt. 35, App. A).

20      As such, the County requests that the following be included in the Instructions, whether

21  incorporated into Final Instruction No. 10 or into one or more new instructions, as follows:

22      • Qualified Reader:  A "qualified reader" means a person who is able to read

23          effectively, accurately, and impartially using any necessary specialized

24          vocabulary.

25      • Primary Consideration:  Although the public entity shall give primary

26          consideration to the requests of individuals with disabilities, the public entity is

27          not obligated to honor the request of an individual with a disability if the public

28          entity can demonstrate that another effective means of communication exists.

- Effective Communication Standard: The public entity's obligation to provide an auxiliary aid or service arises when the provision of such auxiliary aid or service is necessary to ensure effective communication between the person with a disability and the public entity. Communications between the public entity and the person with a disability are "effective" when they are as effective as communications with others. The relevant inquiry is whether an auxiliary aid or service is necessary to prevent any real hinderance to the ability of the individual with a disability to exchange information with the public entity. The focus is on the communication itself.

**Plaintiff's Response to Defendant's Proposed Additional Instruction No. 1**

As discussed below, Plaintiff is largely amenable to revising the Court's proposed Final Instruction No. 10 (Effective Communication) but suggests that the Court's existing proposed instruction should be amended rather than adding an entirely new instruction with the language put forward by Defendant.

**First**, Plaintiff is concerned that merely inserting the definition of a "qualified reader" will further mislead the jury into believing that the list of auxiliary aids or services from the regulations and this definition are the total extent of what a public entity must provide rather than understanding that these are examples of common auxiliary aids or services and a definition that clarifies the minimum standard required of an individual to be a "qualified reader."

Plaintiff thus proposes two edits to Final Instruction No. 10:

1. That, in addition to Defendant's proposed definition of a "qualified reader," the Court also add clarifying language from the Department of Justice's Appendix A to 28 CFR part 35 (the Title II regulations), available online at https://www.ada.gov/law-and-regs/regulations/title-ii-2010-regulations/: "Reading devices or readers should be provided when necessary for equal participation and opportunity to benefit from any governmental service, program, or activity, such

as reviewing public documents, examining demonstrative evidence, and filling out voter registration forms or forms needed to receive public benefits."

2.      That the Court insert "not limited to" before the list of possible auxiliary aids or services from the regulations to avoid the implication that these listings and definitions of some auxiliary aids or services constitute a limited list instead of examples.

**Second**, Plaintiff agrees that additional language discussing what "primary consideration" means would be useful to the jury. Plaintiff suggests adopting the neutral language pulled directly from the Department of Justice's Appendix A to 28 CFR part 35 (the Title II regulations), available online at https://www.ada.gov/law-and-regs/regulations/title-ii-2010-regulations/: "The public entity shall honor the choice of the individual with a disability unless it can demonstrate that another effective means of communication exists. Deference to the request of the individual with a disability is desirable because of the range of disabilities, the variety of auxiliary aids and services, and different circumstances requiring effective communication." Plaintiff proposes amending Final Instruction No. 10 with these changes.

**Third**, in its proposed "Effective Communication Standard," Defendant attempts again to conflate case law that analyzes Title III regulations requiring that public accommodations "furnish appropriate auxiliary aids and services where necessary to ensure *effective* communication with individuals with disabilities," 28 C.F.R. § 36.303(c)(1), with the more stringent Title II requirement that a public entity "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are *as effective as communications with others*," 28 C.F.R. § 35.160(a)(1). Furthermore, Title II's regulations focus on the more ambitious goal of actively achieving "equal opportunity," 28 C.F.R. § 35.160(b)(2), rather than the avoidance of various forms of lesser treatment or exclusion that is required by Title III, 28 C.F.R. § 36.303(a). Through this conflation and the reduction of Title II's more rigorous obligations to the less rigorous approach of Title III, Defendant draws on Title III case law to propose a biased and prejudicial instruction that argues that the "relevant inquiry" involves looking for a "real hinderance" to exchanging information

rather than obtaining communication that is "as effective as communication with others," 28 C.F.R. § 35.160(a)(1) *and* that enables "equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity," 28 C.F.R. § 35.160(b)(1). This distinction is further emphasized by the obligations under *only* Title II's regulations (1) to give "primary consideration" to the request of the person with disabilities, 28 C.F.R. § 35.160(b)(2), and (2) to "ensure that, to the maximum extent possible, individuals with disabilities receive the benefits or services provided by the public entity" when attempting to avoid undue burdens or fundamental alterations, 28 C.F.R. § 35.164.

Having done this handwaving, Defendants then go on to argue that the "focus is on the communication itself" because that is what some courts analyzing Title III's less-rigorous obligations in a fact scenario where a Deaf individual at a private hospital preferred an in-person interpreter but instead received a combination of VRI and in-person interpreters have opined. But that is not this case, and Defendant's proposed additional instruction attempting to insert a biased and prejudicial "effective communication standard" into the jury instructions should be rejected.

1   **Defendant's Proposed Additional Instruction No. 2:  Cal. Government Code § 27203(d)**

2      Plaintiff's claim for monetary damages necessarily requires the jury to evaluate the

3   motivation for the County and its employee's actions.  Pursuant thereto, the County requests that

4   the Instructions include relevant language from California Government Code section 27203(d),

5   as follows:  Any recorder to whom an instrument provided or acknowledged according to law or

6   any paper or notice which may by law be recorded is delivered for record is liable to the party

7   aggrieved for the amount of the damages occasioned thereby, if he or she alters, changes,

8   obliterates, or inserts any new matter in any records deposited in the recorder's office, unless the

9   recorder is correcting an indexing error.  The recorder may make marginal notations on records

10  as part of the recording process.

11      **Plaintiff's Response to Defendant's Proposed Additional Instruction No. 2**

12      Defendant is seeking to introduce yet again a misleading, irrelevant, and prejudicial

13  instruction that the Court has already rejected when considering the Joint Proposed Jury

14  Instructions 34, ECF No. 106. During her visit to the CRO, Ms. Martinez requested assistance

15  with reading and writing paper forms under her direction that had been handed back to her (or,

16  alternatively, on a fresh blank paper form) rather than with a form that had been deposited.

17      Furthermore, as the Court has already said much earlier in the case, "even if Defendants were

18  correct in claiming the relevance of those state strictures to the provision of assistance for blind

19  persons, that would neither be determinative nor would it allow Defendants to escape their

20  obligation to subject those state strictures to an analysis for comportment with federal law."

21  (Order Denying Motion to Dismiss 5, ECF No. 22 (citing *McGary v. City of Portland*, 386 F.3d

22  1259, 1268-70 (9th Cir. 2004)).)

23      This additional proposed instruction should be rejected.

24

25

26

27

28

1

2                                    Respectfully submitted,

3    DATED: March 7, 2024            TRE LEGAL PRACTICE

4                                    */s/ Timothy Elder*
                                     _____
5                                    Timothy Elder

6                                    *Attorneys for Plaintiff*

7

8

9    DATED: March 7, 2024            ORBACH HUFF + HENDERSON LLP

10                                   */s/ Nicholas D. Fine*
                                     _____
11                                   Nicholas D. Fine

12                                   *Attorneys for Defendant County of Alameda*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28