# EXHIBIT A

TIMOTHY ELDER (CA BAR NO. 277152)
KRISTOPHER A. NELSON (CA BAR NO. 342552)
**TRE LEGAL PRACTICE**
1155 Market Street, Tenth Floor
San Francisco, CA 94103
Telephone:   (415) 873-9199
Facsimile:    (415) 952-9898
Email: telder@trelegal.com, knelson@trelegal.com

S. Tomiyo Stoner (CA Bar No. 289246)
**Undaunted Law Firm, P.C.**
1500 Dragon St. Suite 160
Dallas, Texas 75039
Telephone:   (214) 415-7340
E-mail: tstoner@undauntedlaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LISAMARIA MARTINEZ,** | Case No. 3:20-cv-06570-TSH |
| Plaintiff, | **PLAINTIFF'S REBUTTAL EXPERT DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26** |
| v. | |
| **COUNTY OF ALAMEDA**, **MELISSA WILK**, in her individual capacity, **EVA HE**, in her individual capacity, **MARIA LAURA BRIONES**, in her individual capacity, | |
| Defendants. | |

Plaintiff provides this rebuttal expert disclosure pursuant to Rule 26 of the Federal Rules of Civil Procedure, without prejudice to her right to produce evidence of any subsequently discovered facts or interpretations of facts, or to otherwise further supplement or amend disclosures. The information contained herein is true and correct to the best knowledge of Plaintiff at this time but is subject to correction or supplementation with any subsequently discovered errors or omissions. By supplementing her disclosures, Plaintiff is neither waiving any objections to, nor

conceding the admissibility of the information disclosed. Subject to these reservations, Plaintiff makes the following disclosures under Federal Rule of Civil Procedure 26(a)(2) of rebuttal witnesses who may testify as experts pursuant to Federal Rules of Evidence 702-705:

1. Eve Hill may testify at the trial of this case as a rebuttal expert pursuant to Fed. R. Evid. 702-705. A signed copy of Ms. Hill's first report that summarizes her opinions and the bases for her opinions, including her CV and a listing of the documents she consulted, is attached as **Exhibit A**. Ms. Hill is charging $675.00 per hour for time spent on her report and any testimony in the case. Ms. Hill  has not testified as an expert at trial or by deposition in the past four years.

     To the best of my knowledge, information, and belief, formed after an inquiry that is reasonable under the circumstances, this disclosure is complete and correct as of the time it is made.

DATED: November 1, 2023                    Respectfully submitted,

                                           TRE LEGAL PRACTICE

                                           */s/ Timothy Elder*
                                           Timothy Elder

                                           *Attorneys for Plaintiff*

# Exhibit A

# Expert Rebuttal Report of Eve L. Hill

## Qualifications

See **Exhibit 1** and included list of publications. I have been a consultant, federal government official, local government ADA Coordinator, lawyer, and professor in disability civil rights under the Americans with Disabilities Act (ADA) and other state and federal disability rights laws since 1993. I have co-written a textbook and treatise on disability civil rights law and policy and numerous articles on various aspects of disability law and policy.

## Other Cases

Though I regularly consult on interpretations of the ADA and the implementation of its regulations, I have not previously had occasion to testify in court based upon my experience. In approximately 2011, I was retained to offer expert testimony for a flight attendants' union in an arbitration regarding my opinion on reasonable accommodations under the employment provisions of Title I of the ADA. I did not ultimately testify or produce a report in that engagement. I have given expert testimony before legislative bodies.

## Statement of Compensation

I am charging a discounted rate of $675 for all work on this matter.

## Statement of Opinions and the Basis and Reasons

### Mr. Cris C. Vaughan is not an expert in whether auxiliary aids are effective in providing equally effective communication to consumers with disabilities.

