TIMOTHY ELDER (CA BAR NO. 277152)
KRISTOPHER A. NELSON (CA BAR NO. 342552)
**TRE LEGAL PRACTICE**
1155 Market Street, Tenth Floor
San Francisco, CA 94103
Telephone:   (415) 873-9199
Facsimile:   (415) 952-9898
Email: telder@trelegal.com, knelson@trelegal.com

S. Tomiyo Stoner (CA Bar No. 289246)
**Undaunted Law Firm, P.C.**
600 California St., Floor 7
San Francisco, CA 94108
Telephone:   (214) 415-7340
E-mail: tstoner@undauntedlaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LISAMARIA MARTINEZ**,<br><br>Plaintiff,<br><br>v.<br><br>**COUNTY OF ALAMEDA**,<br><br>Defendant. | Case No. 3:20-cv-06570-TSH<br><br>**PLAINTIFF'S TRIAL BRIEF REGARDING ADMITTING TESTIMONY OF PLAINTIFF'S EXPERT EVE HILL IN RESPONSE TO TESTIMONY OF MATT YANKEE**<br><br>Trial Date: March 26, 2024<br>Judge: Hon. Thomas S. Hixson |

# PLAINTIFF'S TRIAL BRIEF REGARDING ADMITTING TESTIMONY OF PLAINTIFF'S EXPERT EVE HILL IN RESPONSE TO TESTIMONY OF MATT YANKEE

## I. INTRODUCTION

Plaintiff's expert Eve Hill was disclosed on November 1, 2023 in response to Defendant's designation of Cris Vaughan as an expert. Mr. Vaughan's expert report indicated he would testify as to a variety of legal and interpretative opinions beyond those which Plaintiff would normally expect to be subject to trial testimony. Defendant deposed Ms. Hill on November 21, 2023, before the close of discovery. On March 25, 2024, the day before trial was due to begin, Defendant unexpectedly withdrew Mr. Vaughan as their expert. After briefing, and in response to Plaintiff's concern that Defendant intended to elicit testimony on the same topics as Mr. Vaughan using lay witnesses, the Court informed both parties that he would consider re-admitting Ms. Hill to testify in rebuttal if Defendant "opened the door" to topics Mr. Vaughan had been due to testify about. On March 28, 2024, Defendant elicited such testimony from their witness, Matt Yankee, and the Court directed the parties to provide briefing on appropriate next steps in response.

## II. ARGUMENT

Opinion testimony given by a lay witness under the auspices of Federal Rule of Evidence ("FRE") 701 must be based on that witnesses' own first-hand knowledge or observation and not based on technical or other specialized knowledge that is properly within the domain of expert testimony under FRE 702-703. This assures that "a party will not evade the expert witness disclosure requirements" found in Federal Rule of Civil Procedure ("FRCP") 26 by "simply calling an expert witness in the guise of a layperson." *Greenberg v. Paul Revere Life Ins. Co.*, 91 F. App'x 539, 541 (9th Cir. 2004) (citing Fed.R.Evid. 701, Advisory Committee Note).

Evading the expert witness process, including disclosure and the change for the opposition's rebuttal witness to testify, is exactly what the County has done here: they withdrew their designated expert, fought to deny Plaintiff's rebuttal expert the chance to be heard, and then simply called a new witness—Matt Yankee—to mix in FRE 702-703 expert testimony as if it were FRE 701 lay opinion testimony. When it did so, Defendant was already on notice when

questioning Mr. Yankee that taking this path would "open the door" to Plaintiff's expert testifying in rebuttal, and Defendant chose to do so anyway.

### A. Expert Testimony on Topics Previously Designated

As a result, on March 28, 2024, Defendant's witness Mr. Yankee made legal and interpretive arguments to the jury that Defendant had identified previously in its Rule 26(a)(2)(B) disclosure for its now-withdrawn designated expert Cris Vaughan (Mr. Vaughan's expert report is attached as **Exhibit A**) and to which Plaintiff's expert Eve Hill was retained to respond (Ms. Hill's expert report is attached as **Exhibit B**) that justify allowing Plaintiff's expert to testify in rebuttal to cure the prejudice to Plaintiff. Plaintiff has also attached relevant pages of the Transcript of Jury Trial Proceedings ("JT") as **Exhibit C**.

These opinions resulting from applying ADA Title II regulations to events Mr. Yankee did not witness required technical or specialized knowledge "beyond the common knowledge of the average layman," as is required under FRE 702. *United States v. Pulido-Avina*, 562 F. Supp. 3d 795, 799–800 (C.D. Cal. 2022) (citing *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002)); *see also, e.g.*, *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir.), *opinion amended on denial of reh'g*, 246 F.3d 1150 (9th Cir. 2001). For Mr. Yankee, that is the expertise of the "assistant controller of the CRO's office" (JT 431:3-4) who is the "the highest ranking employee in the Clerk-Recorder's Office" (JT 433:1-3) who has supervised projects involving auxiliary aids and services like the CRO's fabled kiosk (Decl. of Matt Yankee ISO Def. Opp. to Pl.'s Mot. for Summ. J. and County's Mot. for Summ. J. ¶¶ 3-5, ECF No. 63-3). As Mr. Yankee did not personally witness Ms. Martinez's attempts to obtain assistance with filing and filling out her paper FBNS form (*see* JT 439:7-9), these opinions are based on second-hand reports and investigations that Mr. Yankee was "made aware of" rather than personally perceived:

> **Q.** Now, based upon -- did you conduct an inquiry into Ms. Martinez's visit on March 29th, 2019?
>
> **A.** I did, yes.
>
> **Q.** And did you speak with and interview the people that were directly involved, with the exception of Ms. Martinez?

