# Exhibit C

**Volume 3**

**Pages 362 - 557**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Thomas S. Hixson, Magistrate Judge

```
LISAMARIA MARTINEZ,            )
                               )
         Plaintiff,            )
                               )
   VS.                         )   NO. 3:20-CV-06570 TSH
                               )
COUNTY OF ALAMEDA,             )
                               )
         Defendant.            )
_____)
```

San Francisco, California
Thursday, March 28, 2024

**TRANSCRIPT OF JURY TRIAL PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
        TRE LEGAL PRACTICE
        1155 Market Street, Tenth Floor
        San Francisco, California 94103
    **BY: TIMOTHY R. ELDER, ATTORNEY AT LAW**

        UNDAUNTED LAW FIRM, P.C.
        600 California Street, Seventh Floor
        San Francisco, California 94108
    **BY: S. TOMIYO STONER, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY: Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
              CSR No. 7445, Official United States Reporter

```
 1   APPEARANCES:  (CONTINUED)

 2   For Defendant:
                              ORBACH HUFF & HENDERSON LLP
 3                            6200 Stoneridge Mall Road, Suite 225
                              Pleasanton, California 94588
 4                      BY:   KEVIN E. GILBERT, ATTORNEY AT LAW
                              NICHOLAS D. FINE, ATTORNEY AT LAW
 5

 6
     Also Present:            Lisamaria Martinez
 7                            Michelle Korosy, Paralegal
                              Matthew Yankee, County of Alameda
 8
```

```
 1                            I N D E X

 2

 3    Thursday, March 28, 2024 - Volume 3

 4

 5    PLAINTIFF'S WITNESSES                            PAGE  VOL.

 6    YANKEE, MATTHEW ALAN
      (SWORN)                                           371   3
 7    Direct Examination by Ms. Stoner                  371   3
      Cross-Examination by Mr. Gilbert                  430   3
 8    Redirect Examination by Ms. Stoner                463   3

 9


10    GRECO, LUCIA
      (SWORN)                                           488   3
11    Direct Examination by Mr. Elder                   488   3
      Cross-Examination by Mr. Gilbert                  498   3
12    Redirect Examination by Mr. Elder                 500   3

13


14    CLARK, STEVEN
      (SWORN)                                           506   3
15    Direct Examination by Mr. Elder                   507   3
      Cross-Examination by Mr. Gilbert                  542   3
16    Redirect Examination by Mr. Elder                 553   3

17

18

19                           E X H I B I T S

20    TRIAL EXHIBITS                             IDEN  EVID  VOL.

21      11A                                             527   3

22      11D                                             531   3

23      11C                                             533   3

24      11B                                             539   3

25
```

1   **Q.**   Before we get into kind of the more mundane details, I
2   want to kind of focus on a few clear big-picture issues.
3         What is it that -- as the assistant controller of the
4   CRO's office, what is your understanding of what the ADA
5   requires and addresses in regards to patrons like Ms. Martinez
6   coming in to record documents?
7   **A.**   My understanding is that the general principle of the ADA
8   is to ensure that there is effective communication between both
9   parties.
10  **Q.**   And if there is effective communication, based upon your
11  understanding of the ADA, do you even get to a discussion of
12  auxiliary aids and services or all the other questions that
13  we've been hearing over the last hour?
14  **A.**   No.  If there's effective communication, that would be the
15  goal.
16  **Q.**   Now, based upon -- did you conduct an inquiry into
17  Ms. Martinez's visit on March 29th, 2019?
18  **A.**   I did, yes.
19  **Q.**   And did you speak with and interview the people that were
20  directly involved, with the exception of Ms. Martinez?
21  **A.**   Yes, the County employees who were involved.
22  **Q.**   And based upon those discussions and your review of the
23  materials, did you have an opinion as to whether or not there
24  was effective communication between Ms. Martinez and the
25  individuals at the CRO that she interacted with on

1   March 29th, 2019?
2   **A.**   I believe there was effective communication that day.
3   **Q.**   And because there was effective communication, would, in
4   your opinion, the County have been required to provide any
5   further accommodations or aids or auxiliary services?
6   **A.**   No.
7   **Q.**   Thank you.
8         Now, even though the County was not required to do so,
9   would the offer to allow an expedited mail-back of her FBNS
10  form been a type of accommodation?
11  **A.**   Yes.  That's not something we would have ordinarily done
12  to anyone mailing in something that needed corrections.  That
13  would have been a specific accommodation made for Ms. Martinez.
14  **Q.**   And that's not something that's offered to everyone else?
15  **A.**   Correct.
16  **Q.**   And the expedited process, how quickly would an expedited
17  return have been if she would have mailed it in?
18  **A.**   It would have depended on the mail; but once we received
19  it, that would have likely been a same day, if possible,
20  probably the latest, the following day if we couldn't get to it
21  the day we received the mail.
22  **Q.**   And we also heard a little bit about funding and budgets.
23        Now, how long have you been with the CRO division?
24  **A.**   I've been with the Auditor-Controller/Clerk-Recorder
25  agency for about 12 1/2 years.

1  Q.  And is it fair to say that you are the highest ranking
2  employee in the Clerk-Recorder's Office for the County of
3  Alameda currently?
4  A.  Yeah.  The highest level civil service employee, yes.
5  Q.  And then there would be an elected official that serves
6  beside you?
7  A.  Correct.
8  Q.  And that's an elected position, but you would be a civil
9  service position?
10 A.  Yes.  And I believe she has a chief deputy that she gets
11 to appoint that's outside the civil service system.
12 Q.  Now, within that role, are you familiar with the CRO's
13 budget and financial operations?
14 A.  Yes.
15 Q.  And at any time since January of 2019 to the current, are
16 you aware of any time that the CRO's -- CRO's office has
17 received and utilized funds directly from the State of
18 California?
19 A.  Directly, no.
20 Q.  Thank you.
21     Now, let's step back and kind of do more broad picture, if
22 we could.
23     When did you first come to the County of Alameda?
24 A.  My employment began in November of 2011.
25 Q.  What was your position at that point?

1      Now, who is Jocelyn Cole?
2  **A.**   She is the current division chief of the Clerk-Recorder's
3  Office.  So she was promoted into that position when I became
4  the assistant controller.  And prior to that, she was one of
5  two assistant county clerk-recorders.
6  **Q.**   So let's go back a step.
7      Were you physically in the office on March 29th, 2019,
8  when Ms. Martinez came in?
9  **A.**   I was not.
10 **Q.**   Where were you?
11 **A.**   I was on vacation in Los Angeles.
12 **Q.**   You actually got to leave the office.
13 **A.**   Yes, I got to leave the office that day.
14 **Q.**   So who was in charge of the program at that point?
15 **A.**   It would have been our two assistant county
16 clerk-recorders, which would have been Eva He and Jocelyn Cole.
17 **Q.**   Thank you.
18     Now, we've heard about Jocelyn just a minute ago.
19     At some point did you receive information about an
20 incident that occurred on March 29th, 2019?
21 **A.**   I did.
22 **Q.**   And what were you advised about it?
23 **A.**   I received a --
24         **MS. STONER:**  I'm sorry.
25         **THE WITNESS:**  I received a text message from Jocelyn