United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISAMARIA MARTINEZ, | Case No.  20-cv-06570-TSH |
| Plaintiff, | |
| v. | **ORDER RE JURY INSTRUCTIONS AND VERDICT FORM** |
| COUNTY OF ALAMEDA, | |
| Defendant. | |

This order addresses issues relating to the jury instructions and verdict form.

**A.    Nominal damages**

The Court asked the parties to brief the following question:  If the jury finds in favor of Plaintiff on her Americans with Disabilities Act claim, but also finds there was no deliberate indifference, may the jury award her nominal damages?  The parties briefed this issue at ECF Nos. 141 and 153.

The Ninth Circuit has held that "[t]o recover monetary damages under Title II of the ADA . . . a plaintiff must prove intentional discrimination on the part of the defendant."  *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001) (citing *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998)).  In *Duvall*, the Court of Appeals determined that the appropriate test for intentional discrimination under the ADA is deliberate indifference.  *See id*.  If nominal damages are simply a type of monetary damages, then *Duvall* and *Ferguson* answer the Court's question: No.

Other courts seem to have come to that conclusion as well.  In evaluating the availability of nominal damages under Title II of the ADA, the title at issue in this case, *Cassidy v. Indiana Dept. of Correction*, 59 F. Supp. 2d 787 (S.D. Ind. 1999) concluded that "it would appear that nominal

1    damages would be available for intentional violations of the ADA," *id*. at 793; *see also Francois*

2    *v. Our Lady of the Lake Hospital, Inc.*, 8 F.4th 370, 379 (5th Cir. 2021) (plaintiff "has made no

3    attempt to argue that his nominal-damages claims, if any exist, are not subject to the same

4    intentional-discrimination standard as a claim for compensatory monetary damages."); *Nix v.*

5    *Advanced Urology Institute of Georgia, PC*, 2021 WL 3626763, *3 (11th Cir. Aug. 17, 2021)

6    ("Because Nix cannot prove deliberate indifference, she cannot recover any monetary damages—

7    either compensatory or nominal."); *Juech v. Children's Hospital and Health System, Inc.*, 353 F.

8    Supp. 3d 772, 787 (E.D. Wis. 2018) ("A reasonable finder of fact could conclude that [plaintiff]

9    was subject to discrimination under the ADA and the Rehabilitation Act.  However, no reasonable

10   finder of fact could find that this alleged discrimination was the result of deliberate indifference.

11   Therefore, [plaintiff's] Rehabilitation Act claim fails.  Although [plaintiff] argues that she may

12   still pursue nominal damages, she offers no relevant authority for that proposition.").  In light of

13   these authorities, the Court concludes that Plaintiff must show deliberate indifference to recover

14   nominal damages on her ADA claim.

15          In *Bayer v. Neiman Marcus Group*, 861 F.3d 853 (9th Cir. 2017), the Court of Appeals

16   held that 42 U.S.C. § 12203 "authorizes courts to award nominal damages as equitable relief when

17   complete justice requires."  *Id*. at 874.  The Court is unsure if *Bayer*'s holding applies here.

18   Section 12203 is part of a different title of the ADA, and violations of that section are addressable

19   only by equitable relief.  *Id*. at 863.  The Court of Appeals concluded that the award of nominal

20   damages in that case was the only way the plaintiff could obtain complete justice, as his case had

21   otherwise become moot.  *Id*. at 874.  In this case, Plaintiff is suing for a violation of Title II of the

22   ADA, and her potential remedies include both damages and an injunction.  Nothing about her

23   ADA claim is moot, and indeed we are currently in her jury trial.  The Court finds that, assuming

24   the holding of *Bayer* is applicable, an award of nominal damages is not necessary for complete

25   justice.

26   **B.     DOJ guidance**

27          The Court also asked the parties to brief the question whether the Court should include

28   guidance from the U.S. Department of Justice ("DOJ") in its jury instruction concerning what

United States District Court
Northern District of California

1    constitutes effective communication under the ADA.  The parties briefed the issue at ECF Nos.

2    141 and 154.

3         By way of background, below are Plaintiff's proposed edits to the Court's proposed final

4    instruction concerning effective communication.  The Court has inserted numbers in brackets to

5    assist the discussion:

6

7         The second element required under the Americans with Disabilities
          Act that Plaintiff must establish by a preponderance of the evidence
8         is that she was either excluded from participation in or denied the
          benefits of the defendant's services, programs, or activities, or was
9         otherwise discriminated against by the defendants.

