TIMOTHY ELDER (CA BAR NO. 277152)
KRISTOPHER A. NELSON (CA BAR NO. 342552)
**TRE LEGAL PRACTICE**
1155 Market Street, Tenth Floor
San Francisco, CA 94103
Telephone:     (415) 873-9199
Facsimile:      (415) 952-9898
Email: telder@trelegal.com, knelson@trelegal.com

S. Tomiyo Stoner (CA Bar No. 289246)
**Undaunted Law Firm, P.C.**
600 California St., Floor 7
San Francisco, CA 94108
Telephone:     (214) 415-7340
E-mail: tstoner@undauntedlaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LISAMARIA MARTINEZ**, | Case No. 3:20-cv-06570-TSH |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR PERMANENT INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | |
| **COUNTY OF ALAMEDA** | |
| Defendants. | Hearing Date: July 11, 2024<br>Hearing Time: 10:00 am<br>Courtroom: E<br>Judge: Hon. Thomas S. Hixson |

[3:20-CV-06570-TSH]

**NOTICE OF MOTION AND MOTION FOR PERMANENT INJUNCTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, in accordance with the Court's 4/17/24 Order (ECF No. 194), on July 11, 2024 at 10:00 am, in Courtroom E of the United States District Court, Northern District, San Francisco Courthouse, 15th Floor at 450 Golden Gate Avenue in San Francisco, California, Plaintiff Lisamaria Martinez will respectfully move this court for a permanent injunction against Defendant County of Alameda.

This Motion is based on this Notice and Motion, the below Memorandum of Points and Authorities, the accompanying Declaration of Timothy Elder and attached exhibits, previous filings, and such other and further evidence and argument as the Court may permit.

1

**TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................... 1

II.  RELEVANT UNDISPUTED FACTS .................................................................... 2

   A.  Filling Out FBNS PDF Forms ....................................................................... 2

   B.  Filling Out and Submitting Online FBNS Web Access Forms ..................... 3

   C.  Filling Out and Filing Forms in the CRO .................................................... 4

   D.  Training ......................................................................................................... 7

III. ARGUMENT ON EQUITABLE RELIEF ............................................................ 8

   A.  Legal Standard for Equitable Relief ............................................................ 8

   B.  The Court should issue a permanent injunction because Ms. Martinez has met all four required factors for doing so. ................................................................................... 8

      1.  Plaintiff has established irreparable injury. ....................................... 9

         (a)   The PDF version of the FBNS form that Ms. Martinez tried to fill out at home in 2019 remains inaccessible. ........................................................................ 10

         (b)   Defendant's newer online FBNS Web Access forms are inaccessible to blind customers trying to fill out and submit them from home. ............................... 11

         (c)   Defendant has still not removed discriminatory barriers to equally effective communication at the CRO. ............................................................................ 11

         (d)   Insufficient training will contribute to future violations. ...................... 14

         (e)   These barriers will continue to cause irreparable injury unless corrected. .......... 15

      2.  Remedies available at law are inadequate to compensate for Ms. Martinez's injury. .. 15

      3.  The balance of hardships supports a remedy in equity for Ms. Martinez. ................... 16

      4.  A permanent injunction is in the public interest. ............................................ 17

   C.  The advisory jury verdict does not obviate the need for injunctive relief. ........................ 18

      1.  Advisory Jury Verdict #6 is non-binding and tainted with legal error against the weight of undisputed evidence. ........................................................................ 18

      2.  The law and the facts preclude relying on Jury Verdict #6 to deny equitable relief. .... 19

IV.  ARGUMENT ON SCOPE AND KIND OF EQUITABLE RELIEF ............................... 20

   A.  Legal Standard for Scope and Kind of Injunctive Relief .................................... 20

   B.  The Court should order equitable relief to address the scope and kind of remaining barriers and likely future violations. ................................................................................... 21

      1.  That Defendant remediate the tagging of their online PDF forms, which may be accessed from home or elsewhere, to make them independently accessible to blind individuals using screen readers. .............................................................................. 21

      2.  That Defendant remediate their online FBNS Web Access form for use with screen readers. ....................................................................................................... 22

      3.  That Defendant provide transcriber services as auxiliary aids or services to write on blank paper forms when a blind individual requests assistance with correcting or filling out a paper form handled by the CRO. ................................................................. 22

      4.  That Defendant provide appropriate training on auxiliary aids and effective communication under federal law and regulations ............................................... 23

V.   CONCLUSION ......................................................................................................... 24

**TABLE OF AUTHORITIES**

**Cases**

*Antoninetti v. Chipotle Mexican Grill Inc.*, 643 F.3d 1165 (9th Cir. 2010) ........................... 10, 20

*ARC of Iowa v. Reynolds*, 559 F. Supp. 3d 861 (S.D. Iowa 2021) ................................ 10

*Ashland v. Ling-Temco-Vought, Inc.*, 711 F.2d 1431 (9th Cir. 1983) ........................................ 20

*Bartell v. Grifols Shared Servs. NA, Inc.*, 618 F. Supp. 3d 275 (M.D.N.C. 2022) ...................... 10

*Bd. of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850 (S.D. Ohio 2016) .................................................................................................... 10

*Boring v. Nationstar Mortgage, LLC*, 2016 WL 3192586 (E.D. Cal. 2016) ............................... 20

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011) .......................................... 8

*Clement v. California Dep't of Corrs.*, 364 F.3d 1148 (9th Cir. 2004) ...................................... 21, 22

*Danjaq LLC v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001) ........................................................... 19

*DeFelice v. Am. Int'l Life Assur. Co. of New York*, 112 F.3d 61 (2d Cir. 1997) .......................... 20

*Donna Dugo v. Jeronimo, LLC*, Case No. SA CV 17-1772-DOC (DFMx), 2018 WL 5877275 (C.D. Cal. June 4, 2018) ................................................................................................. 10

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ............................................................. 8

*Enyart v. Nat'l Conf. of Bar Examiners, Inc.*, 630 F.3d 1153 (9th Cir. 2011) ............................. 19

*Foothill Church v. Watanabe*, 654 F. Supp. 3d 1054 (E.D. Cal. 2023) ......................................... 8

*Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417 (11th Cir. 1984) ....................................... 10

*Hannibal Pictures, Inc. v. Sonja Prods., LLC*, No. CV06-1814 WDK (VBKX), 2009 WL 10673572 (C.D. Cal. Aug. 31, 2009) ........................................................................... 19

*Honig v. Doe*, 484 U.S. 305 (1988) ............................................................................................. 18

*Huezo v. Los Angeles Cmty. Coll. Dist.*, 672 F. Supp. 2d 1045 (C.D. Cal. 2008) ...................... 16

*La Quinta Worldwide, LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867 (9th Cir. 2014) ... 8, 9, 17, 22

*Longer v. Deguzman*, Case No. 2:15-cv-09493-SVW-JEM, 2016 WL4500783 (C.D. Cal. July 28, 2015) ................................................................................................................. 10

*Mann v. County of San Diego*, 907 F.3d 1154 (9th Cir. 2018) ................................................... 14

*N.L.R.B. v. Express Publishing Co.*, 312 U.S. 426 (1941) .......................................................... 22

*Nat'l Fed'n of the Blind v. Lamone*, No. 14-1631, 2014 WL 4388342  (D. Md. Sept. 4, 2014). 17, 23

*OCI Wyoming v. PacifiCorp*, 479 F.3d 1199 (10th Cir. 2007) ..................................... 19

*Ollier v. Sweetwater Union High Sch. Dist.*, 858 F. Supp. 2d 1093 (S.D. Cal. 2012) ................. 17

*Orantes-Hernandez v. Thornburgh*, 919 F.2d 549 (9th Cir. 1990) ............................... 22

*Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133 (9th Cir. 2002) ....................... 22

*Rutherford v. Burger King # 8976*, No. EDCV1800621JAKSHKX, 2018 WL 6131173 (C.D. Cal. July 24, 2018) ....................................................................... 8, 10

*Scott v. Neely*, 140 U.S. 106 (1891) ....................................................... 19

*Sharkey v. O'Neal*, 778 F.3d 767 (9th Cir. 2015) .................................... 8, 11

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814 (9th Cir. 2001) .... 9, 11, 20

*Steger v. Franco, Inc.*, 228 F.3d 889 (8th Cir. 2000) ................................. 22

*Sw. Fair Hous. Council v. WG Scottsdale LLC*, No. CV-19-00180-TUC-RM, 2022 WL 3923526 (D. Ariz. Aug. 31, 2022) ........................................................ 9, 20, 22

*Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998 (C.D. Cal. 2014) .................................. 10

**Statutes**

Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ............................... passim

California Disabled Persons Act, Cal. Civ. Code §§ 54-55.3 ................................. 1

California Government Code §§ 11135-11139 .................................... 1, 8, 11

**Other Authorities**

Accessibility of Web Information and Services of State and Local Government Entities, 89 Fed. Reg. 31320 (April 24, 2024) https://www.federalregister.gov/documents/2024/04/24/2024-07758/nondiscrimination-on-the-basis-of-disability-accessibility-of-web-information-and-services-of-state (last visited on May 15, 2024) .................................... 17

U.S. Dep't of Justice, Accessibility of State and Local Government Websites to People with Disabilities (June 2003), http://archive.ada.gov/websites2.htm ............................... 16

**Rules**

Federal Rule of Civil Procedure 39 ................................... 18

Federal Rule of Civil Procedure 50 ............................................................. 20

Federal Rule of Civil Procedure 52 ............................................................. 18

**Regulations**

28 C.F.R. § 35.160 ............................................................ passim

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Five years after the events necessitating this litigation, a jury found that Defendant County of Alameda had discriminated against Ms. Martinez under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, by refusing to make communications with her as effective as communications with others and denying her equal access.[1]

Notwithstanding ample opportunities to change its behavior, Defendant has not yet remediated the accessibility barriers that Ms. Martinez and her experts have identified in its PDF and online FBNS forms. Further, Defendant continues to allow its staff "discretion" to again deny Ms. Martinez and other blind individuals equal access when they seek to fill out and file paper forms in person. The jury's award of damages alone does not afford Ms. Martinez and other blind individuals an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of its Clerk-Recorder's Office (CRO).

Specific ongoing violations by Defendant include:

(a) providing PDF forms intended for the public to use at home that Ms. Martinez could not independently complete in 2019 and that remain inaccessible;

(b) providing an online FBNS Web Access form for the public to use at home that cannot be independently completed by blind individuals like Ms. Martinez;

(c) refusing to commit to providing Ms. Martinez and other blind customers like her with a transcriber for paper forms at the CRO and instead continuing to insist that a computer tied to their inaccessible online FBNS Web Access form is a sufficiently effective auxiliary aid or service; and

(d) leaving the choice and provision of auxiliary aids and services to the discretion of employees while also failing to provide training to CRO staff in the specific ADA requirements of auxiliary aids and services needed to prevent further violations.

---

[1] Defendant was also found to have violated the California Disabled Persons Act, Cal. Civ. Code §§ 54-55.3, and California Government Code section 11135 ("Section 11135").

After considering the totality of circumstances surrounding Ms. Martinez's discriminatory treatment at the CRO, as well as the factors for ordering a permanent injunction, the Court should order equitable relief of an appropriate scope to prevent future discriminatory treatment of disabled individuals like Ms. Martinez. The advisory verdict as to ongoing future violations does not restrict the Court's ability to fashion a necessary injunctive remedy. In addition, the advisory verdict question is tainted with legal error on the burden of proof and is not supported by the weight of the undisputed evidence that these violations will reoccur.

## II.  RELEVANT UNDISPUTED FACTS

### A.  Filling Out FBNS PDF Forms

In March of 2019, Ms. Martinez went to Defendant's website and downloaded a PDF version of the FBNS form that she could not independently read and fill out with her screen reader; instead, she had to rely on her sighted husband's assistance. (Decl. of Timothy Elder ("Elder Decl."), Ex. J, Trial Tr. Vol. 4, Testimony of Lisamaria Martinez ("Martinez Tr."), 597:17-598:7.) Ms. Martinez's husband is busy and not always available to assist her in filling out forms. (Martinez Tr. 598:12-20.) The second time that Martinez filled out this PDF form she had to rely on Emily Grim, a sighted reader/transcriber whom Ms. Martinez had hired at her own expense. (Martinez Tr. 638:13-24.) Ms. Martinez observed that the PDF lacked "proper tagging" for use with her JAWS screen reader; she had "difficulties knowing what edit field belonged to what questions;" and she encountered unlabeled checkboxes where she "didn't know what to check." (Martinez Tr. 589:24-591:17.) In addition to being unable to independently complete these PDF forms, these accessibility barriers made "the preparation of the document harder and a longer event" for Ms. Martinez. (Martinez Tr. 589:20-23.)

Karen McCall, Plaintiff's expert in making PDFs and PDF forms usable to screen reader users, testified that PDF forms can be designed for independent use by a blind person with a screen reader if the PDF is "tagged" according to widely available standards. (Elder Decl., Ex. G, Trial Tr. Vol. 2, Testimony of McCall ("McCall Tr."), 341:5-342:13.) Ms. McCall audited several versions of Defendant's FBNS PDF form from 2018 to present and found that all of the PDF versions had barriers in the tagging that made it impossible for a screen reader user to reliably

navigate and complete the form. (McCall Tr. 346:8-348:8, 349:4-20; Trial Exhibits 21, 22, 23 & 24, ECF Nos. 191-10-191-13.) It is possible to create usable PDF forms that do not have these tagging barriers for blind users. (McCall Tr. 350:6-8.) The County received Karen McCall's expert report disclosing these tagging barriers on December 21, 2022 and September 28, 2023 and Steven Clark's initial report on December 21, 2022. (Elder Decl., Ex. A, 12-21-22 McCall Expert Report; Ex. B, 9-28-23 McCall Expert Report; Ex. C, 12-21-22 Clark Expert Report.) Rather than Defendant remediating the problems over the years of this litigation, the accessibility of the forms in fact worsened for blind individuals. (McCall Tr. 349:4-20.) At the time of trial, Defendant still had not fixed the accessibility problems with these forms, even though Defendant regularly updates the forms and had just made a revision to the PDF form approximately one week before trial. (McCall Tr. 350:9-351:2) (discussing January 2024 revision changed to March 2024 revision within a week before trial).

The County provides various formats of FBNS forms so that "people can still record their forms" and has no plans to cancel older methods even as newer methods are implemented. (Elder Decl., Ex. H, Trial Tr. Vol. 3, Testimony of Matt Yankee ("Yankee Tr."), 463:3-14.)

## B. Filling Out and Submitting Online FBNS Web Access Forms[2]

Over the years the County has updated how the public can access its forms and now offers a new way of filling out and submitting FBNS forms online through the CRO's website. (Yankee Tr. 453:23-454:4.) In approximately the first half of 2023, the County began offering a new online FBNS web access form through the CRO's website that enables business owners to fill out and submit their FBNS forms online from home.[3] (Yankee Tr. 456:23-457:15; Def.'s Trial Brief 20,

---

[2] While the parties used different terms to describe this online FBNS Web Access form or software suite at different times in the litigation and in different documents, it is essentially just a website form delivered in a standard browser that submits information into the County's databases. It can be filled out on a home personal computer or on the kiosk computer available in the CRO's public viewing room. This online FBNS Web Access form is separately available alongside the downloadable and printable PDF version of the FBNS form. Web links to both are currently available at https://www.acgov.org/auditor/clerk/filefbn2.htm.

