Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohhlegal.com
Nicholas D. Fine, Esq. (SBN: 285017)
nfine@ohhlegal.com
**ORBACH HUFF & HENDERSON LLP**
6200 Stoneridge Mall Road, Suite 225
Pleasanton, CA  94588
Telephone:    (510) 999-7908
Facsimile:    (510) 999-7918

Attorneys for Defendant
COUNTY OF ALAMEDA

ORBACH HUFF & HENDERSON LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LISAMARIA MARTINEZ,<br><br>                    Plaintiff,<br><br>v.<br><br>COUNTY OF ALAMEDA,<br><br>                    Defendant. | Case No.  20-cv-06570-TSH<br><br>**DEFENDANT COUNTY OF ALAMEDA'S OPPOSITION TO PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE:        July 11, 2024<br>TIME:        10:00 a.m.<br>DEPT:        Courtroom E<br>JUDGE:      Hon. Thomas S. Hixson |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ............................................................................. 1

II. RELEVANT FACTUAL BACKGROUND AND PROCEDURAL STATUS ...................... 3

III. LEGAL ARGUMENT ........................................................................ 4

    A. Plaintiff Cannot Show Any Likelihood of Substantial and Immediate Irreparable Injury ............................................................... 4

        1. The Jury Found, Based on Substantial Evidence, that Plaintiff Did Not Demonstrate a Real or Immediate Threat of Irreparable Injury ........................ 7

        2. The Evidence Presented at Trial Confirmed Plaintiff Does Not Face a Real or Immediate Threat that the County Will Subject Her to the Same Challenged Conduct ............................................. 8

            a. The CRO Extensively Trains its Staff Members ................... 9

            b. The CRO Offers Numerous Options for Persons with Vision Disabilities to Complete FBNS's in the CRO ..................... 10

            c. Plaintiff's Own Witnesses Confirmed that Plaintiff's Demand for Prospective Injunctive Relief is Meritless ................... 12

    B. Plaintiff's Legal Remedy is Adequate .................................... 14

    C. The Balance of Hardships Does Not Support a Permanent Injunction ......... 15

    D. A Permanent Injunction is Not in the Public Interest .................... 16

    E. Plaintiff's Request for Injunctive Relief Is Moot ...................... 16

    F. If An Injunction Issues, It Must Be Narrowly Tailored .................. 18

        1. Any Injunction Must Be Limited to Addressing Plaintiff's Demand for "staff assistance with paperwork as an auxiliary aid or service" ........ 18

        2. Any Injunction Must Be Limited to Addressing the FBNS .................. 20

        3. The Injunction May Not Extend to Training or Upgrading Form Accessibility .......................................................... 22

IV. CONCLUSION .............................................................................. 23

ORBACH HUFF & HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
643 F.3d 1165 (9th Cir.2010) ...................................................................6

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006) ...............................................................................17

*Bax v. Drs. Med. Ctr. of Modesto, Inc.*,
52 F.4th 858 (9th Cir. 2022) ..................................................................17

*Beauchamp v. Los Angeles Cnty. Metro. Transp. Authority*,
191 F.3d 459 (9th Cir. 1999) ...........................................................18, 22

*Biestek v. Berryhill*,
139 S.Ct. 1148 (2019) ...............................................................................7

*Buritica v. U.S.*,
8 F.Supp.2d 1188 (N.D. Cal. 1998) .........................................................4

*C & C Products, Inc. v. Messick*,
700 F.2d 635 (11th Cir. 1983) ................................................................17

*Calderon v. Moore*,
518 U.S. 149 (1996) ...............................................................................17

*Church of Scientology v. United States*,
506 U.S. 9 (1992) ...................................................................................16

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .............................................................................4, 14

*Clark v. Coye*,
60 F.3d 600 (9th Cir. 1995) .........................................................18, 21, 22

*Continental Airlines, Inc. v. Intra Brokers, Inc.*,
24 F.3d 1099 (9th Cir.1994) ...................................................................15

*Crowder v. Kitagawa*,
81 F.3d 1480 (9th Cir. 1996) ...........................................................11, 21

*Cupolo v. Bay Area Rapid Transit*,
5 F.Supp.2d 1078 (N.D. Cal. 1997) ..................................................18, 22

ORBACH HUFF & HENDERSON LLP

Def County of Alameda's Opposition to Plt's Motion for Permanent Injunction; P&A [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*Doe v. Samuel Merritt Univ.*,
921 F.Supp.2d 958 (N.D. Cal. 2013) ........................................................................6

*Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*,
818 F.Supp.2d 1193 (E.D. Cal. 2011) .......................................................................8

*DZ Reserve v. Meta Platforms, Inc.*,
96 F.4th 1223 (9th Cir. 2024) ..................................................................................17

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
92 F.3d 1486 (9th Cir. 1996) .............................................................................18, 22

*eBay Inc. v. Mercexchange, L.L.C.*,
547 U.S. 388 (2006) ...................................................................................................4

*Enyart v. Nat'l Conf. of Bar Examiners, Inc.*,
630 F.3d 1153 (9th Cir. 2011) ...................................................................................5

*Falcon Stainless, Inc. v. Rino Companies, Inc.*,
2011 WL 13130703 (C.D. Cal. Oct. 21, 2011) .........................................................3

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .................................................................................................17

*Golden Gate Transactional Indep. Serv., Inc. v. Cal.*,
2019 WL 1718691 (C.D. Cal. Jan. 22, 2019) ...........................................................4

*Gunther v. Superior Ct. of California ex rel. Cnty. of Orange*,
2007 WL 2758016 (E.D. Cal. Sept. 21, 2007).........................................................15

*Hodgers-Durgin v. De La Vina*,
199 F.3d 1037 (9th Cir. 1999) ...............................................................................4, 5

*Hubbard v. 7-Eleven, Inc.*,
433 F.Supp.2d 1134 (S.D. Cal. 2006)..................................................................16, 17

*Huezo v. Los Angeles Cmty. Coll. Dist.*,
672 F.Supp.2d 1045 (C.D. Cal. 2008) .......................................................................4

*Independent Living Res. v. Oregon Arena Corp.*,
982 F.Supp. 698 (D. Or. 1997) ...............................................................................17

*Jefferson v. City of Fremont*,
73 F.Supp.3d 1133 (N.D. Cal. 2014) .......................................................................14

Def County of Alameda's Opposition to Plt's Motion for Permanent Injunction; P&A [20-cv-06570-TSH]

**TABLE OF AUTHORITIES**

**Page(s)**

*Karimi v. Golden Gate Sch. of L.*,
   361 F.Supp.3d 956 (N.D. Cal. 2019) ...................................................................17

*Kremens v. Bartley*,
   431 U.S. 119 (1977) ...........................................................................................17

*Landes Const. Co. v. Royal Bank of Canada*,
   833 F.2d 1365 (9th Cir. 1987) ..............................................................................7

*Maney v. Brown*,
   464 F.Supp.3d 1191 (D. Or. 2020) .....................................................................16

*Midgett v. Tri-Cnty. Metro. Transp. Dist. of Oregon*,
   254 F.3d 846 (9th Cir. 2001) ........................................................................ *passim*

*Money v. Pritzker*,
   453 F.Supp.3d 1103 (N.D. Ill. 2020) ...................................................................16

*Nevada Rest. Servs., Inc. v. City of Las Vegas*,
   2019 WL 427326 (D. Nev. Feb. 4, 2019) ...............................................................8

*North Carolina v. Rice*,
   404 U.S. 244 (1971) ...........................................................................................16

*OCI Wyoming, L.P. v. PacifiCorp*,
   479 F.3d 1199 (10th Cir. 2007) ............................................................................8

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) .............................................................................................5

*Oliver v. Ralphs Grocery Co.*,
   654 F.3d 903 (9th Cir. 2011) ..............................................................................17

*P.G. by & through Mallory v. City of Long Beach*,
   2019 WL 2009110 (C.D. Cal. May 6, 2019) ...........................................................6

*Razavi v. Valley Med. Ctr.*,
   2017 WL 1233618 (N.D. Cal. Jan. 6, 2017) ...........................................................5

*Rizzo v. Goode*,
   423 U.S. 362 (1976) ...................................................................................4, 5, 15

*Toussaint v. McCarthy*,
   801 F.2d 1080 (9th Cir.1986) ......................................................................18, 22

ORBACH HUFF & HENDERSON LLP

ORBACH HUFF & HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*U.S. v. Concentrated Phosphate Export Assn.,*
   393 U.S. 199 (1968)..............................................................................................17

*Vinson v. Thomas,*
   288 F.3d 1145 (9th Cir. 2002) ......................................................................11, 21

*Weinberger v. Romero–Barcelo,*
   456 U.S. 305 (1982).................................................................................................6

