Timothy Elder (Cal. Bar No. 277152)
Kristopher A. Nelson (Cal. Bar No. 342552)
**TRE LEGAL PRACTICE**
1155 Market Street, Tenth Floor
San Francisco, CA 94103
(415) 873-9199
(415) 952-9898 fax
telder@trelegal.com, knelson@trelegal.com

S. Tomiyo Stoner (CA Bar No. 289246)
**Undaunted Law Firm, P.C.**
600 California St., Floor 7
San Francisco, CA 94108
Telephone:     (214) 415-7340
E-mail: tstoner@undauntedlaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LISAMARIA MARTINEZ,**<br>　　　　Plaintiff,<br>　v.<br>**COUNTY OF ALAMEDA,**<br>　　　　Defendant. | Case No. 3:20-cv-06570-TSH<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION**<br><br>ASSIGNED FOR ALL PURPOSES TO<br>Judge: Hon. Thomas S. Hixson<br>Hearing Date:　　July 11, 2024<br>Courtroom:　　　E |

# TABLE OF CONTENTS

I. Plaintiff has met all four factors of the injunction analysis. ........................................................ 1

    A. Ms. Martinez has met her burden on irreparable injury. ..................................................... 1

        1. A finding at trial of a civil rights violation is highly probative evidence of irreparable injury. ............................................................................................................................. 1

        2. CRO Supervisor Laura Briones testified that she would not complete a blank FBNS form for a disabled individual in the future. ............................................................................... 3

        3. The CRO's training is insufficient to prevent similar future discrimination. .................... 4

        4. The testimony of Lucia Greco and Steven Clark does not show that transcriber service will be provided to Ms. Martinez in the future. ............................................................... 5

        5. Defendant does not provide "numerous" real options for blind patrons. ......................... 6

    B. A monetary award to Ms. Martinez is an inadequate remedy. ............................................. 8

    C. The balance of hardships strongly favors Ms. Martinez. ..................................................... 9

    D. Issuing an appropriate injunction is in the public interest. ................................................ 10

II. Defendant has failed to show that this case is now moot. ....................................................... 11

III. The scope and kind of injunctive relief requested by Ms. Martinez is appropriate. .............. 12

    A. The accessibility of PDF and online forms is within the scope of appropriate injunctive relief. ................................................................................................................................. 13

    B. An injunction can be crafted to account for undue burden or fundamental alteration defenses for lengthy or complex forms. ............................................................................. 14

    C. Training is within the scope of appropriate injunctive relief. ............................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Adarand Constructors, Inc. v. Slater*, 528 U.S. 216 (2000) ..................................................... 11, 12

*Antoninetti v. Chipotle Mexican Grill Inc.*, 643 F.3d 1165 (9th Cir. 2010) ................................... 2

*Canon, Inc. v. Color Imaging, Inc.*, 292 F. Supp. 3d 1339 (N.D. Ga. 2018) ................................. 8

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) ........................................................................... 8

*Doe v. Samuel Merritt Univ.*, 921 F. Supp. 2d 958, 963 (N.D. Cal. 2013) .................................... 2

*Falcon Stainless, Inc. v. Rino Companies, Inc.*, No. SA CV 08-00926 AHS (MLGx), 2011 WL 13130703 (C.D. Cal. Oct. 21, 2011) ............................................................................................... 8

*Hodgers-Durgin v. De La Vina*, 199 F.3d 1037 (9th Cir. 1999) ............................................... 2, 10

*Long v. Coast Resorts, Inc.*, 267 F.3d 918 (9th Cir. 2001) ............................................................ 2

*Los Angeles Cty. v. Davis*, 440 U.S. 625 (1979) .......................................................................... 11

*Maney v. Brown*, 464 F. Supp. 3d 1191 (D. Or. 2020) ................................................................ 11

*Mann v. Cty. of San Diego*, 907 F.3d 1154 (9th Cir. 2018) ......................................................... 11

*Midgett v. Tri-Cty. Metro. Transp. Dist. of Oregon*, 254 F.3d 846 (9th Cir. 2001) ....................... 2

*Money v. Pritzker*, 453 F. Supp. 3d 1103 (N.D. Ill. 2020) .......................................................... 11

*P.G. by & through Mallory v. City of Long Beach*, No. 2:17-cv-08663 DSF, 2019 WL 2009110 (C.D. Cal. May 6, 2019) ................................................................................................................ 2

*Rutherford v. Burger King # 8976*, No. 5:18-cv-00621-JAK, 2018 WL 6131173 (C.D. Cal. July 24, 2018) ........................................................................................................................................ 1

*Sec. & Exch. Comm'n v. N. Am. Rsch. & Dev. Corp.*, 511 F.2d 1217 (2d Cir. 1975) ................... 8

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814 (9th Cir. 2001) ........... 1, 2

