Timothy Elder (Cal. Bar No. 277152)
Kristopher A. Nelson (Cal. Bar No. 342552)
**TRE LEGAL PRACTICE**
1155 Market Street, Tenth Floor
San Francisco, CA 94103
(415) 873-9199
(415) 952-9898 fax
telder@trelegal.com, knelson@trelegal.com

S. Tomiyo Stoner (Cal. Bar No. 289246)
**UNDAUNTED LAW FIRM, P.C.**
600 California St., Floor 7
San Francisco, CA 94108
(214) 415-7340
tstoner@undauntedlaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LISAMARIA MARTINEZ,**<br>        Plaintiff,<br>    v.<br><br>**COUNTY OF ALAMEDA,**<br>        Defendant. | Case No. 3:20-cv-06570-TSH<br><br>**OPPOSITION TO RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR NEW TRIAL**<br><br>Hearing Date: April 24, 2025<br>Hearing Time: 10:00 am<br>Courtroom: E<br>Judge: Hon. Thomas S. Hixson |

# TABLE OF CONTENTS

I. Introduction ............................................................................................................ 1

II. Factual and Procedural Background ..................................................................... 1

III. Legal Standard ..................................................................................................... 2

    A. Federal Rule of Civil Procedure 50 .................................................................. 2

    B. Federal Rule of Civil Procedure 59 .................................................................. 2

IV. The Judgment Should Stand ................................................................................ 3

    A. Law and evidence support the jury's finding that communication between Ms. Martinez and the CRO was not as effective as that offered to others. ........................................ 3

    B. Law and evidence do not clearly weigh against findings that the CRO failed to provide an appropriate auxiliary aid or service. ........................................................................... 6

    C. The Court's instructions to the jury regarding "deliberate indifference" were in line with Ninth Circuit precedent. ...................................................................................... 8

    D. Ms. Martinez is entitled to monetary damages under the DPA. ...........................11

    E. Ms. Martinez has met the "state funding" requirement under Government Code section 11135. ............................................................................................................... 15

V. A new trial is unwarranted. .................................................................................. 17

    A. The jury's verdict was supported by the clear weight of the evidence. ............... 17

    B. The Court's response to the jury's single question did not mislead the jury. ....... 17

    C. Jury instructions were correct, sufficient, and provided Defendant with a fair trial. ........... 18

        1. The instruction as to service, program, or activity at issue was proper. ........... 18

        2. The instruction as to deliberate indifference was proper. ................................. 19

    D. The Court appropriately granted injunctive relief. .............................................. 20

        1. The Court correctly found threat of irreparable injury where Martinez intended to return to renew her FBNS form and staff vowed not to help her under the discretion given to them by the County's policy. ...................................................................................... 20

        2. Timeliness matters when determining if communication was effective. ........................ 21

        3. The wording of the injunction can be cured without striking the remedy. ....................... 22

VI. Conclusion ........................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Antoninetti v. Chipotle Mexican Grill Inc.*, 643 F.3d 1165 (9th Cir. 2010) ................................ 23

*Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir. 2002) ................................................. 6, 21

*Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397 (1997) ..................................................11

*Beauchamp v. City of Long Beach*, No. CV 10-01270-RGK JCX, 2011 WL 10978002 (C.D. Cal. May 3, 2011) .................................................................................................................... 13

*Cal. Council of the Blind v. Cty. of Alameda*, 985 F. Supp. 2d 1229 (N.D. Cal. 2013) ............... 18

*Carter v. City of Los Angeles*, 224 Cal. App. 4th 808 (2014) ..................................................... 14

*Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) ..................................................... 2

*City of Barstow v. Mohave Water Agency*, 23 Cal.4th 1224 (2000) ............................................. 13

*City of Los Angeles v. City of San Fernando*, 14 Cal.3d 199 (1975) ........................................... 13

*City of Rialto v. U.S. Dep't of Def., et al.*, No. 5:04-CV-00079-PSG-SS, 2005 WL 5519062 (C.D. Cal. Aug. 16, 2005) .......................................................................................................... 16

*Coursen v. A.H. Robins Co.*, 764 F.2d 1329 (9th Cir.) .................................................................. 9

*Cropp v. Larimer Cnty.*, 793 F. App'x 771 (10th Cir. 2019) ......................................................... 4

*Duvall v. Cnty. of Kitsap*, 260 F.3d 1124 (9th Cir. 2001) ................................................ 9, 10, 11

*Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175 (2003) ...................................................... 16

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829 (9th Cir. 2014) ............... 3

*Flournoy v. State of Cal.*, 57 Cal.2d 497 (1962) ......................................................................... 13

*Golden Gate Transactional Indep. Serv., Inc. v. Cal.*, 2019 WL 1718691 (C.D. Cal. Jan. 22, 2019) ................................................................................................................................ 22

*Huezo v. Los Angeles Cmty. Coll. Dist.*, 672 F. Supp. 2d 1045 (C.D. Cal. 2008) ........................ 23

*Hung Lam v. City of San Jose*, 869 F.3d 1077 (9th Cir. 2017) ....................................................... 3

*Kirola v. City and County of San Francisco*, 74 F. Supp. 3d 1187 (N.D. Cal. 2014) ................... 18

*L.W. v. Grubbs,* 92 F.3d 894 (9th Cir. 1996) ............................................................................... 10

*Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1998) ...................................................................... 2

*Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365 (9th Cir. 1987) ................................... 3

*Lewy v. Southern Pac. Transp. Co.*, 799 F.2d 1281 (9th Cir. 1986) .............................................. 9

*Lonberg v. City of Riverside*, 300 F. Supp. 2d 942 (C.D. Cal. 2004) ................................... passim

*Midgett v. Tri-Cty. Metro. Transp. Dist. of Oregon*, 254 F.3d 846 (9th Cir. 2001) ...................... 22

*Patel v. Kent Sch. Dist.*, 648 F.3d 965 (9th Cir. 2011) ................................................................. 10

*Payan v. Los Angeles Cmty. Coll. Dist.*, Case No. 17-cv-1697-SVW-SK, 2018 WL 6164269 (C.D. Cal. Oct. 16, 2018) ................................................................................................................ 5

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ................................................. 2

*Regents of Univ. of California v. Super. Ct.*, 17 Cal.3d 533 (1976) .............................................. 13

*Sarfaty v. City of Los Angeles*, 765 F. App'x 280 (9th Cir. 2019) ................................................. 15

*Sarfaty v. City of Los Angeles*, No. 2:17-CV-03594-SVW-KS, 2017 WL 6551234 (C.D. Cal. Aug. 28, 2017) ........................................................................................................................................ 15

*Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824 (11th Cir. 2017)........................................... 3, 8

*United States v. 4.0 Acres of Land*, 175 F.3d 1133 (9th Cir. 1999) ................................................ 2

*Updike v. Multnomah Cnty.,* 870 F.3d 939 (9th 2017) .............................................................. 3, 12

*Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002) .......................................................................... 6

*Wells v. One2One Learning Foundation*, 39 Cal.4th 1164 (2006)................................................ 15

*Where Do We Go Berkeley v. California Dep't of Transp.*, 32 F.4th 852 (9th Cir. 2022) ...... passim

*Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276 (9th Cir. 2001) ......................... 2

**Statutes**
42 U.S.C. § 12182.......................................................................................................................... 8

Cal. Civ. Code § 51 ...................................................................................................................... 14

Cal. Civ. Code § 54 .................................................................................................... 12, 14, 15, 16

Cal. Gov. Code § 12650 ................................................................................................................ 15

Cal. Gov. Code. § 11135 ............................................................................................. ii, 17, 18, 19

Title II of the ADA, 42 U.S.C. §§ 12131 *et seq.* .................................................................. passim

Title III of the ADA, 42 U.S.C. §§ 12181 *et seq.* ................................................................. 3, 4, 7

**Rules**
Federal Rule of Civil Procedure 50 ................................................................................................ 2

Federal Rule of Civil Procedure 59 .......................................................................................... 2, 17

**Regulations**
28 C.F.R. § 35.160 .............................................................................................................. 3, 4, 7, 21

28 C.F.R. § 36.303 .......................................................................................................................... 3

OPPO. TO MOT. FOR J. AS A MATTER OF LAW OR NEW TRIAL

# OPPOSITION TO RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

## I. INTRODUCTION

Defendant County of Alameda attempts to revive legal arguments that this Court has already rejected. Governments must ensure that communication barriers for people with sensory disabilities do not prevent them from fully and equally enjoying services offered to the public. In the case of Ms. Martinez's visit to the CRO, this would have meant simply writing on a piece of paper under her direction, a common and obvious auxiliary aid or service that would have cost the County almost nothing in time or resources. Instead, the County fought for years to absolve itself of this minimal obligation under the law—and in so doing, highlighted just how resistant it was to providing its disabled residents with the parity of access they deserve. That is why the jury ruled against the County on a solid evidentiary record and this Court issued its injunction consistent with Ninth Circuit precedent. Defendant offers nothing new in its defense.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Lisamaria Martinez visited Defendant County of Alameda's Clerk-Recorder's Office ("CRO") on March 29, 2019, in order to file a fictitious business name statement form ("FBNS").[1] After presenting her form to the clerk for filing, she was informed she needed to make changes for it to be accepted. Explaining that she was blind and could not read or write on the paper form to make corrections, Ms. Martinez asked for assistance in making the corrections on the paper form. The CRO refused to provide assistance, citing a policy against filling out or altering forms. Ms. Martinez left and sought out assistance from others to fill out her form. She then returned to the CRO to eventually file her form.

Ms. Martinez filed this case on September 18, 2020. The Court conducted a jury trial concluding in April 2024. The jury found Defendant County of Alameda liable under the ADA for acting with deliberate indifference to her federally protected rights. The jury awarded Ms. Martinez damages under the Title II of the ADA and the Disabled Persons Act. In May 2024, Ms. Martinez

---

[1] Except where clarifying cites to the trial record are necessary, Ms. Martinez relies on the Court's findings of fact in the Order Granting in Part and Denying in Part Motion for Permanent Injunction 6-30, ECF No. 208.

OPPO. TO MOT. FOR J. AS A MATTER OF LAW OR NEW TRIAL

moved for a permanent injunction, which the Court granted in part and denied in part. On February 14, 2025, Defendant moved for judgment as a matter of law or for a new trial in the instant motion.

### III. LEGAL STANDARD

#### A. Federal Rule of Civil Procedure 50

A motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) is granted "only if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001). Courts considering such a motion do not evaluate the credibility of testimony nor weigh evidence and "must draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). If a jury verdict is supported by "substantial evidence," it cannot be disturbed. *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1998). "Substantial evidence" means "evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion" from the same evidence. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (cleaned up).

#### B. Federal Rule of Civil Procedure 59

Under Federal Rule of Civil Procedure 59(a), a trial court may grant a new trial, "even though the verdict is supported by substantial evidence, if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999). In considering a Rule 59 motion, the court "can weigh the evidence and assess the credibility of the witnesses." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014). A Rule 59 motion should not be granted unless the court is "left with the definite and firm conviction that a mistake has been committed." *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1372 (9th Cir. 1987) (cleaned up). An "*absolute absence of evidence* to support the jury's verdict" is required for an appellate court to overturn a trial court's determination that a verdict is *not* against the "clear weight of the evidence." *Hung Lam v. City of San Jose*, 869 F.3d 1077, 1084 (9th Cir. 2017) (cleaned up) (emphasis in original).

## IV. THE JUDGMENT SHOULD STAND.

### A. Law and evidence support the jury's finding that communication between Ms. Martinez and the CRO was not as effective as that offered to others.

Though immaterial to the ultimate outcome of this case, Defendant relies on the wrong legal standards in its arguments about effective communication. Title II regulations, which apply in this case, require that public entities like the County of Alameda "ensure that communications with [disabled individuals] are as effective as communications with others." 28 C.F.R. § 35.160(a)(1); *Updike v. Multnomah Cnty.,* 870 F.3d 939, 958 (9th 2017) (using the "as effective as communications with others" standard rather than Defendant's preferred "substantially equal" standard).[2] On the other hand, Title III regulations, which apply to non-governmental public accommodations, only require ensuring that communications with disabled individuals are "effective." 28 C.F.R. § 36.303(c)(1); *see also Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 834, 835 n.7 (11th Cir. 2017) (for private hospitals, the level of communication must be at least "substantially equal to that afforded to non-disabled patients").[3]

As Defendant argues, there are indeed many similarities between the Title II and Title III regulations. (Def.'s Renewed Mot. for J. as a Matter of Law or, in the Alternative, for New Trial ("Mot. for JMOL") 5, ECF No. 212.) Though courts often loosely cite to related authorities when there is no material difference between the public Title II or the private Title III requirements, here, in the context of effective communication, Title II holds public entities to a more precise standard of equitable access than private entities by the plain language of the regulations.

Defendant's reliance on *Silva* is misplaced because that case cuts against Defendant's arguments. In *Silva,* the Eleventh Circuit held that a plaintiff did not need to show the ultimate harm of a misdiagnosis or other adverse medical consequences to demonstrate a failure of effective communication for a deaf patient. *Silva*, 856 F.3d at 833-834. The correct standard examines

---

[2] Defendants cite both 28 C.F.R. § 35.160(a)(1) and *Updike* to claim that the governing standard is "substantially equal" even though neither support this claim. (*See* Mot. for JMOL 5.)
[3] *Cropp v. Larimer Cnty.*, 793 F. App'x 771, 783-84 (10th Cir. 2019), a Title II case cited here by Defendant, gets this wrong as well. *Cropp* mistakenly relies on *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824 (11th Cir. 2017), a Title III case, when it borrows the incorrect "substantially equal" standard. No Ninth Circuit cases making a similar mistake were found.

whether the deaf patient experienced an impairment in his or her ability to communicate medi-cally relevant information with hospital staff. *Id.* To properly analogize *Silva* to Ms. Martinez's circumstances, Ms. Martinez did not need to demonstrate that she was never able to file her form but only that she was impeded from doing so by ineffective communications. The evidence showed this and much more given that she was not able to file her form by credit card that same day and later had to hire a third party to help her. (Order Granting in Part and Denying in Part Mot. for Permanent Inj., Finding of Facts ("Inj. Facts") ¶¶ 51, 118-23, ECF No. 208.)

