# Exhibit B

**Volume 4**

**Pages 558 - 709**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Thomas S. Hixson, Magistrate Judge

| | |
|---|---|
| LISAMARIA MARTINEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | **NO. 3:20-CV-06570 TSH** |
| ) | |
| COUNTY OF ALAMEDA, MELISSA ) | |
| WILK, in her individual ) | |
| capacity, EVA HE, in her ) | |
| individual capacity, MARIA ) | |
| LAURA BRIONES, in her ) | |
| individual capacity, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

                            San Francisco, California
                            Friday, March 29, 2024

**TRANSCRIPT OF JURY TRIAL PROCEEDINGS**

For Plaintiff:

        TRE LEGAL PRACTICE
        1155 Market Street, Tenth Floor
        San Francisco, California 94103
   **BY: TIMOTHY R. ELDER, ATTORNEY AT LAW**

        UNDAUNTED LAW FIRM, P.C.
        600 California Street, Seventh Floor
        San Francisco, California 94108
   **BY: S. TOMIYO STONER, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY: Kelly Shainline, RPR, CRR, CSR No. 13476
              Official United States Reporter

```
 1   APPEARANCES:  (CONTINUED)

 2   For Plaintiff:
                             UNDAUNTED LAW FIRM, P.C.
 3                           600 California Street, Seventh Floor
                             San Francisco, California 94108
 4                   BY:     S. TOMIYO STONER, ATTORNEY AT LAW

 5
     For Defendant:
 6                           ORBACH HUFF & HENDERSON LLP
                             6200 Stoneridge Mall Road, Suite 225
 7                           Pleasanton, California 94588
                     BY:     KEVIN E. GILBERT, ATTORNEY AT LAW
 8                           NICHOLAS D. FINE, ATTORNEY AT LAW

 9

10   Also Present:           Lisamaria Martinez
                             Michelle Korosy, Paralegal
11                           Matthew Yankee, County of Alameda

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                            I N D E X

 2    Friday, March 29, 2024 - Volume 4

 3                                                    PAGE  VOL.

 4    Plaintiff Rests                                  699   4
      Defense Rests                                    708   4
 5
      PLAINTIFF'S WITNESSES                           PAGE  VOL.
 6
      MARTINEZ, LISAMARIA
 7    (SWORN)                                          574   4
      Direct Examination by Mr. Elder                  574   4
 8    Cross-Examination by Mr. Gilbert                 672   4
      Redirect Examination by Mr. Elder                680   4
 9
      HILL, EVE LYNN (IN REBUTTAL)
10    (SWORN)                                          683   4
      Direct Examination by Mr. Elder                  683   4
11    Cross-Examination by Mr. Gilbert                 694   4
      Redirect Examination by Mr. Elder                698   4
12
                              E X H I B I T S
13
      TRIAL EXHIBITS                             IDEN  EVID  VOL.
14
       5                                               627   4
15
```

1   standing at the counter but off -- you know, not directly in
2   front of the work area.  And she said, "Fine."
3        And I told her I was going to stand there until her
4   supervisor came because I was feeling that maybe I was being
5   dismissed and that if I -- if they could outwait me, I'd live.
6   So...
7   **Q.**   Okay.  And did you hear Ms. Moran's testimony earlier this
8   week in which she suggested that you were bothering other
9   customers or making other customers feel uncomfortable?
10  **A.**   I did hear that.
11  **Q.**   How many customers did you speak to once you started
12  standing there off to the side at the counter?
13  **A.**   I only spoke to one customer that afternoon and only as he
14  was walking away from completing his transaction.
15  **Q.**   And what did you -- what was your purpose in talking to
16  that individual?
17  **A.**   When he was doing a transaction with the clerk, he had a
18  very similar situation to mine.  He had a mistake on his form,
19  and he was told to cross it out and write in the information in
20  the proper section.  And then I don't know if that was the only
21  one mistake, but it triggered me hearing that, and I was
22  starting to get very overwhelmed and I was trying not to cry
23  because I have been known to cry when feeling overly
24  frustrated.
25       And I took note of when he walked up and I took note of

