Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohhlegal.com
Nicholas D. Fine, Esq. (SBN: 285017)
nfine@ohhlegal.com
**ORBACH HUFF & HENDERSON LLP**
6200 Stoneridge Mall Road, Suite 225
Pleasanton, CA  94588
Telephone:      (510) 999-7908
Facsimile:      (510) 999-7918

Attorneys for Defendant
COUNTY OF ALAMEDA

ORBACH HUFF & HENDERSON LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LISAMARIA MARTINEZ,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF ALAMEDA,<br><br>Defendant. | Case No.  20-cv-06570-TSH<br><br>**REPLY IN SUPPORT OF DEFENDANT COUNTY OF ALAMEDA'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR NEW TRIAL**<br><br>DATE:        April 24, 2025<br>TIME:        10:00 a.m.<br>DEPT:        Courtroom E, 15th Floor<br>JUDGE:      Magistrate Thomas S. Hixson |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................................................... 1

II.    THE COUNTY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ...................................... 2

    A.    There Was Effective Communication Between the CRO and Plaintiff ........................... 2

    B.    The CRO Nevertheless Provided Plaintiff with a Reasonable Auxiliary Aid/Service ............... 4

    C.    Plaintiff Did Not Establish Deliberate Indifference ........................................ 5

    D.    Plaintiff Is Not Entitled to Monetary Damages Under the DPA ................................ 6

        1.    The County Is Not a Statutory "Person" Under the DPA ................................ 6

        2.    California Authority Controls, Not *Lonberg* ...................................... 7

    E.    Plaintiff Did Not Establish the "State Funding" Element of Her Claim Under Government Code Section 11135 ................................................................. 9

III.    ALTERNATIVELY, THE COUNTY IS ENTITLED TO A NEW TRIAL ...................................... 10

    A.    The Verdict Was Contrary to the Clear Weight of the Evidence ................................ 11

    B.    The Opposition Concedes Juror Confusion and Fails to Rebut the County's Argument that the Court Improperly Responded to the Jury's Sole Question ............................ 11

    C.    The Jury Instructions Were Insufficient and Stripped the County of a Fair Trial ............... 12

        1.    The Program, Service, or Activity at Issue Was Not Specifically Defined ................... 12

        2.    The Court Improperly Instructed the Jury Regarding Deliberate Indifference ............. 13

    D.    The Court Erred in Granting Permanent Injunctive Relief ................................... 14

IV.    CONCLUSION ..................................................................................... 15

ORBACH HUFF & HENDERSON LLP

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**<u>Federal Cases</u>**

4

*B.J.G. v. Society of the Holy Child Jesus*,
   No. CIV. 07-541-HA, 2008 WL 896061 (D. Or. 2008) ............... 12

5

6

*Bd. Of Comm'rs of Bryan Cnty. v. Brown*,
   520 U.S. 397 (1997) ............... 5

7

8

*Beauchamp v. City of Long Beach*,
   2011 WL 10978002 (C.D. Cal. May 3, 2011) ............... 8

9

10

*Bircoll v. Miami-Dade Cty.*,
   480 F.3d 1072 (11th Cir. 2007) ............... 2, 3

11

*Calhoun v. Allianceone Receivables Mgmt. Inc.*,
   2021 WL 1135472 (W.D. Wash. 2021) ............... 11

12

13

*Cal. Council of the Blind v. Cty. of Alameda*,
   985 F.Supp.2d 1229 (N.D. Cal. 2013) ............... 10

14

15

*City of Rialto v. U.S. Dep't of Def., et al.*,
   2005 WL 5519062 (C.D. Cal. Aug. 16, 2005) ............... 9

16

*Cropp v. Larimer Cnty.*,
   793 F. App'x 771 (10th Cir. 2019) ............... 2

17

18

*D.D.T. by & through S.C. v. Rockdale Cnty. Pub. Sch.*,
   580 F.Supp.3d 1314 (N.D. Ga. 2021) ............... 5

19

20

*Duvall v. Cnty. of Kitsap*,
   260 F.3d 1124 (9th Cir. 2001) ............... 2, 13

21

22

*Friedson v. Shoar*,
   479 F.Supp.3d 1255 (M.D. Fla. 2020), aff'd, 2021 WL 5175656 (11th Cir. Nov. 8, 2021) ............... 5

23

24

*Hodgers-Durgin v. De La Vina*,
   199 F.3d 1037 (9th Cir. 1999) ............... 14

25

*Jones v. Nat'l R.R. Passenger Corp.*,
   2018 WL 3429076 (N.D. Cal. July 16, 2018) ............... 5, 6

26

27

*Kirola v. City and County of San Francisco*,
   74 F.Supp.3d 1187 (N.D. Cal. 2014) ............... 9, 10

28

ORBACH HUFF & HENDERSON LLP

Reply ISO Def's Renewed Motion for Judgment as a Matter of Law or, in the alternative, New Trial [20-cv-06570-TSH]

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

*L.W. v. Grubbs*,
4
    92 F.3d 894 (9th Cir. 1996)..................................................................................................5

5

*Lonberg v. City of Riverside*,
    300 F.Supp.2d 942 (C.D. Cal. 2004) ...................................................................................7
6

7

*M.P.G. by & through Guzman v. Antioch Unified Sch. Dist.*,
    2023 WL 4053794 (N.D. Cal. June 16, 2023) .....................................................................5
8

*M.P.G. v. Antioch Unified Sch. Dist.*,
9
    2023 WL 5723683 (N.D. Cal. Sept. 5, 2023) ......................................................................5

10

*McCullum v. Orlando Reg'l Healthcare Sys., Inc.*,
    768 F.3d 1135 (11th Cir. 2014) ...........................................................................................5
11

12

*Mendez v. Small*,
    298 F.3d 1154 (9th Cir. 2002) .............................................................................................8
13

*Mullaney v. Wilbur*,
14
    421 U.S. 684 (1975)..............................................................................................................8

15

*Patel v. Kent Sch. Dist.*,
    648 F.3d 965 (9th Cir. 2011) ...........................................................................................5, 6
16

17

*S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*,
    729 F.3d 248 (3d Cir. 2013).................................................................................................5
18

*San Francisco Taxi Coalition v. City and Cnty. of San Francisco*,
19
    979 F.3d 1220 (9th Cir. 2020) ........................................................................................9, 10