I have reviewed the qualifications of Mr. Cris Vaughan, a purported expert in "disabled access for persons with disabilities." (Expert Report of Cris C. Vaughan, attached as Exhibit A to Defendant County of Alameda's Initial Disclosure of Expert Witnesses (10/2/23) ("Vaughan Expert Report") ¶¶ 1-8). In coming to my conclusions, I reviewed the documents listed in Table 1, below, and paid particular attention to documents relevant to assessing whether Mr. Vaughan's purported expertise encompasses the specific questions on auxiliary aids and effective communications raised by this case, such as the following documents:

- Vaughan Expert Report
- Curriculum vitae of Cris C. Vaughan, attached to Vaughan's Expert Report
- Mr. Vaughan's consulting website: https://adaconsultantservices.com/about/
- Mr. Vaughan's law practice website: https://adalegaldefense.com/
- Amended Complaint, ECF No. 84
- Text of the ADA and its implementing regulations in 28 C.F.R. pt. 35.

Mr. Vaughan appears to have expertise in the field of physical access and technical construction-related requirements of the ADA and the California building code. His consulting website offers services of Exterior ADA Audits, ADA Plan Reviews, ADA

CASpE Valuation/Inspection Proposals, and Expert Witness Services, all related to the physical accessibility requirements of the laws for buildings. The courses he has taught relate exclusively to physical building accessibility issues. Nothing in Mr. Vaughan's qualifications shows that his expertise includes more than a lay understanding of how various auxiliary aids and services practically work to provide equally effective communications to blind individuals like Ms. Martinez. Mr. Vaughan has no disclosed expertise on the subject of equally effective communication for blind individuals beyond that which any other attorney who has litigated under the ADA might possess.

After reviewing Mr. Vaughan's report and supporting materials, I observe that, in several respects, he does not apply the correct standard contained in the applicable Title II regulations: 28 C.F.R. §§ 35.130, 35.160. First, Mr. Vaughan wrongly frames the question as whether Ms. Martinez had "meaningful access" to the benefit of filing an FBNS on March 29, 2019. (Vaughan Expert Report ¶ 14.)[1] The correct standard to consider is whether Ms. Martinez had "an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity," 28 C.F.R. §35.160(b)(1), and whether the County provided communication to Ms. Martinez that was "*as effective as communications with others.*" 28 C.F.R. § 35.160(a)(1). Rather, Mr. Vaughan states merely that communications were *effective* without qualifying the level of effectiveness required or considering the factors used to measure that effectiveness.

In addition, although he notes their existence (Vaughan's Expert Report ¶ 24), Mr. Vaughan fails to properly apply ADA regulations that require that "[i]n determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities." 28 C.F.R. § 35.160(b)(2). As explained in the ADA Title II Technical Assistance Manual published by the U.S. Department of Justice, "'[p]rimary consideration' means that the public entity *must honor the choice* [of the individual with a disability], *unless it can demonstrate that another equally effective means of communication is available*, or that use of the means chosen [by the individual with a disability] would result in a fundamental alteration in the service, program or activity or in undue financial and administrative burdens." ADA Title II Technical Assistance Manual § II-7.1100, https://archive.ada.gov/taman2.html#II-7.1100 (emphasis added). Instead, Mr. Vaughan states, incorrectly, that a public entity may disregard an individual's choice of auxiliary aid or service "so long as the auxiliary aid and service provided by the public entity is effective and is provided in an accessible format, in a timely manner, and is in such a way as to protect the privacy and independence of the individual with a disability." (Vaughan Expert Report ¶¶ 25-26.) Mr. Vaughan's approach

---

[1] "Meaningful access" has typically been applied by the Ninth Circuit to disparate impact/structural analysis and not to equally effective communications on an individualized basis. *See, e.g., Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 738–39 (9th Cir. 2021). In any event, Mr. Vaughan does not explain what this standard is nor how he is applying it to the facts.

would eliminate the regulatory requirement to provide primary consideration to the choice of the person with a disability.