    **A.** Yes, the County employees who were involved.

    **Q.** And based upon those discussions and your review of the materials, did you have an opinion as to whether or not there was effective communication between Ms. Martinez and the individuals at the CRO that she interacted with on March 29th, 2019?

(JT 431:16-432:1.) Basing an opinion "upon those discussions and your review of the materials" is the domain of expert opinion testimony under FRE 703 rather than lay opinion testimony under FRE 701, which requires opinions be based only on first-hand knowledge or observation. Fed.R.Evid. 701(a); Fed.R.Evid. 701, Advisory Committee Note.

  Mr. Yankee, in response to questioning by counsel for Defendant, provided the following testimony that is properly characterized as expert opinion under FRE 701-703:

    1.    *"if there was effective communication, that would be the goal"*

    **Q.** … as the assistant controller of the CRO's office, what is your understanding of what the ADA requires and addresses in regards to patrons like Ms. Martinez coming in to record documents?

    **A.** My understanding is that the general principle of the ADA is to ensure that there is effective communication between both parties.

    **Q.** And if there is effective communication, based upon your understanding of the ADA, do you even get to a discussion of auxiliary aids and services or all the other questions that we've been hearing over the last hour?

    **A.** No. If there's effective communication, that would be the goal.

(JT 431:3-431:15.) This is not lay opinion testimony within the knowledge of the average layperson. It is instead opinion testimony that draws a legal conclusion as to the meaning of the ADA and its requirements under the regulations and how those apply to the CRO and "patrons like Ms. Martinez coming in to record documents," even though Mr. Yankee did not observe Ms. Martinez. It is also likely to mislead the jury as he misconstrues the ADA Title II regulations as requiring merely "effective communications" when the regulations instead require that

communications with disabled individuals be "as effective as communications with others." 28 C.F.R. § 35.160(a)(1), a mistaken position also taken by Mr. Vaughan in his expert report (at 5, 7).

### 2. *"there was effective communication that day"*

> **Q.** And based upon those discussions and your review of the materials, did you have an opinion as to whether or not there was effective communication between Ms. Martinez and the individuals at the CRO that she interacted with on March 29th, 2019?
>
> **A.** I believe there was effective communication that day.
>
> **Q.** And because there was effective communication, would, in your opinion, the County have been required to provide any further accommodations or aids or auxiliary services?
>
> **A.** No.

(JT 431:22-432:6.) This testimony, which draws on specialized knowledge and reports of what happened on March 29th to interpret the ADA and apply its regulations to the facts that Mr. Yankee had been made aware of by others, is properly the subject of expert and not lay opinion testimony.

### 3. *"expedited mail-back" as an accommodation*

> **Q.** … Now, even though the County was not required to do so, would the offer to allow an expedited mail-back of her FBNS form been a type of accommodation?
>
> **A.** Yes. That's not something we would have ordinarily done to anyone mailing in something that needed corrections. That would have been a specific accommodation made for Ms. Martinez.
>
> **Q.** And that's not something that's offered to everyone else?
>
> **A.** Correct.
>
> **Q.** And the expedited process, how quickly would an expedited return have been if she would have mailed it in?
>
> **A.** It would have depended on the mail; but once we received it, that would have

likely been a same day, if possible, probably the latest, the following day if we couldn't get to it the day we received the mail.

(JT 432:7-432:21.) This testimony draws on specialized knowledge and legal analysis to decide that this is a "type of accommodation." Furthermore, Mr. Yankee analyzes how such mailing would work rather than describing Mr. Yankee's personal experience with the process as it would function for Ms. Martinez as a blind individual. This section does not comprise lay opinion testimony; it is more properly the topic of an expert opinion.

### B.   Scope of Response by Plaintiff's Expert to Previously Designated Topics

The following extract demonstrates the parts of Ms. Hill's expert report that Plaintiff has identified as responsive to Mr. Yankee's testimony:

> **The County's offered auxiliary aids when Ms. Martinez went to the CRO in 2019 were not equally effective to her requested aid.**
>
> I have reviewed the auxiliary aids and services offered to Ms. Martinez when she attempted to file her FBNS forms at the County's Clerk Recorder Office (CRO) in 2019. The CRO refused to provide the human scribe services Ms. Martinez requested to fill in the FBNS form at the CRO and, instead, offered her a printable and mailable PDF form and self-addressed return envelope to be completed by Ms. Martinez at home.
>
> I have compared the effectiveness of the proposed auxiliary aid offered by the CRO with Ms. Martinez's request for a human scribe in order to assess whether the CRO's offered aid was sufficient to "ensure that communication with applicants . . . with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1).
>
> In addition, I have interviewed Ms. Martinez to assess her individual needs and the various factors contemplated by the regulatory standard: "The type of auxiliary

aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 C.F.R. §35.160(b)(2). In addition, I assessed whether the CRO's offered auxiliary aid constituted "another equally effective means of communication" to Ms. Martinez's requested scribe, to satisfy the primary consideration standard.