10        The Americans with Disabilities Act requires that a public entity shall
          [1] take appropriate steps to ensure that communications with
11        applicants, participants, members of the public, and companions with
          disabilities are as effective as communications with others.
12        Furthermore, a public entity must furnish appropriate auxiliary aids
          and services where necessary to afford individuals with disabilities,
13        including applicants, participants, companions, and members of the
          public, an equal opportunity to participate in, and enjoy the benefits
14        of, a service, program, or activity of a public entity. The type of
          auxiliary aid or service necessary to ensure effective communication
15        will vary in accordance with the method of communication used by
          the individual; the nature, length, and complexity of the
16        communication involved; and the context in which the
          communication is taking place. In determining what types of auxiliary
17        aids and services are necessary, a public entity shall give primary
          consideration to the requests of individuals with disabilities. [2] The
18        public entity shall honor the choice of the individual with a disability
          unless it can demonstrate that another effective means of
19        communication exists. [3] Deference to the request of the individual
          with a disability is desirable because of the range of disabilities, the
20        variety of auxiliary aids and services, and different circumstances
          requiring effective communication. In order to be effective, auxiliary
21        aids and services must be provided in accessible formats, in a timely
          manner, and in such a way as to protect the privacy and independence
22        of the individual with a disability. [4] The purpose of the effective
          communication rules is to ensure that the person with a vision,
23        hearing, or speech disability can communicate with, receive
          information from, and convey information to, the covered entity.

24        Auxiliary aids and services includes [5] but is not limited to:—
          (1) Qualified interpreters on-site or through video remote interpreting
25        (VRI) services; notetakers; real-time computer-aided transcription
          services; written materials; exchange of written notes; telephone
26        handset amplifiers; assistive listening devices; assistive listening
          systems; telephones compatible with hearing aids; closed caption
27        decoders; open and closed captioning, including real-time captioning;
          voice, text, and video-based telecommunications products and
28        systems, including text telephones (TTYs), videophones, and

United States District Court
Northern District of California

1

2

captioned telephones, or equally effective telecommunications devices; videotext displays; accessible electronic and information technology; or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing;

3

4

5

6

(2) Qualified readers; taped texts; audio recordings; Brailled materials and displays; screen reader software; magnification software; optical readers; secondary auditory programs (SAP); large print materials; accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision;

7

(3) Acquisition or modification of equipment or devices; and

8

(4) Other similar services and actions.

9

10

11

12

[6] A "qualified reader" means a person who is able to read effectively, accurately, and impartially using any necessary specialized vocabulary. [7] Reading devices or readers should be provided when necessary for equal participation and opportunity to benefit from any governmental service, program, or activity, such as reviewing public documents, examining demonstrative evidence, and filling out voter registration forms or forms needed to receive public benefits.

13

ECF No. 131-1.

14

The first edit comes from a regulation (28 CFR § 35.160(a)(1)), so will be included. The

15

sixth edit also comes from a regulation (28 CFR § 35.104), so will also be included. The Court

16

rejects the fifth edit because it is duplicative "other similar services and actions" in subpart (4) of

17

the instruction.

18

The second and third edits come from Appendices A and B to part 35 of 28 CFR. The

19

seventh edit comes from Appendix B to part 35 of 28 CFR. Plaintiff does not say where the fourth

20

edit comes from, but the Court has been able to locate it in guidance documents available on

21

ada.gov. These are the proposed edits implicated by this dispute. Defendants argue that non-

22

binding guidance is not the same thing as law, and because jury instructions "must correctly state

23

the law," *Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005), they assert that no DOJ guidance

24

should be included in the jury instructions.

25

The Court concludes, however, that DOJ guidance can be a correct statement of the law.

26

The Ninth Circuit has held that DOJ's interpretation of its own ADA regulations is entitled to

27

*Seminole Rock* deference, such as "[w]e must give an agency's interpretation of its own

28

regulations controlling weight unless it is plainly erroneous or inconsistent with the regulation."

United States District Court
Northern District of California

4

1   *Miller v. California Speedway Corp.*, 536 F.3d 1020, 1028 (9th Cir. 2008) (cleaned up).  "We

2   have explained that when the meaning of regulatory language is ambiguous, the agency's

3   interpretation controls so long as it is reasonable, that is, so long as the interpretation sensibly

4   conforms to the purpose and wording of the regulation."  *Id.* (cleaned up); *see also Botosan v.*

5   *Paul McNally Realty*, 216 F.3d 827, 834 (9th Cir. 2000); *Oregon Paralyzed Veterans of America*

6   *v. Regal Cinemas, Inc.*, 339 F.3d 1126, 1131 (9th Cir. 2003).