[3] Unlike most modern online retail websites, filing and payment with a credit card for the FBNS form still happens in person at the CRO even if the web form is used to submit the FBNS from home.

ECF 101 ("the FBNS software suite that the County's vendor implemented earlier this year"); Elder Decl., Ex. K (email from Nicholas Fine disclosing that the new online FBNS Web Access form or "FBNS suite" had been implemented).)[4]

Steven Clark, Plaintiff's expert on making forms usable to blind individuals using JAWS and screen readers, testified that this online FBNS Web Access form to be used from home "could not be filled out independently" by an average JAWS screen-reader user because it "did not provide enough information in certain places on the screen to be able to complete the form and be sure that the information was correct before submitting it." (Elder Decl., Ex. I, Trial Tr. Vol. 3, Testimony of Steven Clark ("Clark Tr."), 536:17-537:1.) Mr. Clark explained that, for purposes of a screen-reader user, the online FBNS Web Access form behaved identically when comparing how it functions as part of the computer kiosk system in the Clerk-Recorder's Office and what is offered to the public through the County's public website for use at home. (Clark Tr. 535:6-24.)

### C. Filling Out and Filing Forms in the CRO

In addition to maintaining PDF FBNS forms and online FBNS Web Access forms that can be independently filled out at home by sighted customers but only partially used by blind customers, *see* fact discussion *supra* Section II.A.-B., the County also continues to offer same-day FBNS filing service in the CRO for business owners who make proper payment and have correct information on their forms. (Yankee Tr. 387:12-19.) Ms. Martinez will need to visit the CRO to file and pay for a renewal of her FBNS form at least every five years. (Martinez Tr. 653:12-22, 658:9-10.) She does not know what she will encounter and has no confidence that the County will provide her with transcriber services when she returns. (Martinez Tr. 653:12-22, 654:13-20.)

The County has a general policy that clerks may not write on blank FBNS forms at the request of a person with a disability. (Yankee Tr. 415:14-16 (discussing policy in 2019); 429:9-19 (discussing that same general policy as it exists at present).) Mr. Yankee testified that CRO staff have the "discretion" (Yankee Tr. 452:10-13) whether or not to act as a transcriber "on a case-by-case basis based on the unique circumstances" (Yankee Tr. 451:22-23) but have a policy against

---

[4] Mr. Yankee's recollection on timing seems to contradict other documents placing the event around May 2023.

doing so (Yankee Tr. 451:6-9, 452:10). He would commit only to saying that the CRO "might" help fill out a blank form. (Yankee Tr. 451:14-16, 452:14-18). His testimony suggested the CRO may have exercised this discretion before. (Yankee Tr. 451:14-23, 452:10-13.) When directly asked if the County would provide a transcriber to fill out a blank paper FBNS form for Ms. Martinez in the CRO for her five-year renewal filing, Mr. Yankee would not commit to do so: "As I stated, it would be a case-by-case basis. It would be within the realm—a blank one, it would be within the realm of possibilities. Again, our general policy would be not to do so; but in evaluating her specific circumstances at that hypothetical visit, that's potentially something that we could offer." (Yankee Tr. 481:25-482:10.)

CRO employees implementing the general policy reflect a clear resistance to making ADA exceptions: the CRO "never, ever completed blank forms, especially fictitious business name forms that would stand up in court for any reason. We have never completed blank forms." (Elder Decl., Ex. E, Trial Tr. Vol. 2, Testimony of Angelina Moran ("Moran Tr."), 230:23-25.) None of the clerks that Ms. Martinez encountered on March 29, 2019, offered to transcribe her information onto a blank FBNS form in response to her request for assistance. (Martinez, 610:19-22, 613:4-9 (first clerk Moran); 629:1-4 (second clerk supervisor Briones); 632:1-5 (third-level manager He).) A CRO clerk testified she still did not know if her supervisor ("my management") would allow it. (Moran Tr. 242:5-22.) A CRO supervisor, Ms. Maria Laura Briones, testified that, even if specifically asked by Ms. Martinez on March 29, 2019 to assist by filling out a blank form, she would not have done so. (Elder Decl., Ex. F, Trial Tr. Vol. 2, Testimony of Maria Laura Briones ("Briones Tr."), 328:5-10). When asked if she would do so "a couple of weeks" after trial, she confirmed that she would still not write on a blank form for "Ms. Martinez or another individual who is blind," even if the CRO's computer kiosk system did not work. (Briones Tr. 328:12-23.)

With respect to using the computer kiosk system in the CRO, on July 18 and August 28, 2023, the County instructed all clerks that "CRO staff members should be ready and willing to provide any and all assistance requested, *except for actually typing* any of the information into the FBNS for the person with a disability." (Elder Decl., Ex. D at County_0123 ¶7 (email from Jocelyn Cole

with attached guidance to CRO staff) (emphasis added).[5]) Mr. Yankee testified that the County will not help a person with a disability when using the public computer kiosk if doing so violates a policy. (Yankee Tr. 461:7-11.)

Mr. Clark tested Defendant's computer kiosk with JAWS and determined that it is difficult for blind and sighted persons to work in tandem to control the same computer interface because it is not visually obvious what the JAWS screen reader cursor is focused on and the blind person cannot see what the mouse cursor is pointing at. (Clark Tr. 521:24-523:9.) It is very difficult for a blind screen reader user to operate an unfamiliar keyboard on a public computer kiosk because the insert key or other modifier keys are placed in different configurations on each keyboard. (Clark Tr. 523:10-524:25.) Mr. Clark testified that a blind person attempting to use Defendant's computer kiosk system in the public viewing room with sighted assistance will take longer than using a human transcriber because the "multiple steps in the process to provide access to that computer added several many minutes to the process of filling out the form and getting it submitted." (Clark Tr. 541:6-14; 537:17-20, 541:1-5 (comparing 5 minutes for human transcriber to between 10 to 15 minutes with the computer kiosk and a sighted assistant).

When multiple methods are available in the CRO for filling out forms, Ms. Martinez prefers the most efficient solution for her: when filling out a document such as an FBNS form with a limited number of lines that need to be completed, it is a "lot simpler to have a reader or scribe assist." (Martinez Tr. 587:12-24.) Ms. Martinez would not opt to use the computer kiosk system with JAWS that the County configured in the CRO instead of a human transcriber. (Martinez Tr. 658:21-659:8.)

The County's continuing refusal to provide the transcribing assistance she has sought for years has led Ms. Martinez to feel increasing self-doubt and to worry about how other blind people would be treated in the future. (Martinez Tr. 657:8-24.)

---

[5] This document was proposed as Potential Trial Exhibit N (D14) in the pretrial Joint Exhibit List (ECF No. 105-5). It was shown to Ms. Moran to refresh her memory at trial (Moran Tr. 240:10-241:10) but was not introduced as an exhibit.

1

### D. Training

2  As policies and procedures are not usually written and shared at the CRO, training is particu-

3  larly important: "We do not have policies written out that way. We are just word of mouth and

4  training … that this is what we do; this is what we don't do." (Moran Tr. 236:23-237:1, *see also*

5  Yankee Tr. 376:19-377:11.)

6  Matt Yankee, the County's Assistant Controller, Rule 30(b)(6) designee during discovery,

7  party representative at trial, and a manager who is responsible for overseeing employee training

8  on the ADA, does not dispute that clerks never received specific training on auxiliary aids and

9  services that are required under the ADA. (Yankee Tr. 371:16-19 (Assistant Controller), 373:12-14

10  (30(b)(6) Designee), 375:17-21 (Trial Representative), 379:15-23 (Oversees Training), 376:4-17 (no

11  specific training for clerks).)