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008)..................................................................................1, 6, 7, 15

**Federal Statutes**

42 U.S.C. section 12132 ...............................................................................................7

**State Statutes**

Government Code section:
   11135 ......................................................................................................1, 3, 19

Civil Code section:
   54-55.3 ....................................................................................................................3

**Regulations**

28 C.F.R. section:
   35.160.....................................................................................................................21
   35.164.....................................................................................................................21

**Federal Rules**

Federal Rules of Civil Procedure Rule:
   39.............................................................................................................................8
   50.............................................................................................................................1

Def County of Alameda's Opposition to Plt's Motion for Permanent Injunction; P&A [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

1    Defendant COUNTY OF ALAMEDA ("County") submits its opposition to Plaintiff

2    LISAMARIA MARTINEZ's ("Plaintiff") Motion for Permanent Injunction (Dkt. 200, "Motion")[1]:

3    **I.    INTRODUCTION**

4         Plaintiff's entire Motion is premised on an inaccurate understanding of the law, whereby Plaintiff

5    believes the Court must simply presume Plaintiff has satisfied all of the requirements necessary for the

6    issuance of permanent injunctive relief against the County, merely because the jury found that the

7    County violated Title II of the ADA on March 29, 2019.  While some courts may have incorrectly

8    applied this presumption in the past, effectively rendering injunctive relief automatic following a finding

9    of liability on a civil rights claim, the Supreme Court put a stop to such a nonsensical approach in

10   *Winter*, reminding lower courts that "[a]n injunction is a matter of equitable discretion; it does not

11   follow from success on the merits as a matter of course."  *Winter v. Nat. Res. Def. Council, Inc.*, 555

12   *U.S. 7, 32 (2008)*.  Plaintiff *must* establish the traditional equitable requirements for issuance of a

13   permanent injunction.  She simply cannot, particularly where she cannot establish that she faces an

14   immediate threat of irreparable injury absent an injunction.

15        The jury in this matter, after considering all of the evidence introduced at trial, and after

16   deliberating, found that while the CRO violated Title II of the ADA on March 29, 2019, Plaintiff did *not*

17   prove by a preponderance of the evidence, that the CRO "will likely in the future violate its legal

18   obligations" in the same manner.  Dkt. 190, p. 4, Question 6 (hereinafter referred to as "Question 6").

19   That verdict was clearly based on substantial evidence at trial and there are simply no grounds to

20   disregard it.  Indeed, Plaintiff did not present one iota of evidence at trial that the County will likely

21

22   _____

[1] This Opposition is written with the understanding that jury found for Plaintiff at trial on her claim that
the County violated Title II of the ADA on March 29, 2019, in addition to California Government Code
section 11135 and the Disabled Persons Act.  This Opposition is not the proper vehicle with which to
challenge the jury's verdict and the County does not do so here.  However, the County vehemently
disagrees with the propriety of the jury's verdict on Questions 1 through 5 of the Verdict Form and
intends to file a renewed Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil
Procedure 50.  The County also intends to vigorously pursue any appeals which may be necessary.
Thus, while the County refers in this Motion to the "violation" that the jury found the County to have
committed on March 29, 2019, the County continues to challenge that any such violation occurred.
Similarly, while Plaintiff seeks an injunction under not only the ADA, but California Government Code
section 11135, the County likewise intends to challenge the jury's verdict that the CRO received state
funding.  The *only* evidence was directly to the contrary.  See Ex. B, TT, Vol. 3, 422:15-426:5, 432:22-
433:19.

Def County of Alameda's Opposition to Plt's Motion for Permanent Injunction; P&A [20-cv-06570-TSH]

again violate Title II of the ADA in the same manner as the jury found.  Indeed, and in addition to the fact the County now operates a computer kiosk reserved for persons with disabilities and on which a sight-impaired individual can complete an electronic FBNS relying solely on human assistance from CRO staff, Plaintiff's *own witnesses* confirmed the same violation will not occur again.

For example, Lucia Greco, a blind individual who sought accommodations to complete an FBNS in the CRO, testified that a CRO clerk simply completed a blank, unsigned FBNS for Ms. Greco using information Ms. Greco provided, and then verified that information back to Ms. Greco verbally, before helping Ms. Greco sign the form and filing it.  Ms. Greco testified that she was not only satisfied but "happy" with the CRO's services and Mr. Yankee testified that CRO clerks are permitted to provide such transcriber services on blank, unsigned FBNS forms, for purposes of accommodating a person with a disability.  Ms. Greco further confirmed that the CRO's staff members were polite to her and clearly tried to assist and accommodate her, which they ultimately did quite successfully.  Another of Plaintiff's witnesses – Steven Clark – testified that when he and Plaintiff's counsel, Mr. Elder (who is also sight-impaired), visited the CRO to complete an FBNS using the CRO's computer kiosk with screen-reader software, CRO staff members assisted them every step of the way, including correcting an inaccuracy in the filled-out but unsigned FBNS for Mr. Elder.  Accordingly, Plaintiff simply cannot establish any immediate threat that the County is likely to engage in the same conduct which the jury found to violate the ADA.  Further, Plaintiff likewise cannot establish that her remedy at law is inadequate, that the balance of hardships tip in her favor if an injunction does not issue, or that an injunction would be in the public's interest.

Plaintiff is not entitled to injunctive relief as a matter of course, as she suggests, and she simply cannot meet the requisite standard for issuance of such relief.  For these reasons, the County respectfully requests that the Court deny Plaintiff's Motion, in its entirety, with prejudice. However, if the Court is inclined to issue injunctive relief and enjoin the County's operations, which raises concerns regarding federalism and comity, such relief must be as narrowly tailored as possible to provide relief to Plaintiff. All that would be necessary here is an order that the County continue to operate and maintain the kiosk accommodation and to continue providing human assistance to sight-impaired individuals seeking to complete an FBNS on the kiosk in the CRO.

## II.        RELEVANT FACTUAL BACKGROUND AND PROCEDURAL STATUS

Trial on Plaintiff's Amended Complaint (and specifically, Plaintiff's First Cause of Action for Violation of Title II of the ADA, Third Cause of Action for Violation of Cal. Civil Code § 11135, and Fourth Cause of Action for Violation of the Disabled Persons Act ("DPA") (Cal. Civ. Code §§ 54-55.3)) began on March 27, 2024, and ended with the jury's verdict on April 2, 2024.  See Dkt. 190.  With respect to the first five questions in the Verdict Form, the jury found that Plaintiff had proved by a preponderance of the evidence that the County violated Plaintiff's rights under the ADA on March 29, 2019, that the violation occurred because of the County's deliberate indifference to Plaintiff's rights, that it occurred in a program or activity that is funded directly by the state or receives state financial assistance, and that Plaintiff is entitled to $30,500 under the ADA and DPA.  Id., at pp. 2-3.  However, in response to Question 6, the jury found in favor of the County.  Id., at p. 4.  Specifically, Question 6 asked the jury:  "Did Plaintiff prove by a preponderance of the evidence that the Defendant Clerk Recorder's Office will likely in the future violate its legal obligations described in Final Instructions Nos. 11 and 12 with respect to individuals with a disability of blindness or visual impairment in the same type of way that you found?"  Id.  The jury responded, "No."  Id.

Plaintiff filed the present Motion on May 16, 2024, pursuant to the Court's Order Regarding Briefing Schedule on Motion for Permanent Injunction.  See Dkt. 194.  Plaintiff's Motion must be denied where the Court may not simply presume Plaintiff is entitled to injunctive relief, as Plaintiff incorrectly suggests, and where Plaintiff cannot satisfy the traditional elements of injunctive relief. Particularly, as reflected in the jury's response to Question 6, Plaintiff cannot establish that she faces an immediate threat of irreparable injury absent the issuance of an injunction.[2]

///

///

---

[2] The County objects to Exhibits A through D, and Exhibit K attached to the Declaration of Timothy Elder in support of Plaintiff's Motion, none of which were admitted into evidence at trial.  Plaintiff's Motion should be adjudicated based upon the evidence the jury considered and which the Court deemed relevant and admissible, not extraneous evidence which was not considered at trial and which has no relevance here.  See, e.g., *Falcon Stainless, Inc. v. Rino Companies, Inc.*, 2011 WL 13130703, at *3 (C.D. Cal. Oct. 21, 2011), *aff'd*, 572 F. App'x 483 (9th Cir. 2014) ("The evidence introduced at trial supporting Falcon's claim was discussed at length in the Court's findings of fact and conclusions of law issued at the time of its order denying Falcon's motion for a permanent injunction.").