*U.S. v. Nutri-Cology, Inc.*, 982 F.2d 394 (9th Cir. 1992) ............................................................ 11

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .................................................... 1, 2, 10

**Statutes**

Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ................................................. passim

Cal. Gov. Code § 27203 ................................................................................................................ 11

California Government Code Section 11135 ...................................................................... 8, 9, 10

**Regulations**

28 C.F.R. 35.160 ........................................................................................................................ 7, 11

# REPLY IN SUPPORT OF MOTION FOR PERMANENT INJUNCTION

## I. PLAINTIFF HAS MET ALL FOUR FACTORS OF THE INJUNCTION ANALYSIS.

Preliminary injunctions may be an extraordinary remedy, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), but permanent injunctions are nonetheless routinely granted after a finding that a defendant has violated a civil rights statute like the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq. Rutherford v. Burger King # 8976*, No. 5:18-cv-00621-JAK, 2018 WL 6131173, at *7 (C.D. Cal. July 24, 2018).

### A. Ms. Martinez has met her burden on irreparable injury.

#### 1. *A finding at trial of a civil rights violation is highly probative evidence of irreparable injury.*

Sufficient evidence shows that Ms. Martinez has met the irreparable injury prong of the four-factor analysis for awarding permanent injunctive relief against the County. One highly probative piece of evidence presented here is the trial finding that Defendant has discriminated against her and violated her civil rights. Because this trial-determined fact of a past civil rights violation is so probative of the likelihood of future violations, courts have shortened this explanation by terming it a *presumption* of irreparable injury. *See Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001) (in evaluating permanent injunction relief after a trial finding that "a defendant has violated a civil rights statute, we will presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation"). Because this evidence is highly probative but not absolutely determinative of future injury, this presumption is *rebuttable*. Defendant has not done so here.

The cases cited by Defendant as "declining to apply the presumption of irreparable injury" (Def.'s Opp'n to Pl.'s Mot. for Perm. Inj. ("Def. Opp.") 6, ECF No. 204) all involved rejections of such an evidentiary presumption when evaluating *preliminary* injunctions; those plaintiffs could provide no trial-determined proof of a civil rights violation. For instance, the district court in *P.G. by & through Mallory v. City of Long Beach* considered a request for a preliminary injunction and rejected the plaintiff's argument that merely *alleging* a violation of the ADA was sufficient evidence of irreparable harm to create a presumption in favor of granting a preliminary

injunction. No. 2:17-cv-08663 DSF, 2019 WL 2009110, *1 (C.D. Cal. May 6, 2019). Similarly, the district court in *Doe v. Samuel Merritt Univ.* also rejected applying such a presumption to its evaluation of a preliminary injunction. 921 F. Supp. 2d 958, 963 (N.D. Cal. 2013). Such rulings are in harmony with Ms. Martinez's arguments because the "presumption" simply represents the heavy evidentiary weight given to trial-determined proof of a civil rights violation. Ms. Martinez does not rely on a *per se* exception to any or all of the permanent injunction factors as Defendant suggests.

Defendant's arguments on irreparable injury are unavailing. *Winter* did not overturn an order for permanent injunctive relief after a finding of liability under a civil rights statute because of a lack of irreparable injury; *Winter* overturned a preliminary injunction where all other factors were "outweighed by the public interest and the Navy's interest in effective, realistic training of its sailors." 555 U.S. at 23. Furthermore, even *after* the Supreme Court decided *Winter*, the Ninth Circuit still held as undecided as to whether or not, in the context of a permanent injunction, the probative value of proof of an actual violation of the ADA might even require a district court to go beyond merely granting a presumption of irreparable injury and dispense with analyzing the standard requirements entirely. *Antoninetti v. Chipotle Mexican Grill Inc.*, 643 F.3d 1165, 1175 (9th Cir. 2010) (citing *Long v. Coast Resorts, Inc.*, 267 F.3d 918, 923 (9th Cir. 2001) and *Silver Sage*, 251 F.3d at 827). *Midgett v. Tri-Cty. Metro. Transp. Dist. of Oregon*, 254 F.3d 846 (9th Cir. 2001) compared the difference between an allegation of standing and an entitlement to injunctive relief at the stage where the plaintiff had *lost* at summary judgment rather than evaluating a motion for permanent injunction where there had already been a liability finding in the plaintiff's favor after a trial.[1] *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1042-44 (9th Cir. 1999)

---

[1] *Midgett* also involved an entirely different title of the ADA pertaining to transportation, 49 C.F.R. § 37.163, which permits buses with inoperative lifts, and § 37.161(c), which establishes that isolated or temporary problems caused by lift malfunctions are not violations of the ADA. That summary judgment decision against the plaintiff bus rider also turned on the important fact that the Federal Transit Administration found that Tri-Met was in compliance with the ADA public transportation requirements. Unlike the unintentional slippage of bus lifts that sometimes break down, are tolerated under the Department of Transportation regulations, and that had been found by a federal agency to be in compliance, here the County of Alameda has been found after a trial to be in violation of the ADA and is explicitly choosing to allow staff discretion to continue to violate its affirmative auxiliary aid requirements.