Even if the court were to use the less precise Title III standard, the trial record would still sup-port the jury's verdict. Ample evidence at trial supported the jury's conclusion that the communi-cation necessary for Ms. Martinez to file her form at the CRO on March 29, 2019, was not effective. The CRO was required to provide Ms. Martinez "an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b). The auxiliary aid facilitating that communication must be provided "in a timely man-ner" in order for it to be effective. *Id.* The County offers *same-day* FBNS filing service in the CRO for business owners who make proper payment, including by credit card, and have correct information on their forms. (Inj. Facts ¶ 49). Unlike sighted customers of the CRO, Ms. Martinez did not have access to this offering.

Mr. Yankee admitted that Ms. Martinez was unable to file her form on March 29, 2019, be-cause her blindness made it difficult for her to communicate in writing and put information on the form in response to the deficiencies identified by the County. (Decl. of Timothy Elder ("Elder Decl."), Ex. A, Trial Tr. Vol. 3, Testimony of Matt Yankee 471:15-472:19.) The jury heard com-pelling testimony about a sighted person in the CRO who was able to write corrected information on his form and file it in less than 10 minutes while Ms. Martinez waited for over an hour to get the assistance that she had requested. (Elder Decl., Ex. B, Trial Tr. Vol. 4, Testimony of Lisamaria Martinez ("Martinez Tr.") 615:15-616:9.) Ultimately Ms. Martinez did not receive same-day service because she had to leave without filing her form and paying by credit card. (Martinez Tr. 655:7-9; Inj. Facts ¶¶ 51, 118.) While the errors with Ms. Martinez's form were verbally communicated to her, she was not able to get an auxiliary aid from the County that

would ensure she could communicate back to the County for same-day service, which would have occurred if she had received the auxiliary aids and services needed for effective communication.

Next, Defendant incorrectly claims that evidence of Ms. Martinez generally talking with CRO staff shows that communications were "effective" as a matter of law, (Mot. for JMOL 6.) This Court has already rejected this legal argument, requiring a "fact-specific, individualized analysis of [Martinez's] circumstances" rather than treating it only as a matter of law. (Order Re. Mots. for Summ. J. ("SJ Order") at 7, ECF No. 54 (citing *Payan v. Los Angeles Cmty. Coll. Dist.*, Case No. 17-cv-1697-SVW-SK, 2018 WL 6164269, at *10 (C.D. Cal. Oct. 16, 2018); *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002)).) Further, notwithstanding Defendant's point that Ms. Martinez generally understood verbal conversation, the jury was still free to disbelieve the effectiveness of these communications. When Ms. Martinez asked Ms. Moran for clarification as to what the errors were and what section she was missing, Ms. Moran did not identify the section of the form by its alphanumeric identifier or form field description. (Inj. Facts ¶ 79.) Instead, Ms. Moran repeatedly used words like "here" and "there," which refer to spatial locations on the page, to describe where changes needed to be made. (Inj. Facts ¶ 79.) This is corroborated in the recording of Ms. Martinez's subsequent exchange with Ms. Briones, reflecting that Ms. Martinez was "confused" about the precise errors with her form on sections "C1 or 1C[?]" (Elder Decl., Ex. C, Admitted Exhibit 4C at 1:11-1:19; *see also* Fine Decl., Ex. E, ECF. No. 212-6.)

Defendant further tries to limit its effective communication obligations by suggesting that the CRO is merely a "library; that takes no action or interest in FBNS forms" and thus no government program exists to require corresponding effective communication.[4] But the Court already rejected this legal argument during summary judgment, finding "that both filing completed forms at the CRO and the CRO's advising patrons of forms' technical deficiencies qualify as services, programs, or benefits under Title II." (SJ Order at 5 (citing *Where Do We Go Berkeley v. California Dep't of Transp.*, 32 F.4th 852, 861 (9th Cir. 2022); *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002)).) Further, trial evidence contradicts Defendant's characterization that

---

[4] Additional, related discussion of "services, programs, and activities" is below in Section V.C.1.

the CRO does nothing with CRO forms except act as a "library." Among other actions, the CRO examines FBNS forms before they can be filed and provides feedback and letters explaining to customers what needs fixing before they can be accepted, as they did for Ms. Martinez. (Inj. Facts ¶¶ 43-44, 46, 48-49, 73-74, 79, 99, 110.) This process of reviewing a beneficiary's eligibility criteria fits classically within the things that government offices actively do—and for which they must provide effective communications to disabled customers like Ms. Martinez, which Defendant did not do.

In short, the communication provided by the CRO was not effective in allowing Ms. Martinez to file her FBNS form on March 29, 2019, under either the Title II or Title III standards, with substantial evidence in support of the jury's verdict to that effect and no clear evidence contradicting it.

**B. Law and evidence do not clearly weigh against findings that the CRO failed to provide an appropriate auxiliary aid or service.**

Defendant suggests that this Court erred by failing to more precisely define the program or activity at issue in accordance with *Where Do We Go*, 32 F.4th at 860. *Where Do We Go* involved the Ninth Circuit's reversal of a preliminary injunction relying on the Americans with Disabilities Act to delay Caltrans's clearing of homeless encampments. Defendant's reliance on *Where Do We Go* is misplaced for several reasons.

First, the Ninth Circuit was concerned about the precise scope of the program at issue because the plaintiff had brought a reasonable modification theory claim asking Caltrans to provide housing for relocated homeless campers. *Id.* at 860-61 ("what could be a 'reasonable modification' of that program."). This reasonable modification theory is distinct from the effective communication discrimination theory claim made by Ms. Martinez. Second, as to the alternate discrimination theory in *Where Do We Go*, the court there was not as concerned about the precise definition of the program as it was that the district court "wrongly used the lack of a precise outer limit for the discrimination clause to hold that Plaintiffs had shown serious questions on the merits" at a preliminary injunction stage. *Id.* at 863. This preliminary injunction context is very different from Ms. Martinez's final trial on the merits after a full presentation of evidence at trial by both

OPPO. TO MOT. FOR J. AS A MATTER OF LAW OR NEW TRIAL

parties. Third, even *Where Do We Go* acknowledged that for discrimination claims "[t]he focus of the inquiry … is not so much on whether a particular public function can technically be characterized as a service, program, or activity, but whether it is a normal function of a governmental entity." *Id.* at 861. And it is the normal function of a public entity like the CRO to review, process, file, and record forms like the FBNS.