1   when he left, and I believe it was around 5 minutes, definitely
2   less than 10.  Five years -- actually it's five years to the
3   day.  Five years later I didn't -- I can't remember with
4   100 percent accuracy how long he was at the counter, but it was
5   not long.  And that really hit me in the gut because obviously
6   he was able to fill out his form and submit it because he could
7   see; and I as this blind person was still at the office after
8   an hour waiting on a supervisor who I hoped would assist me in
9   getting my FBN filed that day.
10      And so when he left, I walked up to him and said something
11  along the lines of, "Hey, sir, can I speak with you for just a
12  few seconds?"  He said he was in a hurry.  So I kind of walked
13  a little bit with him and I said, "Hey, I've been trying to do
14  exactly -- well, very similar to what you're doing, and I'm
15  still waiting around.  I just want to confirm so I have an
16  understanding -- the correct understanding.  Did you really
17  just file that form this -- you know, that quickly?  And I
18  heard you had mistakes.  I had similar mistakes.  How did you
19  correct that?"
20      And he said, "Oh, she told me what to write and she told
21  me to cross out the wrong info."
22      And I asked him, "Did you make those corrections on the
23  form or did she?"
24          **MR. GILBERT:**  Objection.  Move to strike as hearsay.
25          **THE COURT:**  Sustained.

1       **MR. GILBERT:** No, Your Honor. Thank you.

2       **THE COURT:** All right. Thank you.

3   I'll ask my courtroom deputy to please bring the jury back

4 into the courtroom.

5     (Proceedings were heard in the presence of the jury:)

6       **THE COURT:** Good afternoon, everyone. Please be

7 seated.

8   Please continue with your examination.

9 **BY MR. ELDER:**

10 **Q.** Sorry, Ms. Martinez, I'm going to skip ahead through some

11 material that I'm not going to ask you about.

12   Ms. Martinez, sitting here today, do you have an

13 understanding as to whether or not the County would be willing

14 to provide transcriber service for you if you were to return to

15 the CRO on your five-year anniversary for the renewal of your

16 FBNS form?

17       **MR. GILBERT:** Objection. Relevance. Speculation.

18 403.

19       **THE COURT:** Overruled.

20       **THE WITNESS:** I do have to return. It's been

21 five years, and I have no idea what to expect or if the County

22 has done anything. I've only heard contradictory information.

23 **BY MR. ELDER:**

24 **Q.** Did you hear Matt Yankee testify the other day?

25 **A.** I did.

1  $100.
2  **Q.** And did you have to spend some extra time to come back to
3  the CRO beyond that first trip where you weren't able to get
4  same day service on that day?
5  **A.** Could you repeat the question, please?
6  **Q.** Yeah, sorry.  It's a little bit weird.
7     In -- so you weren't able to file your form on March 29th,
8  2019; right?
9  **A.** Correct.
10 **Q.** You had to come back a second time, fill out a new form,
11 second trip.  Did that take up some of your time?
12 **A.** It did.
13 **Q.** And in terms of trying to understand any kind of dollar
14 value for what your time might be worth, how much -- if I came
15 to you and said, "I'd like some sessions of life coaching," how
16 much would you charge me for life coaching per hour?
17         **MR. GILBERT:** Objection.  Rule 26.  Rule 37.  403.
18         **THE COURT:** Overruled.
19         **THE WITNESS:** So I offer coaching -- life coaching for
20 individuals on a -- like a package of sessions, and so one
21 session one hour is $175.
22 **BY MR. ELDER:**
23 **Q.** And do you have other pricing schemes or different -- I
24 mean, is it always that price or are there variations?
25 **A.** Yeah, I do have different pricing.  I often do group

1  **A.**   I do.
2  **Q.**   Okay.  We're on the five-year anniversary of the incident
3  on March 29th today.  Do you have an understanding of whether
4  or not you're going to have to go back do the CRO before
5  March 31st, 2024?
6  **A.**   Before March 31st?
7  **Q.**   Yes.  Sorry.  Before May 31st, 2024.
8  **A.**   I was going to say I'm a bit in trouble.
9       Yes, I do have to go back in order to file and pay by
10 credit card my FBN, at least that's my understanding.  I have
11 not gone on the web lately to check if anything has changed.
12 **Q.**   If you go in person sometime before May 2024 to renew your
13 FBNS form, would you be willing to have a County employee act
14 as a transcriber to fill out a blank FBNS form or renewal
15 document?
16          **MR. GILBERT:**  Cumulative.  Asked and answered.
17          **THE COURT:**  Overruled.
18          **THE WITNESS:**  Yes.
19 **BY MR. ELDER:**
20 **Q.**   Have you heard about the proposed -- or sorry.
21      Have you heard about the computer kiosk system that
22 the County has constructed?
23 **A.**   Yes.
24 **Q.**   Have you tried to use it?
25 **A.**   No.

### CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Friday, March 29, 2024

_____

Kelly Shainline, CSR No. 13476, RPR, CRR
U.S. Court Reporter