20

*Sarfaty v. City of Los Angeles*,
    765 F.App'x 280 (9th Cir. 2019)..........................................................................................8
21

22

*Sarfaty v. City of Los Angeles*,
    2017 WL 6551234 (C.D. Cal. Aug. 28, 2017).....................................................................8
23

24

*Silva v. Baptist Health S. Fla., Inc.*,
    856 F.3d 824 (11th Cir. 2017) .........................................................................................2, 3
25

*Varga v. City of Culver City*,
26
    2011 WL 13274221 (C.D. Cal. Mar. 15, 2011)...................................................................8

27

*Where Do We Go Berkeley v. Cal. Dep't of Transp.*,
28
    32 F.4th 852 (9th Cir. 2022)...............................................................................................12

ORBACH HUFF & HENDERSON LLP

- iii -

ORBACH HUFF & HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

**State Cases**

*Carter v. City of Los Angeles*,
   224 Cal.App.4th 808 (2014) .................................................................................... 8

*City of Los Angeles v. City of San Fernando*,
   14 Cal.3d 199 (1975) ............................................................................................. 7

*Flournoy v. State, of Cal.*,
   57 Cal.2d 497 (1962) ............................................................................................. 7

*Regents of Univ. of California v. Super. Ct.*,
   17 Cal.3d 533 (1976) ........................................................................................... 6, 7

*Wells v. One2One Learning Found.*,
   39 Cal.4th 1164 (2006) .......................................................................................... 7

**Federal Statutes**

42 U.S.C. section:
   1983 ....................................................................................................................... 5

**State Statutes**

Civil Code section:
   54.3 .................................................................................................................... 7, 8
   1708 ...................................................................................................................... 9
   1714 ...................................................................................................................... 9

Government Code section:
   11135 ............................................................................................................. 1, 9, 10

**Federal Rules**

Federal Rules of Civil Procedure:
   50 .......................................................................................................................... 1
   59 .......................................................................................................................... 1

**Federal Regulations**

28 C.F.R. section:
   35.130 .................................................................................................................. 14
   35.160 ............................................................................................................*passim*

49 C.F.R. section:
   27.7 ....................................................................................................................... 2

ORBACH HUFF & HENDERSON LLP

1    Defendant COUNTY OF ALAMEDA ("County" or "Defendant") hereby submits the following Reply

2 in support of its Renewed Motion for Judgment as a Matter of Law against Plaintiff LISAMARIA

3 MARTINEZ ("Plaintiff") pursuant to Federal Rules of Civil Procedure, Rule 50(b) ("Renewed Motion for

4 Judgment"), and the County's alternative Motion for New Trial pursuant to Federal Rules of Civil Procedure,

5 Rule 59 ("New Trial Motion").

6    **I.    INTRODUCTION**

7    Plaintiff's Opposition confirms the Court must grant the County's Renewed Motion for Judgment, as

8 she fails to rebut the County's arguments that the CRO effectively communicated with Plaintiff and

9 nevertheless provided appropriate auxiliary aids and services to Plaintiff, who was able to access all of the

10 benefits of the CRO's services, programs, and activities that she sought.  Specifically, Plaintiff focuses on an

11 inaccurate standard for effective communication under Title II, suggesting absolute perfection is required.

12 However, Title II simply requires a level of communication that is substantially equal to that afforded to non-

13 disabled persons.  Based on Plaintiff's own audio recordings of her interactions with CRO staff on the day of

14 the incident, there can be no dispute that Plaintiff's communications with the CRO were substantially equal to

15 the communications between the CRO and non-disabled individuals.  Furthermore, the Opposition confirms

16 Plaintiff failed to demonstrate deliberate indifference at trial under the appropriate legal standard and that the

17 jury likely erred in finding deliberate indifference because they did not receive adequate jury instructions in that

18 regard.  Plaintiff also misinterprets applicable authority under the Disabled Persons Act ("DPA"), for which

19 California courts have unequivocally determined that public entities are not subject to damages.  Additionally,

20 Plaintiff fails to rebut the County's argument that she did not establish the "state funding" element of her claim

21 under Government Code section 11135, relying almost exclusively on the language in the stipulation the parties

22 executed during trial providing that the County generally received money from the State at the relevant time.

23 That is not sufficient as a matter of law under section 11135.  Thus, the County is entitled to judgment.

24    In the alternative, the County is entitled to a new trial.  Plaintiff effectively failed to oppose the

25 County's specific arguments that the Court improperly responded to the jury's sole question during

26 deliberations, failed to rebut the County's argument that the jury was not adequately instructed on the deliberate

27 indifference standard, and the Opposition confirms the Court should not have granted injunctive relief where

28 Plaintiff did not establish at trial that she faces a real and immediate threat of repeated injury in the future.

- 1 -

**II.    THE COUNTY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW**

    **A.    There Was Effective Communication Between the CRO and Plaintiff**

In response to the County's argument that the communications between Plaintiff and the CRO on March 29, 2019, were effective, Plaintiff first argues that Defendant relies upon the wrong legal standard in the Renewed Motion for Judgment.  Specifically, Plaintiff argues that Title II regulations require that public entities "ensure that communications with [disabled individuals] are as effective as communications with others" (Opp., 3:4-10), while Title III regulations, applicable to non-governmental public accommodations, only require a "level of communication" that is "substantially equal" to that afforded to non-disabled individuals (Opp., 3:10-14).  To support this argument, Plaintiff contends that the court in *Cropp v. Larimer Cnty.*, 793 F. App'x 771 (10th Cir. 2019) itself used an incorrect legal standard by improperly relying upon *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824 (11th Cir. 2017), to apply the alleged Title III "substantially equal" standard to a Title II case (Opp., 3:27-28, n. 3).

Plaintiff is effectively arguing that 28 C.F.R. § 35.160(a)(1) means that communications between public entities and persons with disabilities must be *exactly and perfectly equal* in all respects to communications with non-disabled individuals.  However, that language is nowhere to be found in the regulation.  Rather, given the history of Title II and the supporting case law, section 35.160 should be interpreted to mean the communications must be substantially equal.  Title II of the ADA "was expressly modeled after § 504 of the Rehabilitation Act" ("RA").  *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).  The regulations implementing the RA prohibit recipients of federal funding from "[a]fford[ing] a qualified person with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not *substantially equal* to that afforded persons who are not disabled…" 49 C.F.R. § 27.7(b)(1)(ii) (emph. added).  Thus, Courts interpreting Title II have used the same language.  *Cropp*, 793 F. App'x at 783-784.