### A scribe is a common auxiliary aid provided by Title II entities to effectively communicate with blind people.

I have continually worked with the National Federation of the Blind, the leading organization of blind people and an authority on the communication needs of a wide range of blind individuals. I have worked at the Department of Justice, the federal agency charged with interpreting the ADA Effective Communication regulations at issue in this case. I have served as the official responsible for the District of Columbia government's compliance with the ADA. I have also spent a considerable career studying, writing about, teaching, and advising covered entities on their obligations under Title II of the ADA.

The use of a human scribe to complete paper forms that blind people are unable to legibly write on is a common and often appropriate auxiliary aid anticipated by the ADA statute, regulations, guidance and best practices. In order to achieve the effective communication standard under the Title II regulations, the County would be expected to provide such a scribe unless it can offer an equally effective alternative or establish an affirmative defense not at issue in this case.

### The County's offered auxiliary aids when Ms. Martinez went to the CRO in 2019 were not equally effective to her requested aid.

I have reviewed the auxiliary aids and services offered to Ms. Martinez when she attempted to file her FBNS forms at the County's Clerk Recorder Office (CRO) in 2019. The CRO refused to provide the human scribe services Ms. Martinez requested to fill in the FBNS form at the CRO and, instead, offered her a printable and mailable PDF form and self-addressed return envelope to be completed by Ms. Martinez at home.

I have compared the effectiveness of the proposed auxiliary aid offered by the CRO with Ms. Martinez's request for a human scribe in order to assess whether the CRO's offered aid was sufficient to "ensure that communication with applicants . . . with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). In addition, I have interviewed Ms. Martinez to assess her individual needs and the various factors contemplated by the regulatory standard: "The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 C.F.R. §35.160(b)(2). In addition, I assessed whether the CRO's offered auxiliary aid constituted "another *equally effective* means of communication" to Ms. Martinez's requested scribe, to satisfy the primary consideration standard.

I have identified at least two "benefits" of the County's FBNS and CRO program and service that Ms. Martinez was unable to enjoy equally in accordance with the "equally effective communication" standard if relying upon the auxiliary aids offered to her by the County during her 2019 visits.

1. The auxiliary aid offered to Ms. Martinez by the County in 2019 did not allow Ms. Martinez to enjoy the same timeliness offered to other members of the public who could obtain their FBNS certificates on the same day as their visit to the Clerk's in person office.

2. The auxiliary aid offered by the County in 2019 did not enable Ms. Martinez to enjoy the benefit of paying for her FBNS fees by credit/debit card (filing by mail requires printed paper checks). See Response to Request No. 6 in Defendant County of Alameda's Response to Plaintiff Lisamaria Martinez's Requests for Admission (Set Three) (9/26/23); Response to Interrogatory No. 30 in Defendant County of Alameda's Response to Plaintiff Lisamaria Martinez's Interrogatories (Set Three) (9/26/23).

In 2019, non-disabled individuals could have enjoyed same-day service and the ability to pay with a credit/debit card at the Clerk's in person office. Ms. Martinez was not able to equally benefit from the service afforded to others as required by the standards in the Title II regulations. For Ms. Martinez, getting assistance with writing a paper check is disproportionately difficult when compared with the ease of using a credit or debit card. Further, as illustrated in this case, the value of getting real-time feedback from a clerk who can point out errors on the form for immediate correction is not available through the paper mailing filing.

### Mr. Vaughan has not shown that the County's alternative aids offered today on the computer are equally effective to the requested scribe.

I have reviewed Mr. Vaughan's report on measures taken by the County subsequent to Ms. Martinez's experiences at the CRO in 2019. (Vaughan Expert Report ¶¶ 16-20.) I note that there are significant gaps in Mr. Vaughan's details and analysis of this technology and the process for using it. For example, Mr. Vaughan does not discuss any information as to the "timeliness" of the assistance currently offered, as compared with the time delay experienced by similarly situated non-disabled users or by Ms. Martinez if given her requested scribe. Nor does Mr. Vaughan consider staffing issues or the process for getting a qualified individual to assist with entering the password or using the computer in the public viewing room. I note that there were factual allegations surrounding the 2019 incident in which a supervisor was unavailable for an extended period of time.