I have identified at least two "benefits" of the County's FBNS and CRO program and service that Ms. Martinez was unable to enjoy equally in accordance with the "equally effective communication" standard if relying upon the auxiliary aids offered to her by the County during her 2019 visits.

1. The auxiliary aid offered to Ms. Martinez by the County in 2019 did not allow Ms. Martinez to enjoy the same timeliness offered to other members of the public who could obtain their FBNS certificates on the same day as their visit to the Clerk's in person office.

2. The auxiliary aid offered by the County in 2019 did not enable Ms. Martinez to enjoy the benefit of paying for her FBNS fees by credit/debit card (filing by mail requires printed paper checks). See Response to Request No. 6 in Defendant County of Alameda's Response to Plaintiff Lisamaria Martinez's Requests for Admission (Set Three) (9/26/23); Response to Interrogatory No. 30 in Defendant County of Alameda's Response to Plaintiff Lisamaria Martinez's Interrogatories (Set Three) (9/26/23).

(Ms. Hill's expert report, on which the above appears on pages 3-4, is attached as **Exhibit B**.)

### C. Plaintiff's expert Eve Hill should be allowed to testify in rebuttal to expert testimony on topics previously designated.

Although in advance of trial excluding this improper lay opinion testimony would have prevented prejudice to Plaintiff, Plaintiff was unaware in advance that Mr. Yankee would present FRE 702-703 opinion testimony in place of Defendant's designated expert, who was withdrawn the day before trial. As a result, Plaintiff was prejudiced by the replacement of Defendant's designated expert with lay witness, and an instruction to the jury to disregard this part of Mr. Yankee testimony cannot "unring the bell" and fully cure that prejudice at this stage. However, Plaintiff did suspect after Defendant withdrew their expert that they might try to have a lay witness testify as to those same opinions, and thus Plaintiff raised the issue in time to put Defendant on notice that offering replacement opinion testimony on the topics previously designated for their expert would "open the door" to Plaintiff's rebuttal expert. Defendant thus proceeded to elicit such prejudicial testimony with full knowledge of the consequences.

As such, the most equitable and just remedy to cure the harmful prejudice to Plaintiff without causing prejudice to Defendant is for Plaintiff to permit Mr. Yankee to be designated as a "dual-role" and for Plaintiff's expert to testify in rebuttal. Mr. Yankee would thus have been (1) testifying as a lay opinion and fact witness as to matters within his personal knowledge and (2) testifying as a subject-matter expert on the CRO's understanding and handling of disability where those topics had been previously disclosed, allowing Plaintiff to designate a rebuttal expert witness.[1] The parties and the Court can discuss if the Court should "also give an instruction to explain the witness's dual roles to the jury." *Shenwick v. Twitter, Inc.*, No. 16-CV-05314-JST, 2021 WL 1232451, at *14 (N.D. Cal. Mar. 31, 2021).

Thus, Mr. Yankee's lay and expert opinion testimony would both be allowed, with Plaintiff waiving her objections to disclosure requirements that would otherwise apply to Mr. Yankee, and

---

[1] Such dule-role witness testimony like this is allowed in the Ninth Circuit, with the classic example being police detectives who testify both about the investigations in which they personally participated and as experts on criminal topics like gang structure and narcotics transactions. *See, e.g., MLC Intell. Prop., LLC v. Micron Tech., Inc.*, No. 14-CV-03657-SI, 2019 WL 2716512, at *15 (N.D. Cal. June 28, 2019) (citing David H. Kaye, David E. Bernstein & Jennifer L. Mnookin, *The New Wigmore: A Treatise on Evidence: Expert Evidence*, § 4.2.2.(a) ("Dual Role Experts: Combining Lay and Expert Testimony) (2d ed. 2010)).

with Plaintiff's already-disclosed expert, Eve Hill, testifying in rebuttal only in response to the specific topics reopened by Mr. Yankee, removing any prejudice against either party. Ms. Hill's rebuttal would respond to the expert opinions presented by Mr. Yankee within the bounds of her previously disclosed expert report.

### III. CONCLUSION

To avoid prejudice to Plaintiff attributable to Defendant's attempt to "evade the expert witness disclosure requirements" found in FRCP 26 by "simply calling an expert witness in the guise of a layperson," *Greenberg*, 91 F. App'x at 541 (9th Cir. 2004) (citing Fed.R.Evid. 701, Advisory Committee Note), Plaintiff's expert Eve Hill should now be allowed to testify as a rebuttal witness to Mr. Yankee's FRE 702-703 testimony.

DATED: March 29, 2024

Respectfully submitted,

TRE LEGAL PRACTICE

*/s/ Kristopher A. Nelson*
Kristopher A. Nelson

*Attorneys for Plaintiff*