7        Thus, the Court rejects Defendant's argument that it should reject all DOJ guidance out of

8   hand.  Rather, the Court will consider that guidance.  In addition, the Court is mindful that it is

9   drafting a jury instruction, and the Court must be attuned to not only whether the DOJ guidance is

10   accurate but also whether it is appropriate to include in a jury instruction.

11        Let's turn to the second proposed edit: "The public entity *shall* honor the choice of the

12   individual with a disability *unless it can demonstrate* that another effective means of

13   communication exists."  (emphasis added).  The Court has concerns about whether this particular

14   guidance sensibly conforms to the purpose and wording of the regulation – and, more importantly,

15   what this guidance does to the burden of proof in this lawsuit.  In the absence of this guidance, the

16   regulation states that "[i]n determining what types of auxiliary aids and services are necessary, a

17   public entity shall give primary consideration to the requests of individuals with disabilities."  28

18   CFR § 35.160(b)(2).  To establish an ADA violation, Plaintiff would have the burden to prove

19   Defendant didn't do that.  While it is possible to read the guidance as merely providing clarity on

20   what "primary consideration" means, as a practical matter, this guidance changes what Plaintiff

21   needs to prove and substantively alters the burden of proof in this case.  Under this guidance, to

22   make a submissible case, all Plaintiff would need to prove is that her choice of auxiliary aid or

23   service was rejected, and then the burden would shift to the Defendant to demonstrate that another

24   effective means of communication existed.  On the facts of this case, this is a significant alteration

25   of the burden of proof that could easily alter the outcome of the trial.  Nothing in the regulation

26   purports to alter the normal burden of proof in a federal lawsuit, and this attempt to do so in

27   guidance does not "sensibly conform[] to the purpose and wording of the regulation."  *Miller*, 536

28   F.3d at 1028 (cleaned up).  The Court rejects the second proposed edit.

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1    The third and fourth proposed edits do not belong in a jury instruction because they do not

2    describe legal obligations.  The third edit describes why giving primary consideration to the

3    request of an individual with a disability is a good idea.  Most laws are designed to implement

4    good ideas.  Normally, courts put the law's requirements in a jury instruction and do not list the

5    good ideas the law was enacted to carry out.  Similarly, the fourth proposed edit describes the

6    purpose of the effective communications rules.  Most laws have salutary purposes.  Jury

7    instructions normally just say what the law requires and do not go on to describe the purposes for

8    which the law was enacted.  The Court rejects the third and fourth proposed edits.

9    The seventh proposed edit seems fine.  It sensibly conforms to 28 CFR § 35.160(b) and to

10   the second paragraph of 28 CFR § 35.104's definition of "auxiliary aids and services."  The

11   second paragraph of that definition refers to qualified readers and then lists several types of

12   reading devices.  The guidance's use of the term "reading devices" is an easily understood

13   shorthand for the devices listed in the regulation that will make it easier for the jury to understand

14   what is being referred to.  Further, the guidance's reference to specific examples of covered

15   government services ("reviewing public documents, examining demonstrative evidence, and

16   filling out voter registration forms or forms needed to receive public funds") is fully consistent

17   with the regulation.  Those examples will assist the jury in understanding how the regulations

18   apply in this case.  Further, even aside from *Seminole Rock* deference, and without any deference

19   to DOJ, the Court independently concludes that the seventh proposed edit is a correct statement of

20   the law.  Accordingly, the Court accepts the seventh proposed edit.

21   **C.     DPA damages**

22   The Court does not believe the Ninth Circuit has resolved whether public entities can be

23   liable for damages under the California Disabled Persons Act.  The Court finds the opinion in

24   *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 946-49 (C.D. Cal. 2004), persuasive and will

25   follow it.  Accordingly, the Court will instruct the jury on DPA damages and will include that on

26   the verdict form.

27   **D.     State law**

28   The Court declines to give an instruction concerning the meaning of California

6

1    Government Code section 27203(d), which provides that "[a]ny recorder to whom an instrument

2    proved or acknowledged according to law or any paper or notice which may by law be recorded is

3    delivered for record is liable to the party aggrieved for the amount of the damages occasioned

4    thereby, if he or she commits any of the following acts: . . . Alters, changes, obliterates, or inserts

5    any new matter in any records deposited in the recorder's office, unless the recorder is correcting

6    an indexing error.  The recorder may make marginal notations on records as part of the recording

7    process."