12  When Ms. Moran, the first clerk Ms. Martinez encountered in 2019, was asked at trial if she

13  had been well trained on the requirements of the ADA or provided with any relevant policies di-

14  recting her in how and when to provide auxiliary aids or services, she answered that "it's com-

15  mon courtesy" to assist (Moran Tr. 239:5) and that her main guidance from the CRO was to "do

16  [her] best to accommodate those with disabilities" (Moran Tr. 239:17-23). She confirmed that she

17  had never been trained "about the duties under the ADA to provide auxiliary aids and services."

18  (Moran Tr. 230:10-16.) Ms. Moran perceived that Ms. Martinez's invocation of her jury-vindi-

19  cated ADA rights "was forcing, and she was threatening that I was discriminating against her for

20  the ADA." (Moran Tr. 235:7-9.)

21  Ms. Moran testified that she had not been trained to assist persons with disabilities to fill in

22  blank forms (Moran Tr. 239:12-16, 243:2-5) and had never done so (Moran Tr. 230:23-25). She

23  continued to insist at trial that Ms. Martinez should have asked her to fill out a blank form in-

24  stead of asking for help with fixing her existing form (Moran Tr. 230:8-9) but admitted that she

25  still did not know if she was allowed to assist with blank forms. (Moran Tr. 242:18-22.)

26

27

28

### III. ARGUMENT ON EQUITABLE RELIEF

#### A. Legal Standard for Equitable Relief

The ADA is a federal civil rights statute providing injunctive relief. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011); 42 U.S.C. § 12133 (incorporating 42 U.S.C. § 2000e-5(g)), § 12117, § 12188. Injunctions are routinely granted to remediate ADA violations. *Rutherford v. Burger King # 8976*, No. EDCV1800621JAKSHKX, 2018 WL 6131173, at *7 (C.D. Cal. July 24, 2018). Likewise, California's Section 11135, "the most analogous state-law claim to a Title II [ADA] claim," *Sharkey v. O'Neal*, 778 F.3d 767, 771 (9th Cir. 2015), is enforced through equitable relief. Cal. Gov't Code § 11139.

A plaintiff seeking a permanent injunction must show "(1) that [she] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In evaluating these factors and in determining if a permanent injunction is appropriate equitable relief, courts consider "the totality of circumstances." *Foothill Church v. Watanabe*, 654 F. Supp. 3d 1054, 1057 (E.D. Cal. 2023) (quoting *La Quinta Worldwide, LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 880 (9th Cir. 2014)).

#### B. The Court should issue a permanent injunction because Ms. Martinez has met all four required factors for doing so.

Ms. Martinez has established that all four requirements for a permanent injunction have been met and that the narrowly tailored equitable remedies sought are needed. Based on the jury's liability determinations and the facts established on the record in this matter, the Court should exercise its broad discretion to fashion injunctive relief to ensure that similar violations do not continue to affect disabled individuals exercising their rights at the CRO. Ms. Martinez thus respectfully requests that, after conducting its assessment and considering "the totality of circumstances," *La Quinta Worldwide*, 762 F.3d at 880, the Court issue an injunction of an appropriately narrow scope in order to provide her—and, as a public benefit to other blind individuals like her

1   with little or no hardship to Defendant—with more complete justice than damages alone can of-

2   fer in this civil rights matter.

3   *1. Plaintiff has established irreparable injury.*

4       As a matter of law, a finding that a defendant has violated a civil rights statute is sufficient

5   proof that the plaintiff has suffered an irreparable injury; thus, in such circumstances, a "plaintiff

6   need not establish a reasonable likelihood of continuing violations because courts presume a

7   plaintiff has suffered irreparable injury from the fact of a defendant's violation of a civil rights

8   statute." *Sw. Fair Hous. Council v. WG Scottsdale LLC*, No. CV-19-00180-TUC-RM, 2022 WL

9   3923526, at *3 (D. Ariz. Aug. 31, 2022), *aff'd*, No. 22-16345, 2023 WL 6820681 (9th Cir. Oct. 17,

10  2023). A finding of liability under a civil rights statute thus shifts the burden to defendant to rebut

11  this proof of irreparable injury. *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d

12  814, 827 (9th Cir. 2001).

13      Courts in this circuit have applied the presumption of irreparable injury to the ADA as a civil

14  rights statute when evaluating injunctive relief after a plaintiff has first proven a violation of her

15  rights. *See, e.g., Antoninetti v. Chipotle Mexican Grill Inc.*, 643 F.3d 1165, 1175-76 (9th Cir. 2010);

16  *Longer v. Deguzman*, Case No. 2:15-cv-09493-SVW-JEM, 2016 WL4500783, at *5 (C.D. Cal.

17  July 28, 2015) (citing *Antoninetti*, 643 F.3d at 1176, and ordering injunctive relief after finding vio-

18  lation of ADA); *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1015 (C.D. Cal. 2014) (same); *Ruth-*

19  *erford*, 2018 WL 6131173, at *6 (same and noting that "[i]njunctive relief is routinely granted with

20  respect to violations of the ADA"); *Donna Dugo v. Jeronimo, LLC*, Case No. SA CV 17-1772-

21  DOC (DFMx), 2018 WL 5877275, at *6 (C.D. Cal. June 4, 2018) (same); *C.C. By & Through Ciri-*

22  *acks v. Cypress Sch. Dist.*, No. SACV11352AGMLGX, 2011 WL 13130855, at *6 (C.D. Cal. June

23  13, 2011). Courts in other circuits have ruled similarly. *See, e.g., Bartell v. Grifols Shared Servs.*

24  *NA, Inc.*, 618 F. Supp. 3d 275, 289 (M.D.N.C. 2022) ("when a defendant violates a civil rights

25  statute, such as the ADA, irreparable injury is presumed"); *ARC of Iowa v. Reynolds*, 559 F.

26  Supp. 3d 861, 877 (S.D. Iowa 2021) ("Courts presume that a violation of a civil rights statute is an

27  irreparable harm."); *Bd. of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.*, 208 F.

28  Supp. 3d 850, 877-78 (S.D. Ohio 2016) (citing *Silver Sage*, 251 F.3d. at 827, in presuming

1    irreparable harm to intervening student under Title IX and granting her a preliminary injunction);

2    *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir. 1984) (when defendant's viola-

3    tion is sufficiently shown, "that alone, if unrebutted, is sufficient to support an injunction").

4        Here, the jury found that Defendant violated Ms. Martinez's rights under the ADA.[6] (Jury

5    Verdict #1 at 2, ECF No. 176.) This jury finding that Defendant violated her civil rights is pre-

6    sumptive evidence of irreparable injury that, if unrebutted, supports an award of injunctive relief.

7    *See Silver Sage Partners*, 251 F.3d at 827. At trial, Defendant never rebutted Ms. Martinez's evi-

8    dence of irreparable injury with unambiguous evidence showing that discrimination related to

9    what she experienced in 2019 would not be likely to reoccur.

10       In fact, undisputed evidence demonstrates the contrary: discriminatory barriers in 2019 persist

11   today that will likely result in her, and others like her, being subjected to unequal access in the

12   future. As established by Ms. Martinez at trial, these ongoing barriers include inaccessible PDF

13   forms, an inaccessible online FBNS Web Access form, unequal access to filling out forms at the

14   CRO, and inadequate ADA training of CRO staff.

15       (a)   The PDF version of the FBNS form that Ms. Martinez tried to fill out at home in 2019 re-

16                                     mains inaccessible.