Def County of Alameda's Opposition to Plt's Motion for Permanent Injunction; P&A [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

## III.   LEGAL ARGUMENT

To be entitled to a permanent injunction against a local government entity, the plaintiff must establish:  (1) the likelihood of substantial and immediate irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *See eBay Inc. v. Mercexchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Midgett v. Tri-Cnty. Metro. Transp. Dist. of Oregon*, 254 F.3d 846, 851 (9th Cir. 2001) ("[A] plaintiff seeking a[] [permanent] injunction against a local or state government must present facts showing a threat of immediate, irreparable harm before a federal court will intervene. …Because Plaintiff did not establish such a threat on this record … the district court did not abuse its discretion by denying a permanent injunction."); see also *Huezo v. Los Angeles Cmty. Coll. Dist.*, 672 F.Supp.2d 1045, 1048-1068 (C.D. Cal. 2008) (requiring showing of likelihood of substantial and immediate irreparable injury and the inadequacy of remedies at law for issuance of permanent injunction on ADA claim for which the Court granted the plaintiff partial summary judgment).

### A.   Plaintiff Cannot Show Any Likelihood of Substantial and Immediate Irreparable Injury

As noted, "a plaintiff seeking a[] [permanent] injunction against a local or state government must present facts showing a threat of immediate, irreparable harm before a federal court will intervene." *Midgett v. Tri-Cnty. Metro. Transp. Dist. of Oregon*, 254 F.3d 846, 851 (9th Cir. 2001) (citing *Rizzo v. Goode*, 423 U.S. 362, 377-380 (1976) and *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1042-44 (9th Cir. 1999)); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (a plaintiff seeking injunctive relief must demonstrate "a sufficient likelihood that he will again be wronged in a similar way."); see also *Buritica v. U.S.*, 8 F.Supp.2d 1188, 1192 (N.D. Cal. 1998) (the court found, post-trial, "that Buritica has not established a likelihood of immediate and irreparable harm.  She cannot obtain injunctive relief, and thus her claim is effectively moot.  The court will therefore grant the motion by the government and the federal defendants with regard to Buritica's claims for injunctive relief."); *Golden Gate Transactional Indep. Serv., Inc. v. Cal.*, 2019 WL 1718691, at *5 (C.D. Cal. Jan. 22, 2019) (court in Title II action stated, "[t]o seek prospective injunctive relief, Plaintiffs must also show ' a real and immediate threat of

ORBACH HUFF & HENDERSON LLP

repeated injury' in the future"); *Razavi v. Valley Med. Ctr.*, 2017 WL 1233618, at *2 (N.D. Cal. Jan. 6, 2017) (court in Title II action cited *Midgett* and stated, "For injunctive relief, a plaintiff 'must present facts showing a threat of immediate, irreparable harm before a federal court will intervene.'").

Further, "because Plaintiff seeks to enjoin a government agency, 'his case must contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs.'" *Midgett*, 254 F.3d at 850.  "This 'well-established rule' bars federal courts from interfering with non-federal government operations in the absence of facts showing an immediate threat of substantial injury." *Id.*, citing *Hodgers-Durgin*, 199 F.3d at 1042-43.  Thus, "a federal court must exercise restraint when a plaintiff seeks to enjoin any non-federal government agency, be it local or state." *Id.*, at 851.  That the County is a *local* government entity does not lighten Plaintiff's burden.  *Id.*, citing *Rizzo*, 423 U.S. at 380 (recognizing that the same principles govern when an injunction is sought against an agency of a local government and applying them to a request for an injunction against city officials).  "The Supreme Court has repeatedly cautioned that, absent a threat of immediate and irreparable harm, the federal courts should not enjoin a state to conduct its business in a particular way." *Hodgers-Durgin*, 199 F.3d at 1042.  Thus, "[t]he equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff[s] will be wronged again – a 'likelihood of substantial and immediate irreparable injury.'" *Id.*, quoting *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974).

While Plaintiff argues that she "need not establish a reasonable likelihood of continuing violations" because irreparable injury is "presumed" when a defendant is found liable for a "civil rights violation," that is simply not true.  See Motion, at pp. 9:4-10:14; *Midgett v. Tri-County Metropolitan Transportation District of Oregon*, 254 F.3d 846, 850 (9th Cir. 2001) (requiring showing of real or immediate threat of substantial or irreparable injury for issuance of permanent injunction, *after* the plaintiff had prevailed under the ADA on summary judgment); see also *Enyart v. Nat'l Conf. of Bar Examiners, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011) ("We need not decide whether discrimination in violation of the ADA constitutes irreparable harm *per se*, or whether irreparable harm can be presumed based on such a statutory violation, because we agree with the district court's conclusion that Enyart demonstrated irreparable harm in the form of the loss of opportunity to pursue her chosen profession.").

Def County of Alameda's Opposition to Plt's Motion for Permanent Injunction; P&A [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

Plaintiff is effectively arguing that she is entitled to an injunction as a matter of right due to the jury's finding of liability under the ADA on the part of the County.  The Supreme Court has expressly declined to allow injunctions to become matters of right.  See *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008) ("At the same time, what we have said makes clear that it would be an abuse of discretion to enter a permanent injunction, after final decision on the merits, along the same lines as the preliminary injunction.  An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course."); see also *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 313 (1982) ("[A] federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law").  Indeed, District Courts have cited *Winter* in declining to apply the presumption of irreparable injury that Plaintiff seeks to apply here.  *See e.g., P.G. by & through Mallory v. City of Long Beach*, 2019 WL 2009110, *1 (C.D. Cal. May 6, 2019) ("The Court finds that such presumption of irreparable harm conflicts with the Supreme Court's holding in *Winter*."); see also *Doe v. Samuel Merritt Univ.*, 921 F.Supp.2d 958, 963 (N.D. Cal. 2013) (agreeing that "a presumption of irreparable harm conflicts with the Supreme Court's decision in *Winter*").  Thus, it would be reversible error to excuse Plaintiff from the requisite showing that she faces an immediate threat of substantial or irreparable injury – a showing she simply cannot make.[3]  *Midgett*, 254 F.3d at 850 (9th Cir. 2001).

---

[3] The *only* published Ninth Circuit authority Plaintiff cited in support of her incorrect position is *Antoninetti v. Chipotle Mexican Grill, Inc.,* 643 F.3d 1165, 1175–76 (9th Cir.2010), a Title III case involving only private parties.  In *Antoninetti*, a plaintiff sued Chipotle for violating the ADA due to the height of a wall that prevented the plaintiff, who was in a wheelchair, from seeing the food displays and preparation that other customers were able to see.  *Id.*, at 1169-71.  The plaintiff prevailed on partial summary judgment and sought permanent injunctive relief.  *Id.*, at 1171.  While the Ninth Circuit ultimately determined the plaintiff was entitled to such injunctive relief, the court *did not* apply the presumption Plaintiff seeks to apply here and did not even discuss the presumption, except indirectly to the extent the court expressly declined to decide whether the ADA "authorizes a district court to deny injunctive relief after finding a violation of the Act."  *Id.*  Rather, the Ninth Circuit in *Antoninetti* found that the plaintiff had in fact established a likelihood of immediate irreparable harm because there was "no doubt that Anoninetti wanted to return to the Chipotle restaurants to enjoy the same experience that other non-disabled Chipotle customers could have" and that "neither Chipotle's new or old policies ameliorated the violation."  *Id.*, at 1175.  *Antoninetti* thus supports the County's position that Plaintiff here *must* show a likelihood of immediate irreparable injury to be entitled to a permanent injunction.  With respect to the question the Ninth Circuit declined to decide in *Antoninetti* – "whether the [ADA] forecloses the possibility that a court might exercise its equitable discretion in fashioning relief for violations" of the ADA – the County respectfully submits that question has already been answered by the Supreme Court in *Winter*.  Permanent injunctions must not be issued as a matter of course, simply

- 6 -

ORBACH HUFF & HENDERSON LLP

1             **1.**      **The Jury Found, Based on Substantial Evidence, that Plaintiff Did Not**

2                      **Demonstrate a Real or Immediate Threat of Irreparable Injury**

3            The jury in this matter heard and considered several days of evidence, including 8 witnesses and

4     15 exhibits.  They also spent multiple days listening to opening and closing presentations and jury

5     instructions.  Pursuant thereto, the jury found in favor of Plaintiff on five of the six questions in the

6     Verdict Form.  See Dkt. 190.  However, as for that sixth question, the jury instead found for the County,

7     finding that Plaintiff *did not prove* "by a preponderance of the evidence that the Defendant's Clerk

8     Recorder's Office will likely in the future violate its legal obligations described in Final Instructions

9     Nos. 11 and 12 with respect to individuals with a disability of blindness or visual impairment in the

10    same type of way that you found[.]"[4]  Id., p. 4.