reviewed a grant of summary judgment against plaintiffs, not a motion for a permanent injunction after a trial verdict in Plaintiff's favor.[2]

Although Ms. Martinez supports the notion that injunctions should broadly flow to remediate adjudicated civil rights violations, she does not need to rely on the argument Defendant repeatedly attacks that an injunction *must* issue on the basis of the proven ADA violation alone without consideration of all of the usual permanent injunction factors. (*See, e.g.,* Def. Opp. 1, 6, 15.) The full scope of evidence presented by Ms. Martinez satisfies even the most stringent standard for equitable relief and rigorous testing under each of the permanent injunction factors, and she has presented sufficient evidence to show a real threat of future irreparable injury like the harm she experienced in 2019.

### 2. CRO Supervisor Laura Briones testified that she would not complete a blank FBNS form for a disabled individual in the future.

Defendant's characterization in their Opposition brief of the testimony of its employees at trial that the CRO has committed to providing, and definitely will provide, transcription services as an auxiliary aid or service when required by Title II regulations is misleading and incomplete. (*See, e.g.,* Def. Opp. 11 n.6.). Contrary to the misrepresentations of this evidence, testimony of CRO employees establishes a real threat of substantial and immediate irreparable harm absent an injunction. (*See* Pl.'s Mot. for Perm. Inj. ("Pl. Mot.") 4-5, 11-12, ECF No. 200.)

In testimony showing more than the mere "threat" of future injury, CRO Supervisor Laura Briones emphatically declared that she would not complete a blank FBNS form for Ms. Martinez or another patron with a disability:

> **Q.** In 2019, if Ms. Martinez had asked you to fill out a blank FBNS form on her behalf and then had you read it back so that she could verify its correctness, would you have done so?
>
> **THE WITNESS:** I would not.

---

[2] Unlike the two plaintiffs in *Hodgers-Durgin* who regularly encountered Border Patrol agents nearly every day and were stopped only once in ten years without any promise of a future stop, *id.* at 1044, Ms. Martinez sat in a courtroom and heard a County employee testify that she would continue to refuse to help Ms. Martinez fill out her form when she needs to return to the Oakland CRO facility to file her renewal form. (Briones Tr. 328:12-23, ECF No. 200-7.)

    **Q.** If she were to arrive in the CRO in a couple of weeks from now, would you do that?

    **A.** I would direct her to the kiosk.

    **Q.** But would you write on a blank FBNS form?

    **A.** I would not, since we have the software for her to be able to do it on her own.

    **Q.** And if the kiosk didn't work for Ms. Martinez or another individual who is blind, would you then write on a blank FBNS form for that person?

    **THE WITNESS:** I would not.

(Decl. of Timothy Elder in Supp. of Pl.'s Mot. for Perm. Inj. ("Elder Decl."), Ex. F, Trial Tr. Vol. 2, Testimony of Maria Briones ("Briones Tr."), 328:5-23, ECF 200-7; *see also* Pl.'s Mot. 5.)

    Ignoring that Ms. Briones is herself a CRO supervisor, Defendant attempts to walk back her definitive statement by suggesting that Ms. Briones would not take these actions without consulting a supervisor as she was trained to do. (Def. Opp. 11 n.6, 17.) First, Defendant's cited testimony says nothing about whether Ms. Briones had received any training at all that required her, as a supervisor herself, to check in with a second-level manager before deciding to refuse to fill out a blank paper FBNS form. Second, Defendant omits the important fact from 2019 that Ms. Briones contacted her second-level manager because Ms. Martinez asked her to do so, not because of any policy or training. (Suppl. Decl. of Kristopher Nelson in Supp. of Pl.'s Mot. for Perm. Inj. ("Nelson Decl.") Ex. 1, Testimony of Lisamaria Martinez 631:15-19.) Third, County Representative Yankee's testimony makes no mention of a requirement to consult a supervisor, but instead strongly implies that Ms. Briones and other CRO employees at all levels are empowered to make these decisions on their own. (Elder Decl., Ex. H, Trial Tr. Vol. 3, Testimony of Matt Yankee ("Yankee Tr.") 452:10-13, ECF No. 200-9 ("generally speaking, it's not our policy to do this; but on certain occasions where the supervisor or another manager or even a staff member felt that it's necessary to do so, we have that discretion."); *see also* Pl. Mot. 4-5, 11-12.)