Thus, here, unlike the argument about a preliminary injunction in *Where Do We Go* that Caltrans—an agency whose core function is normally transportation—also operated a vaguely defined homeless housing program, Ms. Martinez won a trial on the merits concerning a filing service directly related to the specific purpose and function of the CRO: reviewing, explaining corrections, accepting, and filing forms like the FBNS, which the CRO keeps in stock. (Inj. Facts ¶¶ 42, 44, 46, 49.) The concerns raised by Defendant about vagueness in a preliminary injunction analysis do not fit the available facts established after a trial on the merits for an incident involving a service directly and precisely connected to one of its own forms and functions.

Turning to the evidence, Defendant suggests that it tried to advise Ms. Martinez of the deficiencies of her form and that Ms. Martinez ultimately used that advice and the go back letter to eventually file her form at a later date. Defendant claims that, as a result, Ms. Martinez "received all of the benefits of the CRO's programs, services, or activities that she sought." (Mot. for JMOL 7.) But Defendants are silent as to when and how she received what she sought and the conditions and process by which she obtained it. The question is not whether Defendant provided any help at all nor on excusing ineffective, unequal, or time-delayed aids because Ms. Martinez was *eventually* able to file her form. *See Silva*, 856 F.3d at 834 (The focus of the ADA is on the "equal opportunity to participate in obtaining and utilizing services [and not] the downstream consequences") (citing 42 U.S.C. § 12182(b)(1)(A)(ii)). The question is, did Ms. Martinez have "an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity" in a "timely manner"? 28 C.F.R. § 35.160(b). The jury appropriately answered that she did not.

It is undisputed that Ms. Martinez was not able to file her form during her visit to the CRO on March 29, 2019. (Inj. Facts ¶ 118.) The jury heard evidence that this was so because she is blind

OPPO. TO MOT. FOR J. AS A MATTER OF LAW OR NEW TRIAL

and no one would help her write corrections on a blank or already-signed form. (Inj. Facts ¶¶ 76, 78, 115, 199; Admitted Ex. 4C at 02:25-2:51, 07:16-07:23.) Evidence also suggested that Ms. Martinez hired Emily Grim as a reader transcriber to help her prepare a corrected FBNS form before returning to the CRO to file her corrected form. (Inj. Facts ¶ 119.)

Evidence thus supports the conclusion that if Ms. Martinez had been sighted, or if the CRO had provided a scribe, then she would have been able to file her form that same day, in one visit, and without having to obtain additional assistance outside of the CRO at her own expense for a second trip on May 31, 2019. (*See* Admitted Ex. 4C at 5:22–5:33 ("they would stand here and correct it if they could see, right?").)

Given the above substantial evidence, the fact finder concluded that Ms. Martinez's ultimate filing of her FBNS form was not sufficiently equal or effective. Defendant has also not shown a mistake by the jury that needs correction. The verdict should be upheld.

### C. The Court's instructions to the jury regarding "deliberate indifference" were in line with Ninth Circuit precedent.

When reviewing jury instructions for abuse of discretion the district court gets "substantial latitude in tailoring them." *Lewy v. Southern Pac. Transp. Co.*, 799 F.2d 1281, 1287 (9th Cir. 1986). The inquiry is "whether, considering the charge as a whole, the court's instructions fairly and adequately covered the issues presented, correctly stated the law, and were not misleading." *Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1337 (9th Cir.) *modified*, 773 F.2d 1049 (9th Cir. 1985).

"Deliberate indifference" has two elements: notice and a failure to act. *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139-40 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001). First, a plaintiff needs to alert the public entity to a need for accommodation (or the need must be obvious or required by statute or regulation). *Id.* at 1139. Second, "a public entity does not 'act' by proffering just any accommodation: it must consider the particular individual's need when conducting its investigation into what accommodations are reasonable." *Id.* This "failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.*

Here, contrary to Defendant's assertions, the jury instructions fairly and accurately described the deliberate indifference standard based on Ninth Circuit precedent, drawing directly from case law. *Compare* Final Jury Instructions 16, ECF No. 165 *with Duvall*, 260 F.3d at 1139-40. The jury then appropriately applied that standard to the facts of the case.

Defendant seeks to unfairly heighten the perceived standard for the jury by undermining the clear language from Ninth Circuit precedent on the ADA. Defendant points to cases outside the context of the ADA and from cases with critically distinct underlying facts to this one, hoping to add unnecessary and extrinsic modifiers such as "more than gross negligence" and "stringent standard" for obviously self-serving reasons of leading the jury to the result it seeks. The Court rightly rejected this and instead drew directly on established Ninth Circuit precedent to determine the language describing the deliberate indifference standard under the ADA.

Defendant's reliance on *L.W. v. Grubbs,* 92 F.3d 894, 899-900 (9th Cir. 1996) is inapposite because that case involves a quite different standard of "deliberate indifference" applicable in the context of Section 1983 "failure to supervise" claims where employees are injured. Its line of cases involves the "state-created danger exception" to the "general rule" when interpreting the Constitution that governments are not liable for failing to protect individuals against danger. *See id.* at 898; *see also Patel v. Kent Sch. Dist.*, 648 F.3d 965, 968, 971-72, 974 (9th Cir. 2011) (discussing a Section 1983 claim for an "alleged failure to properly supervise" and the "state-created danger" exception applicable in such a situation.)

Ms. Martinez did not bring such a state-created danger case. She brought an ADA case in which a "deliberate indifference" measure of intent applies only to whether damages are available to her under the statute. This is unlike Section 1983, where a "deliberate indifference" inquiry tests whether a constitutional duty to protect exists at all, a test which (unlike the ADA) requires an analysis of "affirmative conduct on the part of the state in placing the plaintiff in danger" and "'deliberate indifference' to a 'known or obvious danger.'" *Id.* at 974 (citations omitted). In contrast, the standard under the ADA when seeking damages is not a constitutional one but rather requires that Ms. Martinez show the Defendant acted with deliberate indifference to her federally

protected statutory rights. *Duvall*, 260 F.3d at 1138-39. (*See also* Order re Jury Instructions and Verdict Form 8, ECF No. 161).

Defendant's additional reliance on *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397 (1997) is similarly inapposite and misleading because it involved a Section 1983 action (a decision to hire a sheriff's deputy who allegedly injured the plaintiff). The court there held that permitting the plaintiff's claim in that case to proceed would risk serious constitutional and federalism issues and was not what Congress had intended. *Id.* at 415.

Using the approach from the constitutionalized context of Section 1983 would be unfairly prejudicial against Ms. Martinez in the ADA effective communication context. The ADA effective communication framework does not have similar Congressional intent to protect constitutional standards and to address law enforcement concerns about public safety.