Admittedly, *Cropp* is a Title II case and cited *Silva*, a Title III case, for the proposition that the ADA's effective communication requirement does not require "perfect communication" and that the ADA only requires auxiliary aids or services " 'sufficient to ensure a level of communication … substantially equal to that afforded to non-disabled' individuals." *Cropp*, 793 F.App'x at 784, n. 15 (citing *Silva*, 856 F.3d at 834, 835, n. 7).  However, in setting forth that rule, the court in *Silva* relied upon a *Title II case*, namely, *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072 (11th Cir. 2007), which held that the quality of communication between a deaf

ORBACH HUFF & HENDERSON LLP

1    arrestee and a police officer did not have to be "perfect" in order to put the deaf person "on equal footing" with

2    non-disabled arrestees. *Bircoll*, 480 F.3d at 1086. Thus, contrary to Plaintiffs' argument, the substantially

3    equal standard does apply to Title II just as much as it applies to Title III.[1]

4         Plaintiff also argues that "evidence of Ms. Martinez generally talking with CRO staff" does not

5    "show[] that communications were 'effective' as a matter of law." Opp., 5:4-5. Specifically, Plaintiff argues

6    that the Court has already rejected this argument, "requiring a 'fact-specific, individualized analysis of

7    [Martinez's] circumstances' rather than treating it only as a matter of law." Opp., 5:5-10 (citing ECF No. 54,

8    MSJ Order, at 7). Plaintiff further argues that even if Plaintiff generally understood her verbal conversation

9    with the CRO's clerks, Ms. Moran failed to use sufficient descriptive language to inform Plaintiff how to

10   remediate her FBNS. Opp., 5:10-19. However, first, the County's argument is in fact premised on a "fact-

11   specific, individualized analysis" of the circumstances, as it is based on Plaintiff's audio recordings of her

12   interactions with Moran and Briones which reflect crystal clear communications between them. Fine Dec.

13   (Dkt. 212-1), ¶¶ 6-8, Exs. D-F. Moreover, even if Plaintiff took issue with Moran's language in describing the

14   corrections which needed to be made to Plaintiff's FBNS, Plaintiff does not argue Briones (who also described

15   the corrections to Plaintiff) used inadequate language to do so. See generally, Opp. Furthermore, Briones

16   provided the "Go-Back Letter" to Plaintiff, which specifically described the changes Plaintiff needed to make

17   to her FBNS, and which Plaintiff admits she used to complete a new FBNS that she was able to file.[2] Fine

18   Dec., ¶ 5, Ex. C (TT, Vol. 4 at 635:23-636:10, 637:13-18, 644:10-11).

19        With respect to the County's argument that the FBNS cannot be a "communication" to the County

20   because it does not convey any information to the County, Plaintiff contends that the Court has already rejected

---

[1] To hedge her bets, Plaintiff also argues that *Silva's* recitation of the applicable law supports her claim of
ineffective communication, contending that in Plaintiff's case, the evidence at trial established she was
"impeded from [filing her FBNS] by ineffective communications … given that she was not able to file her
form by credit card that same day and later had to hire a third party to help her." Opp., 3:21-5:3 (citing *Silva,*
856 F.3d at 833-834). However, Plaintiff does not explain how an impediment in filing a form (the substantive
content of which is irrelevant to the CRO), or the lack of a certain payment option, somehow equates to an
impediment in the disabled person's "ability to communicate … relevant information with" the public entity.
*Silva,* 856 F.3d at 834. Nor can she. Again, the effective communication requirement "focus[es] on the
communication itself, not on the downstream consequences of communication difficulties," and there was
clearly no impediment in Plaintiff's ability to exchange relevant information with the CRO.

[2] Plaintiff has argued that the Go-Back Letter was provided to Plaintiff in hard-copy, such that Plaintiff was
unable to read it, but the County established at trial that the CRO would have provided Plaintiff with an
electronic version had Plaintiff requested it. Fine Dec., ¶ 3, Ex. A (TT, Vol. 2 at 323:4-23).

- 3 -

ORBACH HUFF & HENDERSON LLP

1   this argument, finding that " 'both filing completed forms at the CRO and the CRO's advising patrons of

2   forms' technical deficiencies qualify as services, programs, or benefits under Title II.' "  Opp., 5:20-27.

3   Plaintiff further argues that the evidence at trial established that the "CRO examines FBNS forms before they

4   can be filed and provides feedback and letters explaining to customers what needs fixing before they can be

5   accepted," which according to Plaintiff, requires the CRO to "provide effective communications to disabled

6   customers…"  Opp., 5:27-6:7.  However, as just discussed, the CRO indisputably provided effective

7   communication in explaining to Plaintiff the deficiencies which needed to be corrected in her FBNS, including

8   through Moran, Briones, and the Go-Back Letter.  Plaintiff's claim pertains to the fact she was unable to file

9   her FBNS during her visit to the CRO on March 29, 2019, and the filing of an FBNS is not a "communication"

10  to the County, which Plaintiff has failed to rebut.

11         Accordingly, the County is entitled to judgment in light of the evidence of effective communication.

12         **B.    The CRO Nevertheless Provided Plaintiff with a Reasonable Auxiliary Aid/Service**

13         In response to the County's argument that Plaintiff was nevertheless provided with appropriate

14  auxiliary aids and services, despite the existence of effective communication, Plaintiff argues that "Defendants

15  are silent as to when and how she received what she sought and the conditions and process by which she

16  obtained it," and that the evidence at trial established Plaintiff did not receive "an equal opportunity" to

17  participate in or enjoy the benefits of the CRO's services, programs, or activities "in a timely manner" because

18  Plaintiff was unable to file her FBNS on March 29, 2019.  Opp., 7:14-8:12.

19         However, the County clearly explained in the MPA exactly how the auxiliary aids/services the County

20  provided, including the Go Back Letter, allowed the CRO to explain to Plaintiff the technical deficiencies in

21  her FBNS which needed to be corrected and ultimately allowed Plaintiff to file her FBNS after she corrected it.