Mr. Vaughan's report describes how the County's process now works using a new kiosk with human assistance going back and forth clicking on a mouse for the individual with the disability, who then types without knowing exactly what they are entering. In light of this awkward back-and-forth process, I find his categorical conclusion in paragraphs 21 and 28 that this process satisfies the "equally effective communication" standard to be unsupported by evidence or analysis. Mr. Vaughan

does not evaluate whether the kiosk technology is an accessible format, whether it is provided in a timely manner equal to what a person not using the kiosk would experience, nor whether it protects privacy or independence.

Leaving aside these real-world considerations of staffing and qualifications, Mr. Vaughan relies primarily on his own personal use of the County's kiosk, as a sighted person with no documented familiarity with blindness or accessibility technologies for the blind.

Such "simulated" testing used alone has been criticized as an insufficient and problematic methodology in academic literature. *See, e.g.,*

- Cynthia L. Bennett and Daniela K. Rosner, *The Promise of Empathy: Design, Disability, and Knowing the "Other," in* Proceedings of the 2019 CHI Conference on Human Factors in Computing Systems, Association for Computing Machinery, Article 298 (May 4-9, 2019), https://doi.org/10.1145/3290605.3300528;
- Simeon Keates and Peter Olaf Looms, *The Role of Simulation in Designing for Universal Access, in* Universal Access in Human-Computer Interaction, Design and Development Methods for Universal Access 58-60 (C. Stephanidis and M. Antona eds., 2014), https://doi.org/10.1007/978-3-319-07437-5_6.

Nor did Mr. Vaughan provide sufficient details about, support for, or analysis of the testing methodology he used during his visit to the CRO on September 25, 2023. For example, did Mr. Vaughan engage at the CRO as an unscheduled "real-world" walk-in customer or was he provided a scheduled tour? Did he use a peer-reviewed or published testing methodology? Did he institute any controls or standards, or consider the potential for errors or problems in his methodology? I would expect a more rigorous testing process from an expert in effective communication and assistive technologies for the blind. Without further support for this as an acceptable testing methodology, having a sighted individual such as Mr. Vaughan with no expertise in technologies such as JAWS conduct a "test" by—as far as can be determined through the information provided—closing their eyes and doing what a sighted CRO staff member tells them to do is, in my judgment, insufficient support for concluding that the CRO's current kiosk setup meets the County's obligations under Title II of the ADA.

Given the facts presented to me, I would compare the timeliness and convenience of using the County's proposed kiosk-plus-staff-assistance auxiliary aid with the timeliness and convenience of the requested scribe to determine which of those approaches was closest to the timeliness and convenience of communications with non-disabled individuals. Whereas non-disabled individuals can complete their transaction after waiting in line only one time and having one interaction with a staff person, a blind individual must wait in line, be directed to the special kiosk with assistive technology installed, await staff assistance with the kiosk, go back and

forth with the staff assistant to enter the information, and then wait in line again to submit the completed form.

Further, the specific method of communication used by Ms. Martinez should have been considered as an additional factor. It is not normal for blind individuals to be guided to enter information in a blank on an electronic document, be forced to type the information, then be positioned to enter information in the next blank and so on. Ms. Martinez has attempted on at least one other occasion to use such an approach for her GRE testing accommodations. This approach was time consuming, awkward, and not effective for her.

Finally, the kiosk-plus-staff-assistance approach is not as effective, simple, and straightforward as the approach—a scribe—requested by Ms. Martinez, which deserves primary consideration.