8           Defendant takes the view that a record that is handed to an employee in the Clerk

9    Recorder's Office ("CRO") is "deposited" while it is in the hand of the employee, such that if the

10   employee makes alterations to it, that would violate the statute.  Defendant's witnesses have

11   testified that compliance with this law is the primary reason the CRO refused to make the

12   requested edits to Plaintiff's FBNS form.  Plaintiff argues that "deposited" in the statute means

13   that the record has been formally filed or recorded, which Plaintiff's form was not when her

14   request for assistance was rejected.

15          There should not be a jury instruction concerning the correct meaning of section 27203(d)

16   because it is not part of any claim or affirmative defense in this lawsuit.  The Court will instruct on

17   the meaning of the ADA provisions at issue, the DPA, and California Government Code section

18   11135 because those are the claims going to the jury.  Section 27203(d) is a provision of state law,

19   so obviously can't change the liability standards under the federal ADA or provide any kind of

20   affirmative defense to compliance with the ADA.  The DPA says that a violation of the ADA is a

21   per se violation of the DPA (Cal. Gov. Code § 54(c)), so section 27203(d) also doesn't seem like a

22   defense to a DPA claim that is derivative of an ADA claim, as is true in this case.  Further,

23   Plaintiff's ADA claim is under 42 U.S.C. § 12132 and the regulations adopted in implementation

24   thereof, a violation of which automatically satisfies the disability-discrimination element of

25   Government Code section 11135.  *See* Cal. Gov. Code § 11135(b).  So, it seems like compliance

26   with section 27203(d) also isn't a defense to a section 11135 claim that is derivative of a 42 U.S.C.

27   § 12132 violation, as is the case here.  Thus, section 27203(d) is not an element of any of

28   Plaintiff's claims, and neither is it an affirmative defense to any of them.

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1    However, the Court will also not instruct the jury to ignore testimony concerning section

2    27203(d).  Plaintiff is seeking damages under the ADA.  To recover damages, she must show the

3    Defendant acted with deliberate indifference to her federally protected rights.  *Duvall v. County of*

4    *Kitsap*, 260 F.3d 1124, 1138-39 (9th Cir. 2001).  The Ninth Circuit has explained:

> A public entity's duty on receiving a request for accommodation is well settled by our case law and by the applicable regulations.  It is required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation, and we have provided the criteria by which to evaluate whether that investigation is adequate.  Mere speculation that a suggested accommodation is not feasible falls short of the reasonable accommodation requirement; the Acts create a duty to gather sufficient information from the disabled individual and qualified experts as needed to determine what accommodations are necessary. . . . [A] public entity does not act by proffering just any accommodation: it must consider the particular individual's need when conducting its investigation into what accommodations are reasonable.  Because in some instances events may be attributable to bureaucratic slippage that constitutes negligence rather than deliberate action or inaction, we have stated that deliberate indifference does not occur where a duty to act may simply have been overlooked, or a complaint may reasonably have been deemed to result from events taking their normal course.  Rather, in order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness.

16   *Id*. at 139 (cleaned up).

17    The Court thinks that an employee's sincere belief that the assistance requested by an

18   individual with a disability would violate a state law, even if that belief is mistaken, is relevant to

19   whether the public entity acted with deliberate indifference.  Look at it this way: people can have

20   better and worse reasons for what they do.  Surely a public entity that can point to some logical

21   reason for what it did is less likely to be found deliberately indifferent than one that can point to

22   nothing or whose motives were affirmatively awful.  The deliberate indifference inquiry considers

23   whatever reasons were given on the facts of the case.  The Court is not saying, of course, that a

24   state law can absolve a public entity of damages liability under the ADA.  The Court is just saying

25   that a sincere belief that the requested assistance posed legal problems (and the jury decides

26   sincerity) is among the factual evidence the jury can take into consideration when deciding if the

27   deliberate indifference standard has been met.  Further, the Court will not instruct the jury on the

28   correct meaning of section 27203(d) because the Court's resolution of that issue was not available

8

1  to the Defendant or its employees on March 29, 2019, the date of the alleged ADA violation, and

2  thus cannot have informed their intent.

3       **IT IS SO ORDERED.**

4

5  Dated: March 29, 2024

6   

THOMAS S. HIXSON
United States Magistrate Judge