17       Ms. Martinez encountered barriers in 2019 regarding an inaccessible PDF FBNS form that

18   she, unlike sighted customers, could not independently complete at home in advance of her

19   March 29, 2019 visit and again before her second visit. *See* fact discussion *supra* Section II.A.

20       As reflected by the undisputed expert testimony of Karen McCall and Steven Clark, the De-

21   fendant did not ensure that these PDF forms were accessible to blind screen reader users.

22   (McCall Tr. 346:8-17, 347:24-348:1; Clark Tr. 536:17-537:1.) Defendant has not disputed that these

23   PDF forms are inaccessible barriers to the CRO communicating with Ms. Martinez, and other

24   blind customers, in a manner that is as effective as communications with non-disabled customers.

25

26

---

27   [6] As a result, Defendant was also found to have also violated California Government Code sec-
     tion 11135. Section 11135 is "the most analogous state-law claim to a Title II [ADA] claim."
28   *Sharkey*, 778 F.3d at 771. Redress for a Section 11135 violation is obtained through equitable re-
     lief. Cal. Gov't Code § 11139.

Ms. Martinez and other blind users will not be able to enjoy the benefits of this downloadable and printable PDF option for submitting FBNS forms even though sighted individuals are given this option, among others, for filling out FBNS forms from home. Defendant has made no commitment to fix the PDF form or even acknowledged that it should do so under the law.

(b)  <u>Defendant's newer online FBNS Web Access forms are inaccessible to blind customers trying to fill out and submit them from home.</u>

In 2023, Defendant began offering its customers a more functional alternative to its inaccessible PDF forms that customers like Ms. Martinez can use from home: an online FBNS Web Access form that allows for both filling out and submitting an FBNS. *See* fact discussion *supra* Section II.B.

Unfortunately, like with her attempts to use the inaccessible PDF forms that the CRO also provides, Ms. Martinez will need to find a sighted individual to help her use this new online FBNS Web Access form from home. Plaintiff's expert Steven Clark's undisputed and unrebutted testimony showed that this online FBNS Web Access form "could not be filled out independently" by an average JAWS screen-reader user because it "did not provide enough information in certain places on the screen to be able to complete the form and be sure that the information was correct before submitting it." (Clark Tr. 536:17-537:1.)

As a result, unless the CRO fixes this new inaccessible system, Ms. Martinez will continue to lack equal access to benefits enjoyed by sighted individuals to independently fill out and submit FBNS forms from home.

(c)  <u>Defendant has still not removed discriminatory barriers to equally effective communication at the CRO.</u>

Blind customers seeking to fill out forms while at the CRO still cannot do so in an equal way, since the CRO (1) will not commit to transcribing information onto its forms for blind customers like Ms. Martinez and (2) insists that the only acceptable alternative for blind individuals at the CRO is a computer kiosk that is even less equal to a human transcriber and that does not comply with regulatory requirements for accessibility. *See* fact discussion *supra* Section II.C.

Defendant will not commit to ensuring that Ms. Martinez receives transcription services when she next visits the CRO, even if she specifically asks them to write on a blank form. When the most senior CRO witness was asked at trial if they would "agree to fill out a blank unsigned paper FBNS form for [Ms. Martinez] if needed to renew her FBNS" (Yankee Tr, 481:25-482:2), he would only say that CRO policy "would be not to do so" but that it was *potentially* something that we could offer" (Yankee Tr. 482:8-10 (emphasis added)). The CRO clerk who testified said she did not know if she would be allowed to write on a blank form for a disabled individual. (Moran Tr. 242:5-22.) The CRO supervisor that this CRO clerk consulted on March 29, 2019 when Ms. Martinez sought help testified that she would also continue in the future not to write on blank FBNS forms for "Ms. Martinez or another individual who is blind," even if the CRO's computer kiosk system failed. (Briones Tr. 328:12-23.) This testimony demonstrates the ongoing lack of any firm, unambiguous commitment by the CRO to not discriminate against Ms. Martinez in the future just as they discriminated against her in the past.

This lack of commitment to its obligation to "take appropriate steps to ensure that communications with [Ms. Martinez] are as effective as communications with others," 28 C.F.R. 35.160(a)(1), and remove remaining discriminatory barriers at the CRO is further supported by Defendant's refusal to repudiate its claims that "requiring clerks to fill out legal forms for patrons that are filed or recorded in the CRO is simply not reasonable and does not constitute a reasonable accommodation" because, under Defendant's preferred interpretation of state law, "requiring clerks to complete or modify forms" would create unreasonable additional liabilities for Defendant and would force the CRO to alter its services to "engage in the unauthorized practice of law." (Def. Trial Br. 12, ECF No. 101.) Defendant has never introduced any evidence of any burdens or alterations that would support this view and instead chose to waive the defenses of undue burden and fundamental alteration. (Def.'s Opp'n to Pl.'s Mot. *In Limine* Nos. 1-3 at 2, ECF No. 115 ("the County is not asserting an undue burden/fundamental alteration defense")) Furthermore, Defendant has never repudiated its insistence that "nothing in Title II of the ADA or the corresponding regulations require public entities to physically fill out or alter legal forms for patrons with vision disabilities." (Def. Trial Br. 12.) As in a mootness analysis in an equity action, this

continued recalcitrance by Defendant undermines any suggestion that they have changed or voluntarily ceased their discriminatory activities. *See, e.g., Mann v. County of San Diego*, 907 F.3d 1154, 1159 n.6 (9th Cir. 2018).

Second, the only alternative auxiliary aid or service for Ms. Martinez at the CRO that Defendant appears to find acceptable to provide to Ms. Martinez involves a computer kiosk system that they first made available in some initial form in October of 2022 at the CRO in an effort to moot this litigation. (Def.'s Opp'n to Pl.'s Mot. for Summ. J. on Decl. Relief and Notice of Mot. and Mot. for Summ. J. 8-9, ECF No. 63.) This computer kiosk system currently relies on online forms consisting of either the same inaccessible PDF form or the same inaccessible online FBNS Web Access form that the CRO makes available for at-home use.[7] (Yankee Tr. 458:6-20; Def.'s Trial Brief 20, ECF 101; Clark Tr. 535:6-24.) Plaintiff's experts testified as to the discriminatory barriers created for disabled individuals like Ms. Martinez when trying to fill out these inaccessible online forms. (Clark Tr. 536:17-537:1; McCall Tr. 341:5-342:13.)

Given the difficulties of using Defendant's computer kiosk system in contrast to the simplicity and effectiveness of having a transcriber assist her with such a simple form, Ms. Martinez— who knows her own needs best—testified that she would in the future still request transcription assistance at the CRO like she did in 2019. (Martinez Tr. 587:12-24, 658:21-659:8.)

Defendant's "solution" to the inaccessibility and ineffectiveness of its preferred auxiliary aid or service (a computer kiosk with online forms) is not to give Ms. Martinez's request for a scribe "primary consideration" as 28 C.F.R. 35.160(b)(2) requires, but rather to stack on top of its inaccessible computer kiosk system an additional auxiliary aid or service in the form of a CRO staff member who will read the screen of the computer kiosk to a blind customer and guide the customer's hands. But, in line with their policy against filling out forms, this staff member remains forbidden to type anything on behalf of the blind customer. (Elder Decl., Ex. D at County_0123 ¶7 (email from Jocelyn Cole with attached guidance to CRO staff).) Plaintiff's expert Mr. Clark testified as to the ways this combination makes filling out forms more difficult for blind

---

[7] Note that, under the relevant ADA regulations, an inaccessible auxiliary aid or service cannot be "effective." 28 C.F.R. § 35.160(b)(2).

customers like Ms. Martinez and significantly more time-consuming than simply using a human transcriber with a paper form. (Clark Tr. 521:24-523:9, 523:10-524:25, 541:6-14; 537:17-20, 541:1-5.)