11           Plaintiff's position is, of course, that the jury was profoundly correct in answering five out of six

12    questions in favor of Plaintiff, but must have misunderstood or misevaluated the one question for which

13    they determined Plaintiff failed to meet her burden.  Motion, at pp. 18:5-20:15.  However, a jury's

14    verdict may only be disregarded when the record lacks "substantial evidence," meaning evidence

15    sufficient to permit a reasonable jury to reach the verdict it did.  *Biestek v. Berryhill*, 139 S.Ct. 1148,

16    1159 (2019); see also *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987)

17    ("If there is substantial evidence presented at trial to create an issue for the jury, a trial court may not

18    grant a motion for a directed verdict or for judgment notwithstanding the verdict.").  There was clearly

19    sufficient evidence here to permit the jury to reasonably reach the verdict it did in response to Question

20    6.  In fact, as discussed in detail below, the *only* evidence presented at trial on this issue confirmed that

21    other than Plaintiff's incident on March 29, 2019, the CRO has never repeated the same conduct which

22    the jury found to violate the ADA, and will not do so in the future.  Much of this evidence came from

23    Plaintiff's own witnesses, including Lucia Greco and Steven Clark.  Accordingly, there is no basis to

24    disregard the jury's verdict in response to Question 6.

25

26    because the plaintiff has established an underlying violation of law.  *Winter*, 555 U.S. at 32.  Clearly, the
      Court here may exercise its equitable discretion to deny permanent injunctive relief, as it must.

27    [4] Jury Instruction No. 11 set forth the applicable law under the ADA, and specifically, 42 U.S.C. section

28    12132.  See Dkt. 165, p. 12.  Jury Instruction No. 13 provided jurors with law under the ADA
      concerning Title II's effective communication requirement.  Id., pp. 13-14.

1    Further, even if the Court views the jury's response to Question 6 as an advisory verdict under

2    F.R.C.P. 39(c)(1), with no binding effect, the Court is nonetheless required to undertake the same

3    independent assessment of the facts, law, and the issue submitted to the advisory jury.  *Duhn Oil Tool,*

4    *Inc. v. Cooper Cameron Corp.*, 818 F.Supp.2d 1193, 1228 (E.D. Cal. 2011) ("The court is free to accept

5    or reject the advisory jury's findings, but is obligated to make its own assessment of the issues submitted

6    to the advisory jury."); *Nevada Rest. Servs., Inc. v. City of Las Vegas*, 2019 WL 427326, at *3 (D. Nev.

7    Feb. 4, 2019) ("Even if the Court were to order an advisory jury, the Court nonetheless 'has the

8    "ultimate responsibility" for deciding the case's legal and factual issues.'") (quoting *OCI Wyoming, L.P.*

9    *v. PacifiCorp*, 479 F.3d 1199, 1206 (10th Cir. 2007)).  The evidence presented at trial confirmed that

10   injunctive relief is not appropriate, primarily because Plaintiff simply failed to show that she faces a real

11   or immediate threat of irreparable harm absent an injunction.

12         **2.**     **The Evidence Presented at Trial Confirmed Plaintiff Does Not Face a Real or**

13                    **Immediate Threat that the County Will Subject Her to the Same Challenged**

14                    **Conduct**

15         The evidence presented at trial confirmed that the County provides its CRO clerks with extensive

16   training, including their obligations under the ADA.  Pursuant thereto, and pursuant to the CRO's

17   ongoing efforts and continuous desire to provide the best and most effective customer service possible,

18   the CRO offers sight-impaired customers a variety of ways to complete FBNS's in the CRO.  Indeed,

19   the CRO continues to accept FBNS's for filing via mail, and for over a year has had a computer kiosk in

20   the physical CRO reserved for persons with disabilities and equipped with both premium screen reader

21   software and electronic versions of the CRO's FBNS for customers to fill out.  Customers with vision

22   disabilities have the choice of completing forms in the CRO using solely the screen-reader software,

23   relying solely on human assistance from CRO staff members, or some combination thereof, as preferred

24   by the person with a disability.  Further, and particularly relevant here, is the fact that CRO clerks will

25   also physically complete a blank, unsigned FBNS for a sight-impaired individual who requests such

26   assistance as an auxiliary aid or service.  The jury, of course, heard about all of these options, in addition

27   to Plaintiff's own sight-impaired witnesses who confirmed that they received the *exact* accommodations

28   they requested at the CRO, to complete an FBNS.  Indeed, the irony behind Plaintiff's present Motion is

that Plaintiff herself presented the best evidence at trial that she is not entitled to prospective injunctive relief, not only through the testimony of Lucia Greco and Steven Clark, but from Plaintiff herself. These matters are addressed in order, as follows.

a.       **The CRO Extensively Trains its Staff Members**

With respect to training, Ms. Moran, Ms. Briones, and Mr. Yankee elaborated extensively on the training CRO clerks receive concerning the ADA, which is significant and includes 18 months of on-the-job training, customer engagement, and presentation of ADA concepts in practice. Declaration of Nicholas D. Fine, Ex. A, Trial Transcript ("TT"), Vol. 2, 222:21-223:3, 245:20-249:15 (Moran); 312:17-313:14, 314:8-20 (Briones); Ex. B, TT, Vol. 3, 436:12-438:24 (Yankee).[5] Although CRO clerks are not lawyers nor legal experts, they do generally understand their obligations under the ADA, the concept of effective communication, and the corresponding use of auxiliary aids and services. Ex. A, TT, Vol. 2, 221:19-223:3, 239:17-23 (Moran), 314:8-20 (Briones); Ex. B, TT, Vol. 3, 379:8-381:21 (Yankee). They have provided such auxiliary aids and services to patrons with disabilities on countless occasions and continue to do everything in their power to provide any and all reasonable accommodations requested by persons with disabilities. Ex. B, TT, Vol. 3, 379:8-381:21, 386:9-387:1 (Yankee). Further, CRO employees have an ADA coordinator available to them, who they can reach out to for direction and guidance concerning ADA compliance. Ex. B, TT, Vol. 3, 437:22-438:24 (Yankee). All CRO employees understood at the time of the incident, and continue to understand today, that they are to do everything in their power to accommodate persons with disabilities, so long as the accommodation is reasonable, including the provision of auxiliary aids and services when necessary to achieve effective communication. Ex. A, TT, Vol. 2, 239:6-11 (Moran); 312:17-313:14 (Briones); Ex. B, TT, Vol. 3, 379:8-381:21, 386:9-387:1 (Yankee). Indeed, this is not simply a matter of ADA compliance for the CRO, but a matter of customer service, which the CRO and its staff take quite seriously. Ex. B, TT, Vol. 3, 449:2-14 (Yankee). They try to go above and beyond what is legally required and strive to achieve the highest possible level of customer service and satisfaction. Ex. B, TT, Vol. 3, 449:2-14

_____

[5] Hereinafter, all citations to Exhibits refer to the Exhibits attached to the Declaration of Nicholas D. Fine, which includes Exhibits A through C, and which contain relevant portions of the Transcript of Jury Trial Proceedings from March 27, 2024 (Exhibit A), March 28, 2024 (Exhibit B), and March 29, 2024 (Exhibit C).

Def County of Alameda's Opposition to Plt's Motion for Permanent Injunction; P&A [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

1    (Yankee).  Thus, any notion that the CRO's ADA training is or was insufficient is belied by the record at

2    trial.  The fact Plaintiff had one bad experience on March 29, 2019, is not proof of a systemic problem

3    with the County's training of CRO staff, and Plaintiff's implicit contention that all public employees

4    must be qualified experts on ADA law is, of course, unsupported by any primary authority, because

5    none exists.  While the jury disagreed with the County's interpretation of the ADA concerning whether

6    the ADA's effective communication requirement extends to paper forms, that does not mean the CRO's

7    training of its clerks is or was inadequate.  As discussed further below, the CRO's more recent

8    operations and practices make this clear, as demonstrated by the testimony of Ms. Greco and Mr. Clark.