### 3. The CRO's training is insufficient to prevent similar future discrimination.

    Trial testimony established that the CRO's training did not cover the provision of auxiliary aids or services nor the "discretion" afforded to CRO employees to respond to requests like those from Ms. Martinez in 2019. (*See* Pl. Mot. 7, 14-15.)

Defendant's misleading factual assertions about its ADA training (Def. Opp. 9-10) are not sufficiently supported by testimony and do not rebut a key fact: staff are not trained on auxiliary aids. (Yankee Tr. 376:4-17; *see also* Pl. Mot. 7.) Moreover, it is unclear how this general ADA training would prevent future harm since Ms. Moran and Ms. Briones both testified that they still would not have immediately (or ever) provided assistance in filling out a blank FBNS form with current training. (Elder Decl. Ex. E, Trial Tr. Vol. 2, Testimony of Angelina Moran ("Moran Tr.") 242:18-22, ECF 200-6; Briones Tr. 328:5-23; *see also* Pl. Mot. 7.)

The impact of this inadequate training is illustrated by the confusion and denials Ms. Martinez experienced in 2019. Every CRO staff member in 2019 denied her requested auxiliary aid or service; none suggested in 2019 that they could simply have written on a blank form for her. Ms. Briones, the supervisor consulted by Ms. Moran, did not know what an auxiliary aid or service was, and tried to "Google just 'ADA accommodation' just to make sure" there was nothing the CRO could do for Ms. Martinez. (Nelson Decl. Ex. 2, Testimony of Maria Laura Briones 297:17-23, 298:16-20.) Such independent research by CRO supervisors would be unnecessary with relevant training, which could include when and how to consult the ADA coordinator that Defendant claims is available to CRO staff. (*See* Def. Opp. 9.)

Providing CRO staff with this "discretion" to decide how to meet ADA obligations without training them how and when to legally exercise that discretion creates a high likelihood of repeating the discrimination already experienced by Ms. Martinez.

### 4. The testimony of Lucia Greco and Steven Clark does not show that transcriber service <u>will</u> be provided to Ms. Martinez in the future.

Defendant makes much of the testimony of Lucia Greco to suggest that CRO staff have exercised their discretion to complete a blank paper FBNS form. While it is undisputed that the discretion applied in this situation worked out in favor of providing assistance to Ms. Greco, this evidence does not mean that Ms. Martinez is not still faced with a high likelihood of further real injury going forward. As for the testimony of Steven Clark, CRO staff did not provide human assistance in filling out a blank form; they merely made a typographical correction on a form that

had been submitted through the computer during the expert's testing. (Nelson Decl. Ex. 3, Testimony of Steven Clark 540:1-8.)

The proper inference to draw from Ms. Greco's and Mr. Clark's testimony is that the CRO *can* provide assistance in filling out a blank FBNS form or making small corrections notwithstanding its vigorous trial arguments against doing so. But this evidence does not establish that Defendant *will* provide such assistance to Ms. Martinez or others in the future. Given the definitive statement by Ms. Briones that she would exercise her discretion to refuse to fill out blank paper forms, and how staff clerks reporting up to Supervisor Briones (such as Ms. Moran) will be advised, the likelihood of this violation repeating is very much a reality to Ms. Martinez and other blind individuals who might encounter Ms. Briones or her subordinates, including Ms. Moran, at the CRO in the future—and Ms. Moran testified she remained unsure if her management would allow her to act as a transcriber. (Moran Tr. 242:5-22; *see also* Pl. Mot. 4-6, 11-12.)

The testimony from Defendant's staff is that current policy is *not* that Defendant *will* comply with Title II regulations in providing transcription but rather that staff *may* use their own "discretion" to do so with no training or written policies explaining how and when to provide a scribe—or not. (*See* Pl. Mot. 14.) As a result, Ms. Martinez faces a very real threat of discrimination.

### 5. Defendant does not provide "numerous" real options for blind patrons.

Defendant attempts to excuse itself from equal-access obligations and injunctive relief by pointing to various inaccessible solutions involving a computer kiosk:

> [T]he CRO now has a kiosk with Jobs Access with Speech ("JAWS") screen reader software and multiple electronic versions of the FBNS, which will allow persons with vision disabilities to complete an FBNS on the kiosk, whether using the screen reader software, relying solely on assistance from CRO staff, or a combination of the two (depending on the preference of the person with a vision disability).

(Def. Opp. 10.) Defendant further claims that this "kiosk itself is a nice, new desktop model machine that was designated for disabled access, and that it was equipped with very qualified and competent software (JAWS) to be able to access material and fill and complete forms on the kiosk." (Def. Opp. 19.)