The jury here appropriately applied the Ninth Circuit standard for deliberate indifference to the facts. In addition to using a white cane and wearing sunglasses, Ms. Martinez emphatically put the County on notice that she could not physically fill the form out because she cannot read and write on printed paper. (Inj. Facts ¶¶ 67, 92-94.) Ms. Martinez attempted to educate the CRO staff on her federally protected right to have the CRO provide "auxiliary services" under "Title II of the ADA." (Adm. Ex. 4C at 1:52-2:24, 4:37-4:50.) Ms. Martinez further put Supervisor Briones on notice of the harm of being unable to file her form that day and her need to get someone else to help if CRO staff did not assist her that day. (*Id.* at 3:09-3:16 ("I can get it corrected here if you help me. I still have to have someone help me fill this out. You don't understand…").) In response to this notice, multiple levels of CRO staff and supervisors deliberately and knowingly refused to act to fill out the form for the same explicit reason: policy. (Inj. Facts ¶¶ 83, 97, 107.) The CRO management chose to uphold its policy against filling out forms instead of acknowledging the individual needs of Ms. Martinez. (Inj. Facts 107.)

Defendant's invocation of "bureaucratic slippage" to defend itself (Mot. for JMOL 11) does not fit the facts in evidence. This is not a situation where a public entity was negligent in failing to have a trained signed-language interpreter available immediately, needed time to arrange one, and then changed their policy and procedures for the future, as in *Updike*, 870 F.3d at 951-52.

Unlike with ASL interpreters, transcription does not require extensive training or certification such that a specialized person must be retained, and other government offices have routinely assisted Ms. Martinez in this fashion. (Inj. Facts ¶¶ 32-38.) Instead, here, Ms. Martinez informed CRO staff of her needs and they deliberately refused to provide appropriate and readily available assistance on that day or any future day, per CRO policy. (Inj. Facts ¶¶ 67, 92-94, 83, 97, 107.)

The fact that the CRO disagreed with the law in favor of its policy and decided to act in a contrary way does not invalidate the deliberateness of its decision. The substantial evidence at trial readily supports the jury's finding of deliberate indifference and there is little or no evidence against the jury's finding.

### D. Ms. Martinez is entitled to monetary damages under the DPA.

The jury's verdict that Defendant County of Alameda is liable for monetary damages under the DPA should be upheld. Under that statute, "[a]ny person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of [ ] public facilities . . . or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2 … is liable for … damages … and attorney's fees." Cal. Civ. Code § 54.3. The public policy purpose of the DPA as expressed by the legislature is "to encourage and enable disabled persons to participate fully in the social and economic life of the state and to engage in remunerative employment." Cal. Civ. Code § 54.5(e). Liability for damages under the DPA helps meet the legislature's intent to enable blind owners of small businesses like Ms. Martinez to have equal access to filing government forms with the same convenience enjoyed by others.

Under the best available case law and analysis, the CDPA applies to entities like the County as a public entity.[5] *See* Section 54(a) and (c) (ensuring access to public facilities including "streets, highways, sidewalks, walkways" and incorporating Title II of the ADA by reference). Although the statute does not define "person," "firm," or "corporation," the California Supreme Court and Courts of Appeal have repeatedly held that government entities are statutory "persons." *See, e.g.,*

---

[5] Ms. Martinez agrees with the Court that it does not appear that the Ninth Circuit has resolved whether public entities can be liable for damages under the California Disabled Persons Act but also agrees that the opinion in *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 946-49 (C.D. Cal. 2004) is the most persuasive analysis available. (*See* Order re Jury Instructions and Verdict Form 6, ECF No. 161.)

*Regents of Univ. of California v. Super. Ct.*, 17 Cal.3d 533, 536 (1976) ("'person, association, co-partnership or corporation'" included public entity); *City of Los Angeles v. City of San Fernando*, 14 Cal.3d 199, 276-77 (1975), *disapproved on other grounds in City of Barstow v. Mohave Water Agency*, 23 Cal.4th 1224, 1244-45 (2000) ("person, firm or corporation" in California Civil Code § 1007 includes governmental agencies); *Flournoy v. State of Cal.*, 57 Cal.2d 497, 498-499 (1962) (applying to a state government a wrongful death statute attaching liability to any "person" responsible for another's death).

Additionally, cases in the Ninth Circuit have repeatedly found Section 54.3 to apply to public entities. *See, e.g., Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 947 (C.D. Cal. 2004) (Defendant's position that a public entity is not a "person" within the meaning of the CDPA "is simply not supported by case law, and the court therefore rejects it."); *Beauchamp v. City of Long Beach*, No. CV 10-01270-RGK JCX, 2011 WL 10978002, at *3 (C.D. Cal. May 3, 2011) ("Section 54.3 applies to public entities"). *See also Varga v. City of Culver City*, No. 210CV06578JHNFFMX, 2011 WL 13274221, at *2 (C.D. Cal. Mar. 15, 2011) (denying motion to dismiss and finding plaintiff sufficiently stated a claim for damages under Section 54.3 against defendant city).

Despite Defendant's disparagement of the analysis by the trial court in *Lonberg* (Mot. for JMOL 11, 14), that analysis remains the most cogent available. Most other courts rarely analyze the DPA independent of the Unruh Act, despite the differing history and language of each statute's coverage. Defendant's attempts to undermine *Lonberg*'s analysis of the DPA and its view that public entities are covered by the statute are not persuasive.

Defendant overstates in its favor the views of the California Court of Appeal in *Carter v. City of Los Angeles*, 224 Cal. App. 4th 808 (2014). In *Carter*, the appellate court did not undertake any analysis of the CDPA nor did it make any findings as to whether a plaintiff could recover statutory damages from a public entity. *See id.* at 825.  In that review of class certification and of a class action settlement involving a city, the Court of Appeal did not hold, as Defendant suggests, that "no California court would likely consider a municipal entity to be liable under the Unruh Civil Rights Act or the Disabled Persons Act," nor did it hold more specifically that a

OPPO. TO MOT. FOR J. AS A MATTER OF LAW OR NEW TRIAL

public entity like the County of Alameda could not be liable for actual damages under the DPA. *See id.* at 825. (*See also* Mot. for JMOL 12.) The appellate court did state "that statutory damages are unlikely here," then in support of that view proceeded to analyze only the Unruh Civil Rights Act's use of "business establishment" in its scope. *See Carter*, 224 Cal. App. 4th at 825. Throughout its discussion of the likelihood of incidental damages in the class context, the appellate court never analyzed the scope of the DPA, which unlike the Unruh Act does not speak of "business establishments" but rather applies to "[a]ny person or persons, firm or corporation." *Compare* Cal. Civ. Code § 51(b) ("all business establishments of every kind whatsoever") *with* Cal. Civ. Code § 54.3(a) ("Any person or persons, firm or corporation"). The appellate court continued its Unruh-only analysis with the dicta that "[w]e *think* a public entity providing sidewalks and curbs to its citizens does so as a public servant, not a commercial enterprise." *Carter*, 224 Cal. App. 4th at 825 (emphasis added). It further made it clear that its thoughts on the provision of sidewalks as a non-commercial endeavor was intended as dicta and not as a binding holding by adding, "We need not determine the issue definitively here because the overarching point is that appellants deserve to litigate the merits of their claims, not have them dismissed out of hand in a class action settlement." *Id.* In fact, the court explicitly refrained from making such a determination, holding that it "need not determine the issue definitively … because the overarching point is that appellants deserve to litigate the merits of their [damages] claims, not have them dismissed out of hand … ." *Id.*