22  MPA, 7:15-9:19.  While Plaintiff continues to hyperfocus on her claim she was unable to file her FBNS on

23  March 29, 2019, and thus "did not have access" to the "*same-day* FBNS filing service" that she contends the

24  CRO offers to nondisabled customers, there is absolutely no temporal period specified in the two "services,

25  programs, or benefits" of the CRO identified by the Court.  Dkt. 165 (Jury Instructions), at 12:19-21 (including

26  "filing completed forms" at the CRO and the CRO "advising patrons of forms' technical deficiencies…").  The

27  CRO does not guarantee "same-day" filing of FBNS's for *anyone* and it certainly does not constitute a CRO

28

ORBACH HUFF & HENDERSON LLP

Reply ISO Def's Renewed Motion for Judgment as a Matter of Law or, in the alternative, New Trial [20-cv-06570-TSH]

1    program, service, or activity.[3]  And, Plaintiff has not cited any authority that the inclusion in 28 C.F.R. §

2    35.160, subdivision (b), of the words, "in a timely manner," means that a violation occurs simply because some

3    customers successfully file their FBNS in one visit to the CRO while Plaintiff did not, particularly where the

4    CRO ensured Plaintiff had the means to file a corrected FBNS immediately, including by mail.

5        **C.    Plaintiff Did Not Establish Deliberate Indifference**

6        In response to the County's argument that Plaintiff failed to establish deliberate indifference at trial,

7    Plaintiff argues that law describing the deliberate indifference standard as "more than gross negligence" and a

8    "stringent standard" of liability constitute "unnecessary and extrinsic modifiers" from "cases outside the

9    context of the ADA" and with "critically distinct underlying facts to this one…"  Opp., 9:5-11.  For example,

10   Plaintiff argues that *L.W. v. Grubbs*, 92 F.3d 894 (9th Cir. 1996) and *Bd. Of Comm'rs of Bryan Cnty. v. Brown*,

11   520 U.S. 397, 415 (1997), which arose under 42 U.S.C. § 1983, are inapplicable because the "deliberate

12   indifference" standard under section 1983 is somehow different than the "deliberate indifference" standard

13   applicable under Title II of the ADA.  Opp., 9:12-10:11.

14       However, while the ADA and section 1983 may differ in terms of the focus of the deliberate

15   indifference analysis, the general nature of the deliberate indifference standard is identical under both statutes,

16   and thus, courts frequently use the exact same language to discuss both standards.[4]  *S.H. ex rel. Durrell v.*

17   *Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013) ("This definition of deliberate indifference in the

18   RA and the ADA context is consistent with our standard of deliberate indifference in the context of § 1983 suits

19   by prison inmates.").  Thus, Plaintiff's efforts to distinguish *L.W.* and *Brown* are futile.  The County cited those

20

21   ───────────────
     [3] Indeed, there are many reasons even a nondisabled customer may not be able to file his or her FBNS the

22   "same-day" the patron first visits the CRO, as Briones explained during trial.  Fine Dec., ¶ 3, Ex. A, (TT, Vol. 2
     at 286:4-20).

23   [4] This is true both inside and outside of the Ninth Circuit.  *M.P.G. by & through Guzman v. Antioch Unified*
     *Sch. Dist.*, 2023 WL 4053794, at *4 (N.D. Cal. June 16, 2023) (describing deliberate indifference standard

24   under Title II of the ADA as a "stringent standard of fault" and quoting *Patel v. Kent Sch. Dist.*, 648 F.3d 965
     (9th Cir. 2011) for the proposition that the deliberate indifference standard is "even higher than gross

25   negligence"); *M.P.G. v. Antioch Unified Sch. Dist.*, 2023 WL 5723683, at *7 (N.D. Cal. Sept. 5, 2023) (same);
     *Jones v. Nat'l R.R. Passenger Corp.*, 2018 WL 3429076, at *5 (N.D. Cal. July 16, 2018) (same); *McCullum v.*

26   *Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1146–47 (11th Cir. 2014) (deliberate indifference under
     the ADA is an "exacting standard" which "requires showing more than gross negligence"); *D.D.T. by &*

27   *through S.C. v. Rockdale Cnty. Pub. Sch.*, 580 F.Supp.3d 1314, 1344 (N.D. Ga. 2021) (deliberate indifference
     under the ADA "plainly requires more than gross negligence" and is an "exacting standard"); *Friedson v.*

28   *Shoar*, 479 F.Supp.3d 1255, 1264 (M.D. Fla. 2020), *aff'd*, 2021 WL 5175656 (11th Cir. Nov. 8, 2021) (same).

Reply ISO Def's Renewed Motion for Judgment as a Matter of Law or, in the alternative, New Trial [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

ORBACH HUFF & HENDERSON LLP

cases for basic law underpinning the deliberate indifference standard, which applies equally to the ADA, and of which the jury should have been informed.

To this end, Plaintiff further argues that the jury "appropriately applied the Ninth Circuit standard for deliberate indifference to the facts," because Plaintiff claims she put the County on notice that she could not physically change her FBNS due to her disability.  Opp., 10:12-20.  Plaintiff argues that, in response, the CRO "deliberately and knowingly refused to act to fill out the form for the same explicit reason: policy…"  Opp., 10:20-24.  However, Plaintiff fails to respond to the County's argument that deliberate indifference requires the state actor to "recognize [an] unreasonable risk and actually intend[] to expose the plaintiff to such risks without regard to the consequences to the plaintiff," which the evidence did not establish at trial.  *Jones*, 2018 WL 3429076, at *5 (quoting *Patel*, 648 F.3d at 974).  Neither Moran nor Briones understood they were exposing Plaintiff to any risk or violating Plaintiff's rights in any respect; rather, they followed a CRO policy which they reasonably believed to be consistent with applicable law, with Briones even conducting brief research on Google to confirm her understanding.[5]  MPA, 10:9-11:14.  They nevertheless did everything in their power to ensure Plaintiff received the benefits of the CRO's services, programs, and activities that she sought, in a timely manner.  MPA, 10:9-11:14.  As such, Plaintiff did not establish deliberate indifference at trial and the County is entitled to judgment.[6]

## D.     Plaintiff Is Not Entitled to Monetary Damages Under the DPA

### 1.     The County Is Not a Statutory "Person" Under the DPA

In response to the County's argument that monetary damages are not available as against public entities under the DPA, Plaintiff argues that California courts "have repeatedly held that government entities are statutory 'persons.'"  Opp., 11:21-12:7 (citing *Regents of Univ. of California v. Super. Ct.*, 17 Cal.3d 533, 536

---

[5] Nor was it apparent to Moran or Briones that Plaintiff's experience of not being able to file her FBNS on March 29, 2019, constituted a violation of the ADA, as Briones testified that many nondisabled customers are also unable to file their FBNS on their first visit to the CRO.  Fine Dec., ¶ 3, Ex. A, (TT, Vol. 2 at 286:4-20).