## Documents and Materials Reviewed

| TABLE 1: LIST OF DOCUMENTS AND MATERIALS REVIEWED |
| --- |
| Amended Complaint for Discrimination in Violation of The Americans with Disabilities Act, California Government Code § 11135, and The California Disabled Persons Act, ECF No. 84 |
| Defendant County of Alameda's Initial Disclosure of Expert Witness and Exhibit A (Expert Report) (10/02/23) |
| Defendant County of Alameda's Response to Plaintiff Lisamaria Martinez's Requests for Admission (set three) (9/26/23) |
| Defendant County of Alameda's Response to Plaintiffs Lisamaria Martinez's Interrogatories (set three) (9/26/23) |
| Declaration of Lisamaria Martinez in Support of Plaintiff's Motion for Partial Summary Judgment and Declaratory Judgment, ECF No. 45-1 |
| Declaration of Lucia Greco in Support of Plaintiff's Statement of Facts and Opposition to Defendant's Motion for Summary Judgment on Declaratory Relief, ECF No. 65-5 |
| Declaration of Matt Yankee in Support of Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment and in Support of Defendants' Motion for Summary Judgment, ECF No. 48-3 |
| Declaration of Matt Yankee in Support of Defendant County of Alameda's Opposition to Plaintiff's Motion for Summary Judgment on Declaratory Relief and County's Motion for Summary Judgment on Declaratory Relief, ECF No. 63-3 |
| Supplemental Declaration of Matt Yankee in Support of Defendant County of Alameda's Opposition to Plantiff's Sur Reply in Support of Motion for Summary Judgment on Declaratory Relief, ECF No. 69-2 in Support of Defendant County of Alameda's Opposition to Plantiff's Sur Reply in Support of Motion for Summary Judgment on Declaratory Relief, ECF No. 69-2 |

| |
|---|
| Letter from TRE Legal (11/14/19) (County_0001-10) |
| 9/28/23 Email from Jocelyn Cole to All Clerk-Recorder (County_0121) |
| Auditor-Controller Agency Employee Information Handbook (Sept. 2017) (County_0016-120) |
| Fictitious Name Statement form for Be Confident Be You Coaching LLC (County_0011) |
| 3/29/19 letter from Melissa Wilk to Be Confident Be You Coaching (County_0012) |
| JAWS Screenreader Software Instructions (County_0122) |
| Audio files re waiting for supervisor at CRO in 2019 (PL0001, 3, 5) |

## Exhibits

**Exhibit 1**: Curricula vitae of Eve L. Hill, including list of publications

## Signature

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on _____November 1, 2023_____ in _____Arlington, Virginia_____.

DocuSigned by:

*Eve Hill*

Eve L. Hill

# Exhibit 1

## EVE L. HILL

**Brown Goldstein & Levy**
Partner (2017-present)
Systemic and individual litigation, advocacy, and education under ADA and other civil rights laws.

**Inclusivity Strategic Consulting** at Brown, Goldstein & Levy
Partner (2017-present)
Assist covered entities to achieve compliance with the ADA and other civil rights laws and to become more inclusive of people with disabilities by analyzing existing policies and practices and developing policies, practices, training curricula, and other tools.

**U.S. Department of Justice, Civil Rights Division**
Deputy Assistant Attorney General/Senior Counselor (2011-2017)
Member of the leadership team of the Civil Rights Division. Oversaw the Division's litigation, investigation, negotiations, rulemaking, and technical assistance under the ADA, Section 504 of the Rehabilitation Act, Title VI and Title IX of the Civil Rights Act of 1964, and U.S. Constitution. Supervised the Division's Disability Rights, Educational Opportunities, Federal Coordination and Compliance, and Special Litigation sections, and the American Indian Working Group.

**Brown Goldstein & Levy,** Of Counsel (2011)

**Burton Blatt Institute at Syracuse University,** Senior Vice President (2009-2011)
Senior manager responsible for disability research, education, and advocacy organization.  Supervised Disability Rights Bar Association; Southeast ADA Center; Southeast Technical Assistance and Continuing Education Center for Vocational Rehabilitation; Civil Rights Team; Research Department; Communications Program.