Defendant's continued refusal to give primary consideration to Ms. Martinez's simple request for a transcriber in favor of its own more convoluted combination of auxiliary aids and services demonstrates yet again Defendant's refusal to commit to "take appropriate steps to ensure that communications with [Ms. Martinez] are as effective as communications with others," 28 C.F.R. 35.160(a)(1).

Unless Defendant is forced to commit to the reality of its obligations under the ADA and its implementing regulations, Ms. Martinez will continue to be denied an equal opportunity to bene-fit from the services, programs, or activities of the CRO. *See* 28 C.F.R. 35.160(b)(1).

(d)   Insufficient training will contribute to future violations.

Testimony by Defendant's employees demonstrates a lack of training in effective communi-cations and ADA requirements. This lacking training will contribute to future ADA violations like those experienced by Ms. Martinez in 2019. *See* fact discussions *supra* Section II.C.-D.

Defendant has never provided training for its clerks about their duties under the ADA to pro-vide auxiliary aids and services (Moran Tr. 230:10-16), leaving staff unaware of their legal obliga-tions and more vulnerable to making poor choices under pressure that contribute to ADA viola-tions. For example, when Ms. Martinez forcefully reminded a clerk of the CRO's obligations under the ADA, Ms. Moran took that as a threat that led her to not want to assist Ms. Martinez further. (Moran Tr. 229:1-23.) Proper training would have led her instead to realize that Ms. Mar-tinez was correct and that she needed to find a way to assist. *See, e.g.,* 28 C.F.R. 35.160.

This lack of training is made even more problematic where Defendant relies on the "discre-tion" (Yankee Tr. 452:10-13) of its staff to determine how its general policy against altering forms (Yankee Tr. 429:9-19) should be followed when presented with a potential conflict with the ADA. For example, Ms. Moran was not trained to assist with blank FBNS forms (Moran Tr. 239:12-16, 243:2-5) and had never done so (Moran Tr. 230:23-25) when Ms. Martinez made her request. Without training, and with only general guidance to "do [her] best to accommodate those with disabilities" (Moran Tr. 239:17-23), it apparently never occurred to her in 2019 that she "might"

1    be allowed to write on a blank form instead (Yankee Tr. 451:14-17, 452:14-18). At trial in 2024 Ms.

2    Moran still did not know if her management would allow her to fill out a blank FBNS form in-

3    stead (Moran Tr. 242:5-22), still had never received training about doing so (Moran Tr. 242:23-

4    243:5), and still insisted that Ms. Martinez would have to specifically ask for that instead of ask-

5    ing for help in the way she did in 2019 (Moran Tr. 230:8-9).

6        Further illustrating how inadequate training and policy discretion leads to inconsistent treat-

7    ment, Ms. Moran's supervisor, who she consulted in 2019 (Moran Tr. 257:21-24) and is thus likely

8    to consult again in similar circumstances in the future, testified at trial that she would still con-

9    tinue to refuse to assist customers with filling out forms, whether or not they were blank and

10   even if other auxiliary aids and services were not available. (Briones Tr. 328:12-23.)

11       Thus, as reflected in Ms. Martinez's 2019 experience and the jury's finding that Defendant vi-

12   olated the ADA, the continuing failure to train their staff sufficiently in their ADA auxiliary aid

13   and effective communication obligations for dealing with disabled individuals creates a high

14   likelihood that Ms. Martinez, and others like her, will encounter similar discriminatory treatment

15   in the future.

16             (e)   <u>These barriers will continue to cause irreparable injury unless corrected.</u>

17       As Ms. Martinez will need to be able to renew her FBNS through the CRO in the future

18   (Martinez Tr. 653:12-22, 658:2-11), Ms. Martinez and other blind customers of the CRO will "con-

19   tinue to suffer irreparable injury due to the numerous access barriers" that remain until those bar-

20   riers are addressed. *Huezo v. Los Angeles Cmty. Coll. Dist.*, 672 F. Supp. 2d 1045, 1063 (C.D. Cal.

21   2008) (issuing injunction to remediate specific access barriers and policies after granting partial

22   summary judgment to the plaintiff in a Title II ADA claim). When the Court evaluates injunctive

23   relief, all of these barriers are part of "the totality of circumstances," *La Quinta Worldwide*, 762

24   F.3d at 880, that the Court should consider in deciding on equitable relief.

25             ***2. Remedies available at law are inadequate to compensate for Ms. Martinez's injury.***

26       Civil rights violations presumptively involve the kind of irreparable harm that cannot be

27   compensated for through legal remedies, like money damages, alone. *See, e.g., Nat'l Fed'n of the*

28   *Blind v. Lamone*, No. 14-1631, 2014 WL 4388342, at *15 (D. Md. Sept. 4, 2014), *aff'd sub nom.* 813

F.3d 494 (4th Cir. 2016) ("Remedies available at law are inadequate to compensate for violation of an individual's civil rights.") Inequities in treatment like those experienced by Ms. Martinez communicate to residents of Alameda County that blind residents and their businesses are not as important as sighted residents, a harm that money alone cannot fix. *See, e.g., Ollier v. Sweetwater Union High Sch. Dist.*, 858 F. Supp. 2d 1093, 1115 (S.D. Cal. 2012). As Ms. Martinez testified, the County's inequitable and discriminatory treatment of her because of her blindness had an impact that made her doubt herself. (Martinez Tr. 657:8-24.) Furthermore, money damages alone will not eliminate remaining ongoing barriers to equal treatment at the CRO and prevent this from happening to Ms. Martinez and others like her in the future. *See also* irreparable injury discussion *supra* Section III.B.1.

### 3. The balance of hardships supports a remedy in equity for Ms. Martinez.

The fundamental mandate underlying any injunctive relief in this matter is that Defendant comply with federal law and the ADA's implementing regulations. No evidence was introduced showing that any harm will come to Defendant if it is required to comply with federal law.[8] In contrast, the hardship on Ms. Martinez to continue dealing with a government office that does not follow federal law is significant.

As to inaccessible online forms, no evidence exists suggesting a hardship for the Defendant to remediate its PDF and website forms for screen-reader users like Ms. Martinez. This is particularly so where earlier forms were partially usable and degraded over time, and there are accepted industry standards cited by Plaintiff's expert, Karen McCall. (McCall Tr. 349:4-20, 342:10-13.) Further, the Department of Justice has long made clear the obligation to make forms independently accessible according to standards. U.S. Dep't of Justice, Accessibility of State and Local Government Websites to People with Disabilities (June 2003), http://archive.ada.gov/web-sites2.htm. *See also* Accessibility of Web Information and Services of State and Local Government Entities, 89 Fed. Reg. 31320 (April 24, 2024)

---

[8] Any such evidence is included in any analysis of undue burden or fundamental alteration defenses. Defendant produced no evidence of either in response to discovery requests. During pretrial motions, Defendant acknowledged it would not assert either defense. (Def.'s Opp'n to Pl.'s Mot. *In Limine* Nos. 1-3 at 2, ECF No. 115.)

https://www.federalregister.gov/documents/2024/04/24/2024-07758/nondiscrimination-on-the-basis-of-disability-accessibility-of-web-information-and-services-of-state (last visited on May 15, 2024).

With respect to the policy against providing transcribers in the CRO, there is no evidence of any harm that would result from ordering Defendant to provide transcriber service to disabled individuals like Ms. Martinez. Testimony suggests that it was in fact provided to a few individuals with disabilities, subject to the discretion of the individual staff member (Yankee Tr. 451:14-23, 452:10-13), and, again, there is no evidence of any resulting harm.

Defendant already provides training to its staff at the CRO without harm and there is no evidence that adding training specifically on auxiliary aids and services would be any different.