9              **b.       The CRO Offers Numerous Options for Persons with Vision**

10             **Disabilities to Complete FBNS's in the CRO**

11           The CRO offers multiple options to persons with vision disabilities who are seeking to complete

12   and file an FBNS in the CRO.  First, and although not in place at the time of Plaintiff's incident, the

13   CRO now has a kiosk with Jobs Access with Speech ("JAWS") screen reader software and multiple

14   electronic versions of the FBNS, which will allow persons with vision disabilities to complete an FBNS

15   on the kiosk, whether using the screen reader software, relying solely on assistance from CRO staff, or a

16   combination of the two (depending on the preference of the person with a vision disability).  Ex. A, TT,

17   Vol. 2, 240:6-22 (Moran); 303:4-19, 304:3-14, 305:13-18, 328:4-14 (Briones); Ex. B, TT, Vol. 3,

18   416:21-418:19, 452:19-461:11 (Yankee).  In fact, Mr. Yankee previously assisted a sight-impaired

19   individual in this exact manner, before the CRO had even installed the JAWS screen reader software, by

20   opening an electronic version of the FBNS on one of the CRO's kiosks, reading each word and field of

21   the form to the sight-impaired individual, and then directing the mouse to the correct location of the

22   form for the individual to type/click in the necessary information.  Ex. B, TT, Vol. 3, 419:3-421:15

23   (Yankee).  The CRO will also work with sight-impaired individuals to verbally verify that the

24   individual's information in the form is accurate, will print the completed form for the individual, and

25   then assist the individual with signing the form, which can be accomplished in multiple ways including

26   using the metal signature guides the CRO has available on-site.  Ex. B, TT, Vol. 3, 456:23-457:15,

27   461:12-462:21 (Yankee).  In fact, the CRO has an entire unit, the Customer Service Unit, full of

28   individuals trained to guide customers through this exact process.  Ex. B, TT, Vol. 3, 459:1-461:11

ORBACH HUFF & HENDERSON LLP

- 10 -

(Yankee).  The CRO also still allows patrons to electronically submit forms such as the FBNS and mail in such forms for filing, and has no plans to remove any of these services or options.  Ex. B, TT, Vol. 3, 462:22-463:14 (Yankee).

Further, while the CRO maintains its general policy that its clerks are prohibited from completing or altering forms for customers that are filed or recorded in the CRO, CRO clerks *are permitted* to fill out/complete blank, unsigned FBNS forms for customers with disabilities who request such assistance as an accommodation/auxiliary aid or service.  Ex. B, TT, Vol. 3, 407:12-24, 419:3-421:15, 427:2-428:20, 429:10-19, 449:23-452:18, 481:24-482:10 (Yankee).  In other words, CRO clerks clearly have discretion to go outside of the CRO's policy for a disabled customer who requests an accommodation/auxiliary aid, as determined on a case-by-case basis.  Id.  This is entirely consistent with applicable ADA law.  *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002); *Crowder v. Kitagawa*, 81 F.3d 1480, 1486 (9th Cir. 1996) ("the determination of what constitutes reasonable modification is highly fact-specific, requiring case-by-case inquiry").  Indeed, Ms. Moran testified that she would complete a blank FBNS for a blind customer requesting assistance in filling out or correcting an FBNS, which Mr. Yankee verified CRO clerks are permitted to do with the blank FBNS's available in the CRO.  Ex. A, TT, Vol. 2, 226:15-25, 242:4-22 (Moran); Ex. B, TT, Vol. 3, 407:12-24 (Yankee).  Mr. Yankee specifically testified that he does not consider it a violation of state law for a CRO clerk to write on a blank, unsigned FBNS form for a customer and that he would allow a CRO clerk to do so as an accommodation for a disabled individual, particularly if the kiosk accommodation did not suffice.[6]  Ex. B, TT, Vol. 3, 407:12-24, 419:3-421:15, 427:2-428:20, 429:10-19, 449:23-452:18, 480:7-14 (Yankee).

With these options in place, and no plan to remove any of them, there is simply no support for the notion that Plaintiff will again experience the same challenged conduct.[7]

---

[6] While Ms. Briones testified that she would not perform this service when put on the spot on the stand during trial, she is trained to contact her supervisor when such requests arise, which is exactly what she did in this matter and would obviously do again.  See Ex. A, Vol. 2, 302:19-25 (Briones).  Pursuant to Mr. Yankee's testimony, if transcriber services were appropriate in any given situation for a person with a vision disability, the supervisor would permit Ms. Briones to perform such services.  This is evident with respect to Ms. Greco and Plaintiff's counsel (as conveyed through the testimony of Mr. Clark), both of whom received transcriber services, discussed further below.

[7] Plaintiff's lawsuit has always been about her interactions with the CRO clerks on March 29, 2019, and whether there was "effective communication" between Plaintiff and the clerks, relative to Plaintiff's

- 11 -

ORBACH HUFF & HENDERSON LLP

ORBACH HUFF & HENDERSON LLP

### c.   Plaintiff's Own Witnesses Confirmed that Plaintiff's Demand for Prospective Injunctive Relief is Meritless

Somewhat ironically, Plaintiff's own witness, Lucia Greco, was perhaps the best evidence presented at trial that the violation the jury found the County to have committed will not occur again. Ex. B, TT, Vol. 3, 488:21-496:19, 498:8-500:14 (Greco).  Ms. Greco testified that she is totally blind and visited the CRO on December 15, 2022, to file an FBNS for her small business.  Ex. B, TT, Vol. 3, 490:3-11 (Greco).  Ms. Greco requested assistance from CRO staff to complete her FBNS because she was not able to do so independently.  Ex. B, TT, Vol. 3, 490:12-16 (Greco).  CRO staff in fact completed a blank FBNS for Ms. Greco, using information provided by Ms. Greco; in effect, serving as Ms. Greco's scribe.  Ex. B, TT, Vol. 3, 490:17-492:6 (Greco).  According to Ms. Greco, she did not even specifically request a transcriber and only generally requested "assistance," and the particular CRO staff member Ms. Greco engaged took it upon herself to provide transcriber services, and did so in a timely manner.  Ex. B, TT, Vol. 3, 490:17-492:12, 494:23-495:17 (Greco).  CRO staff also assisted Ms. Greco with verifying that the information in her form was accurate, helped Ms. Greco sign the form, and filed the form for her that same day.  Ex. B, TT, Vol. 3, 495:18-496:19 (Greco).  Ms. Greco was not only satisfied but "happy" with the services she received at the CRO and did not experience any problems, whatsoever.  Id. (Greco).  Consistent with Mr. Yankee's testimony, Ms. Greco testified that CRO staff members were polite to her and that they clearly tried to assist and accommodate her, which they did successfully.  Ex. B, TT, Vol. 3, 499:14-500:5 (Greco).  How can Plaintiff present this witness

paper FBNS form, such that an auxiliary aid or service was required.  While Plaintiff now seeks to transform her case into a lawsuit about the accessibility of the CRO's online FBNS form and its compatibility with screen-reader software, that has never been her claim and such issues are not relevant here.  Whether the CRO's online FBNS form is completely compatible with JAWS is entirely unrelated to whether Plaintiff will experience effective communication in the physical CRO in the future, to complete and file an FBNS.  This is particularly true given the testimony of the CRO's employees, including Mr. Yankee, who testified that persons with vision disabilities need not use the screen-reader software at all, for multiple reasons.  First, a CRO staff member will move the mouse cursor to the correct location of the screen and read the entire form to a person with a vision disability, to allow the person to enter his or her information in the appropriate locations of the form without having to use the JAWS software.  Second, Mr. Yankee testified that CRO clerks are permitted to simply complete a blank, unsigned FBNS form for persons with vision disabilities who request such services, which Ms. Greco confirmed CRO clerks did for her.  Accordingly, whether the FBNS is completely accessible with screen reader software, or adequately "tagged," is irrelevant.  The CRO offers multiple ways for persons with disabilities to complete forms in the CRO without having to use the software at all.

1   and then suggest she is nonetheless entitled to prospective injunctive relief?  Ms. Greco alone confirms

2   that there is simply no basis for such relief.

3         Moreover, Ms. Greco was not the only witness Plaintiff presented at trial who confirmed that

4   Plaintiff's demand for prospective injunctive relief is meritless.  Plaintiff's own expert witness, Steven

5   Clark, testified that the CRO provided a similar, virtually perfect customer experience to Mr. Clark and

6   Plaintiff's own attorney, Mr. Elder.  Ex. B, TT, Vol. 3, 523:10-19, 528:10-530:23, 531:19-532:17,

7   533:13-23, 538:5-540:19, 543:9-544:3, 544:23-545:7, 550:3-21 (Clark).  Mr. Clark testified that he

8   accompanied Mr. Elder to the CRO in August 2023, for the two to inspect and use the CRO's kiosk

9   equipped with JAWS screen reader software and the FBNS.  Ex. B, TT, Vol. 3, 523:10-19, 528:10-529:9

10  (Clark).  From the moment that Mr. Elder first asked a CRO staff member to use the kiosk to complete

11  an FBNS, a CRO staff member was there to assist them at every turn, including having a supervisor

12  escort the pair to the kiosk in the CRO's public files room, where the supervisor ensured the JAWS

13  software and FBNS wizard were up and running, and told Mr. Clark and Mr. Elder to let him know if

14  they needed anything.  Ex. B, TT, Vol. 3, 529:7-530:23, 531:19-532:17, 533:13-23 (Clark).  At no point

15  during this process were they ever asked to wait more than a few minutes for assistance.  Id. (Clark).