Defendant's assertions are misleading. Defendant entirely fails to acknowledge the proven inaccessibility of its kiosk: Ms. Martinez produced evidence at trial that both the bare kiosk and the "human-assisted kiosk" do not suffice as alternatives because they do not provide communications that are "as effective as communications with others," 28 C.F.R. 35.160(a)(1), including unrebutted evidence provided by Plaintiff's expert Mr. Clark that the system behind this nice new shiny computer and multiple electronic versions of the FBNS does not work for the average JAWS user: in fact, the forms "could not be filled out independently" by an average JAWS screen-reader user because they "did not provide enough information in certain places on the screen to be able to complete the form and be sure that the information was correct before submitting it." (Elder Decl. Ex. I, Trial Tr. Vol. 3, Testimony of Steven Clark ("Clark Tr.") 536:17-537:1, 535:6-24, ECF 200-10; *see also* Pl. Mot. 3-4, 13.) Adding a sighted human assistant does not suddenly make this system accessible and compliant with Title II regulations: Mr. Clark further pointed out the inequities in the use of the computer kiosk in the CRO with a sighted human assistant. (Clark Tr. 521:24-523:9 (difficulty of tandem computing); 523:10-524:25 (unfamiliar keyboards); 541:6-14, 537:17-20, 541:1-5 (longer timing); *see also* Pl. Mot. 4-6, 13-14.)

Thus, contrary to Defendant's unsupported assertion, the County *has not* given blind customers a real "choice" between independent kiosk use or staff-assisted kiosk use. In reality, this supposed "choice" is a dilemma between which kind of barriers to effective communication a blind customer would tolerate as neither option allows for communications that are "as effective as communications with others." 28 C.F.R. 35.160(a)(1).

Defendant also asserts in its defense that the CRO offers other options to disabled customers too, including currently inaccessible options like printing and mailing PDF forms and electronically submitting online forms. (Def. Opp. 10-11; *see also* Pl. Mot. 2-3, 10-11.) But numerosity is irrelevant to Defendant's legal obligations: Defendant "shall furnish appropriate auxiliary aids and services where necessary to afford [blind individuals like Ms. Martinez] an equal opportunity to participate in, and enjoy the benefits of," the CRO. *See* 28 C.F.R. § 35.160(b)(1). This means that Ms. Martinez must be able to enjoy the full benefits and privileges of the CRO,

including, for example, filling out PDF forms at home before her visit as sighted customers can, and that she should have equal access to all the numerous options made available to all patrons.

Defendant's ongoing inability to understand the limits of its systems, and its continued insistence that it provides access to blind individuals that it simply *does not provide*, makes it clear that Court intervention is needed. Given all of the above, Ms. Martinez has more than met her burden to show a substantial and real injury that is imminent under any Ninth Circuit authority.[3]

### B. A monetary award to Ms. Martinez is an inadequate remedy.

This suit is not simply a monetary damages case as Defendant suggests. This suit targets the sort of profoundly injurious and corrosive treatment for which civil rights laws like the ADA and California Government Code Section 11135 were enacted. The Supreme Court has long held that violations of civil rights create the kind of harm that monetary remedies alone cannot fully redress. *City of Riverside v. Rivera*, 477 U.S. 561, 562, 574 (1986) ("[W]e reject the notion that a civil rights action for damages constitutes nothing more than a private tort suit benefiting only the individual plaintiffs whose rights were violated. Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms.").

Awarding Ms. Martinez a relatively small amount of money is an inadequate remedy for the discrimination she experienced: she first sought to fill out her FBNS form at home, where the electronic forms were inaccessible, and then at the CRO, where no one would provide her with an auxiliary aid or service required by the ADA, and then throughout the years of this litigation as the County continued to insist that their inaccessible and inferior alternatives to her requested auxiliary aid or service should suffice.

---

[3] This Court's equitable consideration is not restricted to only the evidence presented to the jury. Defendant's objection to Plaintiff's exhibits that were not admitted at trial is not supported by the case that Defendant cites. The judge in that case merely restricted evidence to consider "evidence presented at trial" in "reviewing a renewed motion for judgment as a matter of law after a jury verdict." *See Falcon Stainless, Inc. v. Rino Companies, Inc.*, No. SA CV 08-00926 AHS (MLGx), 2011 WL 13130703, at *2-3 (C.D. Cal. Oct. 21, 2011). Courts regularly consider pre- and post-trial evidence when ruling on a motion for permanent injunction. *See, e.g., Sec. & Exch. Comm'n v. N. Am. Rsch. & Dev. Corp.*, 511 F.2d 1217 (2d Cir. 1975) (holding judge did not err in relying on pretrial evidence from preliminary injunction hearing for purposes of permanent injunction); *Canon, Inc. v. Color Imaging, Inc.*, 292 F. Supp. 3d 1339, n.2 (N.D. Ga. 2018) ("admitting "post-trial affidavits in determining whether to grant a permanent injunction.").