The district court in *Sarfaty v. City of Los Angeles*, No. 2:17-CV-03594-SVW-KS, 2017 WL 6551234, at *6 (C.D. Cal. Aug. 28, 2017) undertook only a minimal and incomplete analysis of a single other California statute (Cal. Civ. Code § 14, which expands the definition of "person") and no other case law to summarily find that a public entity did not fit under the CDPA's damages provision, but that court's decision to grant the defendant's motion to dismiss was reversed by the Ninth Circuit. *Sarfaty v. City of Los Angeles*, 765 F. App'x 280, 282 (9th Cir. 2019). The dearth of analysis combined with its reversal makes *Sarfaty* notably less persuasive in its arguments than *Lonberg*.

*Wells v. One2One Learning Foundation*, 39 Cal.4th 1164 (2006), cited favorably by Defend-

ant (Mot. for JMOL 12-14), is also unavailing, most critically because the relevant statute at is-

sue in *Wells*—the California False Claims Act (CFCA), Cal. Gov. Code § 12650 *et seq.*,

fundamentally differs in purpose and intent from the DPA. The purpose of the CFCA is to "de-

tect, deter, and punish those who defraud the government of public money." The False Claims

Act, AB 1196, Senate Judiciary Committee (July 14, 2009). Given this indication of intent for the

CFCA, encompassing public entities as a target to protect those same public entities would be

contrary to statutory purpose. On the other hand, the express purpose of the DPA is to grant disa-

bled individuals equal rights to full participation in society. *See* Cal. Civ. Code §§ 54(a), 54.5(e).

Since public entities are in a position to block such full participation—as Defendant has done in

this case—including public entities as defendants in a DPA action is very much in line with the

express purpose of this statute. As such, attempting to apply the analysis of the CFCA in *Wells* to

the situation here under the DPA is of limited or no utility.

*Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175 (2003) held that the common-law princi-

ples of tort embodied in California Civil Code section 1714 did not satisfy the statutory require-

ment in California Government Code section 815 that a specific statute (*i.e.,* not just the general

law of torts) is required for a public entity to be liable. *Id.* at 1183. ("direct tort liability of public

entities must be based on a specific statute declaring them to be liable, or at least creating some

specific duty of care, and not on the general tort provisions of Civil Code section 1714"); *see*

*also City of Rialto v. U.S. Dep't of Def., et al.*, No. 5:04-CV-00079-PSG-SS, 2005 WL 5519062,

at *8 (C.D. Cal. Aug. 16, 2005) ("In short, under *Eastburn*, Plaintiffs may not bring a general

negligence claim against the County."). But here the County's liability is based not on a com-

mon-law tort or a general negligence claim but rather on a specific statute that states the basis of

Defendant's liability: California's Disabled Persons Act, Cal. Civ. Code § 54.3. *See also Lon-*

*berg*, 300 F. Supp. 2d at 946. Thus, *Eastburn*'s expressed fear that "the general rule of immunity

for public entities would be largely eroded by the routine application of general tort principles" is

avoided. *Eastburn*, 31 Cal. 4th at 1183.

Finally, *City of Rialto* also fails to undermine *Lonberg*'s analysis. In relevant part, *City of Rialto* dealt with claims against the County of San Bernardino for negligence and continuing trespass to land, relying on generalized statutes like Civil Code sections 1708 and 1714 as the vehicle. *City of Rialto*, 2005 WL 5519062 at *7. As the court explained, citing *Eastburn*, these kinds of generalized liability statutes cannot be used against public entities because of Government Code section 815. *Id.* at *7-8 (citing *Eastburn*, 31 Cal. 4th at 1183). But the DPA is not a generalized liability statute like those at issue in *Eastburn* and *City of Rialto* but rather a statute with specific bases of liability. As such, the warning in *City of Rialto* that *Lonberg* did not consider *Eastburn* is not an expression of disagreement with *Lonberg* but rather a reminder that *Lonberg*'s analysis is limited to what it set out to analyze: specific statutes like the DPA.

Given the sound reasoning of *Lonberg*, and the distinguishable analysis from cases offered by Defendant, the jury's verdict that Defendant County of Alameda is liable for monetary damages under the DPA should be upheld.

### E.  Ms. Martinez has met the "state funding" requirement under Government Code section 11135.

In addition to other elements, to prove a violation of Government Code section 11135 and thus to seek injunctive relief, a plaintiff must show that the "program or activity … is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state." Cal. Gov. Code. § 11135(a).

This "state funding" element of Section 11135 was stipulated to by Defendant and presented to the jury. Defendant now appears to regret that decision and is trying to back out of the plain meaning of that stipulation. On the first day of trial, due to Defendant's concerns that presenting evidence of its significant revenue would cause prejudice, Ms. Martinez and Defendant County of Alameda jointly filed the Stipulation Regarding Element of Claim Under Government Code Section 11135: "For purposes of this litigation only, and specifically Plaintiff's Third Cause of Action under California Government Code section 11135, the parties stipulate that the County of Alameda has received funding or financial assistance from the State of California for the relevant period." (Stipulation Regarding Element of Claim Under Government Code Section 11135 at 1,

ECF No. 147.) If Defendant's overly narrow reading of the stipulation were correct, it would have been pointless to attach this stipulation of fact to the funding element of the third cause of action under 11135. Defendant should have merely stipulated that the County receives state funding without any mention of the funding element of Ms. Martinez's Section 11135 claim.

Further, even if this stipulation could be interpreted to apply only to the obvious fact that a county in California receives funding from the state rather than to the element of Ms. Martinez's Section 11135 claim named in its caption and text, additional facts elicited at trial supported the jury's conclusion that state funding flowed through to the CRO via the County's general fund. (*See* Inj. Facts ¶¶ 40-41.) The "FBNS," or "fictitious business name statement … is a form that is filed with the County of Alameda that provides notice to the public that a company is doing business under another name." (Inj. Facts ¶ 44.) Customers visit the CRO in order to file certain forms with the County, including the FBNS. (Inj. Facts at ¶¶ 46, 49.)