[6] Plaintiff also opposes "Defendant's invocation of 'bureaucratic slippage' to defend itself," as Plaintiff argues this "is not a situation where a public entity was negligent in failing to have a trained sign-language interpreter available immediately…"  Opp., 10:25-11:9.  However, as discussed in the MPA, the County's bureaucratic slippage argument was referring to the fact the County interpreted the ADA to apply differently than the jury ultimately found it to apply, involving a hotly disputed legal issue for which there is little available authority. MPA, 10:23-11:12.  Again, while the County still contends its legal interpretation of the ADA is correct, the simple fact it may be incorrect does not mean that the CRO was deliberately indifferent to Plaintiff's rights.

- 6 -

1  (1976); *City of Los Angeles v. City of San Fernando*, 14 Cal.3d 199, 276-77 (1975); and *Flournoy v. State of*

2  *Cal.*, 57 Cal.2d 497, 498-499 (1962)).  Plaintiff is misguided.

3        First, *Regents* held that a public university was subject to state usury laws but did not find the university

4  was a "person" for purposes of the relevant statutes.  *Regents*, 17 Cal.3d at 536-537.  Rather, the Court

5  specifically identified the university as a public corporation.  *Id.*  Second, Plaintiff's cited cases all rely upon an

6  outdated analysis.  Specifically, the opinions rely upon the rule that " 'in the absence of express words to the

7  contrary, neither the state nor its subdivisions are included within the general words of a statute,' " and the

8  exception to that rule whereby "governmental agencies [are excluded] from the operation of general statutory

9  provisions only if their inclusion would result in an infringement upon sovereign governmental powers."

10  *Regents*, 17 Cal.3d at 536 (quoting *City of Los Angeles*, 14 Cal.3d at 276–277).  Indeed, all three opinions

11  found public entities to be subject to liability under certain statutes because their sovereign governmental

12  powers would not be infringed.  *Id.*; *City of Los Angeles*, 14 Cal. 3d at 277; *Flournoy*, 57 Cal.2d at 498-499.

13        However, in a much more recent case, *Wells v. One2One Learning Found.*, 39 Cal.4th 1164 (2006), the

14  California Supreme Court made clear that this sovereign powers exception to the general rule of immunity "is

15  simply a maxim of statutory construction" used to clear up ambiguities and does not override the primary

16  analysis of legislative intent.  *Wells*, 39 Cal.4th at 1193 ("While the 'sovereign powers' principle can help

17  resolve an unclear legislative intent, it cannot override positive indicia of a contrary legislative intent.").  Thus,

18  in *Wells*, the court focused not on whether application of California's False Claims Act ("CFCA") would

19  infringe upon the sovereign powers of the defendant school district, but on "the language, structure, and history

20  of the … CFCA … [which] strongly suggest that public entities, including public school districts, are not

21  'persons' subject to suit under the law's provisions."  *Id.*, 1193.  That is exactly what the County argued here –

22  that the Legislature expressly intended to exclude public entities from the definition of 'person" for purposes of

23  Civil Code section 54.3.  Where that intent is clear, it would be neither necessary nor proper to evaluate

24  whether the sovereign powers exception applies.  *Wells*, 39 Cal.4th at 1193.

## 2.    California Authority Controls, Not *Lonberg*

26        While Plaintiff also concludes that *Lonberg v. City of Riverside*, 300 F.Supp.2d 942 (C.D. Cal. 2004) is

27  the "best available case law," she provides no argument in support of her position, other than a futile attempt to

28  distinguish the contrary California state law which holds that public entities *are not* subject to the DPA's

ORBACH HUFF & HENDERSON LLP

damages provision, including *Carter v. City of Los Angeles*, 224 Cal.App.4th 808 (2014), *Sarfaty v. City of Los Angeles*, 2017 WL 6551234, at *6 (C.D. Cal. Aug. 28, 2017), and *Wells*. And, a federal district court cannot contradict California courts on a matter of California state law.[7] *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *Mendez v. Small*, 298 F.3d 1154, 1158 (9th Cir. 2002).

With respect to *Carter*, Plaintiff argues it is inapplicable because the appellate court allegedly focused on the Unruh Civil Rights Act and "did not undertake any analysis of the CDPA nor did it make any findings as to whether a plaintiff could recover statutory damages from a public entity." Opp., 12:22-13:19. However, as the County noted in the MPA, California courts have routinely interpreted the provisions of the DPA, Unruh Act, and the False Claims Act concurrently, and while the court's analysis in *Carter* may have focused on the Unruh Act, the court specifically found that "no California court would likely consider a municipal entity to be liable under … *the Disabled Persons Act*," and that "statutory damages are unlikely here." *Carter*, 224 Cal.App.4th at 825 (emphasis added). Therefore, contrary to Plaintiff's assertion, the court in *Carter* very clearly indicated monetary damages under the DPA are unavailable as against a public entity.

Regarding *Sarfaty*, Plaintiff argues that the District Court "undertook only a minimal and incomplete analysis of a single other California statute … and no other case law to summarily find that a public entity did not fit under the CDPA's damages provision," and that the Ninth Circuit's later reversal of the decision "makes *Sarfaty* notably less persuasive in its arguments than *Longberg*." Opp., 13:20-27; see *Sarfaty v. City of Los Angeles*, 765 F.App'x 280, 282 (9th Cir. 2019). However, the Ninth Circuit did not reverse the District Court's determination that the DPA's damages provision is inapplicable to public entities; rather, it reversed the decision to grant the defendants' motion to dismiss because the District Court failed to consider certain extrinsic evidence. *Sarfaty*, 765 F.App'x at 281-282. Furthermore, the District Court in *Sarfaty* did in fact examine the Legislature's intent and determined that "damages are not available under Section 54.3" as against a public entity.[8] *Sarfaty*, 2017 WL 6551234, at *6.

---

[7] Similarly, *Beauchamp v. City of Long Beach*, 2011 WL 10978002, at *3 (C.D. Cal. May 3, 2011) and *Varga v. City of Culver City*, 2011 WL 13274221, at *2 (C.D. Cal. Mar. 15, 2011) are likewise irrelevant and do not constitute precedential authority with respect to California state law.