**DC Office of Disability Rights,** Director (2007-2008)
Developed new Cabinet-level office in the District of Columbia government to ensure compliance with the ADA and other federal and local disability rights laws. Worked with all agencies across DC government to implement disability policies and procedures.

**Disability Rights Legal Center/Loyola Law School,** Executive Director/Visiting Professor (1998-2007)
Managed all aspects of non-profit disability rights organization and on-campus for-credit law school externship.  Supervised Civil Rights Litigation Project (working with pro bono legal counsel); Disability Mediation Center; Cancer Legal Resource Center; Options Counseling and Lawyer Referral Service; Community Outreach Program; Learning Rights Project.

**Civil Rights Division, U.S. Department of Justice,** Supervisory Attorney, Disability Rights Section (1993-1998)
Supervised investigation and negotiation of settlements of over 350 complaints under ADA.  Created and implemented ADA Mediation Program.  Led ADA Building Code Certification Program.  Civil Rights Division Alternative Dispute Resolution Coordinator.

**Pierson Semmes & Bemis**, Litigation Associate (1989-1993)
Handled all aspects of complex litigation in state and federal courts.

## TEACHING EXPERIENCE

Loyola Law School
☐ Disability Rights Law
☐ Alternative Dispute Resolution
☐ Externship supervisor for disability rights, disability mediation, and special education clinical programs

Loyola Marymount University School of Education
☐ Special Education Law

Univ. of Southern California Gould School of Law
☐ Disability Rights Law

**OTHER RELEVANT EXPERIENCE**

☐ Testimony
  o Equal Employment Opportunity Commission, Listening Session on Strategic Enforcement Plan, September 22, 2022.
  o Senate Special Committee on Aging, Click Here: Accessible Federal Technology for People with Disabilities, Older Americans and Veterans, July 28, 2022.
  o Council of the District of Columbia Committee of the Whole and Committee on Human Services, Public Roundtable on District of Columbia Department on Disability Services' Developmental Disabilities Administration Health Initiative Program Contract, July 23, 2019.
  o Testimony to the U.S. Commission on Civil Rights, The School-to-Prison Pipeline: The Intersections of Students of Color with Disabilities, December 8, 2017, https://inclusivity.consulting/2017/12/08/schoolprison-pipeline-intersection-race-disability/
  o Senate Judiciary Committee, Nomination of the Honorable Neil M. Gorsuch to be an Associate Justice of the Supreme Court of the United States, March 21, 2017.
  o Senate Health Education Labor & Pensions Committee, "The ADA and Entertainment Technologies," May 14, 2013.
  o Senate Foreign Relations Committee, U.N. Convention on the Rights of People with Disabilities, July 12, 2012.
  o Senate Health Education Labor & Pensions Committee, "The Promise of Accessible Technology: Challenges and Opportunities," February 7, 2012.

☐ Volunteer Experience
  o Bazelon Center for Mental Health Law – Board Chair, 2020-present; Board Member, 2017-present.
  o Gay Men's Chorus of Washington, DC – Board Member, 2017-present.
  o Disability Rights Bar Association, 2017-2022.

**SELECTED AWARDS**
☐ 2023 TASH Outstanding Leadership in Law Award
☐ 2020 COPAA Distinguished Service Award
☐ 2014 National Disability Institute Allen Jensen Humanitarian Public Policy Award.
☐ 2013 Cornell Law School Public Service Award.

**BAR ADMISSIONS**
State Courts – Virginia; Maryland; California; District of Columbia; Maine.  Federal Courts – 4th Circuit;

9th Circuit; D.C. Circuit; D. Colo.; E.D. Mich.; C.D. Cal.; D.D.C.; D. Md.; U.S. Supreme Court.