Given the non-existent hardship endured by Defendant if it is ordered to comply with federal law in the ways Ms. Martinez proposes below, as compared to the ongoing hardship Ms. Martinez will experience through readily avoidable future discrimination at the CRO, this factor tips heavily in favor of issuing a permanent injunction. Even in cases where the balance is much less lopsided and in which public entities face significant real hardships, courts have nonetheless evaluated this factor as favoring a permanent injunction. *See, e.g., Honig v. Doe*, 484 U.S. 305 (1988) (holding District court did not abuse its discretion in enjoining local school officials from indefinitely suspending disabled child with emotional issues after weighing disabled student's interest in receiving free appropriate public education against the interests of state and local school officials in maintaining a safe learning environment for all their students).

Considering the balance of hardships between Ms. Martinez and Defendant County of Alameda, a remedy in equity is warranted.

### 4. A permanent injunction is in the public interest.

The public, as evidenced by Congress' enactment of the ADA, "has an interest in ensuring the eradication of discrimination on the basis of disabilities." *Enyart v. Nat'l Conf. of Bar Examiners, Inc.*, 630 F.3d 1153, 1167 (9th Cir. 2011) (citing 42 U.S.C. § 12101(a)(9)). Especially as the CRO already assumes the responsibility of reviewing FBNS forms before accepting them for recording, there is no evidence that requiring the CRO to comply with the ADA and its regulations

undermines any public interest. As such, since the "public interest is served by requiring entities to take steps to 'assure equality of opportunity' for people with disabilities *Id.* (quoting 42 U.S.C. § 12101(a)(8) ), this factor is in favor of the Court awarding a permanent injunction directed towards that end.

### C. The advisory jury verdict does not obviate the need for injunctive relief.

#### 1. Advisory Jury Verdict #6 is non-binding and tainted with legal error against the weight of undisputed evidence.

Equitable issues, including evidence for, and analysis of, potential injunctive relief, are for a judge and not a jury to decide. *See, e.g., Scott v. Neely*, 140 U.S. 106 (1891). Equitable issues are not triable of right by a jury and do not implicate Defendant's Seventh Amendment rights. *See, e.g., Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 961-62 (9th Cir. 2001). Nonetheless, Federal Rule of Civil Procedure 39(c)(1) allows a judge to ask a jury to respond with a non-binding advisory opinion on any issue without the consent of the parties.[9]

The Court is not bound by the jury's responses to advisory questions. It retains "the 'ultimate responsibility' for deciding the case's legal and factual issues," *Hannibal Pictures, Inc. v. Sonja Prods., LLC*, No. CV06-1814 WDK (VBKX), 2009 WL 10673572, at *1 (C.D. Cal. Aug. 31, 2009) (quoting *OCI Wyoming v. PacifiCorp*, 479 F.3d 1199, 1206 (10th Cir. 2007)). When utilizing an advisory jury, the Court still completes "its own independent assessment of the issues submitted to the advisory jury." *Id.* (citing *Ashland v. Ling-Temco-Vought, Inc.*, 711 F.2d 1431, 1438 (9th Cir. 1983)). This includes finding facts and stating conclusions of law. Fed. R. Civ. P. 52(a)(1). *See also, e.g., DeFelice v. Am. Int'l Life Assur. Co. of New York*, 112 F.3d 61 (2d Cir. 1997); *Boring v. Nationstar Mortgage, LLC*, 2016 WL 3192586, *1 (E.D. Cal. 2016). In ruling on equitable relief, "the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1).

---

[9] Ms. Martinez did not consent to send any such equitable issues to the jury for a binding determination under FRE 39(c)(2). (*See, e.g.,* Plaintiff's Mot. to Bifurcate, ECF No. 94.) In responding to her insistence that equitable matters are for a judge and not a jury, the Court reminded the parties that it "can send that issue to the jury for an advisory verdict." (Order Denying Mot. to Bifurcate 5, ECF No. 98).

**2. *The law and the facts preclude relying on Jury Verdict #6 to deny equitable relief.***

The court should consider this advisory finding with caution because it would be legal error for the court to adopt it as a binding basis for denying equitable relief. The jury's liability finding created a presumption of irreparable injury. This shifts the burden of proof to Defendant to show that injunctive relief was unnecessary, rather than requiring Ms. Martinez to provide further proof that it is needed. *See* irreparable injury discussion *supra* Section III.B.1; *see also, e.g., Sw. Fair Hous. Council*, 2022 WL 3923526, at *3; *Antoninetti*, 643 F.3d at 1175-76; *Silver Sage Partners*, 251 F.3d at 827.

That is, once the jury establishes liability for a violation of the ADA, as it did in Jury Verdict #1 (at 2, ECF No. 176), Ms. Martinez does not then need to "prove by a preponderance of the evidence that Defendant's Clerk Recorder's Office will likely in the future violate its legal obligations" (Jury Verdict #6 at 4) in order to obtain a permanent injunction. Instead, it is *Defendant* who has the burden to rebut the presumption that it will violate the ADA again in the future. To rebut this presumption of irreparable injury, the relevant question to ask the fact finder would thus be, "Did *Defendant* prove by a preponderance of the evidence that the Defendant's Clerk Recorder's Office will likely *not* in the future violate its legal obligations ... ?"[10]

At trial, Defendant failed to make any such affirmative showing. Defendant did not rebut Ms. Martinez's evidence of the scope and extent of the effective communications barriers at the CRO that will continue to impact her. First, the PDF forms it provides for at-home use were inaccessible in 2019 and remain inaccessible today. *See* discussions of PDF forms *supra* Section II.A., III.B.1.(a). Second, the new online FBNS Web Access form it introduced for at-home use also continues to be inaccessible. *See* discussions of online FBNS Web Access form *supra* Section II.B., III.B.1.(b). Third, Defendant refuses to commit to providing a transcriber for Ms. Martinez at the CRO, even for blank forms. *See* discussions of transcription services at the CRO *supra* Section II.C., III.B.1.(c). Undisputed evidence shows that the Defendant's proposed reliance on

---

[10] Note that asking a jury to answer this question as phrased is not legal error in and of itself. Instead, it is simply that a negative answer to this question on its own is not determinative as to whether injunctive relief should issue. As such, it would only be legal error if the Court were to treat a negative answer to this question as determinative.

the auxiliary aid or service of a computer kiosk system with CRO human assistance takes longer, is difficult for blind users, and does not comply with regulatory requirements, such as giving primary consideration to Ms. Martinez's request. *See* discussions of the computer kiosk system and online FBNS Web Access form at the CRO *supra* Section II.C., III.B.1.(c). And fourth, the training that Defendant provides CRO staff on effective communications and auxiliary aids or services is insufficient to prevent future similar violations of the ADA. *See* discussions of ADA training *supra* Section II.D., III.B.1.(d).

Based on a review of Plaintiff's unrebutted evidence of continuing irreparable injury, there is not a legally sufficient evidentiary or legal basis for a reasonable fact finder to find against Ms. Martinez on the issue of equitable relief. *See, e.g.,* Fed. R. Civ. P. 50(a)(1). In addition to failing to rebut the need for injunctive relief, Defendant did not carry its burden to, for example, "demonstrate that another effective means of communication exists" sufficient to overcome its obligation to "honor the choice [of the individual with a disability]" for transcriber service in the CRO. 28 C.F.R. part 35, app. A at 580 (2009); *see also* 28 C.F.R. 35.160(b)(2) (primary consideration).