16  Rather, CRO staff members assisted them immediately and effectively, and would have provided Mr.

17  Elder with assistance in completing the FBNS on the kiosk if he had so requested, but Mr. Clark

18  confirmed that they never requested such assistance.  Ex. B, TT, Vol. 3, 543:9-544:3 (Clark).  After the

19  pair completed an FBNS on the kiosk and submitted it electronically, the supervisor provided them with

20  a ticket for service at one of the CRO's filing counters, guided them to the filing counters, and told them

21  what their number was, which was called immediately.  Ex. B, TT, Vol. 3, 538:5-539:25 (Clark).  The

22  CRO clerk at the filing counter then pulled up Mr. Elder's FBNS and read back the information in the

23  form to him so he could verify it was accurate.  Ex. B, TT, Vol. 3, 540:1-19 (Clark).  When Mr. Elder

24  informed the clerk that the name of his business was wrong, the clerk simply corrected it for him and

25  then printed the form, which Mr. Elder signed.  Ex. B, TT, Vol. 3, 540:1-19, 544:23-545:7 (Clark).  In

26  other words, CRO staff members walked Mr. Elder and Mr. Clark through the process, from beginning

27  to end, and assisted them in every way they requested.  Further, Mr. Clark confirmed that the kiosk itself

28  is a nice, new desktop model machine that was designated for disabled access, and that it was equipped

ORBACH HUFF & HENDERSON LLP

- 13 -

1  with very qualified and competent software (JAWS) to be able to access material and fill and complete

2  forms on the kiosk.  Ex. B, TT, Vol. 3, 550:3-21 (Clark).

3      Plaintiff, for her part, testified that she would feel completely comfortable having a CRO clerk

4  transcribe her information onto a blank, unsigned FBNS, particularly because staff members of

5  government entities are considered "trusted sources."  Ex. C, TT, Vol. 4, 611:8-613:3, 629:5-20, 658:2-

6  18.  She testified she would be satisfied receiving the *exact* same assistance that Ms. Greco and Mr.

7  Elder received from the CRO, including not only the transcription of her information onto a blank,

8  unsigned FBNS, but also the subsequent verbal verification of that information, and she would have felt

9  comfortable signing the form under penalty of perjury in such circumstances.[8]  Id.

10     Given the testimony of Ms. Greco, Mr. Clark, and Plaintiff (and given the personal experience of

11 Mr. Elder as conveyed by Mr. Clark), the reason for the jury's verdict in response to Question 6 is

12 obvious, and the County cannot help but view the present Motion as being brought in bad faith.  Clearly,

13 based on Plaintiff's own evidence, she does not face any threat of immediate, irreparable harm and she

14 is not entitled to prospective injunctive relief as a result.  *Midgett*, 254 F.3d at 851.  Because there is *no*

15 evidence Plaintiff will be wronged again in a similar way as the jury found, let alone *sufficient* evidence,

16 Plaintiff is not entitled to prospective injunctive relief.  *Lyons*, 461 U.S. at 111; *Jefferson v. City of*

17 *Fremont*, 73 F.Supp.3d 1133, 1144 (N.D. Cal. 2014).  Again, Plaintiff faces an extremely difficult

18 burden in seeking to have a federal court enjoin non-federal government operations.  *Midgett*, 254 F.3d

19 at 850.  This Court would not be exercising the "restraint" it is required to exercise if it were to enjoin

20 the County to conduct its business in a particular way, despite the fact there was no evidence presented

21 at trial that the violation the jury found to have occurred will ever occur again.  *Id.*, at 851.  The Motion

22 must be denied for this reason.

23     **B.    Plaintiff's Legal Remedy is Adequate**

24     Plaintiff achieved a substantial legal remedy at trial of $30,500, despite offering evidence of only

25 miniscule monetary damages and short-lived, garden-variety emotional distress.  Ex. C, TT, Vol. 4,

26 631:10-14, 654:22-658:1.  Nevertheless, she now claims that tens of thousands of dollars are inadequate

27

28

---

[8] While Plaintiff has repeatedly suggested she is positive the CRO's kiosk accommodation would not work for her, she admitted at trial that she has, of course, never actually tried to use it, whether with JAWS or assistance from a CRO staff member.  Ex. C, TT, Vol. 4, 658:20-25.

- 14 -

ORBACH HUFF & HENDERSON LLP

1   to compensate her for her injuries, and, yet again argues that because she has established a violation of

2   the ADA, legal remedies are *per se* inadequate.  See Motion, at pp. 15:25-16:10.  Indeed, distilling

3   Plaintiff's arguments in the Motion down to their most basic level, her position is that because she has

4   established a violation of the ADA, the Court must simply presume she has satisfied the requisite

5   elements for issuance of permanent injunctive relief.  However, Plaintiff cites no published Ninth Circuit

6   authority for this incredibly self-serving presumption, which is in direct conflict with the Supreme

7   Court's holding in *Winter* that permanent injunctions are not to issue as a matter of course.  Id.; *Winter,*

8   *555 U.S. at 32* ("An injunction is a matter of equitable discretion; it does not follow from success on the

9   merits as a matter of course.").  Rather, this Court must exercise its equitable discretion and decide

10  whether Plaintiff has satisfied the traditional elements required for issuance of injunctive relief.

11          She cannot do so where she achieved an adequate legal remedy at trial, not only evidenced by the

12  amount of the award relative to any proven damages, but by the fact that Plaintiff does not face an

13  immediate threat of encountering the same challenged conduct, as discussed above.  *Gunther v. Superior*

14  *Ct. of California ex rel. Cnty. of Orange*, 2007 WL 2758016, at *2 (E.D. Cal. Sept. 21, 2007)* ("In

15  *Continental Airlines, Inc. v. Intra Brokers, Inc.,* 24 F.3d 1099, 1104-5 (9th Cir.1994)*, the Ninth Circuit

16  suggested that irreparable injury was just another way of showing an inadequate remedy at law.").

17          **C.      The Balance of Hardships Does Not Support a Permanent Injunction**

18          Plaintiff argues that the County failed to present any evidence "showing that any harm will come

19  to Defendant if it is required to comply with federal law" and that "the hardship on Ms. Martinez to

20  continue dealing with a government office that does not follow federal law is significant."  Motion, at

21  pp. 16:12-16.  Plaintiff misses the mark.  It is inherently burdensome to have a federal court enjoin the

22  activities of a local governmental entity, which has traditionally been granted the widest latitude in the

23  dispatch of its own internal affairs.  *Midgett*, 254 F.3d at 850*.  As such, "appropriate consideration must

24  be given to principles of federalism in determining the availability and scope of equitable relief."  *Rizzo,*

25  *423 U.S. at 379*.  Even where a federal statute specifically authorizes injunctive relief, "the underlying

26  notions of federalism which Congress has recognized in dealing with the relationships between federal

27  and state courts still have weight."  *Id.*  Thus, an injunctive order which significantly revises the internal

28  procedures of a local government entity constitutes a "sharp limitation" on the local government entity's

- 15 -

1   "latitude in the 'dispatch of its own internal affairs.'" *Id.*

2   Further, Plaintiff cannot show that she would suffer any hardship if an injunction does not issue,

3   for the same reasons discussed above concerning the fact Plaintiff cannot show an immediate threat of

4   irreparable injury.  Indeed, while Plaintiff claims that the "hardship" she faces is "to continue dealing

5   with a government office that does not follow federal law," she failed to produce *any* evidence at trial

6   that the violation the jury found to have occurred on March 29, 2019, has ever or will ever occur again.

7   To the contrary, the only evidence Plaintiff presented in this regard, Ms. Greco and Mr. Clark,

8   confirmed that the County takes its obligations under the ADA seriously and accommodated both Ms.

9   Greco and Mr. Elder to their satisfaction.  Plaintiff can show no hardship.

10   **D.      A Permanent Injunction is Not in the Public Interest**

11   Plaintiff argues that a permanent injunction is in the public interest because the public has an

12   interest in ensuring the eradication of discrimination on the basis of disability.  Motion, at pp. 17:24-

13   18:4.  However, "the public interest also commands respect for federalism and comity, which means that

14   courts must approach the entire enterprise of federal judicial intrusion into the core activities of the state

15   cautiously and with humility." *Maney v. Brown*, 464 F.Supp.3d 1191, 1217 (D. Or. 2020) (quoting

16   *Money v. Pritzker*, 453 F.Supp.3d 1103, 1129-33 (N.D. Ill. 2020)).  For the same reasons discussed

17   above, there is simply no basis here for the Court to intervene in the activities of the County, as Plaintiff

18   presented no evidence at trial that the violation the jury found the County to have committed on March

19   29, 2019, has ever, or will ever occur again.  Rather, Plaintiff's own witnesses, including Ms. Greco and

20   Mr. Clark, confirmed that no such violation will occur again and there is thus no basis to violate

21   principles of federalism and intrude into the County's operations, which would be against the public

22   interest.