At trial, a senior CRO manager testified that the CRO would *still* not commit to changing its policy against writing on forms but would merely grant "discretion" to their staff to consider exceptions to the CRO policy. (*See* Pl. Mot. 4-5.) A CRO supervisor testified she would still not comply with the request for a transcriber on a blank form. (*See id.* at 5) Its kiosk, with or without human assistance, fails to meet regulatory standards. (*See id.* at 5-6.) Inaccessible PDF and online forms remain unaddressed. (*See id* at 2-3.)

The legal remedy Ms. Martinez achieved thus does not fully address the discretion to discriminate that she encountered in 2019 and is likely to encounter again in the future.

### C. The balance of hardships strongly favors Ms. Martinez.

Without injunctive relief, Ms. Martinez must continue to endure the hardship of likely future discrimination. Blind individuals like her can be treated as less important than others by being forced to beg a staff member to exercise individual "discretion" instead of knowing that CRO staff must always comply with their legal obligations under federal and state law. Evidence and Defendant's arguments also show that they will try to push her to inaccessible, unequal, and inferior computer systems at the CRO and at home. These are the future harms Ms. Martinez faces.

In contrast, Defendant has offered no evidence of any hardship created by Ms. Martinez's proposed order beyond arguing that it is "inherently burdensome" for the County to comply with any injunction at all. (Def. Opp. 15.) As a taxpayer and resident of the County of Alameda, Ms. Martinez agrees that the Court should not be overly invasive in the mechanisms by which it enforces Defendant's compliance with federal (the ADA) and state (Section 11135) disability law.[4] Federalism aside, arguments about hardship should tie directly to the *specifics* of any proposed equitable relief. Yet Defendant only argues in essence that it is a hardship to ever be bound by a court at all. Deferring to a local government's conduct of its own internal affairs does not require ignoring its violations of federal and state law. Such deference means, at most, only that any such relief should be carefully balanced and crafted.

In short, other than maintaining that any and all equitable relief that might require it to comply with federal and state law is unnecessary and a hardship *per se*, Defendant has made no

---

[4] Ms. Martinez notes that the State of California has re-bound its own government actors to follow civil rights laws through Section 11135.

specific arguments nor introduced any actual evidence that any of Ms. Martinez's proposed orders would present a hardship in fact. Ms. Martinez, in contrast, has detailed four specific actions for injunctive relief, all of them minimally invasive, limited in scope, and directly connected to her own experiences and future expected actions, and all of which would prevent similar irreparable harm to her and other blind individuals in the future.

### D. Issuing an appropriate injunction is in the public interest.

As with its arguments about hardship, Defendant provides no evidence that it would be against the public interest for it to comply with federal and state law. Instead, Defendant relies exclusively on the assertion that any court-ordered mandate would "violate principles of federalism and intrude into the County's operations, which would be against the public interest." (Def. Opp. 16.) But, as Defendant ought to be well aware, an overly strong deference to local government's right to discriminate in the interests of "federalism" has caused profound societal harms in the past. Such vague "principles of federalism" simply do not require ignoring the harms done to individuals by local government entities discriminating against local residents in violation of federal *and state* law.

Defendant's federalism and governmental deference arguments stem primarily from cases like *Hodgers-Durgin*, which involved "prudential limitations circumscribing federal court intervention in state *law enforcement matters*." 199 F.3d at 1043-44 (emphasis added). A clerk filing forms is a far cry from the court's concerns relating to law enforcement contemplated in *Hodgers-Durgin*. This constitutional argument further falls flat where the State of California has adopted the ADA as a floor for violations granting injunctive relief under California Government Code Section 11135. The jury found such a violation of that state interest.

This is also not a case involving an overriding public interest in national defense at sea weighed against plaintiffs' "ecological, scientific, and recreational interests," as in *Winter*, 555 U.S. at 23-24, 33 ("even if plaintiffs have shown irreparable injury from the Navy's training exercises, any such injury is outweighed by the public interest and the Navy's interest in effective, realistic training of its sailors. A proper consideration of these factors alone requires denial of the

requested injunctive relief."). This is instead a case in which vague concerns by Defendant about federalism are weighed against definite past and likely future violations of Ms. Martinez's rights.

It is not in the public interest to allow such civil rights violations. It is in the public interest for local government entities to actually provide disabled individuals with equal access in a manner that complies with the law and prevents future harm to blind County residents like Ms. Martinez. *See, e.g., U.S. v. Nutri-Cology, Inc.*, 982 F.2d 394, 398 (9th Cir. 1992) ("passage of the statute is itself an implied finding by Congress that violations will harm the public").

Ms. Martinez agrees with Defendant that it is in the public interest to intervene into local government activities only "cautiously and with humility." *Maney v. Brown*, 464 F. Supp. 3d 1191, 1217 (D. Or. 2020) (quoting *Money v. Pritzker*, 453 F. Supp. 3d 1103, 1129-33 (N.D. Ill. 2020)). But that public interest in no way speaks against the Court evaluating specific injunctive relief, and after a careful evaluation, ordering appropriate relief. Defendant provides no evidence or argument otherwise. (*See, e.g.,* Def. Opp. 16.)