Neither the limited dicta Defendant cites to in *Kirola v. City and County of San Francisco*, 74 F. Supp. 3d 1187, 1249 (N.D. Cal. 2014) nor *San Francisco Taxi Coalition v. City and County of San Francisco*, 979 F.3d 1220, 1227-1228 (9th Cir. 2020) supports Defendant's apparent view that state funding must be directed specifically and only to FBNS forms in order to satisfy this element (*See* Mot. for JMOL 16.)

In *Kirola* the court found the plaintiff had only presented "bare and conclusory allegations" that this element of Section 11135 had been met, with no showing of any evidence of any funding originating from the state. *Kirolo*, 74 F. Supp. 3d at 1249, 1266. With no evidence speaking to this element, the court had no choice but to rule against the plaintiff.

In *San Francisco Taxi Coalition*, the question is whether the SFMTA, a huge, largely independent entity charged with public transportation, parking enforcement, issuing street construction permits, and various other functions would be subject to Section 11135 in the operation of its taxi medallion programs. In contrast, the CRO, a recipient of state funds via the County's general fund, and whose duties are mandated under the State Constitution, Article II, paragraph 5, is more directly connected to the core governance of the County. And thus, its FBNS functions (which are ultimately performed as a statewide mandate in each county) are not legally

independent of the County of Alameda. The County of Alameda's CRO is more analogous to the County of Alameda's Registrar of Voters, which courts have found to be actionable under 11135. *See Cal. Council of the Blind v. Cty. of Alameda*, 985 F. Supp. 2d 1229, 1245 (N.D. Cal. 2013).

The jury instruction accurately reflected the language of the stipulation. (*Compare* Stipulation Regarding Element of Claim Under Government Code Section 11135 at 1, ECF No. 147 *with* Final Jury Instructions 11, ECF No. 165.) Additional facts at trial buttress the jury's finding that the state funding element of Section 11135 was met. As a result, the finding that Defendant violated Section 11135 should be maintained.

## V. A NEW TRIAL IS UNWARRANTED.

### A. The jury's verdict was supported by the clear weight of the evidence.

As Ms. Martinez explained in detail above, (1) the CRO did not effectively communicate with Ms. Martinez on March 29, 2019; (2) the CRO did not provide Ms. Martinez with appropriate auxiliary aids and services and Ms. Martinez could not access all of the CRO's programs, services, and activities that she sought in an equitable manner; (3) Ms. Martinez demonstrated deliberate indifference on the part of the CRO; and (4) the required element of state funding under Section 11135 was met via stipulation to that element along with additional evidence. As the jury's verdict is supported by the clear weight of the evidence, Defendant is not entitled to a new trial under Rule 59.

### B. The Court's response to the jury's single question did not mislead the jury.

This Court had to respond to the jury's question: "Does the ADA experience apply to online services?" (Note from the Jury 1, ECF No. 170.) In its response, the Court ensured that the jury focused on the appropriate elements in the verdict form by first starting each of its responses with a clear indication to which question on the verdict form the Court's response applied: "In answering Question 1 on the verdict form" and "In answering question 6 on the verdict form." Question 1 on the verdict form, as the Court re-stated when answering the jury, applied to Ms. Martinez's "attempt to file the FBNS form in-person on March 29, 2019." (Answer to Jury Question No. 1 at 1, ECF No. 173.) With regard to Question 6 on the verdict form, the Court stated that the ADA applied "to the services, programs, or activities of a public entity, regardless of

1    whether they are provided in-person or online." Given the presence of these two questions on the

2    verdict form, it is difficult to see how the Court could have more clearly indicated to the jury

3    which of its responses about the applicability of the ADA to online services applied to which

4    question on the verdict form.

5        Other alleged jury confusion raised by Defendant simply does not causally relate to the sub-

6    stance of the Court's response. Instead, the alleged confusion is necessarily caused by the need

7    for a jury to sift through complex evidence introduced for legal reasons that might be obscure to

8    a lay person. For example, Ms. Martinez had to introduce evidence about the problems with De-

9    fendant's online forms, in part, to rebut Defendant's argument that those online and electronic

10   options sufficed as auxiliary aids and services. Further, information about the online PDF form

11   was relevant background information to explain how Ms. Martinez had attempted to fill out the

12   form on her own and how the errors made on the form had come about. (Inj. Facts ¶¶ 55-57.)

13   While the evidence introduced at trial might be confusing for a lay jury, that alone does not ren-

14   der this Court's response to a jury's question itself improper or misleading.

15       **C. Jury instructions were correct, sufficient, and provided Defendant with a fair**

16       **trial.**

17           *1. The instruction as to service, program, or activity at issue was proper.*

18       Defendant's criticism of the Court's jury instruction is that the Court did not "specifically de-

19   fine the "program, service, or activity" at issue in Ms. Martinez's claim. []" (Mot. for JMOL 22).

20   But evidence at the summary judgment stage at then at trial supported the Court's definition as

21   used in the instructions as "filing completed forms at the Clerk Recorder's Office and the Clerk

22   Recorder's Office advising patrons of forms' technical deficiencies…." (Final Jury Instructions

23   at 12, ECF No. 165.)

24       Defendant cites only to *Where Do We Go*, 32 F.4th at 860 to argue that the jury instructions

25   should have been more specific. But the holding in *Where Do We Go* that the district court's de-

26   scription was too analytically vague for an appellate court to use in its review, is of little help to

27   Defendant given the formulation of the instructions here and the evidence presented at trial. First,

28   *Where Do We Go* did not involve the sufficiency of jury instructions. It analyzed whether a

OPPO. TO MOT. FOR J. AS A MATTER OF LAW OR NEW TRIAL

preliminary injunction was appropriate in light of the government's argument that such an in-junction would result in a "fundamental alteration." *Id.* Second, the district court's vague defini-tion (a "program regarding the removal of homeless encampments") was problematic because it negatively affected the ability of the appellate court to conduct proper judicial review. *Id.*

In contrast, here, the question was for the jury, not judicial review of a preliminary injunction. The descriptions were analytically applicable, appropriate for a jury's use, and backed by evi-dence. "[F]iling completed forms" and "advising patrons of forms' technical deficiencies" are simple and straightforward descriptions of programs, services, or activities. An appellate court can apply them and they appropriately guide the jury, without usurping its discretion to bring ju-ror's own lay understanding of a "program, service, or activity" to bear on its ultimate decision.