[8] Plaintiff also argues that *Wells* is inapposite because the opinion analyzes the CFCA rather than the DPA. Opp., 14:1-13. However, the purpose of the County's citation to *Wells* was for the more general proposition that the Court must analyze the Legislature's intent when determining whether public entities are "persons" under a certain statute. MPA, 12:23-13:13.

ORBACH HUFF & HENDERSON LLP

While Plaintiff argues that *City of Rialto* "fails to undermine *Lonberg's* analysis," it is unclear what Plaintiff could mean by that statement given that *City of Rialto* expressly disapproved of *Lonberg's* analysis. Opp., 15:1; *City of Rialto v. U.S. Dep't of Def., et al.*, 2005 WL 5519062, at *7 (C.D. Cal. Aug. 16, 2005) ("*Lonberg* cited older California authority without considering the California Supreme Court's most recent pronouncements in *Eastburn.*"). Additionally, while Plaintiff attempts to distinguish *City of Rialto* (and *Eastburn*) on the ground that the DPA is a "specific statute" with "specific bases of liability," rather than a "generalized liability statute like those at issue in *Eastburn* and *City of Rialto*," Plaintiff is misguided. Just like the statutes at issue in those cases, including Civil Code sections 1714 and 1708, the DPA is a general liability statute in the sense that "it neither declares public entities liable nor imposes a duty of care specifically on public entities." *City of Rialto*, 2005 WL 5519062, at *8.

Thus, the County is not subject to damages under the DPA and is entitled to judgment.

**E.    Plaintiff Did Not Establish the "State Funding" Element of Her Claim Under Government Code Section 11135**

In response to the County's argument that Plaintiff failed to establish at trial the "state funding" element of her claim under Government Code section 11135, Plaintiff simply points to the March 26, 2024, Stipulation Regarding Element of Claim Under Government Code section 11135 ("Stipulation") and contends the Stipulation alone suffices to satisfy the state funding element. Opp., 15:20-16:4. However, Plaintiff's effort to draw a favorable implication from the title of the Stipulation (identifying section 11135) does not change the plain meaning of the language therein, which merely stated that the County received funding or financial assistance from the State for the relevant period. Dkt. 147 (Stipulation). That is not sufficient to establish the state funding element of section 11135 as a matter of law, as discussed in the MPA.[9] MPA, 16:8-17:4.

Plaintiff also attempts to distinguish *Kirola v. City and County of San Francisco*, 74 F.Supp.3d 1187, 1249 (N.D. Cal. 2014) and *San Francisco Taxi Coalition v. City and Cnty. of San Francisco*, 979 F.3d 1220, 1227-1228 (9th Cir. 2020), which the County relied upon in arguing that section 11135 requires Plaintiff to

---

[9] Plaintiff further argues that the evidence at trial established that "state funding flowed through to the CRO via the County's general fund," but Plaintiff only cites facts identifying the purpose of the FBNS (to give notice to the public that a company is doing business under a different name) and the fact that "[c]ustomers visit the CRO in order to file certain forms with the County, including the FBNS." Opp., 16:5-12 (citing Inj. Facts at ¶¶ 44, 46, 49). Neither cited fact establishes that state funding flowed through the general fund to the CRO at the time of the underlying incident.

- 9 -

ORBACH HUFF & HENDERSON LLP

1   establish not merely that the County in general received state funding or financial assistance, but that the

2   CRO's FBNS program was directly funded by the State or received financial assistance from the State at the

3   time of the incident giving rise to this action.  Opp., 16:18-17:1.  Specifically, Plaintiff claims the plaintiff in

4   *Kirola* presented only "bare and conclusory allegations" of state funding such that "the court had no choice but

5   to rule against the plaintiff."  Opp., 16:18-21.  However, the plaintiff's failure to include sufficient allegations

6   supporting substantive liability was merely one basis for the court's decision in *Kirola*.  The court also

7   specifically noted there could be no liability under section 11135 because "there is no evidence that each of the

8   specific programs to which [the plaintiff] was allegedly denied access is state-funded or otherwise receives

9   financial assistance from the state." *Kirola*, 74 F.Supp.3d at 1249.

10          With respect to *San Francisco Taxi Coalition*, Plaintiff argues that, unlike the SFMTA in that case, the

11   "CRO" is "a recipient of state funds via the County's general fund" and "is more directly connected to the core

12   governance of the County."  Opp., 16:22-27.  However, Plaintiff cites no evidence in support of her contention

13   that the CRO is the recipient of state funds, and nor can she.  As discussed in the MPA, Plaintiff did not present

14   *any* evidence at trial that the CRO received any funds from the County's general fund *at all* during the relevant

15   time period, or even that the general fund receives money from the state.  15:25-16:7.  To the extent Plaintiff

16   then concludes that the CRO's "FBNS functions … are not legally independent of the County of Alameda"

17   (Opp., 16:27-17:1), she cites no legal authority for her conclusion, which is *directly contrary* to the applicable

18   law.[10] *San Francisco Taxi Coalition*, 979 F.3d 1220, 1227-1228 ("the state's infusion of money into one arm

19   of local government does not necessarily reach all limbs and digits of that government…").

20          Accordingly, the County is entitled to judgment on Plaintiff's claim under section 11135.

21   **III.    ALTERNATIVELY, THE COUNTY IS ENTITLED TO A NEW TRIAL**

22          While Plaintiff's Opposition confirms the County is entitled to judgment as a matter of law, the County

23   continues to request a new trial in the event the Court disagrees, as the County was not provided a fair trial.

24   ///

25   ///

26   ///

27   ─────────────────────

28   [10] To the extent Plaintiff cites *Cal. Council of the Blind v. Cty. of Alameda*, 985 F.Supp.2d 1229, 1245 (N.D. Cal. 2013), that opinion involved a motion to dismiss at the pleading stage and the court did not analyze the state funding element of section 11135 at all.

ORBACH HUFF & HENDERSON LLP

- 10 -

ORBACH HUFF & HENDERSON LLP

**A.     The Verdict Was Contrary to the Clear Weight of the Evidence**

Relying on the same arguments she asserted in opposing the County's Renewed Motion for Judgment, Plaintiff contends the verdict was not contrary to the clear weight of the evidence. Opp., 17:10-18. Thus, for the same reasons discussed above, the County is entitled to a new trial.