**EDUCATION**
J.D. cum laude, Cornell Law School – 1989.
B.A. magna cum laude, Sweet Briar College - 1986.

**SELECTED PUBLICATIONS**
o "Higher Education's Next Great Challenge: Ensuring Full Inclusion for Students with Disabilities," Inst. for Ed. Leadership, https://iel.org/higher-education-inclusion-guide (2020)
o "Panel: Building Coalitions and the Disability Rights Movement," *Georgetown Journal on Poverty Law & Policy*, co-presenter Judith Heumann, 2020, https://www.law.georgetown.edu/poverty-journal/wp-content/uploads/sites/25/2020/06/02-Hill-Heuman-Remarks.pdf
o "Over-Incarceration Hurts People with Disabilities and Wastes Taxpayer Money. Here's How to Fix It," March 5, 2019, https://inclusivity.consulting/2019/03/05/over-incarceration-hurts-people-with-disabilities-and-wastes-taxpayer-money-heres-how-to-fix-it/
o "People with Disabilities Are Being Excluded from Mainstream Jobs – How to Make Sure Your Supply Chain Isn't Part of the Problem," October 5, 2018, https://inclusivity.consulting/2018/10/05/people-with-disabilities-are-being-excluded-from-mainstream-jobs-how-to-make-sure-your-supply-chain-isnt-part-of-the-problem/
o "The ADA and the American Dream," July 26, 2018, https://inclusivity.consulting/2018/07/26/the-ada-affirmative-action-and-the-american-dream/
o "Too Many Schools Are Failing Young People with Developmental Disabilities. Here's How to Fix it," June 29, 2018, https://inclusivity.consulting/2018/06/29/many-schools-failing-young-people-developmental-disabilities-heres-fix/
o "It's Past Time to Give Workers with Disabilities A Raise," June 24, 2018, https://inclusivity.consulting/2018/06/24/past-time-give-workers-disabilities-raise/
o "Technology Vendor Contracts and Accessibility: What Every Business Lawyer Should Know," Business *Law Today,* E. Hill, L. Feingold, April 19, 2018, https://businesslawtoday.org/2018/04/technology-vendor-contracts-accessibility-every-business-lawyer-know/
o "Four Years After a Landmark Settlement in Rhode Island, the Fight for Inclusion Continues," April 10, 2018, https://inclusivity.consulting/2018/04/10/four-years-landmark-settlement-rhode-island-fight-inclusion-continues/
o "Colleges' Obligations to Students with Mental Health Disabilities at Risk of Self-Harm," April 6, 2018, https://inclusivity.consulting/2018/04/06/colleges-obligations-students-mental-health-disabilities-risk-self-harm/
o "Five Reasons to Hire More People with Developmental Disabilities – Right Now," March 13, 2018, https://inclusivity.consulting/2018/03/13/five-reasons-hire-people-developmental-disabilities-right-now/
o "Policy Brief: What School Leaders Can Do To Prepare Youth With Disabilities For Work," February 13, 2018, https://inclusivity.consulting/2018/02/13/school-leaders-can-prepare-youth-disabilities-work/
o "Preparing Transition-Age Youth with Disabilities for Work: What School Leaders Need to Know About the New Legal Landscapes," Inst. for Ed. Leadership, E. Hill, R. Kline, C. Richards, 2018, https://iel.org/blog/what-school-leaders-can-do-prepare-youth-disabilities-work
o "Whither the Disability Rights Movement? The Future of Disability Rights Law," *ABA Human Rights Magazine*, Vol. 42 No. 4, 2017, https://www.americanbar.org/groups/crsj/publications/human_rights_magazine_home/2016-17-vol-42/disability-rights-under-siege/whither-the-disability-rights-movement--the-future-of-disability/
o "Department of Justice Withdraws Guidance Documents," December 22, 2017,

https://inclusivity.consulting/2017/12/22/department-justice-withdraws-guidance-documents/

o "Five Strategies for Hiring Workers With Disabilities – And Boosting Your Bottom Line – in 2018, December 22, 2017, https://inclusivity.consulting/2017/12/22/five-strategies-hiring-workers-disabilities-boosting-bottom-line-2018/