## IV. ARGUMENT ON SCOPE AND KIND OF EQUITABLE RELIEF

### A.  Legal Standard for Scope and Kind of Injunctive Relief

The extent of Defendant's violations drives the scope of injunctive relief. *Clement v. California Dep't of Corrs.,* 364 F.3d 1148, 1153 (9th Cir. 2004). In determining the scope, the Court has "broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future, unless enjoined, may be fairly anticipated from the defendant's conduct in the past." *Orantes-Hernandez v. Thornburgh,* 919 F.2d 549, 564 (9th Cir. 1990) (citing *N.L.R.B. v. Express Publishing Co.*, 312 U.S. 426, 435 (1941)).

In ADA cases, the Ninth Circuit holds that a plaintiff "need not necessarily have personally encountered all the barriers … in order to seek an injunction to remove those barriers." *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002). The Ninth Circuit rejected a requirement that different individual plaintiffs must each individually challenge related but

different barriers. *Id.* (citing *Steger v. Franco*, *Inc.*, 228 F.3d 889 (8th Cir. 2000)). *See also Clement,* 364 F.3d at 1153; *Sw. Fair Hous. Council,* 2022 WL 3923526, at *2.

**B. The Court should order equitable relief to address the scope and kind of remaining barriers and likely future violations.**

The jury established that Defendant violated the ADA on March 29, 2019. (Jury Verdict #1 at 2.) In considering the "totality of circumstances," *La Quinta Worldwide*, 762 F.3d at 880, surrounding this violation, Ms. Martinez has shown that she meets the four required factors for an injunction. *See* discussion of factors *supra* Section III.B. In doing so, Ms. Martinez has established that a number of related barriers to effective communication remain and demonstrated that there is a strong likelihood of future violations of the ADA when Ms. Martinez or other blind customers like her attempt to file forms at the CRO. This showing warrants the issuance of a permanent injunction to prevent such future harms. *See Orantes-Hernandez*, 919 F.2d at 564 ("Permanent injunctive relief is warranted where, as here, defendant's past and present misconduct indicates a strong likelihood of future violations.") Furthermore, Defendant has an ongoing affirmative obligation under 28 C.F.R. § 35.160 to make communications accessible to Ms. Martinez and other blind customers who seek access to the benefits, services, programs, or activities of the CRO.

Ms. Martinez thus asks the Court to order that Defendant comply with the ADA and California law so that she receives an equal opportunity to "participate in, and enjoy the benefits of," the CRO when she, and other blind customers like her, attempt to fill out, submit and file forms. *See* 28 C.F.R. § 35.160(b)(1). Specifically, she requests the following injunctive relief:

*1. That Defendant remediate the tagging of their online PDF forms, which may be accessed from home or elsewhere, to make them independently accessible to blind individuals using screen readers.*

Defendant offers its forms, including the FBNS, online in PDF format to the public for use at home and elsewhere. These inaccessible forms were barriers encountered by Ms. Martinez before and after her visit to the CRO on March 29, 2019. Her experts established that they were, and continue to be, inaccessible and unusable by blind customers who rely on screen readers. In

order to avoid ongoing discrimination in which blind customers cannot independently use these forms at home while sighted customers can, Defendant should be ordered to take the simple step of remediating the tagging of these forms so that they function with screen readers. Ordering that these PDFs be made accessible to prevent reoccurrence of the harm provides the best relief. *See, e.g., Lamone*, 2014 WL 4388342, at *15 ("As in redressing an inaccessible website of a public entity, the only relief that will remedy Plaintiffs' injury is relief that will prevent its reoccurrence: an injunction requiring Secretary Husted to make his website available to Plaintiffs on equal terms.")

### 2. That Defendant remediate their online FBNS Web Access form for use with screen readers.

Like their PDF forms, Defendant makes their online FBNS Web Access form available to customers at home. This is also the system that Defendant has insisted is an appropriate auxiliary aid for filling out forms at the CRO that blind customers like Ms. Martinez should use (Def.'s Trial Brief 20), but which legally is not an "effective" auxiliary aid because it does not present forms in an "accessible format" as is required under ADA regulations. 28 C.F.R. § 35.160(b)(2). As such, it falls within the kind or class of barrier that Ms. Martinez encountered in the past and that she and other blind customers are very likely to encounter again in the future. Remediation is the most appropriate relief when faced with inaccessible web forms or sites. *See, e.g., Lamone*, 2014 WL 4388342, at *15 ("As in redressing an inaccessible website of a public entity, the only relief that will remedy Plaintiffs' injury is relief that will prevent its reoccurrence: an injunction requiring Secretary Husted to make his website available to Plaintiffs on equal terms.")

### 3. That Defendant provide transcriber services as auxiliary aids or services to write on blank paper forms when a blind individual requests assistance with correcting or filling out a paper form handled by the CRO.

As Ms. Martinez established at trial, the refusal to provide transcriber services as an auxiliary aid or service is a clear violation of the ADA and its implementing regulations. Ms. Martinez asks the Court to order Defendant to provide such transcriber service independent of employee discretion. It is necessary for the Court to order compliance because witnesses from the CRO

would not commit in their testimony to doing so in the future. *See* fact discussion *supra* Section II.C.

Mr. Yankee, the highest-ranking CRO staff witness at trial, testified that he believed that CRO staff have the "discretion" (Yankee Tr. 452:10-13) to act as a scribe "on a case-by-case basis based on the unique circumstances" (Yankee Tr. 451:22-23). And the CRO maintains a general policy against doing so. (Yankee Tr. 451:6-9, 452:10). He would only commit to saying that the CRO "might" help fill out a form. (Yankee Tr. 452:14-18.) At trial, a CRO clerk testified she remained unsure if her management would allow her to act as a transcriber (Moran Tr. 242:5-22); a CRO supervisor testified she would not allow it (Briones Tr. 328:12-23).

Complying with federal law is not discretionary. Knowingly leaving such decisions to individual CRO staff who might or might not choose to comply with the ADA continues to demonstrate ongoing deliberate indifference to Ms. Martinez's rights. Without a finding and conclusion of law backed by an injunction forcing the County to accept that providing a transcriber is indeed required by the ADA for blind individuals, the jury's general finding that Defendant violated Ms. Martinez's rights under the ADA leaves Defendant free to choose at any time to deny such an auxiliary aid or service in the future by interpreting the jury's finding as applying only to some other action or non-action on March 29, 2019, and to thus continue to discriminate against Ms. Martinez and others like her in the future.

### *4. That Defendant provide appropriate training on auxiliary aids and effective communication under federal law and regulations.*

In order to comply with the ADA moving forward, avoid repeating past violations, and cease the arbitrary delivery of ADA-mandated assistance, Defendant's employees need to be better informed as to implement their obligations under the ADA in a non-discriminatory way. A focus on staff training is of particular importance because the CRO does not use written policies and procedures to guide its employees: ("We do not have policies written out that way. We are just word of mouth and training …." (Moran Tr. 236:23-237:1; *see also* Yankee Tr. 376:19-377:11). A lack of such training contributed to Defendant's discrimination in 2019. *See* fact discussions *supra* Section II.C.-D. and irreparable injury arguments *supra* Section III.B.1.(d). As such, improved

1  training on auxiliary aids and effective communications under the ADA is thus both within the

2  scope of appropriate injunctive relief in this matter and key to avoiding future discrimination.

3                                        **V.  CONCLUSION**

4          For the reasons described above, Ms. Martinez requests that the Court grant her motion for a

5  permanent injunction to finally end this cycle of recalcitrant and litigious government indiffer-

6  ence and to allow Ms. Martinez and other blind individuals an equal opportunity to participate in,

7  and enjoy the benefits of, the services, programs, and activities of the CRO.

8

9

10

11

12  DATED: May 16, 2024                          Respectfully submitted,

13                                               TRE LEGAL PRACTICE

14                                               */s/ Timothy R. Elder*
                                                 Timothy R. Elder

15

16                                               *Attorneys for Plaintiff*

17

18

19

20

21

22

23

24

25

26

27

28