23   **E.      Plaintiff's Request for Injunctive Relief Is Moot**

24   It is well settled that the exercise of federal jurisdiction depends on the existence of a "case or

25   controversy" and federal courts are without authority to issue opinions on moot questions or abstract

26   propositions. *Hubbard v. 7-Eleven, Inc.*, 433 F.Supp.2d 1134, 1140-48 (S.D. Cal. 2006); *Church of*

27   *Scientology v. United States*, 506 U.S. 9, 12 (1992); *North Carolina v. Rice*, 404 U.S. 244 (1971).  Thus,

28   because a party's claims must remain viable throughout litigation, it is appropriate to raise mootness at

ORBACH HUFF & HENDERSON LLP

- 16 -

ORBACH HUFF & HENDERSON LLP

1   any stage of a proceeding, including after trial and the entry of judgment. *Calderon v. Moore*, 518 U.S.

2   149, 150 (1996); *Karimi v. Golden Gate Sch. of L.*, 361 F.Supp.3d 956, 973 (N.D. Cal. 2019) ("From a

3   practical perspective, cases can become moot at any time, including – as is the case here – after the

4   parties' pleadings have been filed," and noting that "mootness describes a limitation of the federal

5   courts' jurisdiction under the United States Constitution"); *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th

6   1223, 1239 (9th Cir. 2024) ("[A]n objection that a federal court lacks subject-matter jurisdiction 'may be

7   raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the

8   entry of judgment.'"), citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *C & C Products, Inc. v.*

9   *Messick,* 700 F.2d 635, 636 (11th Cir. 1983), quoting *Kremens v. Bartley*, 431 U.S. 119, 128 (1977)

10   ("'The case must be viable at all stages of the litigation; it is not sufficient that the controversy was live

11   only at its inception.' The fact that the mooting event occurred after the decision below 'does not save

12   the…claims from mootness. There must be a live case or controversy before this Court").

13        As such, a public entity's voluntary removal of barriers to accessibility can moot a claim under

14   the ADA for prospective relief – as the removal of the accessibility barriers means the plaintiff *does not*

15   *face immediate and irreparable injury. Bax v. Drs. Med. Ctr. of Modesto, Inc.*, 52 F.4th 858, 865 (9th

16   Cir. 2022); see *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011) (defendant's voluntary

17   removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim);

18   *Hubbard v. 7-Eleven, Inc.*, 433 F.Supp.2d 1134, 1140-48 (S.D. Cal. 2006) ("Because the only relief available

19   under the ADA is injunctive, the fact the alleged barrier has been remedied renders the issue moot");

20   *Independent Living Res. v. Oregon Arena Corp.*, 982 F.Supp. 698, 771 (D. Or. 1997) (stating that under

21   the ADA, when "the challenged conditions have been remedied, then these particular claims are moot

22   absent any basis for concluding that [the] plaintiff[] will again be subjected to the same wrongful

23   conduct by [the] defendant") (disapproved on other grounds).

24        The County recognizes that the Supreme Court has determined this standard to be a stringent

25   one. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 169-170 (2000),

26   citing *U.S. v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968). The County has met this

27   standard, where it is absolutely clear that the violation which the jury found to have occurred in this

28   matter has *never* been repeated and will not occur again, for the exact same reasons discussed above.

- 17 -

ORBACH HUFF & HENDERSON LLP

1   Notably, this was confirmed by the testimony of Plaintiff's own witnesses, Ms. Greco and Mr. Clark,

2   who confirmed that the CRO will satisfactorily accommodate persons with vision disabilities seeking to

3   complete and file an FBNS in the CRO.  Ex. B, TT, Vol. 3, 488:21-496:19, 498:8-500:14 (Greco);

4   523:10-19, 528:10-530:23, 531:19-532:17, 533:13-23, 538:5-540:19, 543:9-544:3, 544:23-545:7, 550:3-

5   21 (Clark).  Based on their testimony, the fact it is clear the CRO will complete a blank, unsigned FBNS

6   for customers with vision disabilities who request such assistance as an auxiliary aid or service (which is

7   exactly the relief Plaintiff is requesting), and given the existence of the CRO's kiosk accommodation

8   (with human assistance), Plaintiff's demand for prospective injunctive relief must be denied for the

9   alternative reason that it is moot, as any barriers to access have been removed.

10         **F.**    **If An Injunction Issues, It Must Be Narrowly Tailored**

11       While the County believes it would be reversible error for the Court to order injunctive relief

12   given that the record does not contain one shred of evidence that Plaintiff faces an immediate threat of

13   irreparable harm, the County must nevertheless address the scope of any injunction, in the event the

14   Court disagrees.  For the same reasons of federalism and comity discussed above, injunctions against

15   local government entities must be narrowly tailored to enforce federal law.  *Clark v. Coye*, 60 F.3d 600,

16   604 (9th Cir. 1995) (Where an injunction is sought against a state agency, the injunction must "not

17   require more of state officials than necessary to assure their compliance with federal law"); see also

18   *Beauchamp v. Los Angeles Cnty. Metro. Transp. Authority*, 191 F.3d 459 (9th Cir. 1999) (citing *Clark*

19   and stating, "[t]o this extent, the relief is not narrowly tailored, as it must be when state or municipal

20   agencies are involved."); *Toussaint v. McCarthy,* 801 F.2d 1080, 1089 (9th Cir.1986); *Easyriders*

21   *Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1496 (9th Cir. 1996) ("… the scope of the injunction

22   [must be] no broader than necessary to provide complete relief to the named plaintiffs…"); *Cupolo v.*

23   *Bay Area Rapid Transit*, 5 F.Supp.2d 1078, 1086 (N.D. Cal. 1997) (citing *Clark*).

24         **1.**    **Any Injunction Must Be Limited to Addressing Plaintiff's Demand for "staff**

25               **assistance with paperwork as an auxiliary aid or service"**

26       The relief here that Plaintiff sought, from the initiation of this lawsuit, was for the redress of an

27   alleged failure to provide an auxiliary aid or service to Plaintiff, a blind individual, which would have

28   allowed her to modify her FBNS or complete a new FBNS in the physical CRO.  See generally Dkt. 84,

Plaintiff's Amended Complaint.  References to this specific claim are replete in the Amended

Complaint.  See id., ¶¶ 1 (Plaintiff summarizes her claim as, "Defendants unlawfully operate the

Alameda County Clerk-Recorder's Office in a manner that ensures no blind person can access its

services *because no staff person will read and scribe paperwork necessary to do business there*,"

emphasis added), 62 (Plaintiff's First Cause of Action For Violation of Title II of the ADA, alleging

"Ms. Martinez has experienced, and will continue to experience, exclusion from Defendants' services,

programs, and activities *because of Defendants' actions and policies that deny her assistance necessary*

*to complete paperwork at the Clerk-Recorder's Office*, in violation of Title II of the ADA and its

implementing regulations," emphasis added), 84 (alleging Plaintiff's Third Cause of Action for violation

of California Civil Code section 11135 is derivative of Plaintiff's Title II claim), 94 (alleging Plaintiff's

Fourth Cause of Action for violation of the Disabled Persons Act is derivative of Plaintiff's Title II

claim), 99 (Plaintiff's Fifth Cause of Action for Declaratory Relief alleging that "Plaintiff contends

*Defendants' practices and procedures with respect to providing staff assistance with paperwork*,

including their failure to reasonably modify policies and practices to accommodate people whose

disabilities *necessitate staff assistance as an auxiliary aid or service*, their actions in operating,

administering, or directing the Clerk-Recorder's Office and staff according to such policies; and their

lack of adequate coordination and training to ensure compliance with the ADA, constitute discrimination

in violation of Title[] II … of the ADA, Gov't Code § 11135, and the DPA," emphasis added), and at p.

13:9-15 (Plaintiff's Amended Complaint, in the prayer, seeks a "declaration that Defendants are

operating the Clerk-Recorder's Office in a manner that discriminates against people with disabilities,

through their policies, actions, and inactions with respect to individuals who, because of their

disabilities, *require staff assistance with paperwork as an auxiliary aid or service*," and an "order

enjoining Defendants from violating Titles II and V of the ADA and Gov't Code § 11135, with respect

to Ms. Martinez, through their policies, practices, and *actions related to providing assistance with*

*paperwork for people with disabilities*," emphasis added).