## II. DEFENDANT HAS FAILED TO SHOW THAT THIS CASE IS NOW MOOT.

Defendant asserts that this case is now moot because "any barriers to access have been removed." (Def. Opp. 17-18.)[5] The burden is on Defendant to demonstrate mootness by making it "absolutely clear that the litigant no longer had any need of the judicial protection that it sought." *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 224 (2000); *see also, e.g., Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979) ("The burden of demonstrating mootness 'is a heavy one.'") Defendant has not met its burden.

Assertions that an old policy or practice was legal can undermine a claim that the defendant ceased the wrongful behavior. *Mann v. Cty. of San Diego*, 907 F.3d 1154, 1159 n.6 (9th Cir. 2018). Defendant has insisted throughout this case that writing on forms that were to be filed at the CRO violated state law and thus they legally could not comply with their obligations under the ADA. (*See, e.g.,* Def.'s Trial Brief 9 (the ADA does not require providing scribe services), 12 (Cal. Gov. Code § 27203(d) prohibits clerks from filling out forms), 12 (requiring clerks to

---

[5] Note that mere "access" is not the standard under ADA Title II regulations. 28 C.F.R. § 35.160(a)(1) requires communications with disabled individuals to be "as effective as communications with others" and § 35.160(b)(1) requires "equal opportunity."

complete forms would be asking them to engage in the unauthorized practice of law), ECF No. 101.) Such past assertions about the law undermine Defendant's claims now that Ms. Martinez will not face any future discrimination.

The various answers by CRO staff as to applying the CRO policy on "discretion" to comply with Defendant's legal obligations demonstrates the opposite of absolute clarity required for mootness. (*See, e.g.,* Pl. Mot. 4-5.) Defendant's failure to rebut Ms. Martinez's expert evidence that its kiosk, human assisted or otherwise, meets regulation standards also fails to support mootness. (*See, e.g., id.* at 5-6.) Other unaddressed remaining barriers, such as inaccessible PDF and online forms that can be used independently by sighted patrons at home but not by Ms. Martinez, also fail to show that this case is moot. (*See, e.g., id.* at 2-3.)

In short, the facts do not support an argument that Ms. Martinez will no longer have need of judicial protection the next time she visits the CRO. *See Adarand Constructors*, 528 U.S. at 224. This case is not moot.

### III. THE SCOPE AND KIND OF INJUNCTIVE RELIEF REQUESTED BY MS. MARTINEZ IS APPROPRIATE.

Defendant appears to argue that it should be allowed the option to keep discriminating because it would be too intrusive for the Court to order anything that might prevent such discrimination. Ms. Martinez agrees that over-intrusive orders are inadvisable. However, a limited and careful injunctive remedy is appropriate in the instant case. Ms. Martinez's proposed injunctive relief is narrowly tailored to account for this concern. Defendant even effectively concedes that at least one of Ms. Martinez's requests for injunctive relief is appropriate, even if the Court narrowly limits the scope of relief as Defendant wishes: "the other option would be to order the County to provide transcriber services on blank, unsigned FBNS forms for persons with vision disabilities who request such services as an auxiliary aid or service, which CRO clerks are already permitted to do." (Def. Opp. 20). Since testimony at trial established that CRO clerks are permitted *but not required* to provide such an auxiliary aid or service, a Court order that they *must* do so for persons with vision disabilities aligns with Title II regulations (rather than leaving it to the "discretion" of CRO staff). This narrow prohibition is reasonably tailored to ensure that

Ms. Martinez and others like her will not continue to experience the harm found by the jury—despite Defendant's attempts to wriggle free of federal and state disability discrimination law.

### A. The accessibility of PDF and online forms is within the scope of appropriate injunctive relief.

Ms. Martinez has consistently included the CRO's online forms in her claims and testimony about the harm she experienced in 2019 through to today. She has always first tried (and failed) to fill out her form online at home before visiting the CRO in person. (*See, e.g.,* Compl. ¶¶ 14-15, ECF No. 1; Decl. of Lisamaria Martinez in Supp. of Pl.'s Mot. for Partial Summ. J. ¶¶ 2-4, ECF No. 45-1; Martinez Tr. 597:17-598:7, ECF No. 200-11; *see also* Pl. Mot. 10.) Unrebutted expert testimony showed that the specific inaccessible aspects of these online forms has varied from 2019 to the present day and that no PDF or online form tested by Ms. Martinez's experts would allow Ms. Martinez to complete the form without sighted assistance. (Elder Decl. Ex. G, Trial Tr. Vol. 2, Testimony of Karen McCall ("McCall Tr.") 341:24-342:8, 346:5-17, 347:24-348:2, ECF No. 200-8; Clark Tr. 524:21-25, 536:17-537:1; *see also* Pl. Mot. 10-11.)