Further, these instructions were in line with the evidence. Relevant trial evidence considered by the jury about what constituted a "program, service, or activity" of the CRO established that, among other activities, the CRO reviews customer's forms for errors, including the FBNS form, before accepting them for filing with the County of Alameda or rejecting them with information to fix them. (Inj. Facts ¶¶ 43-44, 46, 48-49.) CRO staff orally flag mistakes with forms and pre-pare "go back letters" if needed listing what would need to be corrected to accept forms for fil-ing, both of which CRO staff did for Ms. Martinez. (Inj. Facts ¶¶ 73-74, 79, 99, 110.) Based on this evidence, the jury could independently conclude that advising patrons of forms' technical de-ficiencies qualify as services, programs, or benefits under Title II, a conclusion in line with prec-edent and prior rulings in this case. *See Where Do We Go*, 32 F.4th at 861 (Title II "applies to a wide range of public functions, such as access to public sidewalks, medical licensing, and zon-ing."); *Barden*, 292 F.3d at 1076 (Title II covers "anything a public entity does") (cleaned up). (*See also* SJ Order 5-6, ECF No. 54.)

### 2. The instruction as to deliberate indifference was proper.

Defendant offers nothing new in its argument here and seeks a new trial for the same reasons it requests judgment as a matter of law. *See argument above in* Section IV.C.

**D. The Court appropriately granted injunctive relief.**

*1. The Court correctly found threat of irreparable injury where Martinez*
*intended to return to renew her FBNS form and staff vowed not to help her*
*under the discretion given to them by the County's policy.*

Defendant's authorities are distinguishable; substantial evidence of redressable injury to Ms. Martinez was presented to the jury. *Midgett v. Tri-Cty. Metro. Transp. Dist. of Oregon*, 254 F.3d 846 (9th Cir. 2001) compared the difference between an allegation of standing and an entitlement to injunctive relief at the stage where the plaintiff had lost at summary judgment.[6] That is a very different procedural posture from the situation here, where Ms. Martinez has obtained a liability finding in her favor after a trial. Likewise, *Golden Gate Transactional Indep. Serv., Inc. v. Cal.*, 2019 WL 1718691, at *5 (C.D. Cal. Jan. 22, 2019) involved a motion to dismiss.

As a factual matter, FBNS forms must be renewed every 5 years. (Inj. Facts ¶ 45; *see also* Martinez Tr. 653:12-22, 658:2-11.) Ms. Martinez's form was issued in 2019, five years before the trial. (Inj. Facts ¶ 128.) Ms. Martinez indicated an intent to return to the CRO to renew her FBNS form. (Martinez Tr. 653:12-22, 658:9-10.) Ms. Briones and Ms. Moran testified that they would not complete blank FBNS forms for Ms. Martinez or other blind individuals. (Inj. Facts ¶ 192.) While CRO staff have discretion to assist a blind person, they are not required to do so as an exception to the general policy against helping anyone. (Inj. Facts ¶¶ 189-198.) In the absence of an injunction, Ms. Martinez was at risk of returning to the CRO and once again being denied the auxiliary aids and services deemed necessary to provide her with an equal opportunity to benefit from the CRO's services. *See Antoninetti v. Chipotle Mexican Grill Inc.*, 643 F.3d 1165, 1175 (9th Cir. 2010) (irreparable injury because plaintiff intended to return, an ADA violation had been shown, and policies in place did not resolve that violation). *See also Huezo v. Los Angeles*

---

[6] *Midgett*, 254 F.3d, also involved an entirely different title of the ADA pertaining to transportation, 49 C.F.R. §§ 37.163 and 161(c), which establish that isolated or temporary problems caused by lift malfunctions are not violations. That summary judgment decision against the plaintiff bus rider also turned on the important fact that the Federal Transit Administration found that Tri-Met was in compliance with the ADA public transportation requirements. Unlike the unintentional slippage of bus lifts that sometimes break down, are tolerated under the Department of Transportation regulations, and that had been found by a federal agency to be in compliance, here the County of Alameda has been found after a trial to be in violation of the ADA and is explicitly choosing to allow staff discretion to continue to violate its affirmative auxiliary aid requirements.

*Cmty. Coll. Dist.*, 672 F. Supp. 2d 1045, 1063 (C.D. Cal. 2008) (issuing injunction to remediate specific access barriers and policies after granting partial summary judgment to the plaintiff in a Title II ADA claim because plaintiff would "continue to suffer irreparable injury due to the numerous access barriers" that remained after judgment).

Defendant's downplaying of the testimony of Moran and Briones does not call the facts found by this Court into question. Defendant offers nothing more than a self-serving critique of the credibility of its employees' candid testimony.

### 2. Timeliness matters when determining if communication was effective.

Defendant further challenges this Court's finding of a time differential when comparing a human transcriber and the computer kiosk because "[t]hat one auxiliary aid or service might require slightly more time than another auxiliary aid or service does not render one reasonable and the other unreasonable." (Mot. for JMOL 24.)

Defendant offers no support for this legal misstatement. A "reasonable modification" theory was not tried to this jury. Instead, here, the jury was instructed only on a discrimination theory for a failure to provide effective communication. In such a claim, the question is not one of "reasonableness." The question is whether requested auxiliary aids were provided to ensure that the plaintiff had "an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b). Timeliness matters because it is discrimination to "[p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 35.130(b)(1)(iii).

Undisputed evidence showed that the process of using a human transcriber was very near the level of time required by the sighted experience: Compare the ten minutes for Ms. Grecco to work with a human transcriber to achieve her result with the ten minutes it took the sighted customer observed by Ms. Martinez. (Inj. Facts ¶¶ 171, 86; Martinez Tr. 615:15-616:9.). It is also notable that Defendant did not present testimony to rebut Ms. Martinez's expert demonstration that the kiosk was not independently accessible and that, even with sighted assistance, it would

take at least twice as long to complete the form using the kiosk than doing so with a CRO-provided transcriber. (Elder Decl. Ex. D, Trial Tr. Vol. 3, Testimony of Steven Clark 536:17-537:20, 541:1-14; Inj. Facts ¶¶ 160-162, 171.) On this record, Defendant cannot reasonably complain about the weight of the evidence supporting the Court's findings.

### 3. The wording of the injunction can be cured without striking the remedy.

Defendant offers an impressively literal reading of the Court's injunctive language to attempt to escape judgment. Defendant suggests that the injunction must be invalidated because it leaves no room to provide other auxiliary aids to blind individuals seeking other kinds of assistance. (Mot. for JMOL 25.) Defendant should understand the spirit of the injunction refers to providing human transcriber service to blind individuals who request *that* auxiliary aid. If Defendant is truly confused and concerned about the grammar of the Court's order it can move under Rule 60 or 65. Plaintiff will not oppose a modification that clarifies the spirit of the remedy requiring it "to provide transcriber services to any blind or visually impaired individual who requests [*that*] assistance with a CRO form."

### VI. CONCLUSION

As the verdict is supported by substantial evidence adequate to support the jury's conclusions and those conclusions are not against the clear weight of the evidence, Defendant's motion should be denied and its arguments rejected yet again so that this unnecessarily protracted litigation can finally conclude.

DATED: March 10, 2025                    Respectfully submitted,

                                         **TRE LEGAL PRACTICE**

                                         */s/ Timothy Elder*
                                         Timothy Elder

                                         *Attorneys for Plaintiff*