**B.     The Opposition Concedes Juror Confusion and Fails to Rebut the County's Argument that the Court Improperly Responded to the Jury's Sole Question**

With respect to the County's argument that the Court's response to the jury's sole question during deliberations confused and misled the jury, Plaintiff simply repeats the Court's response and concludes, without any authority or substantive analysis, that the response "ensured that the jury focused on the appropriate elements in the verdict form by first starting each of its responses with a clear indication to which question on the verdict form the Court's response applied. . ." Opp., 17:19-18:4.

However, Plaintiff does not actually respond to the County's specific arguments in the Motion. See Opp., 17:19-18:14; MPA, 18:1-21:6. Indeed, Plaintiff does not dispute that her claims have always pertained specifically to her in-person visit to the CRO on March 29, 2019, and that she did not assert any claims related to the County's online FBNS forms. See generally, Opp. Yet, she does not address why it was necessary for the Court's response to the jury's question to reference two different questions in the verdict form *at all*, when the jury's question was simply, "Does ADA experience apply to online services?" Id.; MPA, 18:1-21:6. Nor does Plaintiff attempt to rebut the County's arguments that the Court should have informed the jury only that the ADA's application online was irrelevant, and that the jury was likely misled into believing Plaintiff was asserting an ADA claim relative to the County's online FBNS.[11] Opp., 17:19-18:14; MPA, 18:1-21:6. These omissions should be construed as a concession that the County's arguments are meritorious. *Calhoun v. Allianceone Receivables Mgmt. Inc.*, 2021 WL 1135472, at *4 (W.D. Wash. 2021) ("The pending motions to dismiss are meritorious, and Calhoun's failure to respond to them is deemed an admission of the same.");

---

[11] Notably, Plaintiff does not deny that the jury was likely confused about the relevance of whether the ADA applies online. Opp., 18:5-14. However, Plaintiff claims the confusion was "necessarily caused" by "complex evidence," and argues that such confusing evidence "alone does not render this Court's response to a jury's question itself improper or misleading." Opp., 18:5-14. But the County did not argue that the presentation of evidence regarding the County's online forms *alone* confused the jury. Rather, the County argued that the Court's response to the jury's question confused and misled the jury into believing Plaintiff was asserting an ADA claim relative to the County's online FBNS forms, particularly in light of Plaintiff's evidence regarding the accessibility of those forms. MPA, 18:1-21:6.

1    *B.J.G. v. Society of the Holy Child Jesus*, No. CIV. 07-541-HA, 2008 WL 896061, at *7 (D. Or. 2008) ("Not

2    only is defendants' motion to strike this portion of plaintiff's Declaration deemed meritorious (and alternatively

3    construed as formally unopposed)…").

4           **C.    The Jury Instructions Were Insufficient and Stripped the County of a Fair Trial**

5                  **1.    The Program, Service, or Activity at Issue Was Not Specifically Defined**

6           In response to the County's argument that the jury instructions failed to adequately instruct the jury

7    regarding the specific program, service, or activity of the CRO at issue, Plaintiff argues that the legal theory at

8    issue in *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852 (9th Cir. 2022) was a "reasonable

9    modification theory," which is "distinct from the effective communication theory claim" brought by Plaintiff.

10   Opp., 6:19-23.  Plaintiff further argues that with respect to the alternate discrimination theory at issue in *Where*

11   *Do We Go Berkeley*, the Court of Appeal "was not as concerned about the precise definition of the program,"

12   and that the preliminary injunction context in *Where do We Go Berkeley* "is very different from [Plaintiff's]

13   final trial on the merits after a full presentation of evidence at trial by both parties."  Opp., 6:23-7:1.  Thus,

14   Plaintiff contends that the "vaguely defined homeless housing program" in *Where Do We Go Berkeley* bears no

15   similarity to this action, in which Plaintiff "won a trial on the merits concerning a filing service directly related

16   to the specific purpose and function of the CRO:  reviewing, explaining corrections, accepting, and filing forms

17   like the FBNS…"  Opp., 7:6-13.

18          However, Plaintiff does not even attempt to flesh out why these purported distinctions are important or

19   how they in any way rebut the County's argument that the jury was inadequately and improperly instructed.

20   Indeed, Plaintiff's claim in this action revolves around 28 C.F.R. § 35.160, which requires public entities to

21   furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities an equal

22   opportunity to participate in and enjoy "the benefits of, a service, program, or activity of a public entity."  28

23   C.F.R. § 35.160(b)(1).  Thus, just like it was necessary in *Where Do We Go Berkeley* to "define the scope of

24   the program to determine whether a six-month injunction is a reasonable modification that is required by the

25   ADA" (*Where Do We Go Berkeley*, 32 F.4th at 861), this Court should have defined the scope of the CRO's

26   FBNS program/services to allow the jury to determine whether there was effective communication for

27   purposes of that "program, service, or activity," and if not, the type of auxiliary aid or service which would

28

Reply ISO Def's Renewed Motion for Judgment as a Matter of Law or, in the alternative, New Trial [20-cv-06570-TSH]

ORBACH HUFF & HENDERSON LLP

have allowed Plaintiff to participate in that "program, service, or activity." This deficiency will also negatively impact appellate review for the same reasons, contrary to Plaintiff's contention. Opp., 1-9.

For example, a key aspect of Plaintiff's claim that she was denied the benefits of the CRO's services, programs, or activities is that Plaintiff was unable to file her FBNS the *same day* she first visited the CRO. Opp., 4:14-17 ("The County offers *same-day* FBNS filing service in the CRO for business owners who make proper payment, including by credit card, and have correct information on their forms. … Unlike sighted customers of the CRO, Ms. Martinez did not have access to this offering."). However, the Jury Instructions here did not include any temporal component whatsoever, simply informing the jury of the two activities the Court previously found to "qualify as services, programs, or benefits provided by the Defendants," including "filing completed forms at the Clerk Recorder's Office and the Clerk Recorder's Office advising patrons of forms' technical deficiencies." Dkt. 165, at 12:19-21. There is certainly no language suggesting the CRO offers these services on a "same day" basis. Id. Thus, despite the fact Plaintiff's entire claim was premised on the theory she was unable to file her FBNS on her *first visit* to the CRO, which Plaintiff claimed to constitute a violation of Title II (indeed, she admits she was able to file it on her *very next* visit to the CRO), the scope of the program/service at issue provided to the jury did not include any information concerning time, whatsoever. As such, the jury could not have made an informed decision regarding whether there was effective communication for purposes of the specific "program, service, or activity" at issue, and if not, the type of auxiliary aid or service which would have allowed Plaintiff to fully and equally participate.