o "DOJ Will No Longer Assist Covered Entities in Understanding the Law," December 1, 2017, https://inclusivity.consulting/2017/12/01/doj-will-no-longer-assist-covered-entities-understanding-law/

o "Inclusivity 101: Q&A with Eve Hill and Regina Kline," November 7, 2017, https://inclusivity.consulting/2017/11/07/inclusivity-101-qa-eve-hill-regina-kline/

o Take Care Blog, "Schools Failing Students with Disabilities – Still," https://takecareblog.com/blog/schools-failing-students-with-disabilities-still (2017)

o Take Care Blog, "ADA Education and Reform Act," https://takecareblog.com/blog/ada-education-and-reform-act (2017)

o Take Care Blog, "School Choice May Leave Students with Disabilities No Choice," https://takecareblog.com/blog/school-choice-may-leave-students-with-disabilities-no-choice (2017)

o Take Care Blog, "Criminal Justice Reform and Disability – The Overlooked Opportunity," https://takecareblog.com/blog/criminal-justice-reform-and-disability-the-overlooked-opportunity (2017)

o "The ADA, Disability and Identity," J. of the Am. Med. Assn., co-author D. Goldstein (2016), https://jamanetwork.com/journals/jama/article-abstract/2319175

o "So You've Hired a Lawyer with a Disability … Now What? Disability and Diversity," Journal of the Institute for Inclusion in the Legal Profession at 90 (2011), https://theiilp.com/Resources/Documents/IILPReview2011.pdf

o "Legal and Policy Implications of Cloud Computing," proceedings of the Human Computer Interaction International conference (July 2011), https://link.springer.com/chapter/10.1007/978-3-642-21672-5_52

o Contributor, Litigating Employment Discrimination Cases, (Friedman, 2010, 2011)

o "Cases & Materials on Disability Civil Rights Law & Policy," Thomson-West, co-authors P. Blanck, C. Siegal, M. Waterstone (2005, 2009)

o "Future of Disability Law and Advocacy and 'The Right to Live in the World,'" Second Jacobus tenBroek Disability Law Symposium, 15 Texas Journal on Civil Liberties and Civil Rights 1, co-author Peter Blanck (Fall 2009)

o "Future of Disability Rights:  Part Three—Statutes of Limitations in Americans with Disabilities Act Design and Construction Cases," 60 Syracuse Law Review 125, co-author Peter Blanck (2009)

o "Challenging Barriers," Los Angeles Lawyer at 31, co-author Sheila Khan-Variba (November 2005), https://www.lacba.org/docs/default-source/lal-back-issues/2005-issues/november-2005.pdf

o "Disability Civil Rights Law and Policy," Thomson-West Group, co-authors Peter Blanck, Charles Siegal, Michael Waterstone (January 2004)

o "Mediation of Disputes Under the Americans with Disabilities Act of 1990," 3 Disp. Resol. Mag. 16 (1997)

**CERTIFICATE OF SERVICE**

I, Michelle Korosy, declare as follows:

1. I am a citizen of the United States, over 18 years of age, and not a party to the above-captioned action. My business address is TRE Legal Practice, 4226 Castanos Street, Fremont, CA 94536.

2. On November 1, 2023, I served the following document:

   a. PLAINTIFF'S REBUTTAL EXPERT DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26, EXHIBIT A

3. I accomplished this by causing the document listed above to be delivered via email to the attorneys for Defendants County of Alameda, Melissa Wilk, Eva He, and Maria Laura Briones at the email addresses set forth below.

   a. Kevin Gilbert: kgilbert@ohhlaw.com
   b. Nicholas D. Fine: nfine@ohhlaw.com

I declare under penalty of the laws of the United States of America and the State of California that the foregoing is true and correct, and that this declaration was executed in Clovis, California on November 1, 2023.

By: *Michelle Korosy*

Michelle Korosy