Thus, Plaintiff's claim in this action has always been limited to an alleged violation of Title II's

effective communication requirement concerning her attempt to complete and file an FBNS in the

physical CRO, and should the Court ultimately determine that an injunction should issue (it should not),

Def County of Alameda's Opposition to Plt's Motion for Permanent Injunction; P&A [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

it must be narrowly tailored to address the specific relief Plaintiff sought – "staff assistance with paperwork as an auxiliary aid or service" to persons with vision disabilities seeking to complete and file an FBNS. Id., at p. 13:9-15. This can easily be accomplished with an Order that the County must continue to offer the kiosk accommodation with electronic versions of the FBNS, JAWS screen-reader software, and corresponding human assistance. Ex. A, TT, Vol. 2, 240:6-22 (Moran); 303:4-19, 304:3-14, 305:13-18, 328:4-14 (Briones); Ex. B, TT, Vol. 3, 416:21-418:19, 419:3-421:15, 452:19-462:21 (Yankee). While Plaintiff takes issue with the compatibility between the JAWS screen reader software and the electronic versions of the FBNS, that issue is easily solved by continuing to require CRO staff members to provide human assistance to persons with vision disabilities using the kiosk to complete an FBNS, such that persons with vision disabilities would not be required to use the JAWS software at all. Id. As noted above, a CRO staff member will view the kiosk's screen, read the FBNS to the person with a vision disability, and move the cursor to the correct location of the screen for the person with a vision disability to click and/or type in his or her information. Id. This is exactly that Mr. Yankee testified at trial that he had done for another individual with a vision disability seeking to complete an FBNS in the CRO, which worked perfectly, and which is effectively the transcriber services that Plaintiff seeks, through the use of technology. Id. The CRO is already providing this accommodation and has no plans to terminate it, such that the burden of the injunction on the County would be minimal (and also moot, as discussed above). Alternatively, if the Court is not satisfied with the kiosk accommodation, the other option would be to order the County to provide transcriber services on blank, unsigned FBNS forms for persons with vision disabilities who request such services as an auxiliary aid or service, which CRO clerks are already permitted to do. Ex. A, TT, Vol. 2, 226:15-25, 242:4-22 (Moran); Ex. B, TT, Vol. 3, 407:12-24, 419:3-421:15, 427:2-428:20, 429:10-19, 449:23-452:18, 480:7-14, 481:24-482:10 (Yankee).

### 2.     Any Injunction Must Be Limited to Addressing the FBNS

With respect to either option offered above, or any other injunction the Court may issue, the order must be limited to the FBNS, which is the *only* form at issue in this case and the only form which must be addressed to afford Plaintiff complete relief. There would be a significant problem should the Court simply order the CRO to serve as scribes for persons with vision disabilities on *any* forms filed or recorded in the CRO, as there are *significant* differences between such forms. As Mr. Yankee testified,

Def County of Alameda's Opposition to Plt's Motion for Permanent Injunction; P&A [20-cv-06570-TSH]

1   the CRO files and records 250,000 to half a million documents annually.  Ex. B, TT, Vol. 3, at 451:22-

2   452:1.  And, while the FBNS is a single-page, simple form to complete, many of the forms the CRO

3   files/records are dozens, if not hundreds of pages long and contain complex financial and real property

4   information.  Ex. B, TT, Vol. 3, at 452:4-9.  This is precisely why ADA claims must be adjudicated on a

5   case-by-case basis, considering the individual circumstances of each case in a fact-specific,

6   individualized analysis.  *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002); *Crowder v. Kitagawa*,

7   81 F.3d 1480, 1486 (9th Cir. 1996).  This is captured directly by 28 C.F.R. section 35.160, which

8   provides that the "type of auxiliary aid or service necessary to ensure effective communication will vary

9   in accordance with the method of communication used by the individual; the nature, length, and

10   complexity of the communication involved; and the context in which the communication is taking

11   place." 28 C.F.R. § 35.160(b)(2).

12        Accordingly, while the County did not raise a fundamental alteration or undue burden defense in

13   *this* action, *relative to the FBNS*, it would certainly raise such defenses if Plaintiff were to demand scribe

14   services relative to a deed of trust, for example, which the County also records, and which are quite

15   lengthy and complicated legal documents.  See 28 C.F.R. § 35.164.  It would be entirely inappropriate,

16   effectively a trojan horse, to bring a claim concerning a simple, one-page FBNS, thereby precluding

17   fundamental alteration/undue burden defenses, and then use that claim to procure an order requiring

18   transcriber services for far more lengthy and complicated documents, for which the fundamental

19   alteration/undue burden defenses would almost certainly apply.  Ex. B, TT, Vol. 3, at 452:4-9.  Further,

20   and for the same reasons, any order requiring the CRO to provide specific services relative to "paper

21   forms," as Plaintiff suggests, would be invalid as fatally vague, in that it fails to give the CRO

22   reasonable notice of the specific forms for which it must provide the specified services.  See *Clark,* 60

23   F.3d at 604 ("When the Department is expected to conform its behavior to the injunction or face a

24   contempt sanction, that injunction must be clear enough on its face to give the Department notice that

25   the behavior is forbidden. The class plaintiffs, in seeking to enforce the injunction, must show that the

26   injunction clearly forbids a certain type of conduct.").

27        As such, if any injunction issues, it must be limited to the only form at issue in this action, the

28   FBNS.

Def County of Alameda's Opposition to Plt's Motion for Permanent Injunction; P&A [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

3.    **The Injunction May Not Extend to Training or Upgrading Form Accessibility**

Plaintiff offers no support for the notion that injunctive relief in this action may include intrusion into the County's training of its employees, requiring the County to update the "tags" on all of the CRO's online forms, or to render its online FBNS form (or other forms) compatible with screen-reader software, to Plaintiff' satisfaction.  While it is understandable Plaintiff would ask for the world after prevailing at trial, that does not mean she is entitled to it and any such order would violate the rule that an injunction against a local government entity to enforce federal rights must be narrowly tailored, as discussed above.  *Clark*, 60 F.3d at 604.  Pursuant to Plaintiff's specific claim under Title II, the jury found that the County violated the ADA by failing to provide Plaintiff with an auxiliary aid or service on March 29, 2019, which would have allowed her to complete and file her FBNS in the CRO.  Dkt. 190, p. 2.  Any relief must be limited to redressing *that* claim, to ensure that Plaintiff is provided with an effective auxiliary aid or service to complete and file an FBNS in the CRO.  *Clark*, 60 F.3d at 604; *Beauchamp*, 191 F.3d 459; *Toussaint*, 801 F.2d at 1089; *Easyriders Freedom F.I.G.H.T.*, 92 F.3d at 1496 (9th Cir. 1996); *Cupolo*, 5 F.Supp.2d at 1086.  That does not extend to the "tagging," accessibility, or compatibility of the CRO's electronic forms with screen-reader software (particularly where Plaintiff has *repeatedly* rejected the use of technology over her preferred transcriber services), nor to the County's training operations.  The jury made no factual findings regarding these issues at all (see Dkt. 190), and to extend injunctive relief to these matters, which go far beyond the relief Plaintiff requested, would be entirely inappropriate, and would effectively rob the County of its right to assert fundamental alteration/undue burden defenses on claims which were not at issue at trial.

Further, nothing in Title II of the ADA or the corresponding regulations requires the County to provide Plaintiff with *multiple* auxiliary aids or services to accomplish the exact same purpose, as the Motion implicitly suggests.  If Plaintiff is entitled to an auxiliary aid or service in the form of the County's continued maintenance of the kiosk accommodation with human assistance, or to have CRO employees complete blank, unsigned FBNS's for her, she is not entitled to further intrude into the County's operations, such as the County's training operations or "tagging" and compatibility of all of the CRO's forms.

1

## IV.   CONCLUSION

2

For the reasons discussed herein, the County respectfully requests that the Court deny Plaintiff's

3  Motion for Permanent Injunction, in its entirety, with prejudice.  Should an injunction issue, which the

4  County believes would constitute reversible error, it must be narrowly tailored to address Plaintiff's

5  specific claim concerning the provision of an auxiliary aid or service to complete an FBNS in the CRO.

6

7  Dated:  June 6, 2024                         Respectfully submitted,
                                               **ORBACH HUFF & HENDERSON LLP**

8

9                                              By:___*/s/ Kevin E. Gilbert*_____
                                                    Kevin E. Gilbert

10                                                  Nicholas D. Fine
                                                    Attorneys for Defendant

11                                                  COUNTY OF ALAMEDA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORBACH HUFF & HENDERSON LLP

Def County of Alameda's Opposition to Plt's Motion for Permanent Injunction; P&A [20-cv-06570-TSH]