Defendant itself has also brought its online forms within the scope of this matter by presenting these online forms as viable alternatives for Ms. Martinez in a summary judgment motion (Def.'s Mot. for Summ. J. on Decl. Relief 10 n.8, ECF No. 63 ("By making the fillable form available online, persons with vision disabilities such as Plaintiff need not visit the CRO whatsoever, as they can complete the form remotely and mail it to the CRO for filing, and avoid any alleged accessibility issues in the physical government office")), again in trial testimony (Decl. of Nicholas Fine in Supp. of Def.'s Opp'n to Pl.'s Mot. for Perm. Inj., Ex. B, TT, Vol. 3, 462:22-463:14 (Yankee), ECF No. 204-1), and then in its Opposition brief, where Defendant explains that it still offers services "to electronically submit forms such as the FBNS and mail in such forms for filing" (Def. Opp. 10-11). The inaccessibility of these online forms—that Defendant continues to tout as "options" provided to its patrons (Def. Opp. 10)—do not present merely hypothetical or speculative barriers to Ms. Martinez; their inaccessibility is an existing and ongoing barrier that Ms. Martinez encountered previously and that she will encounter again when she attempts to prepare to file her renewal forms.

Defendant does not argue that it would experience any specific hardship by remediating these inaccessible forms beyond the general assertion that any intervention by the Court into its operations is "inherently burdensome." (Def. Opp. 15.) Defendant had every fair opportunity to assert affirmative defenses regarding all facts at issue, including those discussing inaccessible online and PDF forms. Defendant chose to abandon those claims, likely because they had no factual support to assert a defense for the very simple task of making online and PDF forms accessible to persons using assistive technology, which governments regularly do by following the standards referenced by Mr. Clark and Ms. McCall.[6]

### B. An injunction can be crafted to account for undue burden or fundamental alteration defenses for lengthy or complex forms.

Defendant argues that an injunction ordering it to provide a human transcriber for blank forms should be limited to only the FBNS form. (Def. Opp. 20.) Defendant maintains that this severe limitation is appropriate because there is a more complicated form. Ms. Martinez has consistently challenged the general policy against providing human transcribers for all paper forms and Defendant abandoned its undue burden and fundamental alteration defenses as to the policy against filling out any forms, not just the FBNS form. While the CRO has many forms, most of those listed on the CRO's website, such as marriage, birth and death certificates, appear similar to the FBNS form.[7] However, the court can address legitimate concerns by ordering that the CRO provide human transcribers, *except* for those forms for which the CRO documents an undue burden or fundamental alteration. This is consistent with the aims of the ADA and Defendant's rights to that defense where it actually asserts it. Ms. Martinez should not need to file a new case if Defendant again refuses to provide a human transcriber if she is filing a birth certificate or conducting other simple business.

### C. Training is within the scope of appropriate injunctive relief.

Ms. Martinez proposes an order regarding further training because Defendant has made it clear it already relies extensively on training to guide its staff on all aspects of its operations

---

[6] Plaintiff does not oppose tailoring injunctions to the remediation of specific online and PDF FBNS forms at issue in this case, and not a broader set (which may be a case for another day).
[7] Defendant's forms can be found online at https://www.acgov.org/auditor/clerk/forms.htm.

rather than providing, for example, written policies. (Def. Opp. 9.) Furthermore, Mr. Yankee testified that the CRO would allow staff to exercise "discretion" on their compliance with the law. Thus, an order that such training should include guidance on auxiliary aids or services is appropriate in light of Defendant's own preferred processes, its insistence that its staff use "discretion" to decide how to meet the CRO's legal obligations, and its lack of any written policies that might be more appropriate if the CRO had such writings.

Notably, Ms. Martinez does not over-specify the exact form or content of training, and certainly does not propose in any way "that all public employees must be qualified experts on ADA law" (Def. Opp. 10), an exaggerated rhetorical characterization by Defendant. Instead, Ms. Martinez proposes training appropriate to the needs and mechanisms at the CRO and integrated with the style and approach of the "extensive" training *Defendant already claims to perform*. (*See* Def. Opp. 9.) Thus, depending on the exact mechanisms and processes at the CRO, it may well be sufficient training for staff to recognize a request for an auxiliary aid or service and know which appropriate and more fully trained person at the CRO to consult.

Defendant makes no showing that such an approach to training would be a hardship or is against the public interest.

\* \* \*

In conclusion, this Court should grant a narrowly tailored injunction to prevent further violations from reoccurring.

DATED: June 20, 2024             Respectfully submitted,

**TRE LEGAL PRACTICE**

*/s/ Kristopher A. Nelson*
Kristopher A. Nelson

*Attorneys for Plaintiff*