### 2.     The Court Improperly Instructed the Jury Regarding Deliberate Indifference

Plaintiff argues that the jury instructions "fairly and accurately described the deliberate indifference standard based on Ninth Circuit precedent," which Plaintiff contends the "jury … appropriately applied…" Opp., 9:1-4 (citing Dkt. 165, Final Jury Instructions, No. 16; *Duvall v. Cnty. of Kitsap*, 260 F.3d at 1139-40). However, Plaintiff did not include any new arguments regarding the deliberate indifference standard other than those addressed above, in connection with the County's Renewed Motion for Judgment. As discussed above, the legal principles underpinning the deliberate indifference standard which the County contends should have been included in the jury instructions apply equally to actions under the ADA and section 1983. The evidence at trial did not meet the applicable standard and the jury likely erred because it was not sufficiently informed of the exacting standard Plaintiff was required to meet.

ORBACH HUFF & HENDERSON LLP

D. **The Court Erred in Granting Permanent Injunctive Relief**

In response to the County's argument that Plaintiff failed to present any evidence at trial that she faces a real and immediate threat of repeated injury in the future absent an injunction, Plaintiff argues that FBNS forms must be renewed every 5 years and that, "[i]n the absence of an injunction, Plaintiff was at risk of returning to the CRO and once again being denied the auxiliary aids and services deemed necessary to provide her with an equal opportunity to benefit from the CRO's services." Opp., 20:12-21:7. This is based on Plaintiff's argument that "CRO staff have discretion" but "are not required" to provide transcriber services to persons with disabilities. Opp., 20:17-18.

While Plaintiff focuses on the "discretion" CRO staff had to provide transcriber services to persons with vision disabilities, the standard is not whether Plaintiff faced some remote possibility of future injury. To the contrary, she was required to establish a "*likelihood of substantial and immediate irreparable injury*." *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1042-44 (9th Cir. 1999). As set forth in the MPA, Plaintiff failed to present any such evidence at trial. Nor did she present *any* evidence that a single CRO clerk has ever exercised said discretion to *decline* to provide transcriber services to a person with a vision disability since the incident underlying this litigation, and Plaintiff does not argue to the contrary in the Opposition. See generally, Opp. Moreover, notably, it was established at trial that Plaintiff filed her FBNS on May 31, 2019, meaning Plaintiff would have had to renew her FBNS before 2025. Opp., 8:5-8; Fine Dec., ¶ 5, Ex. C (TT, Vol. 4 at 644:10-11). Yet, to date, Plaintiff has not asserted any repeated violation. See generally, Opp. Plaintiff did not establish a real and immediate threat of repeated irreparable injury in the future and her request for an injunction should have been denied.

With respect to the County's argument that the Court's Injunction Order focused on an incorrect legal standard, Plaintiff argues that "reasonableness" has no place in evaluating the appropriateness of a particular auxiliary aid or service, and that under 28 C.F.R. § 35.160(b), "[t]imeliness matters because it is discrimination to '[p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others.' " Opp., 21:8-22 (citing 28 C.F.R. § 35.130(b)(1)(iii)). However, a reasonableness standard is built into the regulations on which Plaintiff's case relies, 28 C.F.R. § 35.160(b)(1)-(2), which require a public entity to furnish "appropriate" auxiliary aids, and whether a particular auxiliary aid

ORBACH HUFF & HENDERSON LLP

ORBACH HUFF & HENDERSON LLP

1  or service is reasonable under the circumstances depends upon "the method of communication used by the

2  individual; the nature, length, and complexity of the communication involved; and the context in which the

3  communication is taking place." 28 C.F.R. § 35.160(1)-(2).  Furthermore, while Plaintiff points to the language

4  in section 35.160(b)(2) providing that auxiliary aids and services must be provided "in a timely manner" in

5  support of her contention that "timeliness matters" (Opp., 7:23-25, 21:18-22), Plaintiff has not cited any

6  authority interpreting the meaning of that phrase, let alone authority which supports Plaintiff's contention that a

7  violation occurs simply because some customers successfully file their FBNS in one visit to the CRO while

8  Plaintiff did not.[12]  The CRO provided Plaintiff with auxiliary aids and services which would have allowed

9  Plaintiff to correct her FBNS and either return to the CRO or mail the corrected back to the CRO the *same day*

10  she first visited the CRO, in that they provided her with the Go Back Letter explaining exactly what needed to

11  be changed on her FBNS and a self-addressed envelope to mail the FBNS back to the CRO.  Fine Dec., ¶ 5,

12  Ex. C (TT, Vol. 4 at 635:23-636:10, 637:13-18, 644:10-11).  While Plaintiff voluntarily chose to wait until

13  May 31, 2019, to return to the CRO, that was solely her decision and not the result of anything the CRO did or

14  did not do.  And, Plaintiff has not cited any authority suggesting that filing her FBNS mere hours or days after

15  her first visit to the CRO fails to meet the "in a timely manner" standard.[13]  See generally, Opp.

16  **IV.    CONCLUSION**

17      The County respectfully requests the Court grant this Motion, in its entirety, set aside the jury's verdict,

18  and enter judgment as a matter of law in favor of the County.  In the alternative, the County requests that the

19  Court order a new trial be held.

20  Dated: March 27, 2025          Respectfully submitted,
                                   **ORBACH HUFF & HENDERSON LLP**

21                                 By:    */s/ Nicholas D. Fine*

22                                         Kevin E. Gilbert
                                           Nicholas D. Fine
23                                         Attorneys for Defendant
                                           COUNTY OF ALAMEDA

---

[12] While Plaintiff points to the testimony of Steven Clark for the proposition that "it would take at least twice as long to complete the form using the kiosk than doing so with a CRO-provided transcriber," the County elicited an admission from Clark that he never actually analyzed how long it would take to use the kiosk with human assistance from CRO staff, rather than using JAWS.  Fine Dec., ¶ 4, Ex. C (TT, Vol. 3 at 543:9-544:3).  Thus, there was never any basis for Clark's timing-related testimony in the first place.

[13] Plaintiff appears to concede the language of the injunction is improper and far too narrow, in that the injunction "leaves no room to provide other auxiliary aids to blind individuals seeking other kinds of assistance." Opp